| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| JEFFREY A. KRIEGER (SBN 156535)<br>JKrieger@GreenbergGlusker.com<br>KEITH PATRICK BANNER (SBN 259502)<br>KBanner@GreenbergGlusker.com<br>GREENBERG GLUSKER FIELDS CLAMAN<br>& MACHTINGER LLP<br>1900 Avenue of the Stars, Ste. 1900<br>Los Angeles, CA 90067<br>Tel: 310 553-3610<br>Fax: 310 553-0687<br><br>☐ *Movant(s) appearing without an attorney*<br>☒ *Attorney for Movant(s)* Jason M. Rund, Chapter 7 Trustee | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| In re:<br>YOUTH POLICY INSTITUTE, INC. | CASE NO.: 2:19-bk-23085-BB<br>CHAPTER: 7 |
|---|---|
| | **DECLARATION THAT NO PARTY REQUESTED A HEARING ON MOTION**<br>**LBR 9013-1(o)(3)** |
| Debtor(s). | [No Hearing Required] |

1.  I am the ☐ Movant(s) or ☒ attorney for Movant(s) or ☐ employed by attorney for Movant(s).

2.  On (*date*): 01/28/2020    Movant(s) filed a motion or application (Motion) entitled: Chapter 7 Trustee's Motion for Order Approving 1. Rejection of Unexpired Lease Relating to the Beverly Facility Nunc Pro Tunc to the Petition Date ; and 2. Abandonment of Personal Property Located at the Beverly Facility Declarations of Jason M. Rund and Tony Shokrai In Support Thereof

3.  A copy of the Motion and notice of motion is attached to this declaration.

4.  On (*date*): 01/28/2020    Movant(s), served a copy of ☐ the notice of motion or ☒ the Motion and notice of motion on required parties using the method(s) identified on the Proof of Service of the notice of motion.

5.  Pursuant to LBR 9013-1(o), the notice of motion provides that the deadline to file and serve a written response and request for a hearing is 14 days after the date of service of the notice of motion, plus 3 additional days if served by mail, or pursuant to F.R.Civ.P. 5(b)(2)(D) or (F).

6.  More than 23   days have passed after Movant(s) served the notice of motion.

7.  I checked the docket for this bankruptcy case and/or adversary proceeding, and no response and request for hearing was timely filed.

8.  No response and request for hearing was timely served on Movant(s) via Notice of Electronic Filing, or at the street address, email address, or facsimile number specified in the notice of motion.

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

9.    Based on the foregoing, and pursuant to LBR 9013-1(o), a hearing is not required.

Movant(s) requests that the court grant the motion and enter an order without a hearing.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


Date: <u>02/20/2020</u>                    <u>/s/ Jeffrey A. Krieger</u>
                                          Signature


                                          <u>Jeffrey Krieger</u>
                                          Printed name

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

# EXHIBIT "A"

JEFFREY A. KRIEGER (SBN 156535)
JKrieger@GreenbergGlusker.com
KEITH PATRICK BANNER (SBN 259502)
KBanner@GreenbergGlusker.com
GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590
Telephone: 310.553.3610
Fax: 310.553.0687

Attorneys for Jason M. Rund,
Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re: | Case No. 2:19-bk-23085-BB |
| YOUTH POLICY INSTITUTE, INC., | Chapter 7 |
| Debtor. | **CHAPTER 7 TRUSTEE'S MOTION FOR ORDER APPROVING: (1) REJECTION OF UNEXPIRED LEASE RELATING TO THE BEVERLY FACILITY *NUNC PRO TUNC* TO THE PETITION DATE; AND (2) ABANDONMENT OF PERSONAL PROPERTY LOCATED AT THE BEVERLY FACILITY** |
| | **DECLARATIONS OF JASON M. RUND AND TONY SHOKRAI IN SUPPORT** |
| | [NO HEARING REQUIRED] |

**TO THE HONORABLE SHERI BLUEBOND, UNITED STATES BANKRUPTCY JUDGE, THE DEBTOR, THE UNITED STATES TRUSTEE, AND ALL PARTIES-IN-INTEREST HEREIN:**

Jason M. Rund, Chapter 7 Trustee (the "Trustee") of the bankruptcy estate of Debtor Youth Policy Institute, Inc. (the "Debtor"), hereby submits his motion (the "Motion") for entry of an order approving the Trustee's: (1) rejection of the Debtor's unexpired commercial lease

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

MOTION TO REJECT LEASE
AND ABANDON ASSETS

regarding real property located at 2707-11 Beverly Blvd., Los Angeles, CA 90057 (the "Beverly Facility") *nunc pro tunc* to the date the bankruptcy was commenced (i.e. November 5, 2019) pursuant to section 365 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") and (2) abandonment pursuant of the Debtor's personal property located at the Beverly Facility pursuant to section 554(a) of the Bankruptcy Code.

As discussed herein, the Debtor's lease of the Beverly Facility costs approximately $70,000 per month and is therefore burdensome to the estate. In addition, the personal property remaining thereon is encumbered by a senior secured lien and is of inconsequential value to the bankruptcy estate. In support of his Motion, the Trustee respectfully represents as follows:

## I.    **JURISDICTION AND VENUE**

The Court has jurisdiction over this bankruptcy case, the bankruptcy estate, and this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). The venue of this case and this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The Trustee consents to the entry of a final judgment or order with respect to the Motion, if it is determined that the Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution. The statutory predicates for the relief requested herein are sections 365 and 554 of the Bankruptcy Code and Rule 6007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules" and each, a "Bankruptcy Rule").

## II.    **FACTUAL BACKGROUND**

### A.    **Commencement of the Bankruptcy Case**

On November 5, 2019 (the "Petition Date"), the Debtor filed a voluntary petition (the "Petition") under chapter 7 of the Bankruptcy Code, commencing the within chapter 7 bankruptcy case. The Debtor filed the Petition on an emergency basis without the required schedules, statements and other case commencement documents listed in section 2.1(b) of the Court Manual. The Debtor's creditor matrix accompanying the Petition consists of approximately 356 pages and lists approximately 2,760 parties. *See* BNC Certificate of Notice of Petition, Docket No. 6.

/ / /

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

MOTION TO REJECT LEASE
AND ABANDON ASSETS

On the Petition Date, the Trustee was duly appointed the chapter 7 trustee pursuant to section 701 of the Bankruptcy Code. The first chapter 7 meeting of creditors pursuant to section 341(a) of the Bankruptcy Code (the "341(a) Meeting") was held on December 11, 2019 at 9:00 a.m., at which the Debtor's representatives appeared. The 341(a) Meeting has since been continued and is currently scheduled for February 12, 2020 at 11:00 a.m.

### B.    The NFF Secured Loan

After obtaining an extension of the deadline to file its required disclosure schedules and statements (*See* Docket No. 9), on December 3, 2019, the Debtor filed its *Schedules*, *Statement of Financial Affairs* and other case commencement documents [Docket Nos. 15 & 16]. According to the Debtor's Schedule D, the Debtor is party to a pre-petition loan agreement with Non-Profit Finance Fund ("NFF") with a disclosed outstanding balance of $4,350,000.00. The Debtor further disclosed that the NFF loan is secured by "All Assets" of the Debtor. The Trustee, though his counsel, has been in regular contact with counsel for NFF. The Trustee has also reviewed the loan agreement and other applicable documents relating to the NFF loan, including the filed UCC-1 financing statement relating to the same.

### C.    Think Together

Prior to the Petition Date, the Debtor and the non-profit organization Think Together ("TT") entered into a letter agreement dated October 25, 2019 (the "TT Letter Agreement"). According to the terms of the TT Letter Agreement, a copy of which the Trustee has received and reviewed, TT, among other things, took over a number of the Debtor's after-school, employed approximately 500 former employees of the Debtor relating to such assigned programs and provided a purported loan in the amount of $400,000 to the Debtor to pay payroll obligations incurred as of the date of the agreement. The Trustee understands that on or around the Petition Date, TT began to occupy some of the space in the Beverly Facility formerly occupied by the Debtor and is currently utilizing certain of the personal property of the Debtor left at the Beverly Facility to run the assigned afterschool programs, including but not limited to office furniture, fixtures and equipment.

/ / /

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

MOTION TO REJECT LEASE
AND ABANDON ASSETS

**D.**     **The Beverly Facility and Property Located Thereon**

According to the Debtor's Schedule G, Item 2.146, the Debtor discloses an unexpired commercial lease (the "Beverly Lease") relating to the Beverly Facility with lessor MDB International Branding, LLC (the "MDB"). The Debtor's Schedule G further indicates that there were 35 months left on the Beverly Lease as of the Petition Date and that the property.

The Trustee has reviewed the Beverly Lease, a copy of which is attached as Exhibit 1 to the accompanying *Declaration of Jason M. Rund* (the "Rund Declaration"). The Beverly Lease commenced December 1, 2017 and expires November 30, 2022. Base rent for the Beverly Facility is currently approximately $67,000.00 per month, plus applicable charges. The Beverly Lease further indicates that MDB holds a security deposit of $191,558.40, though the Debtor's Schedule A/B discloses a security deposit of $258,744.53.[1] The Trustee understands that prior to the Petition Date, the Debtor paid rent through October 31, 2019. No rent for the Beverly Facility has been paid by the Trustee since the Petition Date.

The Trustee, his counsel and his field agent have visited and inspected the Beverly Facility and have observed that the facility is a large commercial space consisting of approximately 29,024 square feet of office space with an attached warehouse and loading dock. The Beverly Facility also has approximately 84 rooftop parking spaces. As of the Petition Date, the Debtor no longer occupied the Beverly Facility, but left certain personal property onsite, as discussed herein. The Trustee further understands that TT apparently began its occupation of the Beverly Facility on or around the Petition Date and remains onsite using much of the Debtor's property located thereon. As of the date of this Motion, the Trustee understands that MDB and TT have entered into discussions regarding TT's use of the space formerly occupied by the Debtor, but no formal lease arrangement has been entered into. Further, the TT Letter Agreement did not assign the Lease to TT, nor did the Debtor enter into any pre-petition sublease agreement with TT regarding any portion of the Beverly Facility.

/ / /

[1] The Trustee is working with MDB and the Debtor to verify the amount of the security deposit currently held.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

MOTION TO REJECT LEASE
AND ABANDON ASSETS

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1    The personal property left by the Debtor at the Beverly Facility largely consists of

2    fixtures, furniture, supplies, clothing, electronics, office equipment, including select computers

3    and printers, office supplies, and documents.  Photographs of the personal property located at the

4    Beverly Facility are attached collectively as <u>Exhibit 2</u> to the accompanying *Declaration of Tony*

5    *Shokrai* (the "Shokrai Declaration").  The Trustee, based on his review of the NFF loan

6    documents believes that, with the exception of two vehicles located at the Beverly Facility, most,

7    if not all of the personal property located at the Beverly Facility is encumbered by the senior

8    secured lien of NFF.  Further, the Trustee has consulted with an auctioneer and understands that

9    the aggregate liquidation value of the Debtor's personal property at the Beverly Facility,

10   excluding all vehicles, is less than $40,000.00, which does not take into account the costs of sale

11   which are likely to exceed $15,000.  As such, a net liquidation value of the personal property

12   located at the Beverly Facility is likely less than $25,000.00, all, or most of which is encumbered

13   by NFF's lien.

14       **E.**    **<u>Grand Jury Subpoena</u>**

15       The events detailed in the Debtor's resolutions accompanying the Petition, especially

16   those relating to alleged falsified or incorrect reporting to government agencies, has prompted

17   numerous government agencies to launch investigations of their own into the affairs of the Debtor

18   and its former CEO, Dixon Slingerland.  One such investigation has been initiated by the U.S.

19   Department of Labor (the "DOL"), as to which a grand jury subpoena issued by the United States

20   Department of Justice (the "DOJ") was served on the Trustee on November 26, 2019 (the "Grand

21   Jury Subpoena").

22       In connection with the Grand Jury Subpoena, the Trustee, recognizing that there were

23   numerous potentially responsive documents located at the Beverly Facility, coordinated with the

24   DOL and the DOJ to permit their respective agents' full access to the Beverly Facility to retrieve

25   all documents related to the Grand Jury Subpoena.  On January 16, 2020, approximately 15

26   agents of the DOL, the Los Angeles Unified School District Office of the Inspector General

27   ("LAUSD"), and the Federal Bureau of Investigation ("FBI") visited the Beverly Facility to

28   inspect and retrieve responsive documents and interview former employees of the Debtor.  On

MOTION TO REJECT LEASE
AND ABANDON ASSETS

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1  January 23, 2020, the DOL, LAUSD and FBI conducted a second site visit on January 23, 2020,

2  during which approximately 16 agents, again, inspected and retrieved documents responsive to

3  the Grand Jury Subpoena.

4  The Trustee is continuing to work cooperatively with the assigned Assistant United States

5  Attorney to provide access to further documents discovered in the various storage units of the

6  Debtor which may contain documents responsive to the Grand Jury Subpoena.

7  **F.      The Relief from Stay Stipulation Regarding the Beverly Facility**

8  On December 23, 2019, the Trustee filed the *Stipulation Between Chapter 7 Trustee and*

9  *MDB International Branding LLC for Relief from the Automatic Stay Regarding Beverly Facility*

10  [Docket No. 53] (the "Beverly RFS Stipulation").  Pursuant to the terms of the Beverly RFS

11  Stipulation, the Trustee and MDB agreed that, among other things: (1) MDB is granted

12  immediate relief from the automatic stay under section 362(d)(1) of the Bankruptcy Code to the

13  extent necessary to take any and all actions under nonbankruptcy law against TT and TT's

14  occupation of the Beverly Facility; (2) on January 31, 2020, without further notice or order of the

15  bankruptcy court, MDB will be granted relief from the automatic stay pursuant to section

16  362(d)(1) of the Bankruptcy Code to proceed under applicable nonbankruptcy law to enforce its

17  remedies to obtain full possession of the Beverly Facility; (3) prior to January 31, 2020, MDB

18  shall permit the Trustee, the DOJ, the DOL, or any party the foregoing may direct, full access to

19  the Beverly Facility and the Debtor's property located thereon.  On December 27, 2019, the Court

20  entered an order approving the Beverly RFS Stipulation.  *See* Docket No. 57.

21  **III.    DISCUSSION**

22  **A.      The Legal Standards**

23  1.      Rejection of an Unexpired Lease

24  Section 365(a) of the Bankruptcy Code provides that a trustee may assume or reject any

25  executory contract or unexpired lease of the debtor subject to the approval of the bankruptcy

26  court. *See* 11 U.S.C. § 365(a) ("[T]he trustee, subject to the court's approval, may reject any

27  executory contract or unexpired lease of the debtor.").  Although section 365(a) does not provide

28  a standard for determining whether a trustee may assume or reject an executory contract or

MOTION TO REJECT LEASE
AND ABANDON ASSETS

unexpired lease, courts generally approve a trustee's decision to assume or reject upon a showing that such debtor exercised its sound business judgment. *See In re Pomona Valley Med. Group, Inc.*, 476 F.3d 665, 670 (9th Cir. 2007*); In re G.I. Indus., Inc.,* 204 F.3d 1276, 1282 (9th Cir. 2000). Courts provide great deference to a trustee's decision to assume or reject a lease or executory contract. *See, e.g., Summit Land Co. v. Allen (In re Summit Land Co.)*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) (noting that, absent extraordinary circumstances, court approval of a debtor's decision to assume or reject an executory contract "should be granted as a matter of course").

In the Ninth Circuit, in appropriate circumstances, a Trustee is permitted to reject a lease retroactively. *Pacific Shores Dev., LLC v. At Home Corp. (In re At Home Corp.)*, 392 F.3d 1064, 1065 (9th Cir. 2004) (adopting the holding of *Thinking Machines Corp. v. Mellon Financial Services Corp. # 1 (In re Thinking Machines Corp.)*, 67 F.3d 1021, 1029 (1st Cir. 1995). In *At Home Corp.*, the Ninth Circuit Court of Appeals applied a "balance of equities" test and found that the following factors from *Thinking Machines Corp.* could be considered in granting retroactive rejection: (1) the prompt action of the Trustee to seek rejection of the lease and setting the matter for hearing; (3) the fact that the Debtor no longer occupies the premises; and (3) the motivation of a lessor behind its opposition, if any, to *nunc pro tunc* rejection. *Id.* at 1072.

2.    Abandonment of Personal Property

A trustee "may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. §554(a); *see also Catalano v. C.I.R.*, 279 F.3d 682, 685 (9th Cir. 2002). "When the trustee requests … abandonment, the court must 'focus ... upon the reasons underlying the trustee's determination and affirm a decision which reflects a business judgment made in good faith, upon a reasonable basis and within the scope of his authority under the [Bankruptcy] Code." *In re Sullivan & Lodge, Inc.*, No. C03-00588 CRB, 2003 WL 22037724, at *4 (N.D. Cal. Aug. 20, 2003), quoting *In re Wilson*, 94 B.R. 886, 888 (E.D.Va. Bankr. 1989) (citations and internal quotation marks omitted).

/ / /

/ / /

MOTION TO REJECT LEASE
AND ABANDON ASSETS

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

### B.    The Rejection of the Beverly Lease Should Be Approved

As discussed above, rent under the Beverly Lease is nearly $70,000 per month and the term of the lease is through October 2022.  As the Debtor no longer occupied the Beverly Facility as of the Petition Date, the Trustee does not believe use of the Beverly Facility will serve any benefit to the bankruptcy estate.  Because the Beverly Facility provides no recognizable benefit to the bankruptcy estate, and will only result in a substantial administrative burden, the Trustee has determined in his business judgment that the Beverly Lease should be immediately rejected.

Further, the Trustee submits that under the "balance of equities", the Beverly Lease should be rejected *nunc pro tunc* as of the Petition Date.  The Trustee has filed this Motion at the earliest possible time under the circumstances.  In light of the Grand Jury Subpoena, the Trustee was obligated to provide the DOL access to the voluminous documents the Debtor left at the facility so that their agents could retrieve responsive documents relating thereto.  In addition, though the Debtor vacated the premises prior to the Petition Date, the Trustee required time to inspect the personal property located on the premises in order to assess whether any such property could be administered for the benefit of the bankruptcy estate.  Lastly, MDB has agreed to the *nunc pro tunc* rejection requested herein, provided that the Trustee includes the following clause in the proposed order granting this Motion:

> The relief granted herein is without prejudice to MDB's right to seek allowance of an administrative claim and the respective rights of the Trustee and MDB are expressly reserved in that regard.

Accordingly, *nunc pro tunc* rejection of the Beverly Lease as of the Petition Date is warranted under the circumstances.

### C.    The Abandonment of Personal Property Should be Approved.

As also discussed above, the Trustee and his field agent have inspected the Beverly Facility and observed that the personal property left by the Debtor largely consists of fixtures, furniture, supplies, clothing, electronics, office equipment, including select computers and printers, office supplies, and documents.  The Trustee, based on his review of the NFF loan documents believes that, with the exception of two vehicles located at the Beverly Facility, most, if not all of the personal property located at the Beverly Facility is encumbered by the senior

MOTION TO REJECT LEASE
AND ABANDON ASSETS

secured lien of NFF. Further, the Trustee has consulted with an auctioneer and understands that

the aggregate net liquidation value of the Debtor's personal property at the Beverly Facility,

excluding all vehicles, is likely less than $25,000.00 and appears to be encumbered by the senior

secured lien of NFF. Further, as to the documents located at the Beverly Facility, the Trustee has

determined in his business judgment that retention of any such documents is not necessary for the

Trustee's administration of the bankruptcy estate and the Trustee has provided the DOL a

reasonable opportunity to retrieve all documents potentially responsive to the Grand Jury

Subpoena.[2]

Based on the above, the Trustee has determined that all personal property of the Debtor

located at the Beverly Facility, excluding all vehicles located thereon (collectively, the

"Abandoned Property"), is of inconsequential value to the bankruptcy estate. Further, the

administrative burden of selling the Abandoned Property, to the extent such items could be sold

would outweigh any potential realizable value, especially in light of the senior secured lien of

NFF. Accordingly, the Trustee has determined in his business judgment that the Abandoned

Property located at the Beverly Facility should be abandoned.

## IV.    <u>CONCLUSION</u>

Based on the foregoing, the Trustee respectfully requests entry of an order authorizing: the

(1) the Trustee's rejection of the Beverly Lease; and (2) the Trustee's abandonment of the

Abandoned Property remaining at the Beverly Facility; and (3) granting such other and further

relief as the Court deems just and proper.

DATED:  January 28, 2020

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP

By: /s/ Jeffrey A. Krieger

JEFFREY A. KRIEGER
KEITH PATRICK BANNER
Attorneys for Jason M. Rund,
Chapter 7 Trustee

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

---

[2] To the extent that the DOL requires further review of the documents located at the Beverly Facility, the Trustee takes no position regarding whether any action should be taken against the Debtor and/or MDB for preservation of the same until such time as the DOL has recovered all documents necessary in its investigations.

MOTION TO REJECT LEASE
AND ABANDON ASSETS

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

# DECLARATION OF JASON M. RUND

I, Jason M. Rund, declare:

1.      I am the duly appointed and acting chapter 7 Trustee of the bankruptcy estate of Youth Policy Institute, Inc. (the "Debtor").  I have personal knowledge of the facts stated below, or have gained knowledge of them from pleadings and other documents typically obtained and reviewed by trustees administering estates or from the professionals employed to assist me herein, and, if called as a witness, I could and would testify competently thereto.

2.      I submit this Declaration in support of the accompanying *Chapter 7 Trustee's motion for Order Approving: (1) Rejection of Unexpired Lease Relating to the Beverly Facility Nunc Pro Tunc to the Petition Date; and (2) Abandonment of Personal Property Located at the Beverly Facility* (the "Motion") with respect to my rejection of the Debtor's unexpired pre-petition commercial lease of real property located at 2707-11 Beverly Blvd., Los Angeles, CA 90057 (the "Beverly Facility") and abandonment of the Debtor's personal property located at the Beverly Facility.  Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

3.      On November 5, 2019 (the "Petition Date"), the Debtor filed a voluntary petition (the "Petition") under chapter 7 of the Bankruptcy Code, commencing the within chapter 7 bankruptcy case.  The Debtor filed the Petition on an emergency basis without the required schedules, statements and other case commencement documents listed in section 2.1(b) of the Court Manual.  The Debtor's creditor matrix accompanying the Petition consists of approximately 356 pages and lists approximately 2,760 parties.  *See* BNC Certificate of Notice of Petition, Docket No. 6.

4.      On the Petition Date, I was duly appointed the chapter 7 trustee pursuant to section 701 of the Bankruptcy Code.  The first chapter 7 meeting of creditors pursuant to section 341(a) of the Bankruptcy Code (the "341(a) Meeting") was held on December 11, 2019 at 9:00 a.m., at which the Debtor's representatives appeared.  The 341(a) Meeting has since been continued and is currently scheduled for February 12, 2020 at 11:00 a.m.

5.      After obtaining an extension of the deadline to file its required disclosure

DECLARATION OF
TONY SHOKRAI

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

schedules and statements (*See* Docket No. 9), on December 3, 2019, the Debtor filed its *Schedules*, *Statement of Financial Affairs* and other case commencement documents [Docket Nos. 15 & 16].  According to the Debtor's Schedule D, the Debtor is party to a pre-petition loan agreement with Non-Profit Finance Fund ("NFF") with a disclosed outstanding balance of $4,350,000.00.  The Debtor further disclosed that the NFF loan is secured by "All Assets" of the Debtor.  I, personally and through my counsel, have been in regular contact with counsel for NFF and I have further reviewed the loan agreement and other applicable documents relating to the NFF loan, including the filed UCC-1 financing statement relating to the same.

6.      Prior to the Petition Date, I understand that the Debtor and the non-profit organization Think Together ("TT") entered into a letter agreement dated October 25, 2019 (the "TT Letter Agreement").   According to the terms of the TT Letter Agreement, a copy of which I have received and reviewed, TT, among other things, took over a number of the Debtor's after-school, employed  approximately 500 former employees of the Debtor relating to such assigned programs and provided a purported loan in the amount of $400,000 to the Debtor to pay payroll obligations incurred as of the date of the agreement.  I further understand that on or around the Petition Date, TT began to occupy some of the space in the Beverly Facility formerly occupied by the Debtor and is currently utilizing certain of the personal property of the Debtor left at the Beverly Facility to run the assigned afterschool programs, including but not limited to office furniture, fixtures and equipment.

7.      According to the Debtor's Schedule G, Item 2.146, the Debtor discloses an unexpired commercial lease (the "Beverly Lease") relating to the Beverly Facility with lessor MDB International Branding, LLC (the "MDB").  The Debtor's Schedule G further indicates that there were 35 months left on the Beverly Lease as of the Petition Date and that the property.

8.      I have obtained a copy of the Beverly Lease, a true and correct copy of which is attached hereto as Exhibit 1.  The Beverly Lease commenced December 1, 2017 and expires November 30, 2022.  Base rent for the Beverly Facility is currently approximately $67,000.00 per month, plus applicable charges.  The Beverly Lease further indicates that MDB holds a security deposit of $191,558.40, though the Debtor's Schedule A/B discloses a security deposit of

$258,744.53.[3]  I understand that prior to the Petition Date, the Debtor paid rent through October 31, 2019.  No rent payment has been made since the Petition Date.

9.      I, along with my counsel and field agent have visited and inspected the Beverly Facility and have observed that the facility is a large commercial space consisting of approximately 29,024 square feet of office space with an attached warehouse and loading dock. The Beverly Facility also has approximately 84 rooftop parking spaces.  I observed during my visit that the Debtor no longer occupied the Beverly Facility, but left certain personal property onsite, as discussed in the Motion and herein.  I further understand that TT apparently began its occupation of the Beverly Facility on or around the Petition Date and remains onsite using much of the Debtor's property located thereon.

10.      As of the date of this Declaration, I understand that MDB and TT have entered into discussions regarding TT's use of the space formerly occupied by the Debtor, but no formal lease arrangement has been entered into.  Further, the TT Letter Agreement did not assign the Lease to TT, nor did the Debtor enter into any pre-petition sublease agreement with TT regarding any portion of the Beverly Facility.

11.      From my observations and those of my professionals, the personal property left by the Debtor at the Beverly Facility largely consists of fixtures, furniture, supplies, clothing, electronics, office equipment, including select computers and printers, office supplies, and documents.  The photographs of the personal property located at the Beverly Facility attached collectively as Exhibit 2 to the accompanying *Declaration of Tony Shokrai* accurately reflect my observations at the time I visited the Beverly Facility.

12.      Based on my review of the NFF loan documents, I believe that, with the exception of two vehicles located at the Beverly Facility, most, if not all of the personal property located at the Beverly Facility is encumbered by the senior secured lien of NFF.  Further, I have consulted with an auctioneer and I understand that the aggregate liquidation value of the Debtor's personal property at the Beverly Facility, excluding all vehicles, is less than $40,000.00, which does not

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

---

[3] The Trustee is working with MDB and the Debtor to verify the amount of the security deposit currently held.

MOTION TO REJECT LEASE
AND ABANDON ASSETS

take into account the costs of sale which are likely to exceed $15,000.  As such, a net liquidation

value of the personal property located at the Beverly Facility is likely less than $25,000.00, all, or

most of which is encumbered by NFF's lien.

13.     The events detailed in the Debtor's resolutions accompanying the Petition,

especially those relating to alleged falsified or incorrect reporting to government agencies, has

prompted numerous government agencies to launch investigations of their own into the affairs of

the Debtor and its former CEO, Dixon Slingerland.  One such investigation has been initiated by

the U.S. Department of Labor (the "DOL"), as to which a grand jury subpoena issued by the

United States Department of Justice (the "DOJ") was served on me on November 26, 2019 (the

"Grand Jury Subpoena").

14.     In connection with the Grand Jury Subpoena, recognizing that there were

numerous potentially responsive documents located at the Beverly Facility, I coordinated with the

DOL and the DOJ to permit their respective agents' full access to the Beverly Facility to retrieve

all documents related to the Grand Jury Subpoena.  I understand through my field agent that on

January 16, 2020, approximately 15 agents of the DOL, the Los Angeles Unified School District

Office of the Inspector General ("LAUSD"), and the Federal Bureau of Investigation ("FBI")

visited the Beverly Facility to inspect and retrieve responsive documents and interview former

employees of the Debtor.  I further understand that on January 23, 2020, the DOL, LAUSD and

FBI conducted a second site visit on January 23, 2020, during which approximately 16 agents,

again, inspected and retrieved documents responsive to the Grand Jury Subpoena.

15.     I am continuing to work cooperatively with the assigned Assistant United States

Attorney to provide access to further documents discovered in the various storage units of the

Debtor which may contain documents responsive to the Grand Jury Subpoena.

16.     Given the fact that: (i) rent under the Beverly Lease is nearly $70,000 per month

and the term of the lease is through October 2022; and (ii) the Beverly Facility, since the Petition

Date, has not been occupied by the Debtor, I do not believe use of the Beverly Facility will serve

any benefit to the bankruptcy estate.  Because the Beverly Facility provides no recognizable

benefit to the bankruptcy estate, and will only result in a substantial administrative burden, I have

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

MOTION TO REJECT LEASE
AND ABANDON ASSETS

1    determined in my business judgment that the Beverly Lease should be immediately rejected.

2    17.    Further, I believe I have brought the Motion at the earliest possible time. In light

3    of the Grand Jury Subpoena, I was obligated to provide the DOL access to the voluminous

4    documents the Debtor left at the facility so that their agents could retrieve responsive documents

5    relating thereto. In addition, though the Debtor vacated the premises prior to the Petition Date, I

6    required time to inspect the personal property located on the premises in order to assess whether

7    any such property could be administered for the benefit of the bankruptcy estate.

8    18.    MDB has agreed to the *nunc pro tunc* rejection of the Beverly Lease requested in

9    the Motion, provided that I include the following clause in my proposed order granting the

10   Motion:

> The relief granted herein is without prejudice to MDB's right to
> seek allowance of an administrative claim and the respective rights
> of the Trustee and MDB are expressly reserved in that regard.

12   19.    As set forth in the Motion, I have determined that all personal property of the

13   Debtor located at the Beverly Facility, excluding all vehicles located thereon (collectively, the

14   "Abandoned Property"), is of inconsequential value to the bankruptcy estate. Further, the

15   administrative burden of selling the Abandoned Property, to the extent such items could be sold

16   would outweigh any potential realizable value, especially in light of the senior secured lien of

17   NFF. Accordingly, I have determined in my business judgment that the Abandoned Property

18   located at the Beverly Facility should be abandoned.

19   I declare under penalty of perjury under the laws of the United States of America that the

20   foregoing is true and correct.

21   Executed this _26th_ day of January 2020, at El Segundo, California.

24   _____
     JASON M. RUND

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

MOTION TO REJECT LEASE
AND ABANDON ASSETS

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

## DECLARATION OF TONY SHOKRAI

I, Tony Shokrai, declare:

1.      I am the President of Interco Management Corporation ("Interco"), proposed field agent for Jason M. Rund, Chapter 7 Trustee (the "Trustee") of the bankruptcy estate of Debtor Youth Policy Institute, Inc. (the "Debtor"). I have personal knowledge of the facts stated below, and, if called as a witness, I could and would testify competently thereto.

2.      On behalf of the Trustee, I have accessed and inspected certain real property located at 2707-11 Beverly Blvd., Los Angeles, CA 90057 (the "Beverly Facility").

3.      In my inspection of the Beverly Facility, I observed that the facility is a large commercial space consisting of approximately 29,024 square feet of office space with an attached warehouse and loading dock. The Beverly Facility also has approximately 84 rooftop parking spaces. The personal property left by the Debtor at the Beverly Facility largely consists of fixtures, furniture, supplies, clothing, electronics, office equipment, including select computers and printers, office supplies, and documents. True and correct photographs of the personal property located at the Beverly Facility are attached collectively hereto as Exhibit 2.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 28TH day of January, 2020, at Santa Monica, California.

TONY SHOKRAI

15

DECLARATION OF
JASON M. RUND

# EXHIBIT "1"

## LEASE

THIS LEASE (this "Lease") is made as of this 6th of June, 2017, by and between MDB International Branding, LLC, a California limited liability company ("Landlord") and Youth Policy Institute, Inc., a District of Columbia Non-Profit Corporation ("Tenant") and doing business in California under Foreign Stock.

A. Landlord is the owner of record of all of that certain real property (the "Property") situated in Los Angeles County, California, commonly known as 2707-2711 Beverly Blvd., Los Angeles, CA 90057 and more particularly described in Exhibit A, which consists of approximately 29,024 square feet of commercial building situated on approximately 30,391 square feet (0.70 acres) of land with approximately 84 rooftop parking spaces.

B. Landlord wishes to lease the Property to Tenant, together with all rights, privileges, and easements appurtenant to the Property, and to convey title to all buildings, structures, and other improvements thereon to Tenant during the term of the Lease. The Property, such appurtenant rights, privileges and easements and such buildings and improvements are collectively referred to as the "Premises."

## AGREEMENT

NOW THEREFORE, for good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, Landlord and Tenant hereby agree as follows:

### 1. Lease of Premises

Landlord hereby leases transfers and demises to Tenant, and Tenant hereby leases and takes from Landlord, the Premises for the terms and upon the agreements, covenants and conditions set forth in this Lease.

### 2. Term

The term of this Lease shall be five (5) years (the "Initial Term") commencing on December 1, 2017 or whenever the Premises can be provided to the Tenant vacant of all existing tenants, whichever is earlier (the "Commencement Date"), and, unless sooner terminated or extended as herein provided, shall terminate on a date which is five (5) years thereafter.  Landlord and Tenant shall execute a Commencement Date Memorandum to confirm the actual Commencement Date of this Lease once it is known.

### 3. Option to Renew

As long as Tenant is not in default under the Lease at the end of the Initial Term, Tenant shall have the right to renew the lease for one (1) five (5) year period, subject to Landlord's termination rights described as follows: should Landlord elect to redevelop the Property, Landlord shall have the right to terminate the Lease and/or withdraw the option to renew the Lease only after completion of the initial five (5) years term of the Lease and provides the Tenant with six (6) months written notice.

Upon renewal of the Lease, all terms and Conditions of the Lease  shall apply to the option terms.

### 4. Tenant Improvements:

*I2 DS*
Tenant Initials

1

Landlord Initials

Like this template?
You'll love Cashboard Invoicing Software

Exhibit 1
17

Landlord shall improve the premises at Tenant's sole cost and expense in accordance with Tenant's final Tenant Improvement ("TI") requirements, including but not limited to plan check, permitting, data telecom, security system, etc. The amount of such TI is subject to Landlord's approval and shall not exceed a pre-agreed budget amount of Eighty Thousand Dollars ($80,000.00).  Tenant agrees to pay thereafter for the costs incurred by Landlord to improve the Premises to Tenant's standards as a charge back to Tenant and amortized over the first twenty four (24) months of the initial term of the Lease.

Unless extended by mutual agreement of the Parties or as a result of force majeure, Tenant shall have the right to terminate the Lease if Landlord does not deliver the Premises to Tenant vacant of all existing tenants and possessory interests, by December 1, 2017.  In the event of termination due to Landlord's failure to deliver the Premises to Tenant, vacant of all existing tenants and possessory interests, by December 1, 2017, Landlord shall immediately return Tenant's any pre-paid rent and/or deposit funds.

## 5. Rent

Upon execution of the Lease, Tenant shall pay to Landlord the first month's rent in the sum of $63,852.80, adjusted as a result of the TI incurred by the Landlord to $67,186.13

Starting on the later of December 1, 2017, or the Commencement Date, and continuing on the first of the month for each month thereafter during the Initial Lease Term, Tenant shall pay to Landlord the monthly base rent of $63,852.80 ("Monthly Base Rent"), which represents $2.20 per square foot based on 29,024 square feet.

However, in the first twenty four (24) months, the Base Rent will be increased by 1/24 of the $80,000.00 incurred by Landlord for the construction of TI, as per paragraph 4 above.

Nevertheless, commencing on December 1, 2018, of the initial Term and continuing annually thereafter, the Monthly Base Rent shall increase by 3.00% per annum.

All Monthly Base Rent (and all other moneys and charges payable by Tenant to Landlord hereunder) shall be paid by Tenant to Landlord in lawful money of the United States of America at Landlord's address for notices hereunder, or to such other person or at such other place as Landlord may from time to time designate by notice in writing to Tenant.

As used herein the term "Lease Year" shall mean each successive twelve calendar month period during the Term, with the first Lease Year commencing on the Commencement Date; provided, however, that the last Lease Year shall be the fractional year that ends upon the date of the expiration of the Term.

## 6. Security Deposit

Upon Lease execution, Tenant shall deposit with Landlord a Security Deposit, in the sum of $ 191558.40 (representing 3 month of monthly base rent) as security for Tenant's faithful performance of its obligations under this Lease. So long as Tenant is not in default during the first two (2) years of the Initial Term, at the start of Year 3 ($25^h$ month) of Lease, Landlord shall refund $63,852.80 (representing 1 month of monthly base rent) with a check or wire transfer.

If Tenant fails to pay Rent, or otherwise Defaults under this Lease, Landlord may use, apply or retain all or any portion of said Security Deposit for the payment of any amount already due Landlord for Rents which will be due in the future, and/or to reimburse or compensate Landlord for any liability, expense, loss or damage which

*J2 DS*
Tenant Initials

Landlord Initials

2

Exhibit 1
18

Landlord may suffer or incur by reason thereof. If Landlord uses or applies all or any portion of the Security Deposit, Tenant shall within 10 days after written request, deposit monies with Landlord sufficient to restore said Security Deposit to the full amount required by this Lease. If the Base Rent increases during the term of this Lease, Tenant shall, upon written request from Landlord, deposit additional monies with Landlord so that the total amount of the Security Deposit shall at all times bear the same proportion to the increased Base Rent as the initial Security Deposit bore to the initial Base Rent. Should the agreed use be amended to accommodate a material change in the business of Tenant or to accommodate a subtenant or assignee, Landlord shall have the right to increase the Security Deposit to the extent necessary, as mutually agreed upon by Landlord and Tenant, to account for any increased wear and tear that the Premises may suffer as a result thereof. Within 90 days after the expiration or termination of this Lease, Landlord shall return that portion of the Security Deposit not used or applied by Landlord. No part of the Security Deposit shall be considered to be held in trust, to bear interest or to be prepayment for any monies to be paid by Tenant under this lease.

**7. Base Rent Due Upon Execution:**

A.    **Base Rent:**
      **The payment to be made as follows:**
      **$63,852.80 (First month rent)**
      **$3,333.33 (First 1/24 of TI costs incurred by Landlord on behalf the Tenant)**
      **$191,558.40 (Security Deposit)**

**8. Utilities and Services**

Tenant shall pay for all water, gas, heat, light, power, telephone, trash disposal and other utilities and services supplied to the Premises. There shall be no abatement of Rent and Landlord shall not be liable in any respect whatsoever for the inadequacy, stoppage, interruption or discontinuance of any utility or service due to riot, strike, labor dispute, breakdown, accident, repair or other cause beyond Landlord's reasonable control or in cooperation with governmental request or directions.

**9. Taxes**

(a) "Real Property Taxes." As used herein, the term "Real Property Taxes" shall include any form of assessment; real estate, general, special, ordinary or extraordinary, or rental levy or tax (other than inheritance, personal income or estate taxes); improvement bond; and/or license fee imposed upon or levied against any legal or equitable interest of Landlord in the Premises, Landlord's right to other income therefrom, and/or Landlord's business of leasing, by any authority having the direct or indirect power to tax and where the funds are generated with reference to the Premises address and where the proceeds so generated are to be applied by the city, county or other local taxing authority of a jurisdiction within which the Premises is located. The term "Real Property Taxes" shall also include any tax, fee, levy, assessment or charge, or any increase therein: (i) imposed by reason of events occurring during the term of this Lease, including but not limited to, a change in the ownership of the Premises, (ii) a change in the improvements thereon, and/or (iii) levied or assessed on machinery or equipment provided by Landlord to Tenant pursuant to this Lease.

(b) Payment of Taxes. Except as otherwise provided in Section 9(c), below, Landlord shall pay the Real Property Taxes applicable to the Premises. Tenant and Landlord shall cooperate to submit and obtain the benefit of a property tax exemption application to exempt the Premises from Real Property Taxes. Should the

*I2 DS*
Tenant Initials

3

Landlord Initials

Exhibit 1
19

exemption be granted, as permitted by law, Landlord and Tenant will share the benefit of the exemption, based on 67 % to Landlord and 33 % to Tenant, during the Term of this Lease. Should the exemption be denied, Landlord shall have the right to exhaust all administrative and judicial appeals of the exemption determination at Landlord's sole cost. Should the exemption be granted thereafter, Landlord should first used the proceeds to be reimbursed from all incurred cost and share with Tenant on the same basis 67/33. Any property tax exemption, will be credited toward the current rent due in the month of April of each year under term.

(c) Additional Improvements. Tenant shall pay to Landlord the entirety of any increase in Real Property Taxes if assessed solely by reason of Alterations, Trade Fixtures or Utility Installations placed upon the Premises by Tenant subsequent to the execution of this Lease by the Parties.

(d) Personal Property Taxes. Tenant shall pay prior to delinquency all taxes assessed against and levied upon Tenant Owned Alterations and Utility Installations, Trade Fixtures, furnishings, equipment and all personal property of Tenant contained in the Premises. When possible, Tenant shall cause its Tenant Owned Alterations and Utility Installations, Trade Fixtures, furnishings, equipment and all other personal property to be assessed and billed separately from the real property of Landlord. If any of Tenant's said property shall be assessed with Landlord's real property, Tenant shall pay Landlord the taxes attributable to Tenant's property within 10 days after receipt of a written statement setting forth the taxes applicable to Tenant's property.

## 10. Quiet Enjoyment

Landlord covenants that upon payment by Tenant of the rent herein reserved and upon performance and observance by Tenant of all of the agreements, covenants and conditions herein contained on the part of Tenant to be performed and observed, and subject to exceptions to title set forth in Exhibit B to this Lease, Tenant shall peaceably hold and quietly enjoy the Premises during the entire Term without hindrance, molestation or interruption by Landlord or by anyone lawfully or equitably claiming by, through or under Landlord.

## 11. Use/Parking/Signage

(a) Use: Tenant shall have the right to use the Premises for educational, community services and public engagement purposes and other uses reasonably ancillary thereto. No other uses shall be permitted without Landlord's prior written consent which shall not be reasonably withheld. However, in no event shall the Premises be used for any purpose or use (nor shall any activity be carried on upon the Premises) which in any manner causes, creates or results in a public or private nuisance.

(b) Parking: Tenant shall have the right to use and control all parking stalls 24 hours per day, 7 days per week at no additional cost.

(c) Signage: Tenant shall be entitled to install any exterior or interior signage so long as it complies with any and all rules and regulations of the City of Los Angeles.

## 12. Permits, Licenses, Etc.

Landlord will, from time to time during the Lease Term, execute and deliver all applications for permits, licenses or other authorizations relating to the Premises required by any municipal, county, state, or Federal authorities, as required in connection with the construction, reconstruction, repair or alteration of any building or improvements now or hereafter constituting a part of the Premises. Landlord will from time to time during the Lease Term execute, acknowledge and deliver any and all instruments required to grant rights-of-way and

4

*I2 DS*
Tenant Initials

Landlord Initials

Exhibit 1
20

easements in favor of municipal and other governmental authorities or public utility companies incident to the installation of water lines, fire hydrants, sewers, electricity, telephone, gas, steam, and other facilities and utilities reasonably required for the use and occupancy of the Premises. Tenant shall reimburse Landlord for any sum paid by Landlord in respect of the matters initiated by Tenant specified in this Section 12, including reasonable attorney's fees.

### 13. Repairs, Governmental Regulations and Waste

(a) Except for Landlord's obligation to maintain and repair the building's structure, foundation, and exterior walls at its own expense and Landlord's obligation to maintain the roof and roof membrane for a period of five (5) years from the Commencement Date, Tenant shall, during the Lease Term, at its own cost and expense and without any cost or expense to Landlord:

(i) Keep and maintain all buildings and improvements now or hereafter located on the Property (subject to Tenant's right to demolish) and all appurtenances thereto in good and neat order and repair and shall allow no nuisances to exist or be maintained therein. Tenant shall likewise keep and maintain the grounds, sidewalks, roads and parking, sprinkler systems inside and outside, and landscaped areas in good and neat order and repair. Landlord shall not be obligated to make any repairs, replacements or renewals of any kind, nature or description whatsoever to the Premises or any buildings or improvements now or hereafter located thereon except as set forth herein, and Tenant hereby expressly waives all right to make repairs at Landlord's expense under sections 1941 and 1942 of the California Civil Code, or any amendments thereof; and

(ii) Comply with and abide by all federal, state, county, municipal and other governmental statutes, ordinances, laws and regulations affecting the Premises, all buildings and improvements now or hereafter located thereon, or any activity or condition on or in the Premises.

(b) Tenant agrees that it will not commit or permit waste upon the Premises other than to the extent necessary for the improvements upon the Premises or for the purpose of constructing and erecting thereon other buildings and improvements in accordance with the rights set forth in Section 14, below.

### 14. Improvements, Changes, Alterations.

(a) Upon review by the Landlord and approval may not be unreasonably withheld,  Tenant shall have the right at any time and from time to time during the Lease Term to make such improvements to the Premises hereafter located on the Property for purposes of creating a charter school or similar educational use, including improvements now or hereafter located on the Property and replacement thereof, as Tenant shall deem necessary or desirable.

(b) Any and all improvements, changes and alterations (other than changes or alterations of movable trade fixtures and equipment or improvements, changes or alterations involving costs less than Ten Thousand Dollars ($10,000)) pursuant to subsection (a) above shall be undertaken in all cases subject to the following additional conditions which Tenant covenants to observe and perform:

(i) No improvement, change or alteration shall be undertaken until Tenant has procured and paid for, so far as the same may be required from time to time, all municipal and other governmental permits and authorizations of the various municipal departments and governmental subdivisions having jurisdiction, and Landlord agrees to join in the application for such permits or authorizations whenever such action is necessary.

5

I 2 DS
Tenant Initials

Landlord Initials

Exhibit 1
21

(ii) All work done in connection with any improvement, change or alteration shall be done promptly, in a good and workmanlike manner and in compliance with all applicable laws, ordinances, orders, rules, regulations and requirements of all Federal, state and municipal governments and the appropriate departments, commissions, boards and officers thereof. All such work shall be at the sole cost and expense of Tenant. As set forth in Section 20, below, Tenant shall not allow any mechanic's liens to be placed against the Premises.

(iii) In addition to the insurance coverage referred to in this Section, Tenant shall require any contractors and subcontractors to maintain Workers' Compensation Insurance covering all persons employed in connection with the work and with respect to whom death or injury claims could be asserted against Landlord, Tenant or the Premises, and a general liability policy coverage, naming Landlord with limits of not less than Three Million Dollars ($3,000,000), shall be maintained by each contractor and subcontractor at all times when any work is in process of being performed by that contractor or subcontractor in connection with any improvement, change, alteration or demolition and replacement. All such insurance shall be obtained and kept in force as otherwise provided herein.

## 15. Damage or Destruction

(a) If the Property is destroyed or damaged to the extent of twenty percent (20%) or more of the then full replacement cost from a cause not insured against under either Landlord's or Tenant's casualty insurance policy, Landlord shall have the right to terminate this Lease by giving written notice of termination to Tenant within thirty (30) days after the date of the damage or destruction, in which case this Lease shall terminate as of the receipt by Tenant of Landlord's notice. If the Lease is not so terminated, then Landlord shall diligently proceed to repair and restore the Property.

(b) If the Property is destroyed or damaged to the extent of twenty-five percent (25%) or more of the then full replacement cost from a cause covered by either Tenant's or Landlord's casualty insurance, and that damage or destruction may be repaired or restored within ninety (90) days after commencement of repair or restoration, then Landlord shall diligently proceed to repair and restore the Property. If Landlord determines that the Property cannot be repaired or restored within that period, and proceeds from Tenant's casualty insurance are not available to repair or restore the Property, then Landlord shall have the right to terminate this Lease by written notice to Tenant given within sixty (60) days after the date of damage or destruction; Tenant's obligation to pay rent and other charges under this Lease shall terminate as of the date of the damage or destruction or as of the date Tenant ceases to do business at the Property, whichever date is later.

(c) If the Property is damaged to the extent of fifty percent (50%) or more of its replacement cost, Landlord may elect to terminate this Lease by written notice to Tenant given within sixty (60) days after the date of damage or destruction, provided that proceeds are unavailable from Tenant's insurance to repair the damage; in that case, this Lease shall terminate as of the receipt by Tenant of Landlord's notice.

(d) If, in any case that is the subject of Section 15, the Property or any portion of the Property is rendered unfit for use and occupancy and this Lease is not terminated as provided above, a just proportion of the Base Rent, in light of the nature and extent of the damage, shall be abated until the Property is restored by Landlord as provided above, excluding any fixtures or items installed or paid for by Tenant that Tenant is entitled or required to remove under this Lease.

(e) Except as expressly provided in this Lease, damage to or destruction of the Property, the Building, or the Project shall not terminate this Lease or result in any abatement of rentals. Tenant waives any right of offset against Tenant's rental obligations that may be provided by any statute or rule of law in connection with Landlord's

*I 2 DS*
Tenant Initials

6

Landlord Initials

Exhibit 1
22

duties of repair and restoration under the provisions of this Lease.

## 16. Assignment and Subletting

(a) Landlord's Right of Consent.  Tenant shall not transfer, assign, sublet, license, change ownership or voting control, mortgage, encumber, pledge or hypothecate all or any part of this Lease, Tenant's interest in the Premises or Tenant's business (collectively "**Transfer**") without first obtaining Landlord's written consent, not to be unreasonably withheld.  Without limiting the circumstances in which it may be reasonable for Landlord to withhold its consent to a Transfer, Landlord and Tenant agree that it would be reasonable for Landlord to withhold its consent in the following instances:  (a) in Landlord's reasonable judgment, the use of the Premises by the proposed transferee would be different than the Permitted Use set forth in the Summary or the proposed transferee would violate any negative covenant contained in any agreement affecting the Shopping Center, or (b) in Landlord's reasonable judgment, the financial worth of the proposed transferee is insufficient to cover the monetary obligations of this Lease; (c) in Landlord's reasonable judgment, the proposed transferee does not have a good reputation as a tenant of property; (d) Landlord has experienced previous defaults by or is in litigation with the proposed transferee; (e) the proposed transferee is a tenant in the Shopping Center or is a person or entity with whom Landlord is negotiating for other space in the Shopping Center; (f) Tenant is in default of any obligation of Tenant under this Lease; or (g) a sublease of less than the entire Premises.  Should Tenant desire to make a Transfer hereunder, Tenant shall give Landlord thirty (30) days prior written notice thereof ("**Tenant's Notice of Intent to Transfer**"), which (i) shall state that the Tenant intends to Transfer the Lease as of a specific date (the "**Transfer Date**"); (ii) shall identify the proposed transferee; (iii) shall set forth all material terms and conditions of the proposed Transfer; and (iv) shall be accompanied by certified financial statements of the proposed transferee for the three (3) fiscal years immediately preceding such proposed Transfer or such other documentation or information relating to the financial strength and credit worthiness of the proposed transferee as may be reasonably acceptable to the Landlord.  Tenant shall pay a fee to Landlord of One Thousand Dollars ($1,000.00) for the costs of processing any proposed Transfer, whether or not the proposed Transfer is consummated, said fee to be increased proportionately to, and at the same time as, increases in Minimum Rent hereunder.  If Landlord consents to a proposed Transfer, Tenant shall pay to Landlord 50% of any and all amounts payable by the transferee to Tenant in excess of the Rent payable hereunder.  Any Transfer other than as permitted in this Section shall be null and void at Landlord's election.  Notwithstanding the above, acceptance of any payment of rent and other charges by Landlord from any party other than Tenant named herein shall not be deemed a consent to a Transfer or a waiver of any of Landlord's rights in connection with any proposed Transfer hereunder.  If Tenant claims that Landlord has unreasonably withheld or delayed its consent under this Section 16(a) or otherwise has breached or acted unreasonably under this Section 16(a), its sole remedy shall be a declaratory judgment and an injunction for the relief sought, and Tenant hereby waives all other remedies, including, without limitation, any right to seek damages or terminate this Lease under Section 1995.310 of the California Civil Code or any other law.  Notwithstanding any of the foregoing, so long as the sublease in question encompasses less than 50% of the Property, Tenant may sublet any portion of, or all of, the Premises to another charter school or other educational user without Landlord's permission, but shall notify Landlord of any such sublease prior to executing any such sublease.  Subject to and contingent upon obtaining Landlord's written consent as set forth herein, which shall not be unreasonably withheld and subject to and contingent upon Tenant remaining a primary obligor under the Lease, Landlord agrees that Tenant may assign its interest in this Lease to an entity (limited liability company, corporation, etc.) that is owned or controlled by majority by Tenant.  No less than thirty (30) days prior to such an assignment, Tenant shall deliver to Landlord a commercially reasonable guarantee of such assignee's performance under the Lease.

(b) Recapture Option.  At any time during the thirty (30) day period following Landlord's receipt of Tenant's Notice of Intent to Transfer, Landlord may, at its sole discretion, give written notice to Tenant that Landlord elects

7

*I2  DS*
Tenant Initials

Landlord Initials

Exhibit 1
23

to terminate this Lease, said termination to be effective, as designated by Landlord in Landlord's termination notice, at any time as of the proposed Transfer Date through the sixtieth (60th ) day thereafter.

(c) No Release of Tenant. Should Tenant make a Transfer as permitted in this Section, Tenant shall nevertheless remain primarily liable to Landlord for full payment of the Rent and other charges and full performance of Tenant's other obligations under this Lease. No consent by Landlord to any modification or amendment of this Lease, or extension, waiver or modification of payment or performance of any obligation under this Lease, shall affect the continuing liability of Tenant for its obligations and liabilities hereunder, and Tenant waives any defense arising out of or based thereon. With respect to any Transfer permitted in this Section, such Transfer shall not be valid or effective unless and until Tenant delivers to Landlord a copy of a written agreement in form and substance satisfactory to Landlord pursuant to which, in the case of an assignment, the assignee assumes all of the obligations and liabilities of the Tenant under this Lease and, in the case of any other Transfer, the transferee agrees that such Transfer shall be subject to all of the covenants, terms and conditions of this Lease.

## 17. Mortgage of Leasehold

Subject to the conditions set forth in Section 18, below, Tenant shall not have the right to encumber the leasehold estate created by this Lease by a mortgage, deed of trust or other security instrument, including, without limitation, an assignment of the rents, issues and profits from the Premises, (the "Leasehold Mortgage") to secure repayment of any loan to Tenant, and associated obligations, from any lender (a "Lender").

## 18. Internal and Audited Financial Statement:

**Tenant to submit to Landlord, within 90 days from their fiscal closing year, Annual Audited Financial Statement, throughout the term of this lease. Furthermore, Landlord may require twice a year, interim financial statements duly certified by the Chief Financial Officer.**

## 19. Fire and Extended Coverage and Liability Insurance

(a) Tenant shall, at its sole expense, obtain and keep in force during the Term general liability insurance with limits of not less than Three Million Dollars ($3,000,000) per occurrence for bodily injury, personal and advertising injury and property damage. . Tenant shall also maintain Automobile Liability coverage for non-owned automobiles for bodily injury and property damage with limits of not less than $1,000,000 per accident. All of such insurance shall insure the performance by Tenant of the indemnity agreement as to liability for injury to or death of persons and damage to property set forth in this Section. All of such insurance shall be noncontributing with any insurance which may be carried by Landlord and shall contain a provision that Landlord, although named as an insured, shall nevertheless be entitled to recover under the policy for any loss, injury or damage to Landlord, its agents and employees, or the property of such persons.

(b) Tenant agrees that each such policy of Workers' Compensation and Property coverages, whether required by the provisions of this Lease or not, shall be made expressly subject to the provisions of Section 19(b) and all Tenant's insurers hereunder shall waive any right of subrogation against Landlord to the extent such insurers permit.

8

Tenant Initials

Landlord Initials

Exhibit 1
24

(c) All insurance provided for in this Section 19, and all renewals thereof, shall be issued by companies rated at least A-15 by Best's the Insurance Reports (Property Liability) or approved by Landlord, except for the boiler insurance specified in subsection (c) above, shall not be cancelled or altered without Tenant providing thirty days' prior written notice to Landlord and Lender.  Upon the issuance thereof, each insurance policy or a duplicate or certificate thereof shall be delivered to Landlord and Lender. Nothing herein shall be construed to limit the right of Lender to cause Tenant to carry or procure other insurance covering the same or other risks in addition to the insurance specified in this Lease.  On or before the Commencement Date, Tenant shall provide Landlord with insurance certificates naming Landlord as an additional insured as required in this Section 19.

(g) All amounts that shall be received under any insurance policy specified in subsection (a) above shall be first applied to the payment of the cost of repair, reconstruction or replacement of any buildings or improvements, or furniture, fixtures, equipment and machinery, that is damaged or destroyed.  Any amount remaining from the proceeds of any such insurance funds, after the repairing, reconstructing and replacing of any buildings or improvements, or furniture, fixtures, equipment and machinery, as herein required, shall be immediately paid to and be the sole property of Tenant; provided that, if any governmental law or regulation governing land use prohibits the restoration or reconstruction of the buildings or improvements damaged or destroyed to their pre-casualty state, any excess insurance proceeds for any insurance policy specified in subsection (a) over restoration or reconstruction costs that are the consequence of such prohibition shall be paid to the Landlord and/or its lender. If said insurance proceeds shall be insufficient in amount to cover the cost of repairing, reconstructing or replacing any or furniture, fixtures, equipment and machinery, as herein required, Tenant shall promptly pay any deficiency.

## 20. Mechanics' and Other Liens

Tenant shall promptly discharge or remove by bond or otherwise prior to foreclosure thereof, any and all mechanics', materialmen's and other liens for work or labor done, services performed, materials, appliances, teams or power contributed, used or furnished to be used in or about the Premises for or in connection with any operations of Tenant, any alterations, improvements, repairs or additions which Tenant may make or permit or cause to be made, or any work or construction by, for or permitted by Tenant on or about the Premises, and to save and hold Landlord and all of the Premises and all buildings and improvements thereon free and harmless of and from any and all such liens and claims of liens and suits or other proceedings pertaining thereto. Tenant covenants and agrees to give Landlord written notice not less than twenty (20) days in advance of the commencement of any construction, alteration, addition, improvement or repair costing in excess of Fifteen Thousand Dollars ($15,000) in order that Landlord may post appropriate notices of Landlord's non responsibility.

## 21. Indemnity

(a) Tenant shall have the right to contest the amount or validity of any lien of the nature set forth in Section 20 hereof or the amount or validity of any tax, assessment, charge, or other item to be paid by Tenant hereunder by giving Landlord written notice of Tenant's intention to do so within twenty (20) days after the recording of such lien or at least ten (10) days prior to the delinquency of such tax, assessment, charge, or other item, as the case may be. In any such case, Tenant shall not be in default hereunder, and Landlord shall not satisfy and discharge such lien nor pay such tax, assessment, charge or other item, as the case may be, until ten (10) days after the final determination of the amount or validity thereof, within which time Tenant shall satisfy and discharge such lien or pay such tax, assessment, charge or other item to the extent held valid and all penalties, interest, and costs in connection therewith; provided, however, that the satisfaction and discharge of any such lien shall not, in any case, be delayed until execution is had upon any judgment rendered thereon, nor shall the payment of any such tax, assessment, charge or other item, together with penalties interest, and costs, in any case be delayed until sale

9

Tenant Initials

Landlord Initials

Exhibit 1
25

is made or threatened to be made of the whole or any part of the Premises on account thereof, and any such delay shall be a default of Tenant hereunder. In the event of any such contest, Tenant shall protect and indemnify Landlord against all loss, cost, expense, and damage resulting therefrom, and upon notice from Landlord so to do, shall furnish Landlord a corporate surety bond payable to Landlord, in one hundred and twenty percent (120%) of the amount of the lien, tax, assessment, charge, or item contested, as the case may be, conditioned upon the satisfaction and discharge of such lien or the payment of such tax, assessment, charge, or other item, and all penalties, interest, and costs in connection therewith.

(b) To the fullest extent allowed by law, Tenant covenants and agrees that Landlord shall not at any time or to any extent whatsoever be liable, responsible or in anywise accountable for any loss, injury, death, or damage to persons or property which, at any time may be suffered or sustained by Tenant or by any person who may at any time be using, occupying, or visiting the Premises or be in, on or about the Premises, from any cause whatsoever, except when whether such loss, injury, death, or damage shall be caused by or in anywise result from or arise out of the negligent or intentional acts or omissions of Landlord, or Landlord's agents, employees, and invitees. Furthermore, Tenant shall forever indemnify, defend, hold, and save Landlord free and harmless of, from and against any and all claims, liability, loss, or damage whatsoever on account of any such loss, injury, death or damage occasioned by any cause other than Landlord's, or Landlord's agents, employees, and invitees, intentional or negligent acts or omissions. Tenant hereby waives all claims against Landlord for damages to the buildings and improvements now or hereafter located on the Property and to the property of Tenant in, upon or about the Premises, and for injuries to persons or property in, on or about the Premises, from any cause arising at any time, except for any such claims arising from negligent or intentional acts or omissions committed by Landlord or Landlord's agents, employees, and invitees. Tenant's indemnity obligation set forth in this Section shall survive the termination or expiration of this Lease with respect to any claims or liabilities arising out of injury or damage to person or property which occurs during the Term.

## 22. Eminent Domain

(a) Taking.  If any portion of the Premises shall be taken under any right of eminent domain, or any transfer in lieu thereof and such taking renders the Premises unsuitable, in the reasonable judgment of Landlord, for Tenant's business operations, then Tenant or Landlord may terminate this Lease by giving written notice to the other within twenty (20) days after such taking.  If this Lease is not so terminated, Landlord shall repair and restore the Building and/or the Common Area, as the case may be, as practicable (but shall not be required to expend more than the amount of the award received by Landlord for such purpose) and this Lease shall continue in full force and effect, but commencing with the date on which Tenant is deprived of the use of any portion of the Premises, the Rent shall be proportionately abated to the extent to which Tenant's use of the Premises is impaired, as reasonably determined by Landlord.

(b) Award.  Any and all awards payable by the condemning authority or other governmental agency in connection with a taking under the right of eminent domain shall be the sole property of Landlord.  Tenant hereby waives the provisions of any law allowing Tenant to terminate this Lease in the event of a condemnation of the Premises.

## 23. Landlord's Right of Inspection

Landlord may, at any reasonable time and from time to time during the Term, enter upon the Property for the purpose of inspecting the buildings or improvements now or hereafter located thereon and for such other purposes as may be necessary or proper for the reasonable protection of its interests.

## 24. Tenant's Defaults and Landlord's Remedies

10

_I2  DS_
Tenant Initials

Landlord Initials

Exhibit 1
26

It shall be an event of default hereunder (each an "Event of Default") if (i) default shall be made by Tenant in the punctual payment of any rent or other moneys due hereunder and shall continue for a period of ten (10) days after written notice thereof by Landlord to Tenant; (ii) default shall be made by Tenant in the performance or observance of any of the other agreements, covenants or conditions of this Lease on the part of Tenant to be performed and observed and such default shall continue for a period of thirty (30) days after written notice thereof by Landlord to Tenant, or, in the case of a default which cannot be cured by the payment of money and cannot be cured within thirty (30) days, shall continue for an unreasonable period after such written notice; (iii) Tenant shall abandon the Premises, except that Tenant's vacations, holidays and scheduled closures shall not be considered abandonment; (iv) Tenant shall admit in writing its inability to pay its debts generally as they become due, file a petition in bankruptcy, insolvency, reorganization, readjustment of debt, dissolution or liquidation under any law or statute of the federal government or any state government or any subdivision of either now or hereafter in effect, make an assignment for the benefit of its creditors, consent to, or acquiesce in the appointment of a receiver of itself or of the whole or any substantial part of the Premises; (v) a court of competent jurisdiction shall enter an order, judgment or decree appointing a receiver of Tenant or of the whole or any substantial part of the Premises, and such order, judgment or decree shall not be vacated, set aside or stayed within sixty (60) days from the date of entry of such order, judgment or decree, or a stay thereof be thereafter set aside; (vi) a court of competent jurisdiction shall enter an order, judgment or decree approving a petition filed against Tenant under any bankruptcy, insolvency, reorganization, readjustment of debt, dissolution or liquidation law or statute of the Federal government or any state government or any subdivision of either now or hereafter in effect, and such order judgment or decree shall not be vacated, set aside or stayed within sixty (60) days from the date of entry of such order, judgment or decree, or a stay thereof be thereafter set aside; or (vii) under the provisions of any other law for the relief or aid of debtors, a court of competent jurisdiction shall assume custody or control of Tenant or of the whole or any substantial part of the Premises, and such custody or control shall not be terminated within sixty (60) days from the date of assumption of such custody or control. Upon the occurrence of any Event of Default by Tenant hereunder, Landlord shall have one of the following rights and remedies, in addition to all other rights and remedies of Landlord provided hereunder or by law:

(a) The right to terminate this Lease, in which event Tenant shall immediately surrender possession of the Premises, and pay to Landlord all rent and all other amounts payable by Tenant hereunder to the date of such termination;

(b) The remedies described in California Civil Code Section 1951.2, including, without limitation, the right to recover the worth at the time of award of the amount by which the unpaid rent for the balance of the Term after the time of award exceeds the amount of such rental loss for the same period that Tenant proves could be reasonably avoided, as computed pursuant to subdivision (b) of section 1951.2 of the California Civil Code;

(c) The remedies described in California Civil Code section 1951.4, including, without limitation, the right to collect, by suit or otherwise, each installment of rent or other sums that become due hereunder, or to enforce, by suit or otherwise, performance or observance of any agreement, covenant or condition hereof on the part of Tenant to be performed or observed; or

(d) The right to cause a receiver to be appointed in any action against Tenant to take possession of the Premises or to collect the rents or profits therefrom. Neither appointment of such receiver nor any other action taken by Landlord shall constitute an election on the part of Landlord to terminate this Lease unless written notice of termination is given to Tenant.

11

*J2. DS*
Tenant Initials

Landlord Initials

Exhibit 1
27

(e) Good Guy Clause: The undersigned Officers, representing the Tenant, hereby covenant and agree that if there shall occur any default by Tenant in the payment of    fixed rent or additional rent or any other charges set forth in the Lease, or if Tenant shall default in the performance of any of the covenants, terms, conditions and agreements contained in the Lease, and in the event that the Landlord pursuing an eviction against Tenant or terminates the lease under valid ground,   then the undersigned Officers, as Guarantors of this Lease, shall in each and every instance up to and including the Release Date (as defined below) (i) faithfully perform and fulfill all of such covenants, terms, conditions and agreements to be performed by Tenant as set forth in the Lease, and (ii) should cause Tenant to release or vacating the premises upon Termination or expiration of the lease (iii) or pay to Landlord all consequential damages that may be incurred by Landlord, after the termination or expiration date, and as the result of any default by Tenant under the Lease including without limitation all attorneys' fees and disbursements incurred by Landlord as a result of any such default and/or the enforcement of any of the provisions of the Good Guy Clause. The "Release Date" shall mean the date upon which Tenant returns to the Landlord the keys to the Premises and surrenders possession of the Premises in the condition required by the Lease as of the expiration or termination thereof free of all tenancies or rights or claims of occupancy by Tenant or any party claiming through Tenant. All notices or other communication under this clause, must be in writing and will be deemed given on the date it is mailed by registered or certified mail.

## 25. Non waiver

If any action or proceeding is instituted or if any other steps are taken by Landlord or Tenant, and a compromise part payment or settlement thereof shall be made, either before or after judgment, the same shall not constitute or operate as a waiver by Landlord or Tenant of any agreement, covenant or condition of this Lease or of any subsequent breach thereof. No waiver of any default under this Lease shall constitute or operate as a waiver of any subsequent default hereunder, and no delay, failure or omission in exercising or enforcing any right, privilege, or option under this Lease shall constitute a waiver, abandonment or relinquishment thereof or prohibit or prevent any election under or enforcement or exercise of any right, privilege, or option hereunder. No waiver of any provision hereof by Landlord or Tenant shall be deemed to have been made unless and until such waiver shall have been reduced to writing and signed by Landlord or Tenant, as the case may be. The receipt by Landlord of rent with knowledge of any default under this Lease shall not constitute or operate as a waiver of such default. Payment by Tenant or receipt by Landlord of a lesser amount than the stipulated rent or other sums due Landlord shall operate only as a payment on account of such rent or other sums. No endorsement or statement on any check or other remittance or in any communication accompanying or relating to such payment shall operate as a compromise or accord and satisfaction unless the same is approved in writing by Landlord, and Landlord may accept such check, remittance or payment without prejudice to its right to recover the balance of any rent or other sums due by Tenant and pursue any remedy provided under this Lease or by law.

## 26. No Merger

(a) There shall be no merger of the leasehold estate created by this Lease with any other estate in the Premises, including the fee estate, by reason of the fact that the same person may own or hold the leasehold estate created by this Lease, or an interest in such leasehold estate, and such other estate in the Premises, including the fee estate, or any interest in such other estate; and no merger shall occur unless and until Landlord, Tenant and any Lender shall join in a written instrument effecting such merger and shall duly record the same.

12

*IZ DS*
Tenant Initials

Landlord Initials

Exhibit 1
28

(b) No termination of this Lease shall cause a merger of the estates of Landlord and Tenant, unless Landlord so elects and any such termination shall, at the option of Landlord, either work a termination of any sublease in effect or act as an assignment to Landlord of Tenant's interest in any such sublease. Notwithstanding the foregoing, in the event of the termination of this Lease and the execution of a new lease with Lender or its nominee pursuant to Section 18(i) above, the termination of this Lease shall neither work a merger of estates nor a termination of any subleases in effect unless Lender so elects.

## 27. No Partnership

It is expressly understood and agreed that Landlord does not, in any way or for any purpose by executing this Lease, become a partner of Tenant in the conduct of Tenant's business, or otherwise, or a joint venturer or a member of a joint enterprise with Tenant.

## 28. Notices

Any and all notices, approvals or demands required or permitted under this Lease shall be in writing, shall be served either personally, by United States certified mail, postage prepaid, return receipt requested or by reputable overnight carrier, by email and, shall be deemed to have been given or made on the day on which it was received and shall be addressed to the parties at the addresses set forth below. Any party may, from time to time, by like notice, give notice of any change of address, and in such event, the address of such party shall be deemed to have been changed accordingly.

Notices or communications shall be addressed to Landlord at:

MDB International Branding, LLC
2711 Beverly Blvd.
Los Angeles, CA 90057
Attn: Daniel Bohbot


Notices or communications shall be addressed to Tenant at:

Youth Policy Institute, Inc ( YPI)
Attn: Iris Zuniga, Percy Duran, Sandra Lee and Dixon Slingerland
6464 Sunset Blvd, Suite 650
Los Angeles, CA 90028

## 29. Limitation of Landlord's Liability/Breach by Landlord

(a) In the event of any transfer of Landlord's interest in this Lease, the Landlord herein named (and in case of any subsequent transfer, the then transferor) shall be automatically freed and relieved from and after the date of such transfer of all personal liability for the performance of any covenants or obligations on the part of Landlord contained in this Lease thereafter to be performed; provided, however, that any funds in the hands of Landlord or the then transferor at the time of such transfer, including the Security Deposit, in which Tenant has an interest shall be turned over to the transferee and any amount then due and payable to Tenant by Landlord or the then transferor under any provision of this Lease shall be paid to Tenant; and provided, further, that upon any such transfer, the transferee shall expressly assume, subject to the limitations of this Section 29, all of the agreements,


Tenant Initials

13

Landlord Initials

Exhibit 1
29

covenants and conditions in this Lease to be performed on the part of Landlord, it being intended hereby that the covenants and obligations contained in this Lease on the part of Landlord shall, subject as aforesaid, be binding on each Landlord, its successors and assigns, only during its period of ownership.

(b) Landlord shall not be deemed in breach of this Lease unless Landlord fails within a reasonable time to perform an obligation required to be performed by Landlord. For purposes of this Paragraph, a reasonable time shall in no event be less than 30 days after receipt by Landlord, and any Lender whose name and address shall have been furnished to Tenant in writing for such purpose, of written notice specifying wherein such obligation of Landlord has not been performed; provided, however, that if the nature of Landlord's obligation is such that more than 30 days are reasonably required for its performance, then Landlord shall not be in breach if performance is commenced within such 30 day period and thereafter diligently pursued to completion.

## 30. Estoppel Certificates

Tenant or Landlord, as the case may be, will execute, acknowledge and deliver to the other and/or to Lender, promptly upon request, its certificate certifying (a) that this Lease is unmodified and in full force and effect (or, if there have been modifications, that this Lease is in full force and effect, as modified, and stating the modifications), (b) the dates, if any, to which the Minimum Rent, , and other monetary obligations have been paid, (c) whether there are then existing any charges, offsets or defenses against the enforcement by Landlord of any agreement, covenant or condition hereof on the part of Tenant to be performed or observed (and, if so, specifying the same), and (d) whether there are then existing any defaults by Tenant in the performance or observance by Tenant of any agreement, covenant or condition hereof on the part of Tenant to be performed or observed and whether any notice has been given to Tenant of any default which has not been cured (and, if so, specifying the same). Any such certificate may be relied upon by a prospective purchaser, mortgagee or trustee under a deed of trust of the Premises or any part thereof.

## 31. Holding Over

This Lease shall terminate without further notice upon the expiration of the Term, and any holding over by Tenant after the expiration of the Term shall not constitute a renewal hereof or give Tenant any rights hereunder or in or to the Premises, except as otherwise herein provided, it being understood and agreed that this Lease cannot be renewed, extended or in any manner modified except in writing signed by Landlord and Tenant. In the event that Tenant holds over, the Base Rent shall be increased to 150% % of the Base Rent applicable immediately preceding the expiration or termination. Holdover Base Rent shall be calculated on monthly basis. Nothing contained herein shall be construed as consent by Landlord to any holding over by Tenant.

## 32. Brokerage

Landlord shall pay to Brokers, UrbanLime and Power 2000 Realty, the fee agreed to, in a separate written agreement. Neither Tenant nor Landlord has utilized the services of, or for any other reason owes compensation to, a licensed real estate broker (individual or corporate) agent, finder, or other entity, other than as named in this agreement, in connection with any act relating to the Premises, including but not limited to, inquiries, introductions, consultations, and negotiations leading to this agreement. Tenant and Landlord each agree to indemnify, defend and hold harmless, the other, and the Brokers specified herein, and their agents, from and against any costs, expenses, or liability for compensation claimed inconsistent with the warranty and representation in this paragraph 33.

## 33. Mediation/Arbitration

14

_I2 D_
Tenant Initials

Landlord Initials

Exhibit 1
30

Any controversy or claim arising out of or relating to this Lease or the breach thereof shall first be submitted to mediation with a retired judge. If either party fails engage in mediation, that party shall lose his right to collect attorney's fees and costs as the prevailing party in any subsequent arbitration or litigation.

If Mediation does not resolve the dispute, whenever, under any provision of this Lease, arbitration is required, then the matter shall be determined by arbitration under the rules of JAMS, in Los Angeles, with a retired judge or justice, the arbitrator to be neutral, as follows:

(a) Landlord and Tenant shall agree on one neutral arbitrator from the panel presented by JAMS within twenty (20) days of notice of one party to another of the need to commence arbitration. If the Parties cannot agree upon an arbitrator, JAMS shall choose an arbitrator for the parties. In the event of the failure of either party or of the arbitrators to select an arbitrator or to proceed with the arbitration, the matter shall be submitted to the Superior Court, in accordance with California law, for appointment of an arbitrator.

(b) To be qualified as an arbitrator hereunder, a person must have been a Superior Court Judge or Appellate Justice with a minimum of five (5) years' experience in any one of the following lines of work: accounting, with experience in commercial real estate work, real estate broker, specializing or at least dealing substantially in commercial properties in the City of Los Angeles; real estate development, with substantial experience in commercial properties in the Bay Area; or law with substantial experience and expertise in real estate law.

(c) The arbitrator shall be governed by the provisions of this Lease. In the event of any ambiguity in such provisions or in the event such provisions are silent on a particular issue, the arbitrators shall apply generally accepted accounting principles regularly applied in similar commercial real estate operations.

(d) Arbitration fees payable to JAMS and to the arbitrators shall be paid one-half by Landlord and one-half by Tenant.**34. Acknowledgment/AS-IS**

(a) Acknowledgements: Tenant acknowledges that: (a) it has been advised by Landlord and/or Brokers to satisfy itself with respect to the condition of the Premises (including but not limited to the electrical, HVAC and fire sprinkler systems, security, environmental aspects, and compliance with Applicable Requirements and the Americans with Disabilities Act), and their suitability for Tenant's intended use, (b) Tenant has made such investigation as it deems necessary with reference to such matters and assumes all responsibility therefore as the same relate to its occupancy of the Premises and (c) neither Landlord, Landlord's agents, nor Brokers have made any oral or written representations or warranties with respect to said matters other than as set forth in this Lease. In addition, Landlord acknowledges that: (i) Brokers have made no representations, promises or warranties concerning Tenant's ability to honor the Lease or suitability to occupy the Premises, and (iii) it is Landlord's sale responsibility to investigate the financial capability *and/or* suitability of all proposed tenants.

(b) AS-IS: Tenant acknowledges that except for the matters contained herein, Landlord has made no representations or warranties, express or implied, regarding the Property or matters affecting the Property, whether made by the Landlord, on the Landlord's behalf or otherwise, including, without limitation, the physical condition of the Property, title to or the boundaries of the Property, pest control matters, soil conditions, the presence, existence or absence of hazardous wastes, toxic substances or other environmental matters, compliance with building, health, safety, land use and zoning laws, regulations and orders, structural and other engineering characteristics (including seismic damage), traffic patterns, market data, economic conditions or projections, and any other information pertaining to the Property or the market and physical environments in which they are located. All documents delivered by Landlord are delivered without representation or warranty

15

_I 2 v_
Tenant Initials

Landlord Initials

Exhibit 1
31

any kind, including representations or warranties as to their accuracy or completeness.  The Tenant acknowledges (i) Tenant is a sophisticated real estate investor with sufficient experience and expertise to evaluate the Property, the Leases and the operations conducted on the Property and the risks associated with acquiring the Property upon the terms and conditions set forth herein, (ii) that Tenant has received sufficient information and has had adequate time to make such an evaluation, (iii) that Tenant has entered into this Agreement with the intention of making and relying upon its own investigation or that of third parties with respect to the physical, environmental, economic and legal condition of the Property, (iv) that in connection with its investigations and inspections of the Property it has contracted or may contract with certain advisors and consultants, including but not limited to environmental consultants, engineers and geologists, soils and seismic experts, to conduct such environmental, geological, soil, hydrology, seismic, physical, structural, mechanical and other inspections of the Property as Tenant deems to be necessary, and that Tenant has reviewed or will review thoroughly all such reports as well as all materials and other information given or made available to Tenant by Landlord, and (v) that the Tenant is not relying upon any statements, representations or warranties of any kind, other than those specifically set forth in or required pursuant to this Agreement.  The Tenant further acknowledges that it has not received from or on behalf of the Landlord any accounting, tax, legal, architectural, engineering, property management or other advice with respect to this transaction and is relying solely upon the advice of third party accounting, tax, legal, architectural, engineering, property management and other advisors.

## 35. Late Charge and Default Interest.

Tenant acknowledges that Tenant's failure to pay any installment of Minimum Rent, Percentage Rent, or any other amounts due under this Lease as and when due may cause Landlord to incur costs not contemplated by Landlord when entering into this Lease, the exact nature and amount of which would be extremely difficult and impracticable to ascertain.  Accordingly, if any installment of Minimum Rent, Percentage Rent, or any other amount due under the Lease is not received by Landlord as and when due, then, without any notice to Tenant, Tenant shall pay to Landlord an amount equal to 7% of the past due amount, which the parties agree represents a fair and reasonable estimate of the costs incurred by Landlord as a result of the late payment by Tenant. In addition, all past due amounts over 30 days of age, shall be subject to interest at 1% per month.

## 36. Severability

In case any one or more of the provisions contained in this Lease shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provisions of this Lease, but this Lease shall be construed as if such invalid, illegal, or unenforceable provisions had not been contained herein.

## 37. Time of the Essence

Time is of the essence of each and all of the agreements, covenants, and conditions of this Lease.

## 38. Consents

Whenever in this Lease the consent or approval of either Landlord or Tenant is required or permitted, the party requested to give such consent or approval will act promptly and will not unreasonably withhold its consent or approval.

## 39. Attorney Fees

16

_I 2 ʊ_
Tenant Initials

Landlord Initials

Exhibit 1
32

In the event of any action or proceeding at law or in equity between Landlord and Tenant to enforce any provision of this Lease or to protect or establish any right or remedy of either party hereunder, the unsuccessful party to such litigation shall pay to the prevailing party all costs and expenses, including reasonable attorney's fees, incurred therein by such prevailing party, and if such prevailing party shall recover judgment in any such action or proceeding, such costs, expenses and attorney's fees shall be included in and as a part of such judgment.

**40. Integration**

This instrument constitutes the entire agreement between Landlord and Tenant with respect to the subject matter hereof and supersedes all prior offers and negotiations, oral or written.  This Lease may not be amended or modified in any respect whatsoever except by an instrument in writing signed by Landlord, Tenant.

*I2  05*

Tenant Initials

17

Landlord Initials

Exhibit 1
33

### 41. Rent

All monetary obligations of Tenant to Landlord under the Lease, including but not limited to the Minimum Rent and Percentage Rent, shall be deemed rent.

### 42. Amendments

This Lease may be modified only in writing and only if signed by both parties at the time of the modification.

### 43. Governing Law

This Lease shall be governed by and construed in accordance with the laws of the State of California.

### 44. Americans with Disabilities Act

Since compliance with the Americans with Disabilities Act (ADA) is dependent upon Tenant's specific use of the Premises. Landlord makes no warranty or representation as to whether or not the Premises comply with ADA or any similar legislation. In the event that Tenant's use of the Premises requires modifications or additions to the Premises in order to be in ADA compliance, Tenant agrees to make any such necessary modifications and/or additions at Tenant's expense.

Tenant is hereby advised that the Premises have not undergone an inspection by a Certified Access Specialist ("CASp"). Further, in accordance with California Civil Code Section 1938(e), Tenant is advised as follows:

"A Certified Access Specialist (CASp) can inspect the subject premises and determine whether the subject premises comply with all of the applicable construction-related accessibility standards under state law. Although state law does not require a CASp inspection of the subject premises, the commercial property owner or Landlord may not prohibit the Tenant or tenant from obtaining a CASp inspection of the subject premises for the occupancy or potential occupancy of the Tenant or tenant, if requested by the Tenant or tenant. The parties shall mutually agree on the arrangements for the time and manner of the CASp inspection; Tenant shall pay the fee for the CASp inspection and the cost of making any repairs necessary to correct violations of construction-related accessibility standards within the premises."

### 45. Subordination

This Lease and any Option granted hereby shall be subject and subordinate to any ground lease, mortgage, deed of trust, or other hypothecation or security device (collectively, "Security Device"), now or hereafter placed upon the Premises, to any and all advances made on the security thereof, and to all renewals, modifications, and extensions thereof. Tenant agrees that the holders of any such Security Devices (in this Lease together referred to as "Lender") shall have no liability or obligation to perform any of the obligations of Landlord under this Lease. Any Lender may elect to have this Lease and/or any Option granted hereby superior to the lien of its Security Device by giving written notice thereof to Tenant, whereupon this Lease and such Options shall be deemed prior to such Security Device, notwithstanding the relative dates of the documentation or recordation thereof.

18

_IZ_ DS
Tenant Initials

Landlord Initials

Exhibit 1
34

**46. Hazardous Substance**

(a) Reportable Uses Require Consent.  The term "Hazardous Substance" as used in this Lease shall mean any product, substance, or waste whose presence, use, manufacture, disposal, transportation, or release, either by itself or in combination with other materials expected to be on the Premises, is either: (i) potentially injurious to the public health, safety or welfare, the environment or the Premises, (ii) regulated or monitored by any governmental authority, or (iii) a basis for potential liability of Landlord to any governmental agency or third party under any applicable statute or common law theory. Hazardous Substances shall include, but not be limited to, hydrocarbons, petroleum, gasoline, and/or crude oil or any products, by-products or fractions thereof. Tenant shall not engage in any activity in or on the Premises which constitutes a Reportable Use of Hazardous Substances without the express prior written consent of Landlord and timely compliance (at Tenant's expense) with all Applicable Requirements. "Reportable Use" shall mean (i) the installation or use of any above or below ground storage tank, (ii) the generation, possession, storage, use, transportation, or disposal of a Hazardous Substance that requires a permit from, or with respect to which a report, notice, registration or business plan is required to be filed with, any governmental authority, and/or (iii) the presence at the Premises of a Hazardous Substance with respect to which any Applicable Requirements requires that a notice be given to persons entering or occupying the Premises or neighboring properties.

Notwithstanding the foregoing, Tenant may use any ordinary and customary materials reasonably required to be used in the normal course of the Agreed Use, ordinary office supplies (copier toner, liquid paper, glue, etc.) and common household cleaning materials, so long as such use is in compliance with all Applicable Requirements, is not a Reportable Use, and does not expose the Premises or neighboring property to any meaningful risk of contamination or damage or expose Landlord to any liability therefore. In addition, Landlord may condition its consent to any Reportable Use upon receiving such additional assurances as Landlord reasonably deems necessary to protect itself, the public, the Premises and/or the environment against damage, contamination, injury and/or liability, including, but not limited to, the installation (and removal on or before Lease expiration or termination) of protective modifications (such as concrete encasements) and/or increasing the Security Deposit.

(b) Duty to Inform Landlord. If Tenant knows, or has reasonable cause to believe, that a Hazardous Substance has come to be located in, on, under or about the Premises, other than as previously consented to by Landlord, Tenant shall immediately give written notice of such fact to Landlord, and provide Landlord with a copy of any report, notice, claim or other documentation which it has concerning the presence of such Hazardous Substance.

(c) Tenant Remediation. Tenant shall not cause or permit any Hazardous Substance to be spilled or released in, on, under, or about the Premises (including through the plumbing or sanitary sewer system) and shall promptly, at Tenant's expense, comply with all Applicable Requirements and take all investigatory and/or remedial action reasonably recommended, whether or not formally ordered or required, for the cleanup of any contamination of, and for the maintenance, security and/or monitoring of the Premises or neighboring properties, that was caused or materially contributed to by Tenant, or pertaining to or involving any Hazardous Substance brought onto the Premises during the term of this Lease, by or for Tenant, or any third party.

(d) Tenant Indemnification. Tenant shall indemnify, defend and hold Landlord, its agents, employees,  and lenders, if any, harmless from and against any and all loss of rents and/or damages, liabilities, judgments, claims, expenses, penalties, and attorneys' and consultants' fees arising out of or involving any Hazardous Substance brought onto the Premises by or for Tenant, or any third party (provided, however, that Tenant shall have no liability under this Lease with respect to underground migration of any Hazardous Substance under the Premises from areas outside of the Project not caused or contributed to by Tenant). Tenant's obligations shall include, but not be limited to, the effects of any contamination or injury to person, property or the environment created or

19

Tenant Initials  _I 2  DS_

Landlord Initials

Exhibit 1
35

suffered by Tenant, and the cost of investigation, removal, remediation, restoration and/or abatement, and shall survive the expiration or termination of this Lease. No termination, cancellation or release agreement entered into by Landlord and Tenant shall release Tenant from its obligations under this Lease with respect to Hazardous Substances, unless specifically so agreed by Landlord in writing at the time of such agreement.

(e) Landlord Indemnification. Except as otherwise provided herein, Landlord and its successors and assigns shall indemnify, defend, reimburse and hold Tenant, its employees and lenders, harmless from and against any and all environmental damages, including the cost of remediation, which suffered as a direct result of Hazardous Substances on the Premises prior to Tenant taking possession or which are caused by the gross negligence or willful misconduct of Landlord, its agents or employees. Landlord's obligations, as and when required by the Applicable Requirements, shall include, but not be limited to, the cost of investigation, removal, remediation, restoration and/or abatement, and shall survive the expiration or termination of this Lease.

(f) Investigations and Remediation. Landlord shall retain the responsibility and pay for any investigations or remediation measures required by governmental entities having jurisdiction with respect to the existence of Hazardous Substances on the Premises prior to Tenant taking possession, unless such remediation measure is required as a result of Tenant's use (including any alterations of the Premises, in which event Tenant shall be responsible for such payment. Tenant shall cooperate fully in any such activities at the request of Landlord, including allowing Landlord and Landlord's agents to have reasonable access to the Premises at reasonable times in order to carry out Landlord's investigative and remedial responsibilities.

(g) Landlord Termination Option. If a Hazardous Substance Condition (see Paragraph 9.1(e)) occurs during the term of this Lease, unless Tenant is legally responsible therefore (in which case Tenant shall make the investigation and remediation thereof required by the Applicable Requirements and this Lease shall continue in full force and effect, but subject to Landlord's rights under this Section), Landlord may, at Landlord's option, either (i) investigate and remediate such Hazardous Substance Condition, if required, as soon as reasonably possible at Landlord's expense, in which event this Lease shall continue in full force and effect, or (ii) if the estimated cost to remediate such condition exceeds 12 times the then monthly Base Rent or $100,000, whichever is greater, give written notice to Tenant, within 30 days after receipt by Landlord of knowledge of the occurrence of such Hazardous Substance Condition, of Landlord's desire to terminate this Lease as of the date 60 days following the date of such notice. In the event Landlord elects to give a termination notice, Tenant may, within 10 days thereafter, give written notice to Landlord of Tenant's commitment to pay the amount by which the cost of the remediation of such Hazardous Substance Condition exceeds an amount equal to 24 times the then monthly Base Rent or $100,000, whichever is greater. Tenant shall provide Landlord with said funds or satisfactory assurance thereof within 30 days following such commitment. In such event, this Lease shall continue in full force and effect, and Landlord shall proceed to make such remediation as soon as reasonably possible after the required funds are available. If Tenant does not give such notice and provide the required funds or assurance thereof within the time provided, this Lease shall terminate as of the date specified in Landlord's notice of termination.

**[SIGNATURES ON THE FOLLOWING PAGE]**

20

Tenant Initials

Landlord Initials

Exhibit 1
36

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first written above.

**LANDLORD:**

**MDB INTERNATIONAL BRANDING
A CALIFORNIA LIMITED LIABILITY COMPANY**

By: Daniel Bohbot
Its:_____

Date:_____

Email:_____

Phone:_____

**TENANT:**

Youth Policy Institute, Inc (YPI)
**a District of Columbia Non-Profit Corporation and
doing business in California under Foreign Stock.**

By:  Dixon Slingerland
Its: President and Chief Executive Officer

Date:_____

Email: _dslingerland@ypiusa.org_

Phone: _213. 688. 2802_

By: Iris Zuniga

**Its: Executive Vice President**

Date:_____

Email: _izuniga@ypiusa.org_

Phone _213.688. 2802_

21

_I2 DS_
Tenant Initials

Landlord Initials

Exhibit 1
37

## ADDENDUM TO LEASE

This first ADDENDUM TO LEASE (this "Addendum") is entered into as of July 11, 2017, by and between MDB International Branding, LLC, a California limited liability company (collectively, "Landlord"), and Youth Policy Institute, Inc., a District of Columbia Non-Profit Corporation ( Tenant) and doing business in California under Foreign Stock Tenant and each hereby agrees as follows:

### RECITALS

A.    WHEREAS, Landlord and Tenant have entered into a Standard Industrial/Commercial Single-Tenant Lease - Net dated, for reference purposes only, June 6, 2017 (the "Lease"), with respect to the Premises consisting of approximately 29,024 square feet of building area on approximately 30,391 square feet lot (APN: 5156-020-019) and having the address known as 2707-2711 Beverly Blvd., Los Angeles, CA 90057.

B.    WHEREAS, Landlord and Tenant are desirous of including additional terms to the Lease as set forth in this Addendum.

### AGREEMENT

NOW, THEREFORE, in consideration of the foregoing Recitals, the agreement of the parties as set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1.    RECITALS. The Parties hereby acknowledge the accuracy of the Recitals set forth above.

2.    EFFECTIVE DATE. This Addendum shall take effect upon the mutual execution hereof by both Landlord and Tenant (the "Effective Date").

3.    DEFINITIONS. Terms not otherwise defined in this Addendum shall have the same meaning as defined under the Lease.

4.    CONFIRMATION OF LEASE. Except for the provisions of this Addendum, all other terms, conditions, and covenants of the Lease are and shall continue to remain in full force and effect. If there arises any conflict between the terms of this Addendum and the Lease, the terms of the Addendum shall be controlling.

5.    ADDITIONAL TERMS. Additional terms to Lease are as follows (with all other terms to remain the same):

47.    TENANT IMPROVEMENTS. IN ADDITION TO PARAGRAPH 4 OF THE LEASE. BOTH TENANT AND LANDLORD AGREE TO MAKE ALL EFFORTS TO MAINTAIN TENANT IMPROVEMENT COSTS AT OR BELOW PRE-AGREED BUDGET AMOUNT OF EIGHTY THOUSAND DOLLARS ($80,000). IN KEEPING COSTS DOWN, TENANT SHALL HAVE RIGHT TO SELECT CONTRACTOR AND MANAGE/OVERSEE CONTRACTOR FOR CONSTRUCTION OF TENANT IMPROVEMENTS. TENANT SHALL REVIEW AND APPROVE ALL INVOICES AND PROVIDE LANDLORD WRITTEN CONSENT TO PAY SAID INVOICES. AFTER COMPLETION OF TENANT IMPROVEMENTS, LEASE SHALL BE AMENDED WITH FINAL COSTS. TENANT'S AMORTIZED REPAYMENT SCHEDULE SHALL REFLECT FINAL COSTS, NOT TO EXCEED THE ABOVE AGREED BUDGET.

(Page 1 of 2)
Addendum to Lease dated June 6 2017, between MDB International Branding, LLC ("Landlord"), and Youth Policy Institute, Inc. ("Tenant")

Exhibit 1
38

48.   TAXES.  IN ADDITION TO PARAGRAPH 9, ALL COSTS ASSOCIATED WITH PROPERTY TAX
EXEMPTION FILING (INITIAL AND APPEAL) SHALL BE BEARED BY LANDLORD ONLY AND
NOT TENANT.  LANDLORD SHALL PAY PROPERTY TAX SAVINGS DIRECTLY TO TENANT
IN FORM OF CHECK OR WIRE AND PROVIDE TENANT WITH PROPERTY TAX STATEMENT
FOR TENANT'S REVIEW.

49.   REPAIRS, GOVERNMENTAL REGULATIONS AND WASTE.  IN ADDITION TO PARAGRAPH
13(a) OF THE LEASE, LANDLORD SHALL PROVIDE THREE (3) MONTHS WARRANTY FOR
REPAIR(S) OF PLUMBING AND SEWER LINES AS WELL AS HVAC ("SYSTEMS").  TENANT
SHALL HAVE RIGHT TO INSPECT SYSTEMS AND PROVIDE LANDLORD WITH A REQUEST
TO REPAIR SYSTEMS WITHIN LANDLORD'S THREE (3) MONTHS WARRANTY PERIOD.

"Landlord":

MDB International Branding, LLC

By: _____        By: _____

Name Printed: **Daniel Bohbot**              Name Printed: _____

Title: _____        Title: _____

Date:    7 / 24 / 17                         Date: _____

"Tenant"

Youth Policy Institute, Inc a District of Columbia Non-Profit
Corporation ( Tenant) and doing business in  California
under Foreign Stock

By: _____        By: _____

Name Printed: **Iris Zuñiga**                Name Printed: **Dixon Slingerland**

Title: **Executive Vice President**          Title: **President and Chief Executive Officer**

Date:    7 . 19 . 17                         Date:    7 . 19 . 17

(Page 2 of 2)
Addendum to Lease dated June 6 2017, between MDB International Branding, LLC ("Landlord"), and Youth Policy
Institute, Inc. ("Tenant")

Exhibit 1
39

# EXHIBIT "2"



Exhibit 2
41



Exhibit 2
42



Exhibit 2
43



Exhibit 2
44



Exhibit 2
45



Exhibit 2
46



Exhibit 2
47



Exhibit 2
48



Exhibit 2
49



Exhibit 2
50

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
1900 Avenue of the Stars, 21st Fl. Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled (*specify*): **CHAPTER 7 TRUSTEE'S MOTION FOR ORDER APPROVING: (1) REJECTION OF UNEXPIRED LEASE RELATING TO THE BEVERLY FACILITY NUNC PRO TUNC TO THE PETITION DATE; AND (2) ABANDONMENT OF PERSONAL PROPERTY LOCATED AT THE BEVERLY FACILITYDECLARATIONS OF JASON M. RUND AND TONY SHOKRAI IN SUPPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) January 28, 2020, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2**. **SERVED BY UNITED STATES MAIL**:
On (*date*) January 28, 2020, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Debtor
Youth Policy Institute, Inc.
6464 Sunset Blvd., Ste. 650
Los Angeles, CA 90028

☒  Service information continued on attached page

**3**. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) January 28, 2020, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

Via Messenger
The Honorable Sheri Bluebond
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Ste. 1534
Los Angeles, CA 90012

Via Email
Assistant United States Attorney
Kimberly Jaimez- Kimberly.Jaimez@usdoj.gov
Counsel to the Arleta Landlord
Bob Bass-Bob.Bass47@icloud.com

Counsel for MDB
David Meadows-David@DavidWMeadowslaw.com

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| January 28, 2020 | Julie King | /s/ Julie King |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                        **F 9013-3.1.PROOF.SERVICE**

76214-00002/3712045.1

1.    **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- Keith Patrick Banner    kbanner@greenbergglusker.com,
  sharper@greenbergglusker.com;calendar@greenbergglusker.com
- Robert D Bass    bob.bass47@icloud.com
- Shawn M Christianson    cmcintire@buchalter.com, schristianson@buchalter.com
- Jeffrey A Krieger    jkrieger@ggfirm.com,
  kwoodson@greenbergglusker.com;calendar@greenbergglusker.com;jking@greenbergglusker.com
- David W. Meadows    david@davidwmeadowslaw.com
- Kevin Meek    kmeek@robinskaplan.com, kevinmeek32@gmail.com;kmeek@ecf.inforuptcy.com
- Christopher E Prince    cprince@lesnickprince.com, jmack@lesnickprince.com;cprince@ecf.courtdrive.com
- Jason M Rund (TR)    trustee@srlawyers.com, jrund@ecf.axosfs.com
- Matthew N Sirolly    msirolly@dir.ca.gov
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Genevieve G Weiner    gweiner@sidley.com, laefilingnotice@sidley.com;genevieve-weiner-0813@ecf.pacerpro.com

2. **SERVED BY UNITED STATES MAIL**:

Secured Creditors

Ford Motor Credit
260 Interstate N PKWY NW
Atlanta, GA 30339

Jules and
Associates
2 Great Valley
Parkway,
Suite 300
Malvern, PA 19355

Non-Profit Finance Fund
5 Hanover Square,
9th Floor
New York, NY 10004

Think Together
2101 E 4th St Ste. 200B
Santa Ana, CA 92705
Attn: Teresa A. McQueen,
General Counsel

Unsecured Creditors

American Express
World Financial Center
New York, NY 10285

Bright Star Schools
2636 South Mansfield Avenue
Los Angeles, CA 90016

C3 Business Solutions
3130 S. Harbor Blvd.
Suite 500
Santa Ana, CA 92704

California Department of
Education
21st 1430 N Street
Sacramento, CA 95814-5901

Department of Education (Los
Angeles Prom)
400 Maryland Avenue, SW
Washington, DC 20202

Employed Security Service Center
Inc.
959 E., Walnut Street
Suite 112
Pasadena, CA 91106

Fresh Start Meals Inc
1530 1st Street
San Fernando, CA 91340

Granada Hills Charter High School
10535 Zelzah Avenue
Granada Hills, CA 91344

JFK Transportation Company Inc.
980 W. 17th Street
Suite B
Santa Ana, CA 92706

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

76214-00002/3712045.1

**F 9013-3.1.PROOF.SERVICE**

Multicultural Learning Center
7510 Desoto Avenue
Canoga Park, CA 91303

NIU College
5959 Topanga Canyon Blvd.
Suite 110
Woodland Hills, CA 91367

Oracle America, Inc.
P.O. Box 44471
San Francisco, CA 94144

Orenda Education (Principal's
Exchange)
2101 E. Fourth Street
Suite 200B
Santa Ana, CA 92705

Roth Staffing Companies, L.P.
P.O. Box 60003
Anaheim, CA 92812

Sabio Enterprises, Inc.
400 Corporate Pointe, Suite 300
Culver City, CA 90230

Spectrum
9260 Topanga Canyon Blvd.
Chatsworth, CA 91311

Staples Contract & Commercial
Inc.
Dept. La
P.O. Box 83689
Chicago, IL 60696

Staples Technology
P.O. Box 95230
Chicago, IL 60694

Stem & More LLC
7618 Jellico Avenue
Northridge, CA 91325

Ultimate Software (Payroll
Services)
P.O. Box 930953
Atlanta, GA 91193

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

76214-00002/3712045.1

1  JEFFREY A. KRIEGER (SBN 156535)
   JKrieger@GreenbergGlusker.com
2  KEITH PATRICK BANNER (SBN 259502)
   KBanner@GreenbergGlusker.com
3  GREENBERG GLUSKER FIELDS CLAMAN
   & MACHTINGER LLP
4  1900 Avenue of the Stars, 21st Floor
   Los Angeles, California 90067-4590
5  Telephone:  310.553.3610
   Fax:  310.553.0687
6
7  Attorneys for Jason M. Rund,
   Chapter 7 Trustee
8
                UNITED STATES BANKRUPTCY COURT
9
                CENTRAL DISTRICT OF CALIFORNIA
10
                    LOS ANGELES DIVISION
11

12  In re:                              Case No. 2:19-bk-23085-BB

13  YOUTH POLICY INSTITUTE, INC.,       Chapter 7

14         Debtor.                      **NOTICE OF CHAPTER 7 TRUSTEE'S
                                        MOTION FOR ORDER APPROVING: (1)
15                                      REJECTION OF UNEXPIRED LEASE
                                        RELATING TO THE BEVERLY
16                                      FACILITY** *NUNC PRO TUNC* **TO THE
                                        PETITION DATE; AND (2)
17                                      ABANDONMENT OF PERSONAL
                                        PROPERTY LOCATED AT THE
18                                      BEVERLY FACILITY**

19                                      [NO HEARING REQUIRED]

20

21

22         **TO THE HONORABLE SHERI BLUEBOND, UNITED STATES BANKRUPTCY**

23  **JUDGE, THE DEBTOR, THE UNITED STATES TRUSTEE, AND ALL PARTIES-IN-**

24  **INTEREST HEREIN:**

25         **PLEASE TAKE NOTICE** that Jason M. Rund, Chapter 7 Trustee (the "Trustee") of the

26  bankruptcy estate of Debtor Youth Policy Institute, Inc. (the "Debtor") has filed his motion (the

27  "Motion") for entry of an order approving the Trustee's: (1) rejection of the Debtor's unexpired

28

NOTICE OF MOTION TO REJECT LEASE AND
ABANDON PROPERTY AT BEVERLY FACILTIY

commercial lease regarding real property located at 2707-11 Beverly Blvd., Los Angeles, CA

90057 (the "Beverly Facility") *nunc pro tunc* to the date the bankruptcy was commenced (i.e.

November 5, 2019, the "Petition Date") pursuant to section 365 of title 11 of the United States

Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") and (2) abandonment pursuant of the

Debtor's personal property left at the Beverly Facility, excluding all vehicles located thereon

(collectively, the "Abandoned Property") pursuant to section 554(a) of the Bankruptcy Code.

    As discussed in the Motion, the Debtor's unexpired pre-petition commercial lease (the

"Beverly Lease") relating to the Beverly Facility with lessor MDB International Branding, LLC

(the "MDB") costs approximately $70,000 per month and is therefore burdensome to the estate.

In addition, as of the Petition Date, the Debtor no longer occupied the Beverly Facility, but left

the Abandoned Property onsite, as more fully detailed in the Motion.  The Trustee, his counsel

and his field agent have visited and inspected the Beverly Facility and have observed that the

Abandoned Property left by the Debtor at the Beverly Facility largely consists of fixtures,

furniture, supplies, clothing, electronics, office equipment, including select computers and

printers, office supplies, and documents.  The Trustee has consulted with an auctioneer and

understands that the aggregate net liquidation value of the Abandoned Property is likely less than

$25,000.00, all, or most of which is encumbered by the senior secured lien of Non-Profit Finance

Fund ("NFF").  As such, the Abandoned Property is of inconsequential value to the bankruptcy

estate.

    **PLEASE TAKE FURTHER NOTICE** that the relief requested is based on the Motion,

the *Declaration of Tony Shokrai* and *Declaration of Jason M. Rund* respectively attached thereto,

this Notice, the arguments of counsel, and other admissible evidence properly brought before the

Court.  In addition, the Trustee respectfully requests that the Court take judicial notice of the case

docket and all pleadings filed in the above captioned bankruptcy case, including the specific

pleadings referenced in the Motion.

    **PLEASE TAKE FURTHER NOTICE** that pursuant to the Court's *Order Granting

Motion for Order Limiting Scope of Notice* [Docket No. 32] (the "Order Limiting Notice") the

Motion and this Notice constitute a Limit Notice Matter and therefore the Trustee will serve this

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

NOTICE OF MOTION TO REJECT LEASE AND
ABANDON PROPERTY AT BEVERLY FACILTIY

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, California 90067-4590

1  Notice on the Limited Service List (which includes all secured creditors which may have an

2  interest in the Abandoned Property).  In addition, the Trustee will serve this Notice on MDB and

3  the Department of Labor, through the Assistant United States Attorney, as reflected in the

4  accompanying proof of service.  The Trustee submits that no further notice is required under the

5  circumstances.

6  **PLEASE TAKE FURTHER NOTICE** that in accordance with Local Bankruptcy Rule

7  9013-1(o)(1), any response to the Motion and request for hearing must be in the form required by

8  Local Bankruptcy Rule 9013-1(f)(1) and must be filed with the Court and served on: (i) the

9  Trustee at 840 Apollo Street, Suite 351, El Segundo, California 90245; (ii) his general bankruptcy

10 counsel, Greenberg Glusker Fields Claman & Machtinger LLP, Attn:  Jeffrey A. Krieger, Esq.

11 and Keith Patrick Banner, Esq., 1900 Avenue of the Stars, 21st Floor, Los Angeles, California

12 90067; (iii) his proposed field agent, Interco Management Corporation, Attn:  Tony Shokrai, 2118

13 Wilshire Boulevard, Suite 717, Santa Monica, CA 90403; and (iv) the Office of the United States

14 Trustee, located at 915 Wilshire Blvd., Suite 1850, Los Angeles, California 90017, within

15 seventeen (17) days from the date of service of this Notice.

16 If you fail to file a written response within seventeen (17) days from the date of the

17 service of this Notice, the Bankruptcy Court may treat such failure as a waiver of your right to

18 oppose the Motion and may grant the requested relief.

20 DATED:  January 28, 2020              GREENBERG GLUSKER FIELDS CLAMAN
                                        & MACHTINGER LLP

23 By: */s/ Jeffrey A. Krieger*
                                        JEFFREY A. KRIEGER
24                                      KEITH PATRICK BANNER
                                        Attorneys for Jason M. Rund,
25                                      Chapter 7 Trustee

NOTICE OF MOTION TO REJECT LEASE AND
ABANDON PROPERTY AT BEVERLY FACILTIY

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
1900 Avenue of the Stars, 21st Fl. Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled (*specify*): **NOTICE OF CHAPTER 7 TRUSTEE'S MOTION FOR ORDER APPROVING: (1) REJECTION OF UNEXPIRED LEASE RELATING TO THE BEVERLY FACILITY NUNC PRO TUNC TO THE PETITION DATE; AND (2) ABANDONMENT OF PERSONAL PROPERTY LOCATED AT THE BEVERLY FACILITY** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) January 28, 2020, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) January 28, 2020, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Debtor
Youth Policy Institute, Inc.
6464 Sunset Blvd., Ste. 650
Los Angeles, CA 90028

☒  Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) January 28, 2020, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

Via Email
Assistant United States Attorney
Kimberly Jaimez- Kimberly.Jaimez@usdoj.gov
Counsel to the Arleta Landlord
Bob Bass-Bob.Bass47@icloud.com

Via Messenger
The Honorable Sheri Bluebond
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Ste. 1534
Los Angeles, CA 90012

Counsel for MDB
David Meadows-David@DavidWMeadowslaw.com

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| January 28, 2020 | Julie King | /s/ Julie King |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

1.    **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- Keith Patrick Banner    kbanner@greenbergglusker.com,
  sharper@greenbergglusker.com;calendar@greenbergglusker.com
- Robert D Bass    bob.bass47@icloud.com
- Shawn M Christianson    cmcintire@buchalter.com, schristianson@buchalter.com
- Jeffrey A Krieger    jkrieger@ggfirm.com,
  kwoodson@greenbergglusker.com;calendar@greenbergglusker.com;jking@greenbergglusker.com
- David W. Meadows    david@davidwmeadowslaw.com
- Kevin Meek    kmeek@robinskaplan.com, kevinmeek32@gmail.com;kmeek@ecf.inforuptcy.com
- Christopher E Prince    cprince@lesnickprince.com, jmack@lesnickprince.com;cprince@ecf.courtdrive.com
- Jason M Rund (TR)    trustee@srlawyers.com, jrund@ecf.axosfs.com
- Matthew N Sirolly    msirolly@dir.ca.gov
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Genevieve G Weiner    gweiner@sidley.com, laefilingnotice@sidley.com;genevieve-weiner-
  0813@ecf.pacerpro.com

2.    **SERVED BY UNITED STATES MAIL**:

Secured Creditors

| | | |
|---|---|---|
| Ford Motor Credit<br>260 Interstate N PKWY NW<br>Atlanta, GA 30339 | Jules and<br>Associates<br>2 Great Valley<br>Parkway,<br>Suite 300<br>Malvern, PA 19355 | Non-Profit Finance Fund<br>5 Hanover Square,<br>9th Floor<br>New York, NY 10004 |

Think Together
2101 E 4th St Ste. 200B
Santa Ana, CA 92705
Attn: Teresa A. McQueen,
General Counsel

Unsecured Creditors

| | | |
|---|---|---|
| American Express<br>World Financial Center<br>New York, NY 10285 | Bright Star Schools<br>2636 South Mansfield Avenue<br>Los Angeles, CA 90016 | C3 Business Solutions<br>3130 S. Harbor Blvd.<br>Suite 500<br>Santa Ana, CA 92704 |
| California Department of<br>Education<br>21st 1430 N Street<br>Sacramento, CA 95814-5901 | Department of Education (Los<br>Angeles Prom)<br>400 Maryland Avenue, SW<br>Washington, DC 20202 | Employed Security Service Center<br>Inc.<br>959 E., Walnut Street<br>Suite 112<br>Pasadena, CA 91106 |
| Fresh Start Meals Inc<br>1530 1st Street<br>San Fernando, CA 91340 | Granada Hills Charter High School<br>10535 Zelzah Avenue<br>Granada Hills, CA 91344 | JFK Transportation Company Inc.<br>980 W. 17th Street<br>Suite B<br>Santa Ana, CA 92706 |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

76214-00002/3712055.1

Multicultural Learning Center
7510 Desoto Avenue
Canoga Park, CA 91303

NIU College
5959 Topanga Canyon Blvd.
Suite 110
Woodland Hills, CA 91367

Oracle America, Inc.
P.O. Box 44471
San Francisco, CA 94144

Orenda Education (Principal's
Exchange)
2101 E. Fourth Street
Suite 200B
Santa Ana, CA 92705

Roth Staffing Companies, L.P.
P.O. Box 60003
Anaheim, CA 92812

Sabio Enterprises, Inc.
400 Corporate Pointe, Suite 300
Culver City, CA 90230

Spectrum
9260 Topanga Canyon Blvd.
Chatsworth, CA 91311

Staples Contract & Commercial
Inc.
Dept. La
P.O. Box 83689
Chicago, IL 60696

Staples Technology
P.O. Box 95230
Chicago, IL 60694

Stem & More LLC
7618 Jellico Avenue
Northridge, CA 91325

Ultimate Software (Payroll
Services)
P.O. Box 930953
Atlanta, GA 91193

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

76214-00002/3712055.1

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

 1900 Avenue of the Stars, Ste. 2100, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled: **DECLARATION THAT NO PARTY REQUESTED A HEARING ON MOTION [LBR 9013-1(o)(3)]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 02/20/2020   , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) 02/20/2020   , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 02/20/2020   , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Via Messenger

The Honorable Sheri Bluebond
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Ste. 1534
Los Angeles, CA 90012

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 02/20/2020 | Julie King | /s/ Julie King |
|---|---|---|
| Date | Printed Name | Signature |

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

1.      **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- Keith Patrick Banner     kbanner@greenbergglusker.com,
  sharper@greenbergglusker.com;calendar@greenbergglusker.com
- Robert D Bass     bob.bass47@icloud.com
- Shawn M Christianson     cmcintire@buchalter.com, schristianson@buchalter.com
- Jeffrey A Krieger     jkrieger@ggfirm.com,
  kwoodson@greenbergglusker.com;calendar@greenbergglusker.com;jking@greenbergglusker.com
- David W. Meadows     david@davidwmeadowslaw.com
- Kevin Meek     kmeek@robinskaplan.com, kevinmeek32@gmail.com;kmeek@ecf.inforuptcy.com
- Christopher E Prince     cprince@lesnickprince.com,
  jmack@lesnickprince.com;cprince@ecf.courtdrive.com
- Jason M Rund (TR)     trustee@srlawyers.com, jrund@ecf.axosfs.com
- Matthew N Sirolly     msirolly@dir.ca.gov
- United States Trustee (LA)     ustpregion16.la.ecf@usdoj.gov
- Andy C Warshaw     awarshaw@bwlawcenter.com, ecf@bwlawcenter.com
- Genevieve G Weiner     gweiner@sidley.com, laefilingnotice@sidley.com;genevieve-weiner-0813@ecf.pacerpro.com