JEFFREY A. KRIEGER (SBN 156535)
JKrieger@GreenbergGlusker.com
KEITH PATRICK BANNER (SBN 259502)
KBanner@GreenbergGlusker.com
GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Suite 2600
Los Angeles, California 90067
Telephone: 310.553.3610
Fax: 310.553.0687

Attorneys for Jason M. Rund,
Chapter 7 Trustee

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>YOUTH POLICY INSTITUTE, INC.,<br><br>Debtor. | Case No. 2:19-bk-23085-BB<br><br>Chapter 7<br><br>**STIPULATION BETWEEN CHAPTER 7 TRUSTEE AND PENCHECKS TRUST COMPANY OF AMERICA REGARDING FINAL WIND-DOWN AND DISSOLUTION OF DEBTOR'S 401(k) PLAN**<br><br>[NO HEARING REQUIRED] |

This stipulation (this "Stipulation") is made and entered into by and between Jason M. Rund, Chapter 7 Trustee (the "Trustee") of the bankruptcy estate of Youth Policy Institute, Inc. (the "Debtor"), on the one hand, and PenChecks Trust Company of America ("PenChecks"), on the other. The Trustee and PenChecks are sometimes referred to herein as the "Parties." This Stipulation is made with respect to the following facts.

  A.  On November 5, 2019 (the "Petition Date"), the Debtor filed a voluntary petition (the "Petition") under chapter 7 of title 11 of the United States Code, 11 U.S.C. § 101, et seq. (the "Bankruptcy Code"), commencing the within chapter 7 bankruptcy case.

76214-00002/3854426.2

STIPULATION RE TERMINATION
OF 401(K) PLAN

B.	On the Petition Date, the Trustee was duly appointed the chapter 7 trustee pursuant to section 701 of the Bankruptcy Code.

C.	Prior to the Petition Date, the Debtor created, maintained and served as the plan administrator of the following 401(k) retirement plan: the Youth Policy Institute 401(k) – EIN 47-4062603 (the "Plan").

D.	As of the Petition Date, the Plan had not been terminated and held funds that constituted property of the respective former employees of the Debtor and did not constitute property of the bankruptcy estate under section 541 of the Bankruptcy Code.

E.	Pursuant to section 704(a)(11) of the Bankruptcy Code, on the Petition Date the Trustee succeeded to the Debtor as plan administrator under the Plan.

F.	As the Debtor is no longer operating, the Plan must be administered (with employee balances distributed to the employees) and dissolved in an orderly fashion (the "401(k) Termination Process").

G.	Prior to the Petition Date, Kravitz, LLC, an Ascensus Company ("Kravits") was retained by the Debtor assist in administration of the Plan and to further assist in the 401(k) Termination Process.

H.	Early in the chapter 7 bankruptcy case, Kravitz agreed to continue to perform certain services necessary for the 401(k) Termination Process, as reflected in the *Stipulation Between Chapter 7 Trustee and Kravitz, LLC Regarding Wind-Down and Dissolution of Debtor's 401(k) Plan* [Docket No. 44] filed on December 19, 2019.

I.	On December 23, 2019, the Court entered its *Order Approving Stipulation Between Chapter 7 Trustee and Kravitz Inc. [sic] Regarding Wind-Down and Dissolution of the Debtor's 401(k) Plan* [Docket No. 55] pursuant to which the Court, among other things, (1) deemed the Plan terminated; and (2) authorized the Trustee to continue the 401(k) Termination Process utilizing the services of Kravitz.

J.	Though Kravitz was able to assist in much of the 401(k) Termination Process, Kravitz is unable to complete the final process of administering the accounts of approximately

1 | 186 Plan participants that did not respond to the various notices relating to the 401(k)
2 | Termination Process.

3 |     K.    PenChecks has agreed to perform the services necessary for completion of the
4 | 401(k) Termination Process on the terms set forth in the PenChecks Trust Company of American
5 | Client Agreement (the "PenChecks Agreement"), a true and correct copy of which is attached
6 | hereto as <u>Exhibit A</u>.

7 |     L.    PenChecks has agreed that it will be compensated solely through the Plan assets as
8 | permitted by the Plan documents and applicable law.

9 |     M.    Based on the foregoing, the Trustee believes it is in the overwhelming best interest
10 | of the bankruptcy estate and the Debtor's former employees to enter into this Stipulation to
11 | authorize PenChecks to take all actions necessary to complete the 401(k) Termination Process.

12 | Therefore, subject to the approval of the Bankruptcy Court, the Parties hereby stipulate
13 | and agree as follows:

14 |     1.    The Trustee is authorized to continue the 401(k) Termination Process utilizing the
15 | services of PenChecks.

16 |     2.    PenChecks is authorized to take all action necessary to facilitate the 401(k)
17 | Termination Process in accordance with the terms of the PenChecks Agreement.

18 |     3.    PenChecks is authorized to be compensated through the Plan assets as permitted
19 | by the PenChecks Agreement, the applicable Plan documents and applicable law.  PenChecks
20 | shall not be entitled to further compensation outside of the Plan assets except by order of the
21 | bankruptcy court.

22 |     4.    T. Rowe Price and/or any other institution currently holding the assets of the Plan
23 | shall comply with the requests of PenChecks made in connection with the 401(k) Termination
24 | Process.

25 |     5.    This Stipulation may be executed in one or more counterparts, each of which,
26 | when so executed, shall be deemed to be an original.  Such counterparts shall together constitute
27 | and be one and the same instrument.

28

**GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP**
2049 Century Park East, Suite 2600
Los Angeles, California 90067

DATED: September 4, 2020

*[signature]*

JASON M. RUND
Solely in his capacity as Chapter 7 Trustee
for Youth Policy Institute

DATED: September 4, 2020

PENCHECKS TRUST COMPANY OF AMERICA

*[signature]*

By: Mike McWherter

Its: Chief Compliance Officer

# EXHIBIT "A"



# PenChecks Trust Company of America Client Agreement

This PenChecks Trust Company of America ("PenChecks Trust") Client Agreement and the PenChecks Trust Statement of Services and Fees shall be known herein as the "Agreement" unless the context requires otherwise. This Agreement is entered into by and between the Plan Sponsor ("Sponsor") or Plan Trustee and PenChecks Trust, a state-chartered, non-depository trust company regulated by the South Dakota Division of Banking in its capacity as a distribution processor. The terms of this Agreement are accepted by the Sponsor, Plan Trustee or its Authorized Representative on the date this Agreement is signed and Sponsor, Plan Trustee and/or its Authorized Representative completes the online registration process where the specific name of the Sponsor, Sponsor's qualified plan, and Sponsor's Authorized Representative such as its Third-Party Administrator ("TPA"), Plan Trustee(s), and/or Plan Advisor are communicated to PenChecks Trust. When the Sponsor's Authorized Representative is a duly appointed Trustee in Bankruptcy, please refer to Paragraph 8 below.

**WHEREAS,** Sponsor has adopted a qualified plan of deferred compensation ("Plan" and/or "Plan/Trust") that qualifies for special tax treatment under Section 401(a) of the Internal Revenue Code (the "Code") for the exclusive purpose of providing retirement benefits to its employees, and

**WHEREAS,** PenChecks Trust is a wholly-owned subsidiary of PenChecks, Inc., and the directed trustee of the PenChecks, Inc. Qualified Distribution Trust, an administrative tool to enhance the efficiency and effectiveness of processing benefit payments, and

**WHEREAS**, the Sponsor issued a Corporate Resolution or other Written Record of Action authorizing the Sponsor to enter into this Agreement with PenChecks Trust as well as adopting the Qualified Distribution Trust as part of the above referenced Plan/Trust to be used as an administrative tool to enhance the efficiency and effectiveness in processing benefit payments, and

**WHEREAS,** PenChecks Trust shall act only with respect to certain Plan assets (Fund[s]) that the Sponsor authorizes PenChecks Trust to distribute to or on behalf of Plan participants, alternate payees, Plan beneficiaries or to Auto Rollover/Missing Participant IRA Rollover Accounts, and

**WHEREAS,** the Sponsor is authorized by the terms of the Plan to designate certain parties to act as fiduciaries, investment managers, agents and in various other capacities with respect to the Plan/Trust and desires to designate PenChecks Trust to provide those services listed in paragraph 4 below as may be selected by the Sponsor including, but not limited to, the establishment of an Auto Rollover and/or Missing Participant IRA Rollover Account on behalf of Participants designated by the Plan Sponsor, and

**WHEREAS,** the Sponsor, Trustee, or other Authorized Representative acknowledges that the PenChecks, Inc. Qualified Distribution Trust shall from time to time earn interest from monies deposited pending distribution (float); said float shall be used by PenChecks Trust to defray operating costs and overhead expenses.

**NOW, THEREFORE,** in consideration of the promises and the mutual covenants set forth herein, Sponsor and PenChecks Trust agree to the following:

1. **DISTRIBUTABLE FUNDS OF THE PLAN.** Except as otherwise provided herein, the Funds shall consist of that part of the Plan assets that the Sponsor sends or causes to be sent to PenChecks Trust to be distributed to or on behalf of designated Plan Participants, alternate payees, and Plan beneficiaries identified and provided to PenChecks Trust by the Sponsor or its Authorized Representative. In the event the Funds to be distributed or rolled over arise from a designated Roth account, the Sponsor certifies that such account(s) has been maintained in compliance with all applicable law and regulations concerning such account(s).

2. **APPOINTMENT OF PENCHECKS TRUST.** Sponsor, Plan Trustee or its Authorized Representative hereby accepts the terms of this Agreement and appoints PenChecks Trust, in a non-exclusive capacity only with respect to the specific provisions of this Agreement upon completion of the required online registration process at https://p3.PenChecks.com. Such appointment is hereby accepted by PenChecks Trust subject to Sponsor, Plan Trustee or its Authorized Representative completing the online registration process signifying review and acceptance of the fees as set forth in the Statement of Services and Fees. The online registration process requires the individual registering the Sponsor or Plan Trustee to certify via electronic signature that the individual is a duly Authorized Representative of Sponsor or Trustee and that they have read, understand, and agree to the terms of this Agreement. Upon proper online registration of Sponsor or Plan Trustee and acceptance of the Agreement via electronic signature, PenChecks Trust represents that it can perform legally all of its duties described herein.

3. **MISSING PARTICIPANT / AUTO ROLLOVER IRA COMPLIANCE.** In the event PenChecks Trust or the Plan Trustee and/or Plan Administrator is unable after due inquiry conducted in accordance with the Department of Labor (DOL) standards set forth in Field Assistance Bulletin (FAB) 2014-01 (or any updates on this subject matter as may be published by the Department of Labor from time to time) to locate a former Participant of a terminated or terminating Plan and the Sponsor maintains no other plan which can accept the funds which would otherwise be distributable to the Participant, the Trustee authorizes PenChecks Trust to establish on behalf of such Participant, an Individual Retirement Account as set forth in section 4 of this Agreement.

    As part of its services to Plan Sponsors, PenChecks Trust provides a Premier Auto Rollover / Missing Participant IRA Program, which is intended to be compliant with the principles set forth in FAB 2014-01. In the event the Plan Sponsor or TPA has already complied with FAB 2014-01 and communicates that such compliance is fulfilled, PenChecks Trust will establish an Auto Rollover / Missing Participant IRA under the Express IRA Service. See PenChecks Trust Statement of Services and Fees for more details on the Premier and Express Auto Rollover / Missing Participant IRA Service.

4. **AUTHORITY OF PENCHECKS TRUST.** Under the terms of this Agreement, PenChecks Trust has the authority to receive Funds, which are to be used for Plan distributions or, where appropriate, to establish an Auto Rollover / Missing Participant IRA Rollover Account. Any Auto Rollover/Missing Participant IRA Rollover will be established under the Department of Labor Safe Harbor Regulations (DOL Regs 2550.404a-2 and 404a-3). Funds shall be payable to PenChecks Inc. Qualified Distribution Trust in the form of a check, wire, or ACH that is negotiable. PenChecks Trust is authorized and will perform the following with respect to its duties hereunder:

    A.  To receive Funds earmarked for distribution and deposit such Funds in the Qualified Distribution Trust or Auto Rollover / Missing Participant IRA Account(s) established by PenChecks Trust with a federally insured banking institution or other qualified investment program. All such Funds shall be held separate and independent from the assets and liabilities of PenChecks Trust. Roth Funds rolled over

        from designated Roth accounts shall continue to be accounted for separately with respect to both their basis and earnings until distributed.

B.   To contact the appropriate individuals or companies to effectuate the disbursement of Plan benefits directly to or for the benefit of Sponsor designated individuals as well as prepare all necessary documentation to release Funds directly to or for the benefit of Sponsor designated individuals or to establish an Auto Rollover / Missing Participant IRA, all according to the service level requested (see Statement of Services and Fees) and applicable information provided by the Sponsor to PenChecks Trust.

C.   To issue distribution payments in the form of, but not limited to, check, wire, ACH, or prepaid (debit) card to or on behalf of Sponsor designated individuals based upon the information furnished to PenChecks Trust by the Sponsor or its designee, within the time period required by law and to establish Auto Rollover / Missing Participant IRA Rollover Accounts on behalf of those Sponsor designated individuals in accordance with Plan provisions who either cannot be located or who are non-responsive to requests to make a benefit election.

D.   To withhold and remit any withheld taxes to the appropriate depositories as required by law and to prepare and file all required Federal and/or State forms (i.e. Forms 945, 1099-R, 1042, 1042-S, 1096) to the proper taxing authority as required by law. PenChecks Trust will file all tax forms and reports under the name and TIN of PenChecks Trust, Inc Qualified Distribution Trust for all qualified Plan distributions disbursed by PenChecks Trust unless otherwise instructed by Sponsor.

E.   To notify and contact the Sponsor, TPA, or Participant as necessary, of any returned payment or non-negotiated check to obtain more accurate instructions. If valid instructions are not received within a timely manner, PenChecks Trust will void any outstanding check(s), recapture any taxes previously withheld (if possible under the then existing taxing agency procedures) and establish an Auto Rollover/ Missing Participant IRA rollover account on behalf of the original beneficiary designated by the Sponsor in accordance with applicable law. Alternatively, the funds may be returned to the Plan provided the taxes have been recaptured and the Plan is still in existence.

F.   For uncashed checks in cases where PenChecks Trust has processed a distribution, withheld taxes and issued a check that goes uncashed after ninety (90) days from the date of issue, PenChecks Trust will perform an additional search for the Participant and if needed reissue payment to the Participant/Beneficiary at their updated address. If the Participant cannot be located or is located but is unresponsive to a follow –up notice after thirty (30) days, PenChecks Trust will restore the taxes withheld from the distribution thereby making the distribution whole, qualified and eligible for rollover to an Auto Rollover/Missing Participant IRA or, if the distribution is more than $5,000.00, return said funds to the Plan from which the funds emanated.

G.   For uncashed checks in cases where PenChecks Trust was not the originating payor (i.e., did not process the original distribution and withhold taxes) or, more than three (3) years has passed since the check was issued, recapturing taxes previously withheld and remitted is not possible. In these cases, there is currently no official, published U.S. Dept. of Labor or IRS guidance. Absent official guidance, PenChecks Trust is authorized to transfer such funds to PenChecks Missing Distributees, LLC (a wholly-owned subsidiary of PenChecks, Inc.) on behalf of the Participant to be held in a Taxable Savings Account separate from the PenChecks Trust Qualified Distribution Trust because such funds are no longer qualified and are not eligible for an Auto Rollover / Missing Participant IRA. These funds will be

            maintained in said Taxable Savings Account and the interest thereon reported to the applicable taxing authority(s) until such time as the Participant is located, comes forward or it is appropriate to escheat such funds pursuant to the applicable state unclaimed property statute. In the alternative and upon receipt of written instructions from the Plan Sponsor, Trustee, Named Fiduciary or other authorized representative, PenChecks Trust will establish an IRA for said funds. PenChecks Trust and/or PenChecks Missing Distributees, LLC are authorized to charge reasonable fees (please see PenChecks Trust Statement of Services and Fees) for establishing and maintaining such accounts.

H. Periodically, PenChecks Trust will notify the Sponsor of any outstanding or undistributed Plan Funds and request the Sponsor to provide instructions to disburse such Funds to the appropriate Participant or beneficiary. In event that Plan Funds have been deposited with PenChecks Trust in excess of ninety (90) days and for whatever reason there is no Plan provision, no Sponsor direction, no PBGC applicability, or the Plan no longer exists, PenChecks Trust is specifically authorized to establish on behalf of each Participant an Auto Rollover / Missing Participant IRA according to DOL and IRS regulations.  PenChecks Trust has a financial interest with respect to the ongoing administration of such IRA's.  All applicable fees with respect to such accounts shall be reasonable and are disclosed in PenChecks Trust Statement of Services and Fees. In instances where an IRA cannot be established (i.e. ongoing Plan and Participant account balance exceeds $5,000), or upon instruction/request by Sponsor, Plan assets will be returned to the Plan.

I. To accept compensation for services either directly from Sponsor, Plan Participants, TPA or any other entity which contracts with PenChecks Trust, based on PenChecks Trust Statement of Services and Fees in effect at the time a distribution is accomplished or an IRA is established.  The Statement of Services and Fees is subject to modification upon thirty (30) days advance notice via posting at https://p3.PenChecks.com.  Any fee increase with respect to existing accounts will be prospective.

J. To receive earnings that may occur from the float on funds held in trust. All such earnings, if any, shall be used to defray operating and overhead expenses.

K. To retain such agents as are appropriate to perform the obligation of PenChecks Trust hereunder. All such agents shall be entitled to the protections of Sections 7 and 9 hereunder.

L. Funds designated for benefit payments must be made payable to PenChecks, Inc. Qualified Distribution Trust.  Deposits made by ACH require 24 hours, wire require 72 hours, and checks/draft deposits require a minimum of five business days to clear before any benefit distribution can be processed.

5. **TERMINATING DEFINED BENEFIT PLANS SUBJECT TO PBGC COVERAGE.** Most defined benefit plans are insured by the Pension Benefit Guaranty Corporation (PBGC), a U.S. government agency. Accordingly, benefits from a terminating defined benefit plan may be subject to coverage and distribution by the PBGC. PenChecks Trust is not responsible for determining whether a defined benefit plan is subject to PBGC coverage and any amounts submitted to PenChecks Trust by the Sponsor, Trustee and/or its Authorized Representative for distribution shall be the Sponsor's, Trustee's or Authorized Representative's certification that said Plan and benefits are not subject to PBGC coverage and that the Plan Sponsor, Trustee and/or the Authorized Representative is solely responsible to the PBGC and all Participants for any and all funds it instructs PenChecks Trust to distribute .

6. **PENCHECKS TRUST' NONFIDUCIARY STATUS.** PenChecks Trust' is not a fiduciary with respect to the Plan/Trust and PenChecks Trust's liability shall be limited to its capacity as detailed herein in connection with the distributable Funds that are the subject of this Agreement.

7. **QUALIFIED DOMESTIC RELATIONS ORDER ("QDRO").** With respect to any distribution made pursuant to a Qualified Domestic Relations Order ("QDRO"): (i) it is the Sponsor's / Plan Administrator's and / or Plan Trustee's responsibility to have written QDRO procedures in place and to follow those procedures when it instructs PenChecks Trust to make any distribution involving a domestic relations matter; (ii) PenChecks Trust will not act as a proper or necessary recipient of notice of any domestic relations matter that may result in a QDRO; (iii) PenChecks Trust shall have no responsibility under the Plan's QDRO procedures other than the responsibility of acting in accordance with the instructions of the Sponsor / Plan Administrator and/or Plan Trustee; (iv) only the Sponsor / Plan Administrator and/or Plan Trustee shall have the authority to interpret the terms of any QDRO and they shall jointly and severally hold harmless and indemnify PenChecks Trust with respect to any and all issues arising from their interpretation; and, (v) PenChecks Trust shall have no responsibility to determine whether a specific order is a QDRO or to calculate an alternate payee's interest under any domestic relations order, regardless of whether or not the order is a QDRO.

8. **BANKRUPTCY TRUSTEE.** In cases where the Authorized Representative of the Plan Sponsor is a duly appointed Bankruptcy Trustee in the context of a Federal Bankruptcy proceeding and such Bankruptcy Trustee is empowered by the Bankruptcy Court and required by applicable federal law to liquidate or otherwise dispose of the assets of Sponsor's qualified plan of deferred compensation, then all references to "Sponsor" herein shall mean such Bankruptcy Trustee and the various actions referred to herein as emanating from Sponsor shall be satisfied by such Bankruptcy Trustee providing PenChecks Trust with specific directions as to its services hereunder. Any provisions hereof that are inconsistent with the functioning of a Trustee in Bankruptcy for the purposes contemplated herein shall be resolved in favor of expediting the Bankruptcy process and implementing the directions of the Trustee in Bankruptcy and pursuant to all applicable federal bankruptcy law. In addition, the PenChecks Trust Statement of Services and Fees set forth as a part of this Agreement shall be supplemented (or replaced) by the addition of a fee schedule specifically directed at services to be rendered by PenChecks Trust in the event of a Bankruptcy proceeding as contemplated herein.

The employment of PenChecks Trust by the Bankruptcy Trustee to act under this agreement is subject to approval by the Bankruptcy Court. All compensation to PenChecks Trust under this agreement is subject to potential review and approval by the Bankruptcy Court. PenChecks Trust may be considered a professional employed by the Bankruptcy Trustee and may be subject to all statutes and rules governing employment and compensation of a professional under the Bankruptcy Code. To the extent any terms of this agreement conflict with applicable bankruptcy law, those terms are not binding and the applicable bankruptcy law will prevail. The Bankruptcy Trustee has provided all information reasonably available to it to PenChecks Trust. However, the Bankruptcy Trustee makes no independent representations as to the accuracy, veracity or completeness of the information provided.

9. **LIABILITY FOR ACTS OF OTHERS.** Without limiting the foregoing, PenChecks Trust shall not be responsible for any loss incurred by reason of any act or omission of any service provider selected by Sponsor, by any Plan Trustee or Plan Custodian, the Sponsor itself, or any fiduciary under the Plan and Sponsor agrees to hold PenChecks Trust harmless with respect thereto.

10. **NEGLIGENCE, WILLFUL MISCONDUCT AND DISHONESTY.** PenChecks Trust will be liable for its own negligence or willful misconduct and for the dishonesty of its own employees or agents. Clerical errors due to erroneous or misleading information or vague instructions from the Sponsor, Administrator, or Trustee shall be the sole responsibility of the Sponsor, Administrator, or Trustee collectively or separately. The Sponsor agrees to hold PenChecks Trust harmless from any losses incurred by following their verbal or written instructions regarding any administrative activities unless the loss was caused by PenChecks Trust' negligence.

11. **INDEMNIFICATION.** To the extent PenChecks Trust acts upon the instruction or direction of the Sponsor, Sponsor shall indemnify and hold PenChecks Trust harmless against any liability whatsoever including but not limited to the reasonable expense of defense in connection with any action or proceeding brought against PenChecks Trust as a result of following such instruction or direction of the Sponsor. Furthermore, in the case where there is no Plan provision or lack of Sponsor or TPA direction or PBGC jurisdiction, Sponsor or its successor(s) in interest shall indemnify PenChecks Trust and hold it harmless with respect to any charges, taxes, penalties or any other outlays of costs arising out of the establishment and operation of any Missing Participant / Auto Rollover IRA Account or Missing Distributee Account established by PenChecks Trust under section 4 of this Agreement. The indemnification set forth herein shall not apply to liabilities which may arise as the result of PenChecks Trust willful misconduct or gross negligence.

12. **TERMINATION OF AGREEMENT.** This Agreement may be terminated at any time by either party giving to the other party thirty days' prior written notice of such termination; provided, however, that the parties may agree to waive any part or all of such time period.

13. **NOTICE.** All notices and documents specified herein shall be deemed duly given if transmitted by either a secured internet connection, email addresses provided by Sponsor, or first class mail to Sponsor at the address provided by Sponsor that was furnished to PenChecks Trust and to PenChecks Trust, 8580 La Mesa Blvd., Ste 101, La Mesa, CA 91942 or any other address that PenChecks Trust shall furnish to Sponsor, including its website address at www.penchecks.com.

14. **SEVERABILITY.** Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereto or affecting the validity or enforceability of such provision in any other jurisdiction.

15. **CONTROLLING LAW.** This Agreement shall be construed and enforced pursuant to the laws of the State of California to the extent that such laws have not been superseded by Federal law.

16. **BINDING EFFECT.** This Agreement shall be binding upon, and shall insure to the benefit of, the parties thereto and their respective successors and assigns.

17. **CONTINUED QUALIFICATION.** Sponsor alone shall be responsible to maintain Plan as a qualified Plan of deferred compensation pursuant to applicable Federal law.

18. **CONFIDENTIAL INFORMATION.** All personal information received by PenChecks Trust from Sponsor or other party will be used for the exclusive use and benefit of processing a distribution on behalf of the Sponsor and will not be released to any other unauthorized entity. Sponsor grants PenChecks Trust the right to refer to Sponsor in its customer listings, website and/or marketing brochures, as a customer of PenChecks Trust but without reference to the specific services of PenChecks Trust used by the Sponsor. Except as otherwise

provided herein, neither party may issue a press release or make public statements relating to this Agreement

19. **ENTIRE AGREEMENT; AMENDMENT PROCESS.** This Agreement, PenChecks Trust Client Agreement and PenChecks Trust Statement of Services and Fees, constitutes the entire Agreement between the parties and supersedes any and all prior understandings as to the subject matter hereof.  This Agreement is subject to modification upon thirty (30) days advance notice via posting at https://p3.PenChecks.com.  Any fee increase with respect to existing accounts will be prospective.

20. **ARBITRATION CLAUSE.** Both parties to this Agreement agree to meet and confer in good faith on all matters and disputes arising under this Agreement. With respect to any controversy or claim valued in excess of $5,000, arising out of or relating to this Agreement, or the breach thereof, and if the dispute cannot be settled through negotiation, the parties agree first to try in good faith to settle the dispute in San Diego by mediation administered by the American Arbitration Association under its Commercial Mediation Rules before resorting to arbitration. Any claim, which cannot be settled through negotiation or by mediation, shall be settled in San Diego by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. The number of arbitrators will be limited to one (1) for any claim valued at $50,000 or less and limited to three (3) for any claim valued in excess of $50,000.

Any controversy or claim valued at $5,000 or less and which cannot be resolved through negotiation will be submitted to the Superior Court of California, County of San Diego, El Cajon Judicial District, Small Claim Division. Where a party files a claim against PenChecks Trust or any of its subsidiaries in any other jurisdiction or venue whether or not judicially proper, such filing will have the legal effect of rendering such claim null and void and unenforceable against PenChecks Trust.  In the event that PenChecks Trust prevails in its action against a contracting party or in defense of an action against any contracting party, it will be entitled to any and all reasonable and foreseeable attorney fees, court costs and arbitration fees and any other reasonable and foreseeable costs associated with the litigation in addition to any award or relief granted by the court. For the purposes of this contract, the term "prevails" will mean any amount or kind of relief (monetary, injunctive or specific performance) awarded to PenChecks Trust regardless of the actual amount sought or any award or relief granted to the other party.

---
Plan Sponsor Name

---
Plan Name

---
Printed Name of Plan Sponsor, Trustee, or Sponsor's Authorized Representative

---
Signature of Plan Sponsor, Trustee, or Sponsor's Authorized Representative        Month/Day/Year

## STATEMENT OF SERVICES & FEES

**A.  DISTRIBUTION SERVICES**

  i. **Full Service Processing - $45 per Participant**
  PenChecks Trust facilitates the entire distribution process from beginning to end – from providing and collecting participants' benefit elections to processing all payments and tax reporting. The TPA or Sponsor registers the Sponsor and Plan online with PenChecks Trust and directs Plan assets and basic Participant data (i.e. name, SSN, DOB, address, etc) to PenChecks Trust. PenChecks Trust will:
  a. Notify the TPA/Sponsor upon receipt of Plan assets.
  b. Notify Participant of the pending distribution and direct them to PenChecks Trust Participant Benefit Election Website. When disclosure to Participants of specific alternative benefits is required to be included in the Participant notice, PenChecks Trust must be provided all such benefits.  PenChecks Trust is not responsible for the calculation of any such benefits.
  c. Provide required IRS 402(f) Special Tax Notice.
  d. Provide access to the PenChecks Trust Benefit Election Website where Participants can quickly and securely log on and elect to rollover their funds to an IRA or new employer Plan or take a cash lump sum. Paper forms are available.
  e. Disburse funds via Check, Wire, ACH or a Prepaid Card according to the instructions provided.
  f. Withhold mandatory/voluntary Fed /State taxes, remit taxes to taxing authority, and file all necessary Fed/State tax returns (i.e. 1099R, 945, 1096, etc).
  g. Monitor and resolve all returned/uncashed disbursements and all expired Participant notices. Perform address searches and update address as needed.
  h. Provide 24/7 online access to PenChecks Pay Portal (P3) to review history, distribution status, generate reports, or make additional distribution requests.

  ii. **Payment Only Processing - $35 per Participant**
  PenChecks Trust processes all participant payments, Fed & State Tax Withholding, and Tax Returns (i.e. 1099R, 945, 1096, etc). The TPA/Sponsor notifies Participants of the pending distribution, collects the benefit election data, registers the Sponsor and Plan online with PenChecks Trust and directs Plan assets and Participant benefit election data to PenChecks Trust. PenChecks Trust will:
  a. Notify TPA/Sponsor upon receipt of Plan assets.
  b. Provide access to PenChecks Pay Portal (P3) where TPA/Plan will bulk upload or manually enter all necessary Participant benefit election information to disburse funds (i.e. Name, SSN, DOB, Address, Account Balance, Distribution Type, Tax Code, etc).
  c. Disburse funds via Check, Wire, ACH or Prepaid Card according to the instructions provided.
  d. Withhold mandatory/voluntary Fed/State taxes, remit withheld taxes to taxing authority, and file all necessary Fed/State tax returns (i.e. 1099R, 945, 1096, etc).
  e. Monitor and resolve all returned/uncashed disbursements. Perform address searches as needed.
  f. Provide 24/7 online access to PenChecks Pay Portal (P3) to review history, distribution status, generate reports, or make additional distribution requests.

  iii. **Recurring Benefit Payments - Price varies by frequency (see below)**
  PenChecks Trust provides recurring benefit payment processing services for Plans with recurring/periodic annuity payments. The TPA/Sponsor registers the Sponsor, Plan and Participant(s) with PenChecks Trust. After the one-time registration/upload of Plan and Participant information (One-time participant set-up fee of $5 per Participant) PenChecks Trust will:
  a. Provide for Monthly ($6), Quarterly ($12), Semi-Annual ($20), or Annual ($35) payment frequencies.
  b. Invoice the TPA/Plan for distribution funds Quarterly or Monthly.
  c. Individual or Bulk upload of initial Plan and Participant information.
  d. Disburse funds via Check, ACH or Prepaid Card according to initial registration.
  e. Withhold Fed /State taxes, remit taxes to taxing authority, and file all necessary Fed/State tax returns (i.e. 1099R, 945, 1096).
  f. Perform Weekly Death Audits and provide an annual Participant tax withholding inquiry.
  g. Monitor and resolve all returned/uncashed disbursements. Perform address searches as needed.

**B.** **AUTOMATIC ROLLOVER / MISSING PARTICIPANT IRA SERVICES, PROGRAM DESCRIPTION & FEES**

  i. **Express Automatic Rollover / Missing Participant IRA Services.**

  **Set-up Fee is 20% of Participant's account not to exceed $30**

  The TPA/Sponsor directs Plan assets and all necessary Participant data to PenChecks Trust. There is no account minimum. PenChecks Trust will:

  a.  Notify Sponsor/TPA upon receipt of Plan Assets.
  b.  PenChecks Trust will mail a Welcome Packet to the IRA holder within 3 business days of account set-up.
  c.  Provide access to PenChecks Pay Portal where TPA/Plan Sponsor will bulk upload or manually enter all necessary Participant data in order to establish the IRA (i.e. Name, SSN, DOB, Address, Account Balance, etc).
  d.  Establish a Safe Harbor Automatic Rollover/Missing Participant IRA on behalf of the participant according to DOL Safe Harbor Regulations 2550.404a-2 and 404a-3, respectively.
  e.  Register Participants with the National Registry of Unclaimed Retirement Benefits, an online searchable database of missing Participants. A Participant can search to find their benefit. If a match results, PenChecks Trust is notified.
  f.  File all appropriate Federal and State tax returns (i.e. Forms 1099R, 945, 5498, etc).
  g.  Generate and issue the required participant copy of the 1099R (in the distribution year) and Form 5498 each year.
  h.  Perform address search as needed for returned mail/notices and annually to update Participant address included on Form 5498.
  i.  Provide 24/7 access to PenChecks Pay Portal (P3) to view history, current status of distribution, generate reports, or make additional distribution requests.

  ii. **Premier Automatic Rollover/Missing Participant IRA Services.**

  **$45 if participant makes a distribution election, or $65 if an Automatic Rollover IRA is established**

  The TPA/Sponsor directs Plan assets and all necessary Participant data to PenChecks Trust. PenChecks Trust will provide all benefits included in the Express service (above) as well as comply with all DOL FAB 2014-01 requirements for Participant accounts greater than $65. The additional services include:

  a.  Perform an address search for all Participants, consistent with Dept of Labor FAB 2014-01, and update as necessary.
  b.  Notify Participants via certified mail of pending distribution, Plan's intent to establish an Automatic Rollover/Missing Participant IRA if Participants are unresponsive and request Participant to contact PenChecks Trust in a timely manner to make a benefit election.
  c.  Notify Participants' designated beneficiary if provided by Sponsor and request beneficiary's assistance in locating the missing Participant.
  d.  Direct all responsive Participants to the PenChecks Trust Benefit Election Website where Participants can safely and easily log on and elect to rollover their funds to an IRA or new employer Plan, or take a cash lump sum distribution.
  e.  Disburse funds to responsive Participants via Check, Wire, ACH or Prepaid Card according to the instructions provided.
  f.  Establish an Automatic Rollover/Missing Participant IRA for those non-responsive Participants in accordance with DOL Safe Harbor Regulations 2550.404a-2 and 2550.404a-3, handle all future Participant interaction, and assist Participants in collecting/transferring their Automatic Rollover/Missing Participant IRA elsewhere.

  iii. **Express and Premier Automatic Rollover/Missing Participant IRA Program Description & Fees.**

  1.  For Automatic Rollover and Missing Participant IRAs, the rolled-over assets (money) deposited in these specialized IRAs are invested in one or more bank deposit products such as Money Market Accounts (collectively "Bank Deposit Program" or "Program") at FDIC insured banks that are not affiliates of the Custodian. A list of the banks the Custodian uses within its Program may be obtained by contacting the Custodian toll-free at 844-446-9472 (844-44-MYIRA). The banks participating in the Program may be amended from time to time.
  2.  The rolled-over funds will remain invested in the Bank Deposit Program unless otherwise directed by the Participant or Beneficiary, subject to Required Minimum Distributions ("RMDs") as set forth in section R of the IRA Custodial Agreement.
  3.  The minimum interest rate paid by the Custodian to each Automatic Rollover or Missing Participant IRA is based on the average National Rate for Jumbo Money Market Accounts as calculated by the Federal Deposit Insurance Corporation ("FDIC Rate"). The FDIC Rate paid by the Custodian for each quarter is determined as of the first business day of the first full week of each quarter. For additional information please see https://www.fdic.gov/regulations/resources/rates/. The FDIC Rate will vary from time to time based on market conditions and the interest rate environment, neither of which is in the Custodian's control. The Custodian has no obligation to ensure a particular FDIC Rate. The Custodian may, from time to time, credit a higher interest rate than the FDIC Rate, depending on market conditions and the interest rate environment, neither of which is in the Custodian's control.
  4.  All IRA assets (money) held in the Bank Deposit Program are fully insured by the FDIC pursuant to its deposit insurance program - $250,000 per depositor, per insured bank, for each account ownership category. For IRAs that exceed the FDIC's limit of $250,000, the excess funds are deposited in a separate bank(s) participating in the Bank Deposit Program.
  5.  The Custodian charges each IRA in the Program the following fees:
      - Administration Fee - $3.75 per month for recordkeeping at the individual IRA level.
      - Account Closeout & Distribution Fee - 20% not to exceed $30
      - Bank Deposit Program Fee – The Custodian charges a Bank Deposit Program Fee of not more than 200 bps per year, assessed monthly, in arrears, for servicing and administration of the Program. These services include but may not be limited to accounting, sub-accounting, custodial and sub-custodial recordkeeping; negotiating, renegotiating and tracking, monitoring and reporting with respect to the sub-custodian banks, and otherwise maintaining the IRAs in accordance with applicable

government regulations. The Program fee may change from time to time upon thirty (30) days written notice to the Participant or Beneficiary. The Custodian shall deem the Participant or Beneficiary's failure to respond to any written notice as consent to the proposed change. The Participant or Beneficiary directs the Custodian to deduct these fees from the interest earned from the Investments held by the IRA.

6. Custodian reserves the right to be reimbursed or reserve funds for all reasonable expenses the Custodian incurs in connection with the administration of this IRA Program.
7. Custodian has the right to liquidate assets in the IRA if necessary to make distributions or to pay fees, expenses or taxes properly chargeable against the IRA. If instructions are not provided to Custodian as to which assets to liquidate, Custodian will use its sole discretion in deciding which assets to liquidate and Participant and Trustee agree not to hold Custodian liable for any adverse consequences that result from such discretion.
8. These Program fees are subject to change (prospectively) upon thirty (30) days written notice which may be provided electronically via a posting on Custodian's website.

**C.    UNCASHED CHECKS SERVICE, PROGRAM DESCRIPTION AND FEES**

i. **Missing Distributee™ - Uncashed / Stale-dated Check Service.**
   **Processing Fee is 20% of Participant's account not to exceed $40**
   When lump sum distributions go uncashed a benefit is still due to the Participant. However, if the distribution was reported as a taxable event (whether or not taxes were actually withheld, paid, and reported to the taxing authorities under a prior tax year) a Default/Missing Participant IRA is not an option because a taxable distribution has occurred. These funds are no longer "qualified" as defined by the IRC, thus an IRA cannot be established. PenChecks Trust will assist Sponsors and Financial Institutions in resolving these accounts by attempting to locate the Participant/missing distributee and/or escheat the funds to the proper state authority. Sponsors and Financial Institutions transfer these non-negotiated, stale-dated checks to PenChecks Missing Distributees, LLC ("PMD", a wholly-owned subsidiary of PenChecks, Inc.) and provide basic payee information (name, SSN, address, DOB, etc) to PMD. PMD will:
   a. Perform an address search; notify the payee of their unpaid benefit and how they can make a simple and secure online election to obtain their benefit.
   b. Validate the identity of any located missing distributee and upon validation, PenChecks Trust will pay out the missing distributee.
   c. For Participants/missing distributees that cannot be located, a Taxable Savings Account ("TSA") will be established for each Participant where it will earn interest until the funds are escheated.
   d. If the Participant/missing distributee is unresponsive, the funds will be escheated to the state of last known residence of the Participant in accordance with that state's unclaimed property laws.
   e. If the uncashed check represents a rollover of qualified funds, the Participant can rollover their funds to an IRA or another qualified Plan that accepts rollovers.
   f. Other options are available depending on the source of the uncashed check.
   g. Issue any necessary tax reports (i.e. 1099-Int).
   h. Register Participants/missing distributees with the National Registry of Unclaimed Retirement Benefits, an online searchable database of missing Participants. A Participant can search to find their benefit. If a match results, PenChecks Trust is notified.
   i. Financial institutions, Sponsors or advisors wanting to use this service will need to sign a separate contract specific to the Missing Distributee™ Program.

ii. **Missing Distributee™ Program Description and Fees.**
   a. All TSAs are invested in one or more bank deposit products such as Money Market Accounts (collectively "Bank Deposit Program" or "Program") at FDIC insured banks that are not affiliates of the Custodian. A list of the banks the Custodian uses within its Program may be obtained by contacting the Custodian toll-free at 800-541-3938. The banks participating in the Program may be amended from time to time.
   b. The rolled-over funds will remain invested in the Bank Deposit Program unless otherwise directed by the Participant or Beneficiary, or are subject state law escheatment.
   c. The minimum interest rate paid by the Custodian to each TSA is based on the average National Rate for Jumbo Money Market Accounts as calculated by the Federal Deposit Insurance Corporation ("FDIC Rate"). The FDIC Rate paid by the Custodian for each quarter is determined as of the first business day of the first full week of each quarter. For additional information please see https://www.fdic.gov/regulations/resources/rates/. The FDIC Rate will vary from time to time based on market conditions and the interest rate environment, neither of which is in the Custodian's control. The Custodian has no obligation to ensure a particular FDIC Rate. The Custodian may, from time to time, credit a higher interest rate than the FDIC Rate, depending on market conditions and the interest rate environment, neither of which is in the Custodian's control.
   d. All TSA assets (money) held in the Bank Deposit Program are fully insured by the FDIC pursuant to its deposit insurance program - $250,000 per depositor, per insured bank, for each account ownership category. For TSAs that exceed the FDIC's limit of $250,000, the excess funds are deposited in a separate bank(s) participating in the Bank Deposit Program.
   e. The Custodian charges each TSA the following fees:
      - TSA Administration Fee - $3.75 per month for recordkeeping at the individual TSA level.
      - Account Closeout & Distribution Fee – 20% not to exceed $30.
      - Bank Deposit Program Fee – The Custodian charges a Bank Deposit Program Fee of not more than 200 bps per year, assessed monthly, in arrears, for servicing and administration of the Program. These services include but may not be limited to

      accounting, sub-accounting, custodial and sub-custodial recordkeeping; negotiating, renegotiating and tracking, monitoring and reporting with respect to the sub-custodian banks, and otherwise maintaining the TSAs in accordance with applicable government regulations. The Program fee may change from time to time upon thirty (30) days written notice to the Participant or Beneficiary. The Custodian shall deem the Participant or Beneficiary's failure to respond to any written notice as consent to the proposed change.  The Participant or Beneficiary directs the Custodian to deduct these fees from the interest earned from the Investments held by the TSA.

  f.  Custodian reserves the right to be reimbursed or reserve funds for all reasonable expenses the Custodian incurs in connection with the administration of this TSA Program.

  g.  Custodian has the right to liquidate assets in the TSA if necessary to make distributions or to pay fees, expenses or taxes properly chargeable against the TSA. If instructions are not provided to Custodian as to which assets to liquidate, Custodian will use its sole discretion in deciding which assets to liquidate and Participant and Trustee agree not to hold Custodian liable for any adverse consequences that result from such discretion.

  h.  These Program fees are subject to change (prospectively) upon thirty (30) days written notice which may be provided electronically via a posting on Custodian's website.

**D.   1099R ONLY / TAX PAYMENTS - $35 PER 1099**

Assist in issuing a 1099R for a pension distribution issued by a party other than PenChecks Trust and/or assist in submitting withheld taxes and filing necessary tax forms to Federal and State authorities.

**E.   PARTICIPANT ADDRESS SEARCHES - $5 PER PARTICIPANT** (volume discounts apply)

Perform an address search for a missing Plan Participants. The search is performed based on the information provided by the Sponsor (i.e. SSN, name, last known address, DOB, etc). A summary report will be issued to the Sponsor by PenChecks Trust indicating if there are any matches or updates to the current address.

**F.   ADDITIONAL HANDLING FEES**

Additional handling fees may apply depending on the specific elections of a TPA, Plan Sponsor and/or Participant.  Additional Fees may include: ACH Transfer - $20, Wire Transfer - $30, Overnight Mailing - $40, NSF - $25, Reissue Check - $25, Credit Bureau and PI Search – Market Rates (approx. $300), Paper Copies of 1099Rs or Checks - $50 per hour with a one hour minimum.

**G.   AVAILABILITY OF FUNDS**

Funds designated for benefit payments must be made payable to PenChecks Trust Qualified Distribution Trust.  Deposits transmitted by ACH requires 24 hours, wires require 72 hours and checks/draft deposits require a minimum of five business days to clear before a benefit distribution can be processed.

**DISCLOSURES**

Due to factors which are beyond the control of PenChecks Trust, such as the time required for Participants to make benefit elections and/or negotiate their distribution checks, some earnings (float) will occur on the funds to be distributed.  The float is used to defray operating and overhead expenses.  Funds pending distribution are temporarily invested in FDIC insured money market or savings instruments.  Since the time factors are different for each Plan and the rate of return on money market investments varies, it is not possible to calculate the precise amount of float that will be generated by any given deposit held for distribution.  Based upon averages derived from the processing of thousands of distributions, use of the following formula will produce an average amount of float for each $1,000 deposited for distribution processing:  Average Daily Interest Rate of 0.0000164 x $1,000 x 5 days of float on average = $0.08 per $1,000 deposit.

The National Registry of Unclaimed Retirement Benefits (NRURB) is a wholly-owned, open-use, public benefit company committed to helping individuals locate their lost or abandoned pension benefit distributions. As a public benefit corporation, the NRURB is non-profit.  Additional information can be found at www.UnclaimedRetirementBenefits.com.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
2049 Century Park East, Ste. 2600, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled (*specify*): **STIPULATION BETWEEN CHAPTER 7 TRUSTEE AND PENCHECKS TRUST COMPANY OF AMERICA REGARDING FINAL WIND-DOWN AND DISSOLUTION OF DEBTOR'S 401(k) PLAN** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) September 4, 2020, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) September 4, 2020, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) September 4, 2020, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Via Email

CCO at PenChecks
Mike McWherter, JD-
MMcWherter@PenChecks.com

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| September 4, 2020 | Julie King | /s/ Julie King |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                                    **F 9013-3.1.PROOF.SERVICE**

76214-00002/3855315.1

**1**.   <u>**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**</u>:

- Keith Patrick Banner     kbanner@greenbergglusker.com, sharper@greenbergglusker.com;calendar@greenbergglusker.com
- Robert D Bass     bob.bass47@icloud.com
- Magdalena R Bordeaux     mbordeaux@publiccounsel.org
- Shawn M Christianson     cmcintire@buchalter.com, schristianson@buchalter.com
- Sheryl K Ith     sith@cookseylaw.com, sith@ecf.courtdrive.com
- Jeffrey A Krieger     jkrieger@ggfirm.com, kwoodson@greenbergglusker.com;calendar@greenbergglusker.com;jking@greenbergglusker.com
- David W. Meadows     david@davidwmeadowslaw.com
- Kevin Meek     kmeek@robinskaplan.com, kevinmeek32@gmail.com;kmeek@ecf.inforuptcy.com
- Christopher E Prince     cprince@lesnickprince.com, jmack@lesnickprince.com;cprince@ecf.courtdrive.com
- Jason M Rund (TR)     trustee@srlawyers.com, jrund@ecf.axosfs.com
- Daniel C Sharpe     , daniel.c.sharpe@me.com
- Matthew N Sirolly     msirolly@dir.ca.gov
- United States Trustee (LA)     ustpregion16.la.ecf@usdoj.gov
- Andy C Warshaw     awarshaw@bwlawcenter.com, ecf@bwlawcenter.com
- Genevieve G Weiner     gweiner@sidley.com, laefilingnotice@sidley.com;genevieve-weiner-0813@ecf.pacerpro.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                                **F 9013-3.1.PROOF.SERVICE**

76214-00002/3855315.1