Philip D. Dracht (219044)
THE LAW OFFICE OF PHILIP DRACHT
15 W. Carrillo St.
Santa Barbara, CA 93202
pdracht@drachtlaw.com
Telephone:   (805) 979-8802
Facsimile:   (805) 613-6607

Attorney for Plaintiff Jason M. Rund,
Chapter 7 Trustee

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:19-bk-23085-BB |
| YOUTH POLICY INSTITUTE, INC., | Chapter 7 |
| Debtor. | Adv. No. |
| JASON M. RUND, Chapter 7 Trustee | **TRUSTEE'S COMPLAINT FOR** |
| Plaintiff, | 1. **Negligence** |
| | 2. **Unjust Enrichment** |
| vs. | 3. **Breach of Fiduciary Duty** |
| | 4. **Breach of Charitable Trust** |
| DIXON SLINGERLAND; STEVEN | 5. **Fraud** |
| SCHULTZ; SUZANNE STEINKE; | 6. **Conversion** |
| SUZANNE M. STEINKE A | 7. **Receiving Embezzled Funds** |
| PROFESSIONAL CORPORATION; HILL | 8. **Cal. Bus. & Prof. Code § 17200** |
| MORGAN AND ASSOCIATES, LLP | 9. **Unjust Enrichment** |
| | 10. **Receiving Embezzled Funds** |
| Defendants | 11. **Professional Negligence** |
| | |
| | Date:     SEE SUMMONS |
| | Time:     SEE SUMMONS |
| | Place:    SEE SUMMONS |

Plaintiff JASON M. RUND, the Chapter 7 trustee ("Plaintiff" or the "Trustee") of the

bankruptcy estate of YOUTH POLICY INSTITUTE, INC., (the "Debtor" or "YPI"), alleges as

follows:

1

**JURISDICTION AND CASE BACKGROUND**

1.    This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157 and 1334. This action is commenced under 11 U.S.C. §§ 105, 323, and 541. This action is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), and (O). This action arises in a case under Chapter 7 of title 11 of the United States Code entitled *In re YOUTH POLICY INSTITUTE, INC.*, which has been assigned number 2:29-bk-23085-BB and is pending in the United States Bankruptcy Court, Central District of California, Los Angeles Division (this "Court"). Plaintiff consents to the entry in this action of final orders or judgment by this Court.

**THE PARTIES**

2.    Plaintiff is the duly appointed and acting chapter 7 trustee of the bankruptcy estate of the Debtor. Upon the Debtor's commencement of this bankruptcy case, all causes of action held by the Debtor, including all causes of action alleged herein, became the property of the Debtor's bankruptcy estate under 11 U.S.C. § 541(a). Plaintiff brings this action solely in his capacity as the Chapter 7 trustee for the Debtor's bankruptcy estate under 11 U.S.C. § 323.

3.    Defendant DIXON SLINGERLAND ("Slingerland,") is an individual. Slingerland was the former CEO of YPI from 1996 inception through 2019 when he was fired. Plaintiff is informed and believes that Slingerland resides at 4247 Camellia Ave, Studio City, CA 91604.

4.    Defendant SUZANNE STEINKE ("Steinke") is an individual. Ms. Steinke was married to Slingerland at all times relevant herein. Plaintiff is informed and believes that Ms. Steinke resides at 4247 Camellia Ave, Studio City, CA 91604. Plaintiff is informed and believes and thereon alleges that Steinke incorporated and operates Defendant SUZANNE M. STEINKE A PROFESSIONAL CORPORATION, a California corporation with an entity address registered with the California Secretary of State at 2049 Century Park East, 18TH Floor, Los Angeles CA 90067.

5.    DEFENDANT STEVEN SCHULTZ ("Schultz") is an individual. Schultz was the Chief Financial Officer of YPI from 2015 through 2019. Plaintiff is informed and believes that Schultz resides at 2102 Manning Avenue, Los Angeles CA 90025.

6.    DEFENDANT HILL, MORGAN AND ASSOCIATES, LLP ("Hill, Morgan and

1   Associates") is a California Limited Liability Company. Hill, Morgan and Associates was the

2   independent auditor for YPI for the fiscal years of 2013 through 2017. Hill, Morgan and Associates

3   is registered with the California Board of Accountancy as having an address at 19602 Fariman

4   Drive, Carson CA 90746.

5   **GENERAL ALLEGATIONS**

6   7.      YOUTH POLICY INSTITUTE, INC., was founded in 1983 as a 501(c)(3) nonprofit

7   corporation that is organized and existing under the laws of the District of Columbia and was

8   registered as a foreign corporation qualified to do business in California. YPI was dedicated to

9   eradicating poverty by providing critical education, housing, and job training services throughout

10  Los Angeles' highest-need communities. According to YPI's bylaws, the organization was

11  organized to operate exclusively for charitable and educational purposes:

12  > The corporation's primary purpose will be to increase economic opportunities
    > through support services including job training and placement to low-income
13  > residents within the Los Angeles area, including Pacoima, North Hollywood, Van
    > Nuys, and Hollywood. These communities are characterized by high rates of
14  > poverty and a significant Latino population.
    > To empower young people through citizenship education;
15  > To provide leadership development opportunities for young people; and
    > To offer education and technology programs within the Los Angeles area.
16

17  8.      In 1996, YPI transferred from Washington D.C. to Los Angeles. During all relevant

18  times alleged herein, YPI had its principal place of business in Los Angeles. YPI operated after-

19  school and extra-curricular programs at nearly 100 sites across Los Angeles, serving tens of

20  thousands of youths and adults.

21  9.      YPI was funded primarily through government grants, including from the United

22  States Department of Education ("DOE"), the California Department of Education ("CDE"), and

23  the United States Department of Labor ("DOL," and collectively with the DOE and CDE, the

24  "Government Agencies"), in addition to contributions from private donors.

25  10.     Dixon Slingerland served as the President and CEO of YPI from 1996 through 2019.

26  Plaintiff is informed and believes and thereon alleges that during that time, and particularly during

27  the period of January 3, 2014, through December 17, 2018, and contrary to his statutory duties of

28  care, loyalty, and obedience to the mission of YPI, Slingerland undertook a series of actions to

exploit that position for his benefit and that of his family. The effect has been to divert millions of dollars away from the charitable mission, imposing substantial reductions in its expenditures for core program services. This was in direct violation of YPI's bylaws:

> No part of the net earnings of the corporation shall inure to the benefit of or be distributable to its directors, officers, or other private persons, except that the corporation shall be authorized and empowered to pay reasonable compensation for services rendered to the corporation, to reimburse for expenses incurred in the performance of such services, and to make payments and distributions in furtherance of the purposes set forth in Article II hereof.

11.     In his role as President and CEO of YPI, Slingerland had significant discretion and authority approving reimbursements, approving travel expenses, approving contributions, hiring, promoting, and retaining YPI employees, in nominating directors to YPI's Board of Directors (the "Board"), and in contracting with vendors. Slingerland had a fiduciary obligation to exercise that discretion and authority in the best interests of the organization. Instead, Plaintiff is informed and believes and thereon alleges that Slingerland exercised that discretion for his own benefit.

12.     Under YPI policy and procedures, as CEO, Slingerland had the following fiscal and accounting responsibilities, and accordingly the fiduciary duty to exercise discretion and authority in the best interest of the organization in the exercise of the following duties:

       (a)     Reviews and approves all financial reports including cash flow projection;

       (b)     Sees that an appropriate budget is developed annually;

       (c)     Reviews and signs all issued checks over $25,000 and approves check-signing privileges;

       (d)     Reviews and approves all contracts for Sub-Contractors and Sub-Recipients;

       (e)     Reviews and approves all grant submissions; and

       (f)     Oversees the adherence to all internal controls

13.     Among the senior YPI executives that Slingerland handpicked to facilitate his misuse of charitable assets was Defendant Schultz, who was YPI's CFO from 2015 through 2019. Like Slingerland, Plaintiff is informed and believes and thereon alleges that Schultz regularly ignored or overrode the bylaws and internal policies and procedures that he was charged with enforcing. As a result of Schultz regularly ignoring and overriding bylaws, policies, and

1  procedures, charitable assets were diverted to benefit Slingerland. As the CFO, Schultz had the

2  following fiscal and accounting responsibilities, and accordingly the fiduciary duty to exercise

3  discretion and authority in the best interest of the organization in the exercise of the following

4  duties:

5          (a)        Approves all program expenditures that are greater than $2,500;

6          (b)        Monitors program budgets;

7          (c)        Reviews and manages cash flow;

8          (d)        Reviews and approves all reimbursements and fund requests;

9          (e)        Processes all inter-account bank transfers;

10          (f)        Assists Executive Director/COO with the development of annual and

11  program budget;

12          (g)        Monitors grant reporting and appropriate release of temporarily restricted

13  funds;

14          (h)        Oversees expense allocations;

15          (i)        Initiates donor thank you letter acknowledgements; and

16          (j)        Reviews all financial reports.

17        14.      Among other parties that Slingerland handpicked to facilitate his misuse of

18  charitable assets was Hill, Morgan and Associates. As a nonprofit receiving money from the federal

19  government, during the period at issue, 2014-2018, YPI was subject to the Single Audit Act of

20  1984, as amended in 1996. The Single Audit Act ensures that organizations receiving federal grants

21  use the funds in compliance with the federal government's requirements. The Act refers to a

22  "single audit" because it consolidates multiple individual audits of non-federal entities required for

23  each federal award into a single audit. The stated purpose of the law is to promote sound financial

24  management of government funds by non-federal organizations, promote uniform guidelines for

25  audits, and reduce burdens on government and nonprofits by promoting "efficient and effective use

26  of audit resources."

27        15.      In December of 2014, the OMB issued Uniform Administrative Requirements, Cost

28  Principles, and Audit Requirements, which combines what had been previously contained in eight

1  separate OMB Circulars related to grants into a single set of rules known as the Uniform Guidance.

2      16.    These rules create a highly regulated audit procedure for nonprofits such as YPI to

3  comply with for purposes of satisfying the Single Audit Act. Specifically, for executive

4  compensation, YPI was required by statute and regulation to disclose the total compensation of

5  executives such as Slingerland, which included salary and bonus, earnings for services under non-

6  equity incentive plans, and other compensation.

7      17.    YPI engaged in an annual outside auditor, Hill, Morgan and Associates to prepare

8  an annual audit and to prepare reports and returns that were filed with Government Agencies, such

9  as its annual Internal Revenue Service ("IRS") Form 990's. From fiscal years 2015 through 2018,

10 Hill, Morgan and Associates audited the financial statements of YPI, and the related statements of

11 activities, functional expenses, and cash flows and related notes. While for any experienced auditor,

12 employee expenses provide an early warning sign for potential accounting problems, Hill, Morgan

13 and Associates' audits for fiscal years 2015-2016, 2016-2017, found no red flags amid the errors,

14 inaccuracies, and inconsistencies found in the expense reports for Slingerland.

15 **Department of Education Onsite Monitoring Report**

16     18.    On December 4-6, 2018, the DOE performed a site visit, focusing on YPI's Full

17 Service Community Schools Grant, and issued an Onsite Monitoring Report on February 15, 2019,

18 identifying several significant systemic organization-wide concerns regarding improper financial

19 management, the lack of an established creditable financial management system, weak internal

20 controls, and the inadequacy of YPI's operations and grants management. As a result, the DOE

21 designated YPI a "high-risk grantee" and put specific conditions on all grants YPI received from

22 the Department.

23     19.    In determining that YPI was a high-risk grantee, the Department cited "the

24 magnitude of the potential gross mismanagement of public funds;" "an unreliable and grossly

25 inadequate financial management system (e.g., unavailable general ledger system and inability to

26 readily identify source(s) used to purchase systems);" "poor organizational management and

27 operations;" and "concerns regarding YPI's lack of established internal controls."

28     20.    After seven consecutive "clean" audits by Hill, Morgan and Associates, the Board of

1  YPI, all of whom served as volunteers except for Slingerland, determined to rotate the auditor for

2  the 2017-2018 audit.

3      21.    The Board selected Armanino LLP ("Armanino") as YPI's auditor for the 2017-

4  2018 fiscal year (the "Audit").

5      22.    On April 10, 2019, Armanino raised concerns to the Chairs of the Board and the

6  Audit Committee (the "Chairs") regarding (a) expenses incurred by and reimbursed to Slingerland,

7  and (b) the accounting and reporting practices related to a grant funded by the DOE and

8  administered by the CDE; the issues identified by Armanino in connection with the Audit had not

9  been identified or reported to the Chairs, the Board or any other directors by YPI's prior auditor

10  Hill, Morgan and Associates or YPI's Chief Financial Officer, Steven Schultz.

11      23.    In April 2019, as a result of the concerns raised by Armanino and the DOE in their

12  Onsite Monitoring Report, the Board of YPI formed a "Special Committee," which retained the law

13  firm of Covington & Burling, LLP ("Covington") to serve as counsel to the Special Committee, on

14  a pro bono basis. Covington then retained Grobstein Teeple, LLP ("Grobstein") to conduct a

15  forensic audit of Mr. Slingerland's expenses from July 1, 2017, through July 31, 2018. Following

16  unsatisfactory responses and documentation from Mr. Slingerland, the Special Committee

17  expanded its review to the period of 2014 through 2019.

18      24.    Meanwhile, in response to the Onsite Monitoring Plan by the DOE issued February

19  15, 2019, YPI submitted a corrective action plan to the DOE on March 21, 2019, and further

20  revised that plan on May 31, 2019.

21      25.    On September 27, 2019, in response to YPI's corrective action plan, the DOE issued

22  its findings (the "DOE Findings"), designating YPI as a "high-risk grantee, and imposing specific

23  conditions on all grants received by YPI from the DOE.

24      26.    The DOE Findings found, among other things, that "YPI has not prepared and put in

25  place the internal controls and management structures needed to properly administer Federal

26  grants." The DOE cited YPI's failure to produce a general ledger as particularly troublesome: "This

27  critical concern demonstrates YPI's lack of an established, reliable and credible financial system

28  and poor financial management structure." A copy of the DOE Findings, dated September 27,

1    2019, designating YPI as a "high-risk grantee," is attached as **Exhibit A.**

2          27.    The DOE Findings further found that:

3    Given these serious and deeply systemic concerns, which impact YPI on an
     organization-wide basis, the Department is taking immediate action to safeguard
4    public funds while working with YPI to determine, and if applicable, verify, its
     ability to carry out the approved activities within the Department's grants in
5    accordance with statutory and regulatory requirements, and the terms of its approved
     grant applications, and in grants for which it is a primary subcontractor.

6

7          28.    Because of the nonexistent and failing financial controls, the DOE placed YPI on a

8    "route payment" status, which meant YPI would only receive grant funds on a cost-reimbursement

9    basis.

10         29.    On October 15, 2019, shortly after the DOE Findings were issued, Armanino

11   provided a report of the Financial Statements and Single Audit Report and schedule for the Fiscal

12   Year ending in 2018. Some of the relevant findings of Armanino contained in thirteen (13)

13   different notes were as follows:

14         (a)    YPI had noncompliance conditions and significant liabilities regarding

15   certain contracts with the California Department of Education and the U.S. Department of

16   Education;

17         (b)    There were significant issues and deficiencies related to the adequacies of

18   controls and the fairness of financial statement preparation in connection with the audit of the fiscal

19   year ending June 30, 2018;

20         (c)    Certain transactions had been improperly recorded in prior years due to

21   inadequate controls over financial reporting and grant management;

22         (d)    YPI made unauthorized payments to its former President and CEO;

23         (e)    YPI did not follow its internal policies regarding reimbursement for

24   expenses by management (Slingerland);

25         (f)    Improperly recording revenues;

26         (g)    Improperly reporting and monitoring accounts receivables;

27         (h)    Improper controls regarding cash accounts;

28         (i)    Violations of California Nonprofit Integrity Act and IRS code and

1    regulations regarding executive compensation;

2    30.    The Audit and the work by the Special Committee and Grobstein stripped the façade

3    from this organization purportedly dedicated to eradicating poverty. What became apparent upon

4    close examination was that YPI was being used, at least in part, as a conduit to siphon funds from

5    YPI's stated purpose and into Mr. Slingerland's personal pockets.

6    31.    Following the five-year review of expense reports from January 3, 2014, through

7    December 17, 2018, the Special Committee found, and Plaintiff is informed and believes and

8    thereon alleges that Mr. Slingerland used YPI's funds and sought reimbursement for unauthorized

9    and personal expenditures, in violation of YPI policy and IRS rules and regulations, including but

10   not limited to:

11                i.    An auto allowance of $87,000, which was not supported by documentation;

12                ii.    Unreported and unauthorized employee benefits, including contributions to

13                the pension plan organized by "Suzanne M. Steinke, a Professional Corporation"

14                out-of-pocket medical costs, housing allowance, and premiums for medical

15                insurance, none of which was reported on YPI's Internal Revenue Service ("IRS")

16                Form 990's;

17                iii.    Partisan and illegal political contributions and lobbying expenditures, to

18                federal committees that are not exempt under Internal Revenue Code § 501(c)(4);

19                iv.    Purported charitable donations that were made on behalf of Slingerland and

20                Steinke rather than YPI and that were not aligned with the mission and financial

21                needs of YPI, including to Stanford University, the alma mater of Slingerland and

22                Steinke, the Grammy Museum, the Oakwood School, which Plaintiff is informed

23                and believes was the private school where one of Slingerland's and Steinke's

24                children attended, and the Hollywood Schoolhouse, which Plaintiff is informed and

25                believes was the private school where one of Slingerland's and Steinke's children

26                attended, and which Steinke was on the Board of Trustees. Grobstein estimated that

27                Mr. Slingerland used $236,259.90 of YPI funds to make charitable donations for his

28                and Mrs. Steinke's benefit.

v.    Lavish dining, events, travel, and entertainment, such as Coachella tickets, luxury hotels in Barbados and other places, and the purchase of expensive wines, without adequate documentation to support a legitimate business purpose;

vi.    Personal expenses such as tuition and fees for Slingerland's and Steinke's children's private schooling;

vii.    Lavish expenses for Slingerland's home, which Plaintiff is informed and believes is co-owned by Mr. Slingerland and Mrs. Steinke, including but not limited to costs associated with redecorating their home, expenses for furniture for their home office, and other expenses that were not aligned with the mission and financial needs of YPI;

viii.    Property tax payments on the Slingerland and Steinke home,

ix.    Lavish travel for Slingerland, Steinke, and their two children and others to, among other locations, Singapore, London, Tokyo, New York, St. Maarten, San Francisco, Washington D.C., using American Express ("AMEX") travel points generated by charges passed on or paid by YPI. During the five-year review period, Grobstein estimated that Mr. Slingerland had around $423,833.39 that was either paid by YPI or paid using YPI resources in the form of AMEX travel points.

A copy of the report of unauthorized transactions prepared by Grobstein, which is incorporated herein, is attached as **Exhibit B**.

32.    At that time, Grobstein estimated that the losses incurred by YPI as a result of Mr. Slingerland's wrongful use of YPI's funds totaled $1,926,030.43, including the value of $155,68.93 in AMEX travel points.

33.    YPI's Bylaws prohibited such payment to Slingerland unless authorized by the Board:

No member, director, officer, or employee of the corporation, or advisor to the corporation, or other private person shall receive any money from the corporation or any part of the net earnings of the corporation except that the corporation is authorized and empowered to pay reasonable compensation for services actually rendered to the corporation, to reimburse for expenses incurred in the performance of such services, and to make payments and distribution in furtherance of the purposes set forth in Article II hereof, when such payments are authorized by Board

10

1    of Directors.

2    34.    Similarly, Slingerland's contributions to third parties, including charities and

3    politicians, and other political advocacy groups are prohibited by YPI's bylaws:

4    The corporation shall not make any contribution, contribution-in-kind or
     independent expenditure unless specifically authorized by the Board of Directors.
5    The Board of Directors may delegate this responsibility in whole or in part to one or
     more directors or the President & CEO as it deems appropriate.

6

7    35.    And while approval for such contributions could be given orally, the bylaws require

8    written documentation of such approval, which, Plaintiff is informed and believes did not occur:

9    "Approval by the Board or its delegate(s) may be given orally to the President & CEO, or Treasurer

10   provided a written memorandum of such approval is placed in the corporate records by the person

11   to whom such approval is conveyed."

12   36.    In its annual IRS Form 990 filings, YPI reported the following breakdown of

13   Slingerland's compensation for the return years of 2014 through 2017:

| Return Year Ending June | Reportable Compensation | Bonus & Incentive Compensation | Other Reportable Compensation | Retirement and other deferred Compensation | Nontaxable Benefits | Total Compensation |
|---|---|---|---|---|---|---|
| 2013 | $295,000 | $0 | $0 | $0 | $0 | $295,000 |
| 2014 | $350,000 | $0 | $0 | $0 | $0 | $350,000 |
| 2015 | $350,087 | $0 | $0 | $0 | $0 | $350,087 |
| 2016 | $358,269 | $0 | $0 | $0 | $0 | $358,269 |
| 2017 | $358,269 | $0 | $38,000 | $0 | $0 | $396,269 |

24   These representations, prepared by Hill, Morgan and Associates and certified by Defendant

25   Slingerland, were false.

26   37.    Plaintiff is informed and believes that an authorized committee of the Board did not

27   review and approve the unauthorized expenditures, including benefits, of Slingerland or to Steinke

28

1   to determine if they are just and reasonable.

2       38.    YPI's compensation disclosures in its IRS 990's as they related to Slingerland

3   falsely represented the following: "THE BOARD REVIEWED YPI CEO'S COMPENSATION.

4   THE BOARD REVIEWED DATA OF COMPARABLE COMPENSATION FOR SIMILARLY

5   QUALIFIED NONPROFIT EXECUTIVES. THE OCCURRENCE OF THESE

6   DELIBERATIONS ARE NOTED IN THE BOARD MINUTES." But Slingerland's compensation

7   far exceeded the stated amount due to the improper reimbursement and use of YPI resources. No

8   minutes of the Board record any such deliberations. In Armanino's 2018 audit, note 2018-007, the

9   auditor explained as follows:

10      Prior to, during FY 2017/18, and subsequently, the compensation packages of the
    CEO and CFO were annually reviewed by the Finance Committee and then
11  presented by that Committee to the Board for approval with documentation to
    support its recommendations, but, unknown to the Board, without management
12  providing comprehensive information about the components of the compensation
    package of the CEO. Data was collected by the Board to substantiate that the base
13  compensation levels were appropriate for the size of the organization and the scope
    of the individuals' responsibilities and performance. In future periods, the entire
14  compensation packages of the CEO and the CFO, including benefits, expense
    reimbursement levels and required documentation, as well as bonuses, if any, and
15  non-cash compensation, will be reviewed annually by the Finance Committee or
    other appropriate committee and then the Board. Management will provide accurate
16  and comprehensive information on the compensation packages for the CEO and the
    CFO, subject to verification. Data will continue to be collected to substantiate that
17  compensation levels are appropriate for the size of the organization and the scope of
    the individuals' responsibilities and performance. The Finance Committee or other
18  appropriate committee will continue to document its recommendations and present
    them to the Board for approval.

19

20      39.    Consequently, YPI's filings with state and federal agencies included false or

21  misleading statements relating to compensation and benefits conveyed to top employees and

22  officers. For example, the IRS requires that certain employment benefits provided to persons listed

23  on the IRS Form 990 Part VI as officers or highly compensated employees be reported on Schedule

24  J. The required benefit disclosures include "first-class or charter travel," "travel for companions,"

25  and health or social club dues. On Schedule J to the 2017 IRS Form 990, YPI represented that it did

26  not provide first-class travel, travel for companions, discretionary spending account, housing

27  allowance or residence for personal use, payments for business use of personal residence, or

28  personal services. For each such benefit, YPI represented that the "organization follow(ed) a

1 written policy regarding payment or reimbursement or provision of all the expenses" listed. This

2 representation, certified by Slingerland, was false.

3       40.     In its Impact Reports, targeted at private donors and others, YPI advertised itself as

4 "breaking the cycle of intergenerational poverty by providing access to education, workforce

5 training, and essential services for youth and families." In soliciting donations, YPI characterized

6 that support in its 2016 report as "an investment in the children and families we serve," claiming

7 that 93% of YPI's operating budget went directly to program services. Based on its Form 990 for

8 the fiscal year ending June 30, 2016, and notwithstanding the 990's failure to report hundreds of

9 thousands of dollars paid to Slingerland in executive compensation and other benefits, YPI's 2016

10 Impact Report made misrepresentations regarding uses of funds, including the amount spent on

11 program services, management, and fundraising expenses.

**DISBURSEMENTS IN VIOLATION OF GRANT TERMS**

13       41.     In addition to the auditor's concerns regarding Mr. Slingerland's expenditures,

14 Armanino raised concerns regarding the accounting and reporting related to a government grant

15 from the 21st Century Community Learning Centers Program (the "21st Century Program"), which

16 was funded by the DOE and administered by the CDE (the "21st Century Grant"). The 21st Century

17 Grant was a significant source of funding for YPI, amounting to over $15 million in the fiscal year

18 2017-2018.

19       42.     The 21st Century Program required recipients, including YPI, to submit four

20 quarterly expenditure reports each year that require information about the expenses for the

21 programs incurred in the prior reporting period. The amount of the 21st Century Grant funds

22 awarded by the CDE in future years is based in part upon the figures identified in the quarterly

23 reports.

24       43.     During the Special Committee's review of Mr. Slingerland's expenses, the Special

25 Committee discovered evidence indicating that Mr. Slingerland had directed that YPI overstate its

26 expenses on the quarterly reports to CDE. The submissions to CDE related to the 21st Century

27 Grant reported the budgeted program expenses (i.e., what YPI had projected in applying for the

28 grant) rather than the actual expenses incurred by the programs.

44.    When Armanino completed the Audit, it reported that $960,000 in expenses attributed to the grant were not actual, allowable expenses attributable to the 21st Century Grant in the fiscal year 2017-2018 and $1.3 million in the fiscal year 2016-2017.

45.    During the Special Committee's investigation of Mr. Slingerland's expenses, the Special Committee discovered evidence that Mr. Slingerland had directed two disbursements of funds from a grant administered by the DOL—the two disbursements from the DOL totaled over $600,000, and although the funds had been granted for an employment re-entry program, that program had not incurred any expenses, causing YPI to violate the grant terms.

**TERMINATION AND RESIGNATION OF SLINGERLAND AND SCHULTZ**

46.    On September 16, 2019, the Board voted to terminate Mr. Slingerland as YPI's Chief Executive Officer;

47.    On September 20, 2019, YPI's Chief Financial Officer, Mr. Schultz, resigned;

48.    On September 26, 2019, YPI notified the Government Agencies of Mr. Slingerland's improper expenditures and potential compliance issues with record-keeping and cost-accounting related to the government grants.

49.    On October 3, 2019, YPI filed a voluntary disclosure to the Federal Election Commission regarding Mr. Slingerland's use of YPI's funds to make political contributions in his name.

50.    In response to YPI's self-reporting to the Government Agencies and the release of Armanino's audit report, multiple public and private funders visited sites, requested additional financial information, and/or indicated that funds due to be paid YPI under the grants would not be immediately paid pending further investigation.

51.    On October 11, 2019, because of the dire financial situation illuminated by the nearly-finished independent Audit, YPI laid off 26 employees.

52.    On October 17, 2019, Armanino completed and released its Audit of YPI's 2017-2018 fiscal year. The Audit concluded, among other things, that: (i) YPI incurred a net loss of $1,326,803 for the fiscal year ended June 30, 2018; (ii) YPI's current liabilities exceeded its current assets by $3,724,192; and (iii) the losses incurred by YPI and the noncompliance with grant

1   conditions created "substantial doubt" about YPI's ability to continue as a going concern.

2       53.     Because YPI had been placed on a "route payment" or cost reimbursement basis for

3   receiving grant funds from the DOE, it could not continue on an ongoing basis.

4       54.     On October 25, 2019, YPI transferred many of its after-school programs, closed its

5   doors, and ceased operations.

6       55.     On November 5, 2019 (the "Petition Date"), YPI filed a voluntary petition for relief

7   under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code"), Case No. 2:19-bk-

8   23085-BB.

9       56.     On the Petition Date, Plaintiff Jason M. Rund was duly appointed as the Chapter 7

10  trustee for the Debtor's estate and continues to serve in that capacity for the benefit of creditors.

11                              **APPLICABLE LAW**

12      57.     Although YPI was organized under the law of the District of Columbia, YPI had

13  little to no contact with the District of Columbia.

14      58.     YPI and Defendant Slingerland actively solicited donations from Californians. YPI

15  regularly received substantial donations from Californians. YPI conducted its charitable programs

16  and services in California and targeted Californians with programs and services. YPI's directors,

17  officers, employees performed work in California as its principal place of business was in Los

18  Angeles California. YPI further held property in California. Most of the wrongdoings alleged

19  herein occurred in California.

20      59.     The Supervision of Trustees and Fundraisers for Charitable Purposes Act's

21  registration and reporting requirements apply to persons and entities that conduct business or hold

22  charitable assets in or from California. Accordingly, YPI was registered with the State of California

23  Office of the Attorney General Registry of Charitable Trusts, State Charity Registration Number

24  121808.

25      60.     Given the little to no contact with the District of Columbia and the vital California

26  interests at stake, such as protecting California residence from harmful conduct, including

27  protecting the assets meant for California beneficiaries, California law applies. See, e.g., *Am. Ctr.*

28  *for Educ., Inc. v. Cavnar*, 145 Cal. Rptr. 736, 743 (Ct. App. 1978) ("Where a charity has been

1  organized by California residents, is located in this state and has all of its assets and most of its

2  activity here, we believe that actions taken in California concerning the administration of that

3  charity should not escape the scrutiny of California law merely because the founders chose to

4  incorporate elsewhere.").

5  **FIRST CLAIM FOR RELIEF**

6  **(Negligence)**

7  (Against Defendants Slingerland and Schultz)

8  61.    Plaintiff refers to and incorporates herein by reference each allegation contained

9  above, as though fully set forth herein.

10  62.    At all times relevant, Slingerland and Schultz voluntarily undertook the duties and

11  responsibilities of directors and/or officers of YPI. The voluntary undertaking of these duties and

12  responsibilities created a duty on the part of these Defendants to exercise due care in the

13  performance of those duties and responsibilities.

14  63.    Slingerland and Schultz breached the duty of care they owed to YPI by committing

15  the actions and omissions set forth above and committing other actions and omissions of which

16  Plaintiff is currently unaware.

17  64.    Plaintiff is informed and believes and thereon alleges that as a proximate result of

18  the breach of the duty of care which defendants owed to YPI as alleged in this cause of action and

19  as a result of the failure of these Defendants to operate YPI in the manner required by law;

20  government grants and charitable assets have been improperly diverted from charitable

21  beneficiaries.

22  65.    As a result of that breach of duty, YPI, its creditors, and the public beneficiaries of

23  charity have been injured, in the aggregate, in an amount presently unknown to Plaintiff but

24  estimated to be no less than $1,926,030.43.

25  66.    As a result of that breach of duty, the DOE identified YPI as a "high-risk grantee,"

26  placing all payments on a "route payment" or cost-reimbursement basis, which froze YPI's

27  funding, forcing YPI to cease operations, be unable to pay its creditors and to declare bankruptcy.

28  Consequently, YPI and its creditors have been injured, in the aggregate, of $14,245,518.72, with

$5,302,693.98 in secured claims, and $971,948.94 in priority claims.

**SECOND CLAIM FOR RELIEF**

**(Unjust Enrichment/Wrongful Acquisition of Property**

**in Violation of Cal. Civil Code § 2224)**

(Against Defendant Slingerland)

67.    Plaintiff refers to and incorporates herein by reference each allegation contained above, as though fully set forth herein.

68.    Plaintiff is informed and believes and thereon alleges that the Board of YPI fixed the compensation of Slingerland and had no other obligation, otherwise valid, to pay compensation to Slingerland beyond that which it had agreed.

69.    Plaintiff is informed and believes and thereon alleges that Slingerland acquired the excessive and unreasonable total compensation as a result of the breach of trust by Slingerland. The total amount of excessive and unreasonable compensation paid to Slingerland is presently unknown but is believed to be at least $1,926,030.43.

70.    As a result of the breach of trust, Slingerland was unjustly enriched and YPI's charitable beneficiaries and creditors were injured. Because of the breach of trust, Slingerland holds all excessive and unreasonable compensation he received from YPI as a constructive trustee for the benefit of YPI. Slingerland must make full restitution by paying all such compensation back to YPI, for the benefit of YPI's creditors.

**THIRD CLAIM FOR RELIEF**

**(For Breach of Fiduciary Duty)**

(Against Defendant Slingerland and Schultz)

71.    Plaintiff refers to and incorporates herein by reference each allegation contained in all paragraphs above, as though fully set forth herein.

**SLINGERLAND**

72.    Slingerland breached his fiduciary duties of loyalty, care, and obedience to YPI by using his powers as an officer and director of YPI to obtain illegal compensation and benefits, to convert YPI funds for his own benefit, and to dominate, control, and direct YPI to obtain the

private benefit for himself, his family members, including Defendant Steinke, in contravention of YPI bylaws, policies and procedures, and applicable laws.

73.     Plaintiff is informed and believes and thereon alleges that Slingerland's breaches of fiduciary duty have damaged YPI by, among other things,

(a)     Causing its assets to be diverted for non-YPI purposes and be wasted, and by exposing YPI to liability for failure to report taxable income, including but not limited to:

i.     Seeking and receiving reimbursement for an unauthorized auto allowance;

ii.     Seeking and receiving reimbursement for partisan and illegal political contributions and lobbying expenditures, to federal committees that are not exempt under Internal Revenue Code § 501(c)(4);

iii.     Seeking and receiving unreported and unauthorized employee benefits, including contributions to the pension plan organized by Mrs. Steinke, out-of-pocket medical costs, and premiums for medical insurance, none of which was reported on YPI's Internal Revenue Service ("IRS") Form 990's;

iv.     Seeking and receiving reimbursement for purported charitable donations that were made in Mr. Slingerland's and Mrs. Steinke's name rather than YPI's and that were not aligned with the mission and financial needs of YPI;

v.     Seeking and receiving reimbursement for lavish dining, events, travel, and entertainment, such as Coachella tickets, luxury hotels in Barbados and other places, and the purchase of expensive wines, without adequate documentation to support a legitimate business purpose;

vi.     Seeking and receiving reimbursement for personal expenses such as tuition and fees for Slingerland's children's private schooling;

vii.     Seeking and receiving reimbursement for lavish expenses for his home, that Plaintiff is informed and believes is co-owned by Mr. Slingerland and Mrs. Steinke, including but not limited to costs associated with redecorating their home, expenses for furniture for their home office, property tax payments on their

1   home, and other expenses that were not aligned with the mission and financial needs

2   of YPI;

3      viii. Using YPI assets and seeking and receiving reimbursement for lavish

4   travel for Mr. Slingerland, Ms. Steinke, and their two children and others to, among

5   other locations, Singapore, London, Tokyo, New York, St. Maarten, San Francisco,

6   Washington D.C., using AMEX travel points generated by charges passed on or

7   paid by YPI. During the five-year review period, Grobstein estimated that Mr.

8   Slingerland had around $423,833.39 that was either paid by YPI or paid using YPI

9   resources in the form of AMEX travel points;

10     (b) Causing or allowing YPI to fail to withhold payroll taxes;

11     (c) Causing or allowing YPI to fail to report and pay excise taxes due under §

12   4958 of the Internal Revenue Code, and;

13     (d) Causing or allowing YPI to engage in misleading and deceptive solicitation

14   practices, including the dissemination of false information regarding executive

15   compensation to donors and tax authorities;

16     (e) Causing or allowing YPI to make false statements in documents filed with

17   governmental agencies;

18     (f) Causing or allowing YPI to violate its fiduciary duty to use their charitable

19   contributions for the declared charitable purposes for which they are sought in violation of

20   Business and Professions Code §17510.8;

21     (g) Failing to observe corporate formalities as required by law and by YPI's

22   bylaws and policies;

23     (h) Jeopardizing YPI's tax-exempt status and authority to conduct business for

24   failure to comply with regulatory reporting obligations; and

25     (i) Attributing $960,000 in expenses to the 21st Century Grant that were not

26   actual, allowable expenses attributable to the 21st Century Grant.

27     74. At all times relevant herein, Plaintiff is informed and believes and thereon alleges

28   that Slingerland failed to act in good faith, in the best interests of YPI, and with such care as an

1  ordinarily prudent person in a like position would use under similar circumstances.

2      75.    In taking the actions described above, Plaintiff is informed and believes and thereon

3  alleges that Slingerland diverted, dissipated, and created an undue risk to the assets of YPI that

4  might otherwise be used to pay creditor's claims.

5                                **SCHULTZ**

6      76.    Defendant Schultz was the Treasurer and Chief Financial Officer of YPI during the

7  years at issue in the five-year review, and, as an officer of YPI, owes a fiduciary duty towards YPI.

8  Plaintiff is informed and believes and thereon alleges that Schultz failed to discharge his duties as

9  an officer of YPI with the degree of care, skill, prudence, diligence, and undivided loyalty required.

10 Plaintiff is informed and believes and thereon alleges that Schultz breached his fiduciary duties of

11 loyalty, care, and obedience to YPI by allowing the financial process to be manipulated by

12 Slingerland, and failing to follow proper procedures.

13     77.    Plaintiff is informed and believes and thereon alleges that Schultz's breaches of

14 fiduciary duty have damaged YPI by, among other things,

15          (a)    Allowing assets to be diverted for non-YPI purposes and be wasted;

16          (b)    Allowing Slingerland to be reimbursed for an unauthorized auto allowance;

17          (c)    Allowing Slingerland to be reimbursed for partisan and illegal political

18 contributions and lobbying expenditures, to federal committees that are not exempt under Internal

19 Revenue Code § 501(c)(4);

20          (d)    Allowing Slingerland to be provided unreported and unauthorized employee

21 benefits, including contributions to the pension plan organized by Mrs. Steinke, out-of-pocket

22 medical costs, and premiums for medical insurance, none of which was reported on YPI's Internal

23 Revenue Service ("IRS") Form 990's;

24          (e)    Allowing Slingerland and Steinke to be reimbursed for purported charitable

25 donations that were made in Mr. Slingerland's and Mrs. Steinke's name rather than YPI's and that

26 were not aligned with the mission and financial needs of YPI;

27          (f)    Allowing Slingerland to be reimbursed for lavish dining, events, travel, and

28 entertainment, such as Coachella tickets, luxury hotels in Barbados and other places, and the

1  purchase of expensive wines, without adequate documentation to support a legitimate business

2  purpose;

3          (g)     Allowing Slingerland to be reimbursed for personal expenses such as tuition

4  and fees for their children's private schooling;

5          (h)     Allowing Slingerland to be reimbursed for lavish expenses for his home, that

6  Plaintiff is informed and believes is co-owned by Mr. Slingerland and Mrs. Steinke, including but

7  not limited to costs associated with redecorating their home, expenses for furniture for their home

8  office, property tax payments on their home, and other expenses that were not aligned with the

9  mission and financial needs of YPI;

10          (i)      Allowing Slingerland to use YPI assets and be reimbursed for lavish travel

11  for Mr. Slingerland, Ms. Steinke, and their two children and others to, among other locations,

12  Singapore, London, Tokyo, New York, St. Maarten, San Francisco, Washington D.C., using

13  AMEX travel points generated by charges passed on or paid by YPI. During the five-year review

14  period, Grobstein estimated that Mr. Slingerland had around $423,833.39 that was either paid by

15  YPI or paid using YPI resources in the form of AMEX travel points;

16          (j)      Exposing YPI to liability for failure to report taxable income;

17          (k)     Failing to withhold payroll taxes;

18          (l)      Failing to report and have YPI pay excise taxes due under § 4958 of the

19  Internal Revenue Code;

20          (m)     Causing or allowing YPI to engage in misleading and deceptive solicitation

21  practices, including the dissemination of false information regarding executive compensation to

22  donors;

23          (n)     Causing or allowing YPI to make false statements in documents filed with

24  governmental agencies;

25          (o)     Causing or allowing YPI to violate its fiduciary duty to use their charitable

26  contributions for the declared charitable purposes for which they are sought in violation of

27  Business and Professions Code §17510.8;

28          (p)     Failing to observe corporate formalities as required by law and by YPI's

1  bylaws and policies;

2      (q)    Jeopardizing YPI's tax-exempt status and authority to conduct business for

3  failure to comply with regulatory reporting obligations; and

4      (r)    Attributing $960,000 in expenses to the 21st Century Grant that were not

5  actual, allowable expenses attributable to the 21st Century Grant.

6      78.    At all times relevant herein, Plaintiff is informed and believes and thereon alleges

7  that Schultz failed to act in good faith, in the best interests of YPI, and with such care as an

8  ordinary prudent person in a like position would use under similar circumstances.

9      79.    In taking the actions described above, Plaintiff is informed and believes and thereon

10  alleges that Schultz allowed Slingerland to divert, dissipate and create an undue risk to the assets of

11  YPI that might otherwise be used to pay creditor's claims.

12      80.    As a result of that breach of duty, the DOE identified YPI as a "high-risk grantee,"

13  placing all payments on a "route payment" or cost-reimbursement basis, which froze YPI's

14  funding, forcing YPI to cease operations, be unable to pay its creditors and to declare bankruptcy.

15  Consequently, YPI and its creditors have been injured, in the aggregate, of $14,245,518.72, with

16  $5,302,693.98 in secured claims, and $971,948.94 in priority claims.

17      81.    Plaintiff is informed and believes and thereon alleges that Slingerland's conduct was

18  malicious, fraudulent, oppressive, and despicable within the meaning of California law. Plaintiff is

19  therefore entitled to an award of exemplary and punitive damages against Slingerland.

20  **FOURTH CLAIM FOR RELIEF**

21  **(For Breach of Charitable Trust –**

22  **Cal. Corporation Code §§ 7141, 7142, 7238)**

23  (Against Defendant Slingerland and Schultz)

24      82.    Plaintiff refers to and incorporates herein by reference each allegation contained

25  above, as though fully set forth herein.

26      83.    As a nonprofit public benefit corporation, YPI held all of its funds and other assets

27  for charitable purposes. The property of YPI is irrevocably dedicated to charitable purposes and no

28  part of the net income or assets may inure to the benefit of any director, officer, member, or private

purpose.

84.     YPI accepted charitable contributions on behalf of the charitable beneficiaries and creditors of YPI. The acceptance of these donations established a charitable trust and fiduciary duty on the part of Slingerland to ensure that the donations were used for the purposes stated during the solicitation as required by California Business and Professions Code § 17510.8.

85.     Plaintiff is informed and believes and thereon alleges that Slingerland committed breaches of the charitable trust by using charitable assets for other purposes as described above.

86.     Plaintiff is informed and believes and thereon alleges that as the Treasurer and CFO of YPI, Defendant Schultz committee breaches of the charitable trust by signing off and/or allowing the above transactions to occur.

87.     Plaintiff is informed and believes and thereon alleges that as a proximate result of the breaches of trust by Slingerland and Schultz, YPI, YPI's charitable beneficiaries, and YPI's creditors have been damaged in an amount presently unknown to Plaintiff and which cannot be ascertained without an accounting by all Defendants. Plaintiff estimates that the total damages proximately caused by Defendants' actions and omissions exceed $1,926,030.43.

88.     YPI's creditors have a reversionary, contractual, or property interest in the assets subject to a charitable trust.

89.     Plaintiff is informed and believes and thereon alleges that the actions of Defendant Slingerland, as alleged above, were willful, wanton, malicious and oppressive, and were undertaken with the intent to defraud YPI, their donors, their charitable beneficiaries, their creditors, and the general public beneficiaries of charity and thus justify the awarding of exemplary and punitive damages.

## **FIFTH CLAIM FOR RELIEF**

### **(Fraud)**

(Against Defendant Slingerland)

90.     Plaintiff refers to and incorporates herein by reference each allegation contained above, as though fully set forth herein.

91.     Plaintiff is informed and believes and thereon alleges that having voluntarily

1  accepted the trust and confidence reposed in him by the Directors of YPI concerning the financial

2  and other management of YPI, and in violation of this trust and confidence, Slingerland abused the

3  trust and confidence of YPI by, unbeknownst to YPI, including but not limited to, submitting false

4  reimbursement requests, charging YPI on a YPI credit card for items not associated with the

5  purpose of YPI, misrepresenting the nature of transactions and travel as being required or

6  associated with the purpose of YPI, misrepresenting the nature of expenses, travel, contributions to

7  charities, politicians, and other groups as being required or associated with the purpose of YPI, and

8  concealing his use, misappropriating and converting to his personal use and possession without

9  YPI's knowledge or consent, credit card points.

10      92.    Plaintiff is informed and believes and thereon alleges that Slingerland knowingly

11  intended that YPI rely on his misrepresentations and YPI did rely on Slingerland's

12  misrepresentations. Had the omitted information been disclosed, YPI would have behaved

13  differently. As a result of the fraud, YPI and its creditors have been damaged in an amount to be

14  proven at trial. Plaintiff is informed and believes and thereon alleges that Slingerland's

15  concealment and YPI's reliance on Slingerland's misrepresentations were a substantial factor in

16  causing YPI's harm.

17      93.    Because of Slingerland's fraud, the DOE identified YPI as a "high-risk grantee,"

18  placing all payments on a "route payment" or cost-reimbursement basis, which froze YPI's

19  funding, forcing YPI to cease operations, be unable to pay its creditors and to declare bankruptcy.

20  Consequently, YPI and its creditors have been injured, in the aggregate, of $14,245,518.72, with $

21  $5,302,693.98 in secured claims, and $971,948.94 in priority claims.

22      94.    Plaintiff is informed and believes and thereon alleges that Slingerland's conduct was

23  malicious, fraudulent, oppressive, and despicable within the meaning of California law. Plaintiff is

24  therefore entitled to an award of exemplary and punitive damages against Slingerland.

25                          **SIXTH CLAIM FOR RELIEF**

26                              **(Conversion)**

27                          (Against Defendant Slingerland)

28      95.    Plaintiff refers to and incorporates herein by reference each allegation contained

24

1  above, as though fully set forth herein.

2      96.    YPI funds and resources used by Slingerland were and are the property of YPI and

3  designated solely for the furtherance of its non-profit mission. Until the funds were transferred to

4  Slingerland as compensation by way of written approval by the Board, those funds and resources

5  remained the property of YPI.

6      97.    Plaintiff is informed and believes and thereon alleges that the funds and resources

7  transferred and used by Slingerland as described above were the property of YPI and Slingerland

8  had no right to retain or use those funds or resources.

9      98.    Plaintiff is informed and believes and thereon alleges that Slingerland intentionally

10  and substantially interfered with YPI's funds and resources by taking the funds and resources and

11  misappropriating them for his personal use and enjoyment.

12      99.    YPI did not consent in any manner to Slingerland taking the funds and resources at

13  issue for his personal use.

14      100.    Slingerland has not yet returned the funds and resources to YPI.

15      101.    YPI has been damaged in an amount to be proven at trial but no less than

16  $1,926,030.43.

17      102.    Plaintiff is informed and believes and thereon alleges that Slingerland's conduct was

18  malicious, fraudulent, oppressive, and despicable within the meaning of California law. Plaintiff is

19  therefore entitled to an award of exemplary and punitive damages against Slingerland.

20  **SEVENTH CLAIM FOR RELIEF**

21  **(Receiving Embezzled Funds (California Penal Code §§ 503, 496(c))**

22  (Against Defendant Slingerland)

23      103.    Plaintiff refers to and incorporates herein by reference each allegation contained

24  above, as though fully set forth herein.

25      104.    Plaintiff is informed and believes and thereon alleges that in doing the things alleged

26  herein, Slingerland committed theft by way of embezzlement, which is the fraudulent appropriation

27  of property by a person to whom it has been entrusted. See California Penal Code §503.

28      105.    Plaintiff is informed and believes and thereon alleges that Slingerland knew the

1    funds had been stolen at or around the time Slingerland transferred the funds from YPI to himself.

2        106.    Plaintiff is informed and believes and thereon alleges that Slingerland took

3    possession of, concealed, and withheld the stolen funds from YPI

4        107.    YPI has demanded the return of these funds but Slingerland refused.

5        108.    Plaintiff is therefore entitled to receive treble the amount received by the

6    Slingerland, plus costs of suit and attorneys' fees. See *Allure Labs, Inc. v. Markushevska*, 606 B.R.

7    51, 65 (N.D. Cal. 2019).

8                        **EIGHTH CLAIM FOR RELIEF**

9    **(For Engaging in Unfair and Unlawful Competition in Violation of California Business And
Professions Code § 17200, *et seq.*)**

10                    (Against Defendant Slingerland)

11

12        109.    Plaintiff refers to and incorporates herein by reference each allegation contained

    above, as though fully set forth herein.

13

14        110.    Plaintiff is informed and believes and thereon alleges that Defendant Slingerland

    violated California Business and Profession Code §§ 17200 *et seq.*, by engaging in fraud as

15    described above.

16        111.    Plaintiff is informed and believes and thereon alleges that Defendant Slingerland

17    violated California Business and Profession Code §§ 17200 *et seq.*, by engaging in unlawful acts or

18    practices in the conduct of a business, which acts or practices constitute unfair competition within

19    the meaning of § 17200 of the California Business and Professions Code as described above.

20        112.    Such acts or practices include, but are not limited to, violating California Business

21    and Professions Code § 17500, and otherwise making false, deceptive, and misleading statements

22    to donors to induce them to make charitable contributions to YIP. Slingerland also engaged in

23    unfair competition by misappropriating charitable assets and failing to comply with reporting and

24    recordkeeping requirements including, but not limited to, the following:

25        (a)    Misrepresenting, explicitly or implicitly, the percentage or amount of

26    charitable contributions that would go to the donor's designated charity, and/or that any amount

27    would be paid at all, and/or that the represented amount would be paid within a reasonable time;

28

1    (b)  Misrepresenting, explicitly or implicitly, the percentage or amount of

2 charitable contributions that would be used for charitable programs;

3    (c)  Misrepresenting the charitable purposes of YPI;

4    (d)  Misrepresenting how and where charitable donations would be used;

5    (e)  Breaching fiduciary duty to donors, YPI charitable beneficiaries, and the

6 public beneficiaries of charity by failing to ensure that the donations were used for the purposes for

7 which they were solicited;

8    (f)  Using donations for purposes other than the purposes for which the

9 donations were donated;

10    (g)  Engaging in or allowing improper self-dealing transactions by YPI;

11    (h)  Failing to maintain complete and accurate corporate records of YPI;

12    (i)  Making false or misleading statements in YPI's financial statements;

13    (j)  Making false or misleading statements in YPI's informational returns;

14    (k)  Making false or misleading statements in documents filed by YPI with the

15 IRS and the Attorney General's Registry of Charitable Trust; and

16    (l)  Failure by YPI to comply with registration and reporting requirements.

17   113.  Defendants, in engaging in and participating in the acts of unfair and unlawful

18 competition as alleged above, violated the following statutes and regulations:

19    (a)  California Penal Code § 484(a)

20    (b)  California Penal Code § 496(c);

21    (c)  California Penal Code § 503;

22    (d)  California Penal Code § 532;

23    (e)  California Government Code § 12586(g);

24    (f)  California Government Code § 12599;

25    (g)  California Business and Professions Code §§ 17500, *et seq.*;

26    (h)  California Business and Professions Code § 17510.8;

27    (i)  California Civil Code § 2224;

28    (j)  California Corporations Code §§ 5231, 5233, 5234, 5235;

1     (k)     California Corporations Code § 6215; and

2     (l)     California Corporation Code §§ 6811, 6812, 6813,

3

### NINTH CLAIM FOR RELIEF

**(Unjust Enrichment/Wrongful Acquisition of Property**

**in Violation of California Civil Code § 2224)**

(Against Defendants Steinke, and Suzanne M. Steinke, A Professional Corporation)

114.    Plaintiff refers to and incorporates herein by reference each allegation contained above, as though fully set forth herein.

115.    Plaintiff is informed and believes and thereon alleges that from the period from January 3, 2014, through December 17, 2018, Defendant Steinke received unauthorized payments and benefits for herself and her family, including but not limited to the following:

(a)    Retirement and pension plan contributions in an amount presently unknown but believed to be approximately $242,058.33;

(b)    Reimbursement for charitable and other contributions;

(c)    Reimbursements for events;

(d)    Family travel expenses

(e)    Property taxes on home

116.    As a result of the breach of trust by Slingerland, Steinke was unjustly enriched and YPI's charitable beneficiaries and creditors were injured. Because of the breach of trust, Steinke holds all excessive and unreasonable compensation she received from YPI as a constructive trustee for the benefit of YPI. Steinke must make full restitution by paying all such compensation back to YPI, for the benefit of YPI's creditors.

### TENTH CLAIM FOR RELIEF

**(Receiving Embezzled Funds (California Penal Code § 496(c))**

(Against Defendant Suzanne M Steinke, A Professional Corporation)

117.    Plaintiff refers to and incorporates herein by reference each allegation contained above, as though fully set forth herein.

118.    Plaintiff is informed and believes and thereon alleges that in doing the things alleged herein, Slingerland committed theft by way of embezzlement, which is the fraudulent appropriation of property by a person to whom it has been entrusted. See California Penal Code §503.

119.    This included the following money, retirement, and pension plan contributions in an amount presently unknown but believed to be approximately $242,058.33.

120.    On information and belief, Steinke knew the funds had been stolen at or around the time Slingerland transferred the funds from YPI to the retirement or pension plan controlled by Steinke and has since learned that the funds paid into the retirement plan set up by Susan Steinke, APC, were stolen from YPI.

121.    Steinke took possession of and withheld the stolen funds from YPI.

122.    Plaintiff is therefore entitled to receive treble the amount received by the Slingerland, plus costs of suit and attorneys' fees. See *Grouse River Outfitters, Ltd. v. Oracle Corp.*, 848 F. App'x 238, 242 (9th Cir. 2021); *Allure Labs, Inc. v. Markushevska*, 606 B.R. 51, 65 (N.D. Cal. 2019).

<u>**ELEVENTH CLAIM FOR RELIEF**</u>

<u>**(Professional Negligence)**</u>

<u>**(Against Defendant Hill, Morgan and Associates, LLP)**</u>

123.    Plaintiff refers to and incorporates herein by reference each allegation contained above, as though fully set forth herein.

124.    As the independent auditor for YPI for the fiscal years of 2013-2017, and as certified public accountants, Defendant Hill, Morgan and Associates owed special and higher duties of care, candor, and honesty to YPI, including those duties imposed by the American Institute of Certified Public Accountants' Code of Professional Conduct (the "AICPA Code"), the AICPA Statement on Standards for Tax Services ("AICPA SSTS"), and the United States Treasury Department's Regulations Governing Practice before the Internal Revenue Service ("Circular 230").

125.    Hill, Morgan and Associates' actions breached the duty of care and as articulated in the AICPA Code, AICPA STSS and Circular 230 by, without limitation to the actions more

specifically alleged herein, preparing and signing, and permitting others to sign, tax returns, financial statements, and other records that obscured and misstated the executive compensation paid to Slingerland.

126.    Consequently, YPI's filings with state and federal agencies included false or misleading statements relating to compensation and benefits conveyed to top employees and officers. For example, the IRS requires that certain employment benefits provided to persons listed on the IRS Form 990 Part VI as officers or highly compensated employees be reported on Schedule J. The required benefit disclosures include "first-class or charter travel," "travel for companions," and health or social club dues. On Schedule J to the 2017 IRS Form 990, YPI represented that it did not provide first-class travel, travel for companions, discretionary spending account, housing allowance or residence for personal use, payments for business use of personal residence, or personal services. For each such benefit, YPI represented that the "organization follow(ed) a written policy regarding payment or reimbursement or provision of all the expenses" listed. This representation, prepared by Hill, Morgan and Associates, and certified by Slingerland, was false.

127.    As an independent auditor, Hill, Morgan and Associates had an obligation to audit the internal processes and controls at YPI to determine whether or not they existed and whether or not those internal processes and controls were followed, particularly in the areas that YPI had to make specific representations to state and federal agencies, such as executive compensation. Because of the risks of material misstatement of the financial statements concerning executive compensation for a nonprofit, Hill, Morgan and Associates' judgment on these statements was negligent.

128.    In making the risk assessments in preparing its independent auditor reports, Hill, Morgan and Associates was required to consider internal controls relevant to the entity's preparation and fair presentation of the financial statement in order to design audit procedures that are appropriate in the circumstances. As alleged herein and as outlined in the DOE's September 27, 2019 letter, YPI's internal process and controls were often non-existent, improperly set up for the accounts managed, or not followed.

129.    Defendant Hill, Morgan and Associates breached their duties of care by not

30

1  considering the internal processes and controls at YPI governing expense reimbursement and

2  executive compensation to determine if they existed and whether they were followed.

3      130.    Defendant Hill, Morgan and Associates breached their duties of care by not

4  designing an audit procedure that would have unveiled the issues existing concerning expense

5  reimbursement and executive compensation.

6      131.    Defendant Hill, Morgan and Associates breached their duties of care by not

7  designing an audit procedure that would have unveiled the issues identified by the DOE's

8  September 27, 2019 letter.

9      132.    Defendants further breached their duties of care negligently, carelessly, and

10 recklessly rendered services below the standard of care of a similarly situated accountant or tax

11 preparer by, without limitation to the actions more specifically alleged herein, (1) improperly

12 accounting for, recording, and reporting the expenses on the "21st Century Program"; (2) failing to

13 audit the processes, procedures, and internal controls sufficient to prepare financial statement that

14 were free of material misstatements and to properly manage YPI's funding sources; (3) failing to

15 identify a lack of separation of duties that allow for appropriate internal controls; (4) failing to

16 advise YPI and its Board that, for years, executive compensation had been improperly accounted

17 for, recorded, and reported, (5) failing to advise YPI and its Members that the accounting treatment

18 of the executive compensation was improper and inconsistent with the Bylaws, California Code,

19 and the Internal Revenue Code, (5) preparing tax return documents and financial statements that

20 obscured the improper accounting treatment of the executive compensation, (6) failing to identify a

21 failure in process and controls regarding the reimbursement and payment of credit cards held by

22 management, (7), improperly accounting for, recording, and reporting revenue from contracts when

23 conditions for recognition were met as required by Federal contracts and Uniform Guidance; (8)

24 improperly accounting for, recording, and reporting accounts receivable as stated at their net

25 realizable value; and (9) other items identified in the Armanino audit Corrective Action Plan.

26     133.    As a direct and proximate result of Defendant Hill, Morgan and Associates'

27 breaches of duty, YPI has incurred damages. Defendant Hill, Morgan and Associates' improper

28 accounting of the executive compensation, preparation of tax filings that failed to itemize the

1  executive compensation, and failure to promptly and candidly advise YPI and its Members of

2  accounting mistreatment, allowed fraud to be perpetrated against YPI. As a direct and proximate

3  result of Defendant Hill, Morgan and Associates' actions, YPI was then required to expend

4  substantial accountants' and attorneys' fees to reconstruct past accounting records, investigate and

5  correct past accounting mistreatment and litigate against Slingerland to rectify the harm facilitated

6  by Defendant Hill, Morgan and Associates' negligence, omissions, and/or errors. YPI has also been

7  damaged by having paid Defendant Hill, Morgan and Associates their professional fees for

8  multiple years during which Defendant Hill, Morgan and Associates failed to exercise the requisite

9  duty of care but instead prepared and facilitated the filing of false and misleading tax filings and

10  financial records.

11                              **PRAYER FOR RELIEF**

12          **WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

13  **ON THE FIRST CLAIM FOR RELIEF FOR NEGLIGENCE AGAINST DEFENDANT**

14  **SLINGERLAND AND SCHULTZ:**

15          1.      For compensatory damages in an amount presently unknown to Plaintiff but

16  estimated to be no less than $1,926,030.43 and no more than $14,245,518.72;

17  **ON THE SECOND CLAIM FOR RELIEF FOR UNJUST ENRICHMENT AGAINST**

18  **DEFENDANT SLINGERLAND:**

19          2.      For recovery in the in an amount presently unknown to Plaintiff but estimated to be

20  no less than $1,926,030.43;

21  **ON THE THIRD CLAIM FOR RELIEF FOR BREACH OF FIDUCIARY DUTY AGAINST**

22  **DEFENDANTS SLINGERLAND AND SCHULTZ:**

23          3.      For compensatory damages in an amount presently unknown to Plaintiff but

24  estimated to be no less than $1,926,030.43 and no more than $14,245,518.72;

25          4.      Exemplary and punitive damages;

26          5.      For special damages according to proof;

27  **ON THE FOURTH CLAIM FOR RELIEF FOR BREACH OF CHARITABLE TRUST**

28  **AGAINST DEFENDANTS SLINGERLAND AND SCHULTZ:**

6.    For damages in an amount presently unknown to Plaintiff but estimated to be no less than $1,926,030.43 and no more than $14,245,518.72;

**ON THE FIFTH CLAIM FOR RELIEF FOR FRAUD AGAINST DEFENDANT SLINGERLAND:**

7.    For damages in an amount presently unknown to Plaintiff but estimated to be no less than $1,926,030.43 and no more than $14,245,518.72;

8.    Special damages;

9.    Exemplary and punitive damages;

**ON THE SIXTH CLAIM FOR RELIEF FOR CONVERSION AGAINST DEFENDANT SLINGERLAND:**

10.    For damages in an amount presently unknown to Plaintiff but estimated to be no less than $1,926,030.43;

11.    Exemplary and punitive damages;

12.    For special damages according to proof

**ON THE SEVENTH CLAIM FOR RELIEF FOR RECEIVING EMBEZZLED FUNDS AGAINST DEFENDANT SLINGERLAND:**

13.    For damages in an amount presently unknown to Plaintiff but estimated to be no less than $1,926,030.43;

14.    Treble damages;

15.    Attorneys' fees and costs;

**ON THE EIGHTH CLAIM FOR RELIEF FOR ENGAGING IN UNFAIR AND UNLAWFUL COMPETITION IN VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE §§ 17200 *ET SEQ.* AGAINST DEFENDANT SLINGERLAND:**

15.    For damages in an amount presently unknown to Plaintiff but estimated to be no less than $1,926,030.43;

**ON THE NINTH CLAIM FOR RELIEF FOR UNJUST ENRICHMENT AGAINST DEFENDANT STEINKE AND SUZANNE M. STEINKE, A PROFESSIONAL CORPORATION:**

16.     For damages in an amount presently unknown to Plaintiff but estimated to be no less than $242,058.33 and no more than $1,926,030.43;

**ON THE TENTH CLAIM FOR RELIEF FOR RECEIVING EMBEZZLED FUNDS AGAINST DEFENDANT SUZANNE M. STEINKE, A PROFESSIONAL CORPORATION:**

17.     For damages in an amount presently unknown to Plaintiff but estimated to be no less than $242,058.33;

18.     Treble damages;

19.     Attorneys' fees and costs;

**ON THE ELEVENTH CLAIM FOR PROFESSIONAL NEGLIGENCE AGAINST HILL, MORGAN AND ASSOCIATES:**

20.     For damages in an amount presently unknown to Plaintiff but estimated to be no less than $1,926,030.43

**ON ALL CLAIMS FOR RELIEF:**

1.     Prejudgment interest

2.     For costs of suit incurred herein; and

2.     For such other and further relief as the Court deems just and proper.

Dated: November 3, 2021              THE LAW OFFICE OF PHILIP DRACHT

                                     _/s/ Philip D. Dracht_____
                                     Philip D. Dracht,
                                     Attorney for Plaintiff Jason M. Rund, Chapter 7 Trustee

# EXHIBIT A

# EXHIBIT A

 UNITED STATES DEPARTMENT OF EDUCATION

**SEP 2 7 2019**

Mr. Ari Lanin
Board Chair
Youth Policy Institute
6464 Sunset Blvd., Ste 650
Los Angeles, CA 90028

Mr. Dixon Slingerland
President and CEO
Youth Policy Institute
6464 Sunset Blvd., Ste. 650
Los Angeles, CA 90028

RE: High Risk Designation

Dear Mr. Lanin and Mr. Slingerland:

We are writing to inform you that the U.S. Department of Education (Department) has
received the Youth Policy Institute's (YPI) Corrective Action Plan (CAP) provided in
response to our <u>Onsite Monitoring Report</u> issued February 15, 2019 for our site visit of
December 4-6, 2018. Although focused on YPI's Promise Neighborhoods (PN) program
grant (U215N160059) and YPI's Full Service Community Schools grant (FSCS)
(U215J140121), the Report identified a number of significant systemic organization-wide
concerns regarding improper financial management, the lack of an established credible
financial management system, weak internal controls, and the inadequacy of YPI's
operations and grants management. These concerns impact not only YPI's capacity to
properly implement and account for funds under the PN and FSCS grants, but its capacity
under all grants from the Department in which YPI is the grantee or primary
subcontractor. Unfortunately, the information provided and activities proposed in YPI's
CAP do not adequately address the Department's significant concerns on these matters.

In this letter, we delineate the nature of our concerns with YPI's fiscal and grant
management capabilities, the reasons the proposed CAP does not address these concerns,
our determination to designate YPI as a high-risk grantee, and the specific conditions we
are imposing on all grants YPI is receiving from the Department. Additionally, the
Department has been in frequent communication with YPI pertaining to these ongoing
concerns: (a) on-site visits in December 2018 and February 2019, (b) <u>Onsite Monitoring
Report</u> (issued February 15, 2019), (c) corrective action submissions by YPI (March 21,
2019 and revised May 31, 2019, (d) approval of route payment requests (May 16, 2019
and July 2, 2019), and (e) numerous meetings and e-mail exchanges between Department
officials and YPI.

*The Department of Education's mission is to promote student achievement and preparation for global competitiveness
by fostering educational excellence and ensuring equal access*

Page 2

*Onsite Monitoring*

As noted above, the Onsite Monitoring Report included findings that not only implicated the administration of YPI's PN and FSCS projects, but also its overall programmatic and fiscal management capabilities. Among the key deficiencies observed during the onsite monitoring are the following:

- The organization does not have sufficient systems to properly manage cash flow.
- Standard Operating Policies (SOP) either do not exist or are not authorized across the agency (i.e. payroll, travel, reimbursement to vendors, etc.).

Onsite Monitoring Report at 3.

Additional findings in the Onsite Monitoring Report that support our conclusion that there are organization-wide problems with YPI's programmatic and fiscal management of its grants include the following:

Observation 1.c indicates that YPI:

> Violated the approved time and effort distribution /level of effort for YPI employees funded in part or whole with the Department's grant funds. At least three YPI employees exceeded 100% level of effort across multiple programs funded by the Department. This is concerning because of the overall impact that this has on program implementation. For instance, Karina Favela-Barreas is listed as the project director (100%) for the Educational Opportunity Centers Program. However, Karina's level of effort on the Promise Neighborhoods 1 grant is 50% and Promise Neighborhoods 2 grant at 25%. Therefore, Karina's total level of effort for three Department programs is 175% or 70 hours per week. Also, the organization has insufficient staff resources for the number of federal grants it receives.

Onsite Monitoring Report at 9.

Observation 2 indicates that:

> [YPI] had student enrollment forms containing personally identifiable information that were easily accessible to the public at YPI's inventory distribution center. Documents were in three of four unlocked file cabinets. The location of a fourth file cabinet could not be confirmed by YPI staff. The missing file cabinet contains student personally identifiable information.

Onsite Monitoring Report at 11.

Page 3

Observation 5 indicates that "there is an organization-wide lack of oversight and management by leadership." In support of this observation, the Onsite Monitoring Report cited the following examples:

- [YPI] has poor and insufficient organizational communication and lack of transparency at all levels of the agency starting with the Executive leadership team.
- Inconsistent, repetitive, and varying organizational charts with some employees unlisted and/or missing from the organizational structure.
- The Chief Grants Officer's role is largely, if not exclusively, grant writing with very little to no substantive grant management duties. YPI has no dedicated grants management division and relies on a handful of people to conduct grants management over the lifespan of the grant award as a result.
- Some staff credentials, trainings, and/or experiences do not align with their positions.
- Various managers and leadership staff members were promoted quickly from administrative into higher levels management and/or operations positions. Some staff members lack training and education commensurate with the full performance of their duties. Several staffers lack an understanding of requirements and knowledge associated with their positions.
- Restructuring of several core divisions is needed, including but not limited to, the Community School Impact Division and Chief Operating Officer's division.
- No dedicated person was identified to fill in for the Controller while out on medical leave for an extended period of time (at least six months).
- Potential conflict of interest in the use of Armanino Consulting to both conduct a business process review of YPI and conduct A133 single audits of YPI. Accounting firm is supposed to conduct an independent oversight audit function.

Onsite Monitoring Report at 13-14.

Observation 6 of the Onsite Monitoring Report indicated that:

> YPI does not have adequate financial systems and internal controls. According to agency employees, YPI lacks unrestricted donations to support the backbone infrastructure of the organization. As a result, the organization is inappropriately utilizing Federal funds to support its infrastructure beyond indirect costs. For example, YPI improperly expended PN funds on unallowable and/ or unapproved costs (i.e.: Salaries for President and CEO, Executive Vice President, Rent, etc.). With regards to rent, YPI has excessive and expensive rental/lease payment agreements to utilize rented office space to house YPI staff across many office and/or warehouse locations. Additionally, improper forms were completed by vendors/ contractors to request reimbursement (i.e.: Cash Request Form).

Page 4

> YPI does not have appropriate infrastructures and systems in place. YPI
> has multiple technical/software systems used across different business
> functions within the organization. There is no clear nexus and/or
> coordination of the use and functionality of these systems. YPI should
> have considered a more comprehensive, robust financial management tool
> that provides enterprise wide support and functionality. There are major
> deficiencies and/ or gaps in Salesforce (data system) and Business Oracle
> (financial system). Likewise, there is a lack of consistency in numerous
> new systems purchased within a 24-month period (i.e.: spreadsheet to
> manage contracts; Zendesk; Business Oracle; ICIMS; Salesforce; Tableau;
> Asset Tiger; Welgent, etc.). Furthermore, employees were not trained on
> and/ or do not utilize all systems.

Onsite Monitoring Report at 15-16.
These observations reflect not only performance and management issues that impact the
PN and FSCS grants, but also highlight very serious deficiencies in YPI's entire
infrastructure for the fiscal and programmatic management of the grants it receives from
the Department.

*YPI's Corrective Action Plan*

In response to the Onsite Monitoring Report, YPI has submitted to us extensive
documentation regarding a corrective action plan. These materials establish that YPI has
not prepared and put in place the internal controls and management structures needed to
properly administer Federal grants. In addition, other interactions we have had with YPI
reinforce our conclusion that it has not established the necessary infrastructure to
properly spend and account for Federal funds.

*Weak Internal Controls.* With regards to weak internal controls, YPI proposed to create
and implement 19 new SOPs. All 19 SOPs impact matters that are fundamental to
adequate internal controls and proper programmatic administration and financial
management. Until these SOPs are finalized and YPI demonstrates the capacity to
implement the new SOPs properly, and to the Department's satisfaction, the Department
is not assured that YPI has basic internal controls in place to adequately manage any of
its Department grants or contracts with Department grantees.

*High Staff Turnover.* YPI's high staff turnover reflects weaknesses in its internal
infrastructure.  For example, two key members of YPI's team - Jesse Noonan, Chief
Academic Officer, and Tara Watford, Director of Research and Evaluation - are no
longer with YPI. Of the eight Department grants that are open, Jesse Noonan was
mentioned in the original applications for five programs and Tara Watford was
mentioned in four. These two positions have not been backfilled. This is problematic
because two key positions, across multiple Department grants, are vacant and YPI does
not seem to have a viable plan to hire knowledgeable staff members to fulfill these
positions and it remains unclear who is filling their duties in the interim. In addition to
inconsistency in key staff leadership, YPI has also demonstrated significant challenges in

Page 5

general with staff turnover, which impacts the sustainability of the organization and its ability to manage federal grants. Without a rigorous plan to address employee sustainability and consistency in leadership staff, the Department remains uncertain about YPI's internal infrastructure.

*Failure to Secure PII.* Furthermore, in accordance with 2 C.F.R. §200.303, the Department required YPI to immediately secure all Personally Identifiable Information (PII) on PN program participants. The CAP submitted to the Department only addresses how YPI will secure PII at school sites even though PII was exposed at YPI facilities (not exclusive to school sites) during the December 2018 on-site visit. Securing PII and other sensitive data is essential for all Department programs. The proposed CAP falls short in identifying and proposing a comprehensive and adequate remedy for what has already been identified as a security concern across YPI facilities. This lack of oversight and acknowledgment of this significant security concern remains a serious issue.

*Inadequate Corrective Action Plan.* According to the proposed CAP, YPI provided a seven-month plan to determine the level of effort for personnel. Human Resources is not listed in the workplan to assist with this task. Also, YPI stated that it plans to "upskill staff" to ensure that staffers meet qualifications for their respective positions over a seven-month period. It should be noted that these staffers are already in their positions without the necessary qualifications and/or certifications. It is deeply concerning that YPI does not have the ability to quickly determine the level of effort for all staff members and has current staff members working in the organization without proper credentials assuming critical operational, financial, and programmatic responsibilities. This qualification and skill concern, similar to the high staff turnover issue, further encapsulates the scale of YPI's personnel problems that give rise to the Department's uncertainty about YPI's current capacity and its ability to adequately manage federal grants.

As previously mentioned, the Department required YPI to establish and maintain effective internal controls over the PN program. In the CAP, YPI addresses this issue, in part, by having the Chief Financial Officer and Senior Director of Community School Impact personnel focus on policies and procedures, but the response fails to adequately describe within the procedures, how new policies will be implemented. It also fails to fully address oversight by management officials. This leads the Department to believe YPI fails to understand the nature and gravity of these deeply systemic internal control deficiencies, and in our estimation, these deficiencies permeate across all Department grants— including those for which YPI is the primary subcontractor—not just the PN and FSCS programs.

<u>Additional Concerns</u>

*Inability to Produce a General Ledger.* In response to questions we posed related to a drawdown request, YPI was unable to produce a detailed general ledger. This critical concern demonstrates YPI's lack of an established, reliable and credible financial management system and poor financial management structure. Additionally, the

Department continues to receive inaccurate and inconsistent drawdown requests from YPI. Specifically, the supporting documentation that YPI provided to the Department is not in alignment with YPI's requests which causes significant "back and forth" and resubmission requests for appropriate documentation. Given the amount of Department funds awarded to YPI, at a minimum, YPI should be able to accurately track and report all funds associated with Department grants, and appropriate supporting documentation should be readily available, accurate, directly related to the drawdown requests and provided to the Department in a timely manner.

*Indirect Cost Rate Miscalculations.* In the July 2019 Annual Performance Report (APR) for PN, YPI also stated that "Facilities are not part of YPI federally approved indirect cost rate as these rents were not factored in YPI's indirect cost base (direct method) because they are considered a direct programmatic facility." However, during the December 2018 onsite visit and in subsequent meetings, the Department stated that rent is an indirect cost and must be spread across all YPI programs as YPI does not have a site-specific facility for the PN program. Rent calculations were to be determined immediately. The Department has yet to receive calculations for this line item. Failure to provide this information further demonstrates YPI's limited capacity to administer and/or manage Deparrtment programs.

Additionally, there are concerns about the amount of indirect costs being charged under two GEAR UP grants (P334A170117 and P334A180127) in which YPI is a contractor but not the grantee. Specifically, the original applications provide that YPI, in its role as a contractor under the grant, will charge indirect costs at a rate that is impermissibly higher than allowed under the GEAR UP program regulations (34 C.F.R. §694.11). These concerns need to be addressed.

*Quarterly Advance Payments Scheme in GEAR UP Grants.* 2 C.F.R. §200.305(b)(1) requires that grant funds be drawn down in a manner that minimizes "the time elapsing between the transfer of funds and disbursement by the non-Federal entity." In two YPI-connected GEAR UP grants (P334A170117 and P334A180127), grantees receive quarterly invoices from YPI to pay for services months in advance without documentation of the services to be provided by YPI. At the close of each quarter, YPI then sends a "true up" payment request (or reimbursement) based on the level of services actually performed by YPI. Such a scheme to have grantees pay YPI in advance for services not yet rendered and not specified violates the standard set by 2 C.F.R. §200.305(b)(1) and is not consistent with sound fiscal management.

*Grant Performance.* In the July 2019 PN APR, YPI failed to meet critical targets and/ or implement solutions for almost 60% of its approved data plan solutions. This is deeply concerning and demonstrates a lack of substantive progress in program implementation, further emphasizing significant concerns with the management and operations of Department grant programs.

Based on these and other areas articulated, the Department is concerned with YPI's inability to administer and/or manage Department grants. These concerns are not limited

Page 7

to YPI's PN and FSCS grants, but to all grants it currently administers, manages, or is a primary subcontractor. These grants are listed below:

| PR Award No. | Program | Total Award | Total Authorized as of 09/12/2019 | Total Drawdown as of 09/12/2019 | G-5 Avail. Balance as of 09/12/2019 | Project Period of Grant |
|---|---|---|---|---|---|---|
| P334A140148 | GEAR UP (YPI Charter Schools/Bert Corona Charter) | $16,212,000 | $13,739,200 | $10,642,945 | $3,096,254.84 | 09/2014-09/2021 |
| P334A170117 | GEAR UP (Vaughn Next Century Learning Center) | $11,181,454 | $4,836,000 | $2,649,027 | $2,186,972.82 | 09/2017-09/2024 |
| P334A180127 | GEAR UP (Bright Star Schools) | $18,256,000 | $5,216,000 | $532,922 | $4,683,078.00 | 10/2018-09/2025 |
| U215J140121 | Full Service Community Schools | $2,528,479 | $2,473,625 | $2,352,384 | $121,240.81 | 10/2014-09/2019 |
| S184G140145 | School Climate Transformation | $3,742,981 | $3,742,982 | $3,414,659 | $328,323.17 | 10/2014-09/2019 |
| U215N160059 | Promise Neighborhoods | $30,000,000 | $14,704,756 | $7,689,652 | $7,015,103.85 | 01/01/2017-12/31/2021 |
| U215N120052 | Promise Neighborhoods | $30,000,000 | $28,608,244 | $28,608,244 | $0.00 | 01/01/2013-12/31/2017 |
| P066A160321 | Educational Opportunity Centers | $1,180,000 | 993,610.00 | 730,081.00 | $263,529.00 | 09/2016-08/2021 |

The Department has determined that for GEAR UP grants P334A140148, P334A170117, and P334A180127, anywhere from 70 to 90 percent of grant funds flow to YPI though subcontractor agreements. Therefore, because a sizable percentage of grant funds flow as pass-through from YPI to these entities, the Department will maintain route payment status on these three grantees until YPI can demonstrate to the Department's satisfaction that the High-Risk Specific Conditions, specified below, are fully met.

*YPI's Designation as "High-Risk"*

Given these serious and deeply systemic concerns, which impact YPI on an organization-wide basis, the Department is taking immediate action to safeguard public funds while working with YPI to determine, and if applicable, verify, its ability to carry out the approved activities within the Department's grants in accordance with statutory and regulatory requirements and the terms of its approved grant applications, and in grants for which it is a primary subcontractor.

The Department is designating the Youth Policy Institute as a "high-risk" entity in accordance with 2 C.F.R. §§200.207 and 3474.10. As part of this "high-risk" designation, we are imposing High-Risk Specific Conditions (noted below) that are designed to help YPI and the Department ensure that YPI is able to serve as a proper and effective steward of public funds. In making this determination and designation, the Department has taken

Page 8

into consideration several factors (some of which are mentioned above), which include, but are not limited to:

- the magnitude of the potential gross mismanagement of public funds;
- the lack of established and involved key staff members at YPI;
- an unreliable and grossly inadequate financial management system (e.g., unavailable general ledger system and inability to readily identify source(s) used to purchase systems);
- poor organizational management and operations;
- concerns regarding YPI's lack of established internal controls; and
- inadequate program performance across one or more Department grant programs.

For the Department to consider removing the "route payment" status on all YPI-connected grants and YPI's "high risk" designation, the following High-Risk Specific Conditions must be fully met to the Department's satisfaction:

1. Within 90 days of the date of this letter, YPI must secure the services of an independent, third-party auditing entity and/or an accounting firm that must be approved by the Department to complete a comprehensive financial forensic audit (performed by an autonomous auditing entity that does not have a current or past relationship with YPI) reviewing financial statements, transactions, expenditures, etc. of YPI and organizations it manages or is a primary subcontractor (i.e.: YPI Charter Schools, Vaughn Next Century Learning Center, and Bright Star Schools) including Department grants, dating back at least to 2014 and put in place a recommended action plan to address issues raised by that audit (i.e., a "corrective action plan"). Prior to initiating the independent forensic audit, YPI must provide the Department, for its review and approval, information on the background and qualifications of the independent auditing entity. The independent auditing entity must identify the total amount of all federal and matching funds that have been misused, used for unallowable or undocumented costs, or paid inappropriately.

2. Following the completion of the forensic audit, YPI must work with the independent auditing entity to develop a corrective action plan that (a) identifies any financial deficiencies found, (b) describes specific steps that YPI will take to implement new internal controls, and (c) establishes effective financial management and oversight. YPI must provide the corrective action plan recommended by the independent auditing entity and agreed to by YPI to the Department for review and approval prior to implementation. If necessary, the Department may require additional actions to be included in the plan.

3. Without interfering with the forensic audit, and within 90 days of the date of this letter, YPI must provide appropriate information to account for all federal and matching funds expended since 2014 for all open Department grants to ensure that: (a) all costs were allowable, reasonable, and allocable, (b) all expenditures have been properly documented, and (c) that all payments have been proper  If

YPI is unable to provide this information, this task should be included in the work of the independent auditing entity.

4. In the Promise Neighborhoods program, YPI must demonstrate fully and to the satisfaction of the Department its capacity to continue the work of the Promise Neighborhood project by providing documentation of the continued commitment of YPI's partners, evaluator, implementation sites, and activities based on the last management plan submitted to YPI's PN program officer.

The objective of these specific conditions is to ensure that YPI establishes the policies, procedures, and personnel in place to manage both the programmatic and financial components of its grants. If YPI is unable to satisfactorily address these concerns, the Department will consider additional enforcement actions, including the possible termination of all or some of the Department grants, and may require the recovery of funds.

Consistent with 2 C.F.R. §200.207(c)(5), YPI may request reconsideration of its designation as "high-risk" by submitting a written request for reconsideration to Adrienne Hawkins within 10 business days of the date of this letter. Any request for reconsideration must state the specific reasons YPI believes its designation as "high-risk" is inappropriate and including appropriate supporting documentation. Any request for reconsideration must be submitted via e-mail to Adrienne.Hawkins@ed.gov.

We remain committed to working with YPI to help resolve this situation and we look forward to the timely resolution of these concerns. If you have any questions on the status of these grants, and/or on the High-Risk Special Conditions, please contact the respective program officer.

Sincerely,

Frank T. Brogan
Assistant Secretary
for Elementary and Secondary Education
Office of Elementary and Secondary
Education

Robert King
Assistant Secretary for Postsecondary
Education
Office of Postsecondary Education

Enclosure: Onsite Monitoring Report of February 15, 2019

Page 10

CC:   U.S. Department of the Treasury
       U.S. Department of Justice
       U.S. Department of Agriculture
       U.S. Department of Commerce
       U.S. Department of Labor
       U.S. Department of Health and Human Services
       U.S. Department of Housing and Urban Development
       Corporation for Community and National Service

# EXHIBIT B

# EXHIBIT B



**YOUTH POLICY INSTITUTE, INC.**
**SUMMARY OF DIXON SLINGERLAND AMERICAN EXPRESS CHARGES AND EXPENSE REPORTS***
*****AMERICAN EXPRESS STATEMENTS (JUNE 2014 - MAY 2019), EXPENSE REPORTS DATED (01/03/14 THROUGH 12/17/18** except (A))
Data compiled from American Express Downloads and Summaries of Expense Report Reimbursement Requests, and Downloads from ORACLE accounting system.

| CATEGORY | AMERICAN EXPRESS TRANSACTIONS | EXPENSE REPORTS / CHECK PAYMENTS | TOTAL | COMPLIES WITH YPI POLICY | COMPLIES WITH IRS REQ. | DETAIL EXHIBIT | POTENTIAL NON-COMPLIANT TRANSACTION AMOUNT |
|---|---|---|---|---|---|---|---|
| AUTO ALLOWANCE | - | 87,000.00 | 87,000.00 | UNDETERMINED | NO | A | 87,000.00 |
| DEVELOPMENT | - | 13,568.58 | 13,568.58 | NO | NO | B | 13,568.58 |
| DONATION/CONTRIBUTION | 130,709.98 | 26,308.82 | 157,018.80 | NO | NO | C | 157,018.80 |
| DONATION/CONTRIBUTION (CROWDFUNDING/UNKNOWN) | 41,399.82 | 37,871.28 | 79,271.10 | NO | NO | C | 79,271.10 |
| EVENT | 51,847.23 | 57,674.62 | 109,521.85 | NO | NO | D | 109,521.85 |
| EVENT: TICKETS | 26,388.25 | | 26,388.25 | NO | NO | D | 26,388.25 |
| GIFTS | 2,137.55 | 861.34 | 2,998.89 | NO | NO | E | 2,998.89 |
| HOUSING ALLOWANCE | - | 144,000.00 | 144,000.00 | BOARD APPROVED | NO | F | 144,000.00 |
| INTEREST | 2,460.29 | | 2,460.29 | NO | NO | | 2,460.29 |
| INSURANCE | - | 147,570.62 | 147,570.62 | UNDETERMINED | NO | | 147,570.62 |
| MARKETING/ADVERTISING | 9,406.50 | | 9,406.50 | NO | NO | | 9,406.50 |
| MEALS | 280,933.19 | 28,983.56 | 309,916.75 | NO | NO | G | 309,916.75 |
| MEDICAL | 7,270.75 | 9,849.42 | 17,120.17 | NO | NO | H | 17,120.17 |
| MOVING EXPENSE | - | 5,337.04 | 5,337.04 | NO | NO | I | 5,337.04 |
| OFFICE EXPENSE | 3,940.90 | 2,505.49 | 6,446.39 | NO | NO | | 6,446.39 |
| OFFICE EXPENSE: HOME OFFICE | - | 15,443.06 | 15,443.06 | UNDETERMINED | NO | J | 15,443.06 |
| PARKING | 3,324.17 | 508.80 | 3,832.97 | NO | NO | | 3,832.97 |
| PAYMENT TRANSFER | 512.94 | | 512.94 | NO | NO | K | 512.94 |
| PENSION | - | 242,058.33 | 242,058.33 | UNDETERMINED | NO | L | 242,058.33 |
| PERSONAL | 28,195.58 | 8,833.29 | 37,028.87 | NO | NO | M | 37,028.87 |
| PERSONAL REIMBURSEMENT | - | (57,006.67) | (57,006.67) | NO | NO | M | (57,006.67 |
| POLITICAL | 15,000.00 | | 15,000.00 | NO | NO | N | 15,000.00 |
| POLITICAL (review) | 6,111.00 | 5,050.00 | 11,161.00 | NO | NO | N | 11,161.00 |
| PROPERTY TAX | 14,703.26 | | 14,703.26 | NO | NO | O | 14,703.26 |
| TECHNOLOGY: COMPUTER/PHONE | 27,848.30 | 3,035.44 | 30,883.74 | NO | NO | | 30,883.74 |
| TELEPHONE/INTERNET/CELL | 16,519.00 | 7,861.85 | 24,380.85 | NO | NO | | 24,380.85 |
| TRAVEL: ACCOMMODATION | 116,712.38 | 1,512.98 | 118,225.36 | NO | NO | P | 118,225.36 |
| TRAVEL: AIR | 202,042.51 | 30,488.51 | 232,531.02 | NO | NO | P | 232,531.02 |
| TRAVEL: AUTO | 13,413.12 | | 13,413.12 | NO | NO | P | 13,413.12 |
| TRAVEL: INSURANCE | 1,452.70 | | 1,452.70 | NO | NO | P | 1,452.70 |
| TRAVEL: OTHER | 27,237.36 | 6,432.47 | 33,669.83 | NO | NO | P | 33,669.83 |
| TRAVEL: UNDEFINED | - | 24,541.36 | 24,541.36 | NO | NO | P | 24,541.36 |
| MISSING DETAIL EXPENSE REPORT CHK#25422(A) | - | 46,173.57 | 46,173.57 | NO | NO | | 46,173.57 |
| **TOTAL** | **1,029,566.78** | **896,463.76** | **1,926,030.54** | | | | **1,926,030.54** |

| | | | | |
|---|---|---|---|---|
| TRAVEL: POINTS* USED TO REDUCE CASH PAYMENT TO AMEX CARD | (155,688.93) | | (155,688.93) | UNDETERMINED |
| **TOTAL COST PAID BY YPI** | | | **1,770,341.61** | |

**TOTAL PAYMENTS TO AMERICAN EXPRESS FROM YPI**     (13,163,320.15)

**YPI REIMBURSEMENT POLICY:** In order to receive reimbursement, an employee must complete a Check Requisition Form and provide receipts to support all expenses.

  **UNDETERMINED:** Mr. Dixon has conveyed that there is a YPI policy and board approval in place related to these categories of spending. GT has not been provided policies or board minutes that confirm this assertion. Determination may change based on relevant documentation.

  **BOARD APPROVED:** Specifc expense was approved by board

  **NO:** Amounts charged or submitted were not done so timely and did not possess required receipts and/or descriptions

IRS REQUIREMENTS FOR REIMBURSEMENT: Business-related entertainment, meals, gifts or travel, must document the following five facts:

  **DATE.** The date the expense was incurred will usually be listed on a receipt or credit card slip; appointment books, day planners, and similar documents have the dates preprinted on each page.

  **AMOUNT.** How much was spent, including tax and tip for meals.

  **PLACE.** The nature and place of the entertainment or meal will usually be shown by a receipt, or you can record it in an appointment book.

  **BUSINESS PURPOSE.** Show that the expense was incurred for the business — for example; to obtain future business, encourage existing business relationships, etc.

  **BUSINESS RELATIONSHIP.** If entertainment or meals are involved, show the business relationship of people at the event. List their names and occupations and other information needed to establish their business relationship.



**YOUTH POLICY INSTITUTE, INC.**
**REPORT EXHIBITS**
Detail of transactions for noted category

**EXHIBIT A**

| DESCRIPTION | NORMALIZED DESCRIPTION | NOTE | DATE | TOTAL | OBJECT CODE | TYPE | REPORT DATE | DATA |
|---|---|---|---|---|---|---|---|---|
| CAR/MILEAGE | CAR/MILEAGE | | | 4,500.00 | | AUTO ALLOWANCE | 01/03/14 | EXPENSE REPORT |
| CAR/MILEAGE | CAR/MILEAGE | | | 4,500.00 | | AUTO ALLOWANCE | 04/09/14 | EXPENSE REPORT |
| CAR/MILEAGE | CAR/MILEAGE | | | 4,500.00 | | AUTO ALLOWANCE | 07/08/14 | EXPENSE REPORT |
| CAR/MILEAGE | CAR/MILEAGE | | | 4,500.00 | | AUTO ALLOWANCE | 10/09/14 | EXPENSE REPORT |
| CAR/MILEAGE (NOV-FEB) | CAR/MILEAGE | Nov-Feb | | 6,000.00 | | AUTO ALLOWANCE | 01/12/15 | EXPENSE REPORT |
| CAR MILEAGE (MAR-MAY) | CAR/MILEAGE | | | 4,500.00 | | AUTO ALLOWANCE | 05/11/15 | EXPENSE REPORT |
| CAR/MILEAGE (ADDITIONAL MON | CAR/MILEAGE | | | 1,500.00 | | AUTO ALLOWANCE | 05/11/15 | EXPENSE REPORT |
| CAR/MILEAGE (JULY- SEPT) | CAR/MILEAGE | | | 4,500.00 | | AUTO ALLOWANCE | 09/01/15 | EXPENSE REPORT |
| CAR MILEAGE (OCT - NOV) | CAR/MILEAGE | | | 3,000.00 | | AUTO ALLOWANCE | 11/12/15 | EXPENSE REPORT |
| CAR/MILEAGE | CAR/MILEAGE | | | 3,000.00 | | AUTO ALLOWANCE | 01/12/16 | EXPENSE REPORT |
| CAR MILEAGE (FEB-MAY) | CAR/MILEAGE | | | 6,000.00 | | AUTO ALLOWANCE | 05/31/16 | EXPENSE REPORT |
| CAR/MILEAGE - OCT, NOV & DEC | CAR/MILEAGE - OCT, NOV & D | MISSING EXPENSE REP | 1/31/2017 | 4,500.00 | | AUTO ALLOWANCE | 12/14/16 | EXPENSE REPORT |
| CAR/MILEAGE | CAR/MILEAGE | MISSING EXPENSE REP | 2/28/2017 | 1,500.00 | | AUTO ALLOWANCE | 03/16/17 | EXPENSE REPORT |
| CAR/MILEAGE | CAR/MILEAGE | MISSING EXPENSE REP | 3/16/2017 | 1,500.00 | | AUTO ALLOWANCE | 03/16/17 | EXPENSE REPORT |
| CAR/MILEAGE | CAR/MILEAGE | MISSING EXPENSE REP | 4/30/2017 | 1,500.00 | | AUTO ALLOWANCE | 03/16/17 | EXPENSE REPORT |
| CAR/MILEAGE | CAR/MILEAGE | MISSING EXPENSE REP | 4/30/2017 | 1,500.00 | | AUTO ALLOWANCE | 06/06/17 | EXPENSE REPORT |
| CAR/MILEAGE | CAR/MILEAGE | MISSING EXPENSE REP | 5/31/2017 | 1,500.00 | | AUTO ALLOWANCE | 06/06/17 | EXPENSE REPORT |
| CAR/MILEAGE | CAR/MILEAGE | MISSING EXPENSE REP | 12/1/2016 | 1,500.00 | | AUTO ALLOWANCE | 06/06/17 | EXPENSE REPORT |
| car/mileage (july-oct) | CAR/MILEAGE | | | 6,000.00 | | 5205 AUTO ALLOWANCE | 10/03/17 | EXPENSE REPORT |
| car/mileage (nov) | CAR/MILEAGE | | | 1,500.00 | | 5205 AUTO ALLOWANCE | 01/08/18 | EXPENSE REPORT |
| car/mileage (dec) | CAR/MILEAGE | | | 1,500.00 | | 5205 AUTO ALLOWANCE | 01/08/18 | EXPENSE REPORT |
| car/mileage (jan) | CAR/MILEAGE | | | 1,500.00 | | 5205 AUTO ALLOWANCE | 01/08/18 | EXPENSE REPORT |
| car/mileaae (11 months, Feb-Dec | CAR/MILEAGE | $ 1500 monthly allowance approved by boar | | 16,500.00 | | AUTO ALLOWANCE | 12/17/18 | EXPENSE REPORT |
| | | | TOTAL | **87,000.00** | | | | |

**EXHIBIT B**

| DESCRIPTION | NORMALIZED DESCRIPTION | NOTE | DATE | TOTAL | OBJECT CODE | TYPE | REPORT DATE | DATA |
|---|---|---|---|---|---|---|---|---|
| development | DEVELOPMENT | | | 4,000.00 | | DEVELOPMENT | 04/09/14 | EXPENSE REPORT |
| DEVELOPMENT | DEVELOPMENT | | 04/19/15 | 424.94 | | DEVELOPMENT | 05/11/15 | EXPENSE REPORT |
| DEVELOPMENT | DEVELOPMENT | Hollywood Schoolhous | 04/30/15 | 2,450.00 | | DEVELOPMENT | 05/11/15 | EXPENSE REPORT |
| DEVELOPMENT | DEVELOPMENT | | 05/26/15 | 1,586.50 | | DEVELOPMENT | 05/11/15 | EXPENSE REPORT |
| DEVELOPMENT | DEVELOPMENT | | | 1,727.60 | | DEVELOPMENT | 09/01/15 | EXPENSE REPORT |
| DEVELOPMENT | DEVELOPMENT | | | 1,948.00 | | DEVELOPMENT | 09/01/15 | EXPENSE REPORT |
| DEVELOPMENT | DEVELOPMENT | | | 1,431.54 | | DEVELOPMENT | 09/01/15 | EXPENSE REPORT |
| | | | TOTAL | **13,568.58** | | | | |



**YOUTH POLICY INSTITUTE, INC.**
**REPORT EXHIBITS**
Detail of transactions for noted category

**EXHIBIT C**

| DESCRIPTION | NORMALIZED DESCRIPTION | NOTE | DATE | TOTAL | OBJECT CODE | TYPE | REPORT DATE | DATA |
|---|---|---|---|---|---|---|---|---|
| STANDARD MATCHING GIFT | STANFORD MATCHING GIFT | | | 2,500.00 | | DONATION/CONTRIBUTION | 01/03/14 | EXPENSE REPORT |
| charitable event | charity | | | 3,000.00 | | DONATION/CONTRIBUTION (UNKNOWN) | 04/09/14 | EXPENSE REPORT |
| Getty House Foundation | Getty House Foundation | | | 3,000.00 | | DONATION/CONTRIBUTION | 07/08/14 | EXPENSE REPORT |
| westide infant family network | westide infant family network | | | 400.00 | | DONATION/CONTRIBUTION | 07/08/14 | EXPENSE REPORT |
| charitbale | charity | Hollywood Schoolhouse | | 5,000.00 | | DONATION/CONTRIBUTION | 10/09/14 | EXPENSE REPORT |
| STANFORD MATCHING | STANFORD MATCHING GIFT | | | 2,500.00 | | DONATION/CONTRIBUTION | 01/12/15 | EXPENSE REPORT |
| CHARITY | charity | | 03/01/15 | 960.00 | | DONATION/CONTRIBUTION (UNKNOWN) | 05/11/15 | EXPENSE REPORT |
| CHARITY | charity | | 03/07/19 | 100.00 | | DONATION/CONTRIBUTION (UNKNOWN) | 05/11/15 | EXPENSE REPORT |
| CHARITY | charity | | 04/10/15 | 150.00 | | DONATION/CONTRIBUTION (UNKNOWN) | 05/11/15 | EXPENSE REPORT |
| CHARITY | charity | | 04/30/15 | 2,151.00 | | DONATION/CONTRIBUTION (UNKNOWN) | 05/11/15 | EXPENSE REPORT |
| CHARITY | charity | | 05/01/15 | 500.00 | | DONATION/CONTRIBUTION (UNKNOWN) | 05/11/15 | EXPENSE REPORT |
| CHARITY | charity | | | 598.50 | | DONATION/CONTRIBUTION (UNKNOWN) | 09/01/15 | EXPENSE REPORT |
| LACMA | LACMA | | | 250.00 | | DONATION/CONTRIBUTION | 09/01/15 | EXPENSE REPORT |
| CHARITY | charity | | | 2,824.00 | | DONATION/CONTRIBUTION (UNKNOWN) | 11/12/15 | EXPENSE REPORT |
| CHARITY | charity | | 11/04/19 | 250.00 | | DONATION/CONTRIBUTION (UNKNOWN) | 11/12/15 | EXPENSE REPORT |
| CHARITY | charity | | | 200.00 | | DONATION/CONTRIBUTION (UNKNOWN) | 11/12/15 | EXPENSE REPORT |
| CHARITY | charity | | | 2,500.00 | | DONATION/CONTRIBUTION (UNKNOWN) | 01/12/16 | EXPENSE REPORT |
| CHARITY | charity | | | 128.00 | | DONATION/CONTRIBUTION (UNKNOWN) | 01/12/16 | EXPENSE REPORT |
| CHARITY | charity | | | 990.00 | | DONATION/CONTRIBUTION (UNKNOWN) | 05/31/16 | EXPENSE REPORT |
| DONATION | DONATION | | | 250.00 | | DONATION/CONTRIBUTION (UNKNOWN) | 05/31/16 | EXPENSE REPORT |
| CHARITABLE | CHARITABLE | MISSING EXPENSE REP | 12/1/2016 | 1,035.00 | | DONATION/CONTRIBUTION (UNKNOWN) | 12/14/16 | EXPENSE REPORT |
| CHARITABLE | CHARITABLE | MISSING EXPENSE REP | 12/1/2016 | 1,000.00 | | DONATION/CONTRIBUTION (UNKNOWN) | 12/14/16 | EXPENSE REPORT |
| CHARITY | CHARITY | MISSING EXPENSE REP | 3/16/2017 | 12,300.00 | | DONATION/CONTRIBUTION (UNKNOWN) | 03/16/17 | EXPENSE REPORT |
| CHARITY | CHARITY | MISSING EXPENSE REP | 4/30/2017 | 128.00 | | DONATION/CONTRIBUTION (UNKNOWN) | 06/07/17 | EXPENSE REPORT |
| CHARITY | CHARITY | MISSING EXPENSE REP | 4/30/2017 | 271.77 | | DONATION/CONTRIBUTION (UNKNOWN) | 06/07/17 | EXPENSE REPORT |
| CHARITY | CHARITY | MISSING EXPENSE REP | 5/31/2017 | 1,000.00 | | DONATION/CONTRIBUTION (UNKNOWN) | 06/07/17 | EXPENSE REPORT |
| charity | charity | | | 207.58 | 5898 | DONATION/CONTRIBUTION (UNKNOWN) | 10/03/17 | EXPENSE REPORT |
| charity | charity | LACMA | | 817.14 | 5898 | DONATION/CONTRIBUTION | 10/03/17 | EXPENSE REPORT |
| charity | charity | | | 4,927.43 | | DONATION/CONTRIBUTION (UNKNOWN) | 10/03/17 | EXPENSE REPORT |
| charity | charity | Oakwood School | | 250.06 | 5898 | DONATION/CONTRIBUTION | 10/03/17 | EXPENSE REPORT |
| Charity | charity | | | 1,800.00 | 5898 | DONATION/CONTRIBUTION (UNKNOWN) | 01/08/18 | EXPENSE REPORT |
| charity | charity | Cal Science Foundation | | 191.62 | 5898 | DONATION/CONTRIBUTION | 01/08/18 | EXPENSE REPORT |
| charity | charity | Oakwood School | | 5,000.00 | 5898 | DONATION/CONTRIBUTION | 01/08/18 | EXPENSE REPORT |
| charity | charity | Wine for fire releif | | 200.00 | 5898 | DONATION/CONTRIBUTION | 01/08/18 | EXPENSE REPORT |
| charity | charity | Bel-Air hotel event | | 700.00 | 5898 | DONATION/CONTRIBUTION | 01/08/18 | EXPENSE REPORT |
| charity | charity | Stanford Fund | | 5,000.00 | 5898 | DONATION/CONTRIBUTION | 01/08/18 | EXPENSE REPORT |
| charitable | charity | | | 600.00 | | DONATION/CONTRIBUTION (UNKNOWN) | 12/17/18 | EXPENSE REPORT |
| charitable | charity | test ypi software | | 500.00 | | DONATION/CONTRIBUTION | 12/17/18 | EXPENSE REPORT |
| GETTY HOUSE FOUNDATION | GETTY HOUSE FOUNDATION | | 06/25/14 | 1,000.00 | | DONATION/CONTRIBUTION | 2014-06 | AMERICAN EXPRESS |
| GETTY HOUSE FOUNDATION | GETTY HOUSE FOUNDATION | | 06/25/14 | 1,000.00 | | DONATION/CONTRIBUTION | 2014-06 | AMERICAN EXPRESS |
| ALEXS LEMONADE STAND | ALEXS LEMONADE FOUNDATION | | 07/04/14 | 2,400.00 | | DONATION/CONTRIBUTION | 2014-07 | AMERICAN EXPRESS |
| PAYPAL *GRAMMYMUSEU | GRAMMYMUSEU | | 08/05/14 | 5,000.00 | | DONATION/CONTRIBUTION | 2014-08 | AMERICAN EXPRESS |
| PAYPAL *HOPE NET | HOPE NET | | 08/24/14 | 200.00 | | DONATION/CONTRIBUTION | 2014-08 | AMERICAN EXPRESS |
| AIDS PROJECT | AIDS PROJECT | | 09/07/14 | 100.00 | | DONATION/CONTRIBUTION | 2014-09 | AMERICAN EXPRESS |
| ALEXS LEMONADE STAND | ALEXS LEMONADE FOUNDATION | | 09/23/14 | 200.00 | | DONATION/CONTRIBUTION | 2014-09 | AMERICAN EXPRESS |
| BLK* | BLK* | | 09/01/14 | 1,500.00 | | DONATION/CONTRIBUTION (CROWDFUNDING) | 2014-09 | AMERICAN EXPRESS |
| KCRW FOUNDATION | KCRW | | 09/03/14 | 417.00 | | DONATION/CONTRIBUTION | 2014-09 | AMERICAN EXPRESS |
| PAYPAL *SALVADORANA | SALVADORANA | | 09/15/14 | 5,000.00 | | DONATION/CONTRIBUTION | 2014-09 | AMERICAN EXPRESS |
| TOTN SHARE OUR STREN | TOTN SHARE OUR STREN | WASHINGTON DC | 09/24/14 | 1,000.00 | | DONATION/CONTRIBUTION | 2014-09 | AMERICAN EXPRESS |
| KCRW FOUNDATION 310-314-467 | KCRW | | 10/03/14 | 417.00 | | DONATION/CONTRIBUTION | 2014-10 | AMERICAN EXPRESS |
| KCRW FOUNDATION | KCRW | | 11/03/14 | 417.00 | | DONATION/CONTRIBUTION | 2014-11 | AMERICAN EXPRESS |
| NATL COUNCIL OF LA | NATL COUNCIL OF LA RAZA | | 10/30/14 | 1,000.00 | | DONATION/CONTRIBUTION | 2014-11 | AMERICAN EXPRESS |



**YOUTH POLICY INSTITUTE, INC.**
**REPORT EXHIBITS**
Detail of transactions for noted category

**EXHIBIT C**

| DESCRIPTION | NORMALIZED DESCRIPTION | NOTE | DATE | TOTAL | OBJECT CODE | TYPE | REPORT DATE | DATA |
|---|---|---|---|---|---|---|---|---|
| KRCW FOUNDATION | KCRW | | 12/03/14 | 417.00 | | DONATION/CONTRIBUTION | 2014-12 | AMERICAN EXPRESS |
| NETWORK FOR GOOD | NETWORK FOR GOOD | | 12/19/14 | 2,000.00 | | DONATION/CONTRIBUTION | 2014-12 | AMERICAN EXPRESS |
| US CONF OF MAYORS | US CONF OF MAYORS | | 12/15/14 | 625.00 | | DONATION/CONTRIBUTION | 2014-12 | AMERICAN EXPRESS |
| INDIEGOGO | INDIEGOGO | | 01/15/15 | 500.00 | | DONATION/CONTRIBUTION (CROWDFUNDING) | 2015-01 | AMERICAN EXPRESS |
| KCRW FOUNDATION | KCRW | | 01/03/15 | 417.00 | | DONATION/CONTRIBUTION | 2015-01 | AMERICAN EXPRESS |
| KCRW FOUNDATION | KCRW | | 02/03/15 | 417.00 | | DONATION/CONTRIBUTION | 2015-02 | AMERICAN EXPRESS |
| THE MILKEN INSTITUTE | THE MILKEN INSTITUTE | | 01/29/15 | 1,500.00 | | DONATION/CONTRIBUTION | 2015-02 | AMERICAN EXPRESS |
| GETTY HOUSE FOUNDATION | GETTY HOUSE FOUNDATION | | 03/09/15 | 5,000.00 | | DONATION/CONTRIBUTION | 2015-03 | AMERICAN EXPRESS |
| KCRW FOUNDATION | KCRW | | 03/03/15 | 417.00 | | DONATION/CONTRIBUTION | 2015-03 | AMERICAN EXPRESS |
| KCRW FOUNDATION | KCRW | | 04/03/15 | 417.00 | | DONATION/CONTRIBUTION | 2015-04 | AMERICAN EXPRESS |
| SOSMENTOR | SOSMENTOR | | 03/27/15 | 1,000.00 | | DONATION/CONTRIBUTION | 2015-04 | AMERICAN EXPRESS |
| TOTN SHARE OUR STREN | TOTN SHARE OUR STRENWASHINGTON DC | | 04/08/15 | 550.00 | | DONATION/CONTRIBUTION | 2015-04 | AMERICAN EXPRESS |
| KCRW FOUNDATION | KCRW | | 05/03/15 | 417.00 | | DONATION/CONTRIBUTION | 2015-05 | AMERICAN EXPRESS |
| OPERATION PROGRESS LA | OPERATION PROGRESS LA | | 04/28/15 | 260.00 | | DONATION/CONTRIBUTION | 2015-05 | AMERICAN EXPRESS |
| ALEXS LEMONDAE | ALEXS LEMONADE FOUNDATION | | 05/29/15 | 2,400.00 | | DONATION/CONTRIBUTION | 2015-06 | AMERICAN EXPRESS |
| WPY* AYLINS COLLEGE FPALO AL | AYLINS COLLEGE FPALO ALTO | | 06/15/15 | 1,000.00 | | DONATION/CONTRIBUTION (CROWDFUNDING) | 2015-06 | AMERICAN EXPRESS |
| WPY*FLY MY MOM AND S PALO A | FLY MY MOM AND S PALO ALTO | | 06/04/15 | 500.00 | | DONATION/CONTRIBUTION (CROWDFUNDING) | 2015-06 | AMERICAN EXPRESS |
| KCRW FOUNDATION | KCRW | | 06/03/15 | 417.00 | | DONATION/CONTRIBUTION | 2015-06 | AMERICAN EXPRESS |
| KCRW FOUNDATION 310-314-467 | KCRW | | 07/03/2015 | 417.00 | | DONATION/CONTRIBUTION | 2015-07 | AMERICAN EXPRESS |
| KCRW FOUNDATION 310-314-467 | KCRW | | 08/03/2015 | 417.00 | | DONATION/CONTRIBUTION | 2015-08 | AMERICAN EXPRESS |
| KICKSTARTER INTRODUCNEW YOR | KICKSTARTER | | 08/05/2015 | 1,015.00 | | DONATION/CONTRIBUTION (CROWDFUNDING) | 2015-08 | AMERICAN EXPRESS |
| L.A. CONSERVANCY 3CN1 (888) 99 | L.A. CONSERVANCY | | 08/21/2015 | 500.00 | | DONATION/CONTRIBUTION | 2015-08 | AMERICAN EXPRESS |
| KCRW FOUNDATION 310-314-467 | KCRW | | 09/03/2015 | 417.00 | | DONATION/CONTRIBUTION | 2015-09 | AMERICAN EXPRESS |
| L.A. CONSERVANCY 3CN1 (888) 99 | L.A. CONSERVANCY | | 09/21/2015 | (100.00) | | DONATION/CONTRIBUTION | 2015-09 | AMERICAN EXPRESS |
| L.A. CONSERVANCY 3CN1 (888) 99 | L.A. CONSERVANCY | | 09/21/2015 | 100.00 | | DONATION/CONTRIBUTION | 2015-09 | AMERICAN EXPRESS |
| L.A. CONSERVANCY 3CN1 (888) 99 | L.A. CONSERVANCY | | 09/21/2015 | 100.00 | | DONATION/CONTRIBUTION | 2015-09 | AMERICAN EXPRESS |
| TOTN SHARE OUR STRENWASHIN | TOTN SHARE OUR STRENWASHINGTON DC | | 09/22/2015 | 1,000.00 | | DONATION/CONTRIBUTION | 2015-09 | AMERICAN EXPRESS |
| KCRW FOUNDATION 310-314-467 | KCRW | | 10/03/2015 | 417.00 | | DONATION/CONTRIBUTION | 2015-10 | AMERICAN EXPRESS |
| PAYPAL *NETWRK4GOOD 402935 | NETWRK4GOOD | | 10/09/2015 | 618.00 | | DONATION/CONTRIBUTION | 2015-10 | AMERICAN EXPRESS |
| KCRW FOUNDATION 310-314-467 | KCRW | | 11/03/2015 | 417.00 | | DONATION/CONTRIBUTION | 2015-11 | AMERICAN EXPRESS |
| NATL COUNCIL OF LA RAZA NATL | NATL COUNCIL OF LA RAZA | | 11/10/2015 | 2,500.00 | | DONATION/CONTRIBUTION | 2015-11 | AMERICAN EXPRESS |
| PAYPAL *SALVADORANA - 402935 | SALVADORANA | | 11/10/2015 | 5,000.00 | | DONATION/CONTRIBUTION | 2015-11 | AMERICAN EXPRESS |
| TAKING THE REINS - Los Angeles, | TAKING THE REINS | | 11/08/2015 | 300.00 | | DONATION/CONTRIBUTION | 2015-11 | AMERICAN EXPRESS |
| GETTY HOUSE FOUNDATION 1100 | GETTY HOUSE FOUNDATION | | 12/21/2015 | 10,000.00 | | DONATION/CONTRIBUTION | 2015-12 | AMERICAN EXPRESS |
| KCRW FOUNDATION - 310-314-46 | KCRW | | 12/03/2015 | 417.00 | | DONATION/CONTRIBUTION | 2015-12 | AMERICAN EXPRESS |
| KCRW FOUNDATION - 310-314-46 | KCRW | | 01/03/2016 | 417.00 | | DONATION/CONTRIBUTION | 2016-01 | AMERICAN EXPRESS |
| SPARK I SPARK I - STUDIO CITY, CA | SPARK I | | 12/27/2015 | 660.00 | | DONATION/CONTRIBUTION | 2016-01 | AMERICAN EXPRESS |
| FROMTHEHEARTPRODUCTION - C | FROMTHEHEARTPRODUCTION | | 02/02/2016 | 5,000.00 | | DONATION/CONTRIBUTION | 2016-02 | AMERICAN EXPRESS |
| KCRW FOUNDATION - 310-314-46 | KCRW | | 02/03/2016 | 417.00 | | DONATION/CONTRIBUTION | 2016-02 | AMERICAN EXPRESS |
| KCRW FOUNDATION - 310-314-46 | KCRW | | 03/03/2016 | 417.00 | | DONATION/CONTRIBUTION | 2016-03 | AMERICAN EXPRESS |
| PAYPAL *SEA INC - 4029357733, C | SEA INC | | 03/22/2016 | 2,500.00 | | DONATION/CONTRIBUTION | 2016-03 | AMERICAN EXPRESS |
| COMMON THREADS 000000001 - | COMMON THREADS | | 04/18/2016 | 200.00 | | DONATION/CONTRIBUTION | 2016-04 | AMERICAN EXPRESS |
| KCRW FOUNDATION - 310-314-46 | KCRW | | 04/03/2016 | 417.00 | | DONATION/CONTRIBUTION | 2016-04 | AMERICAN EXPRESS |
| LIBERTY HILL FOUNDATION - LOS | LIBERTY HILL FOUNDATION | | 04/20/2016 | 500.00 | | DONATION/CONTRIBUTION | 2016-04 | AMERICAN EXPRESS |
| ALEXS LEMONADE FOUNDATION | ALEXS LEMONADE FOUNDATION | | 05/05/2016 | 2,400.00 | | DONATION/CONTRIBUTION | 2016-05 | AMERICAN EXPRESS |
| ART INSTITUTE-ADMISS - CHICAG | ART INSTITUTE | | 05/11/2016 | 50.00 | | DONATION/CONTRIBUTION | 2016-05 | AMERICAN EXPRESS |
| GIVESMART US INC - 855-322448 | GIVESMART | | 05/13/2016 | 1,250.00 | | DONATION/CONTRIBUTION (CROWDFUNDING) | 2016-05 | AMERICAN EXPRESS |
| INTERNATIONAL RETT SYNDRO 00 | INTERNATIONAL RETT SYNDRO | | 05/12/2016 | 900.00 | | DONATION/CONTRIBUTION | 2016-05 | AMERICAN EXPRESS |
| KCRW - 3103144635, CA | KCRW | | 05/03/2016 | 417.00 | | DONATION/CONTRIBUTION | 2016-05 | AMERICAN EXPRESS |
| DE*NATIONAL FOSTER YOUTH - V | NATIONAL FOSTER YOUTH | | 04/30/2016 | 2,000.00 | | DONATION/CONTRIBUTION | 2016-05 | AMERICAN EXPRESS |
| WPY*Danielas College Fund 0000 | Danielas College Fund | | 06/09/2016 | 500.00 | | DONATION/CONTRIBUTION (CROWDFUNDING) | 2016-06 | AMERICAN EXPRESS |
| KCRW - 3103144635, CA | KCRW | | 06/06/2016 | 417.00 | | DONATION/CONTRIBUTION | 2016-06 | AMERICAN EXPRESS |



**YOUTH POLICY INSTITUTE, INC.**
**REPORT EXHIBITS**
Detail of transactions for noted category

EXHIBIT C

| DESCRIPTION | NORMALIZED DESCRIPTION | NOTE | DATE | TOTAL | OBJECT CODE | TYPE | REPORT DATE | DATA |
|---|---|---|---|---|---|---|---|---|
| PRIZEO.COM PRIZEO HAMI - LOS / | PRIZEO.COM | | 06/16/2016 | 115.00 | | DONATION/CONTRIBUTION (CROWDFUNDING) | 2016-06 | AMERICAN EXPRESS |
| KCRW - 3103144635, CA | KCRW | | 07/05/2016 | 417.00 | | DONATION/CONTRIBUTION | 2016-07 | AMERICAN EXPRESS |
| KCRW - 3103144635, CA | KCRW | | 08/03/2016 | 417.00 | | DONATION/CONTRIBUTION | 2016-08 | AMERICAN EXPRESS |
| GIVESMART US INC - 855-322448! | GIVESMART | | 09/10/2016 | 20,400.00 | | DONATION/CONTRIBUTION (CROWDFUNDING) | 2016-09 | AMERICAN EXPRESS |
| WPY*Support for Ian 000000001 | upport for Ian | | 09/02/2016 | 500.00 | | DONATION/CONTRIBUTION (CROWDFUNDING) | 2016-09 | AMERICAN EXPRESS |
| GIVESMART US INC - 855-322448! | GIVESMART | | 10/07/2016 | 500.00 | | DONATION/CONTRIBUTION (CROWDFUNDING) | 2016-10 | AMERICAN EXPRESS |
| UNITED WAY GREATER LOS 0591 | UNITED WAY | | 10/14/2016 | 250.00 | | DONATION/CONTRIBUTION | 2016-10 | AMERICAN EXPRESS |
| IATS*PROJECT ANGEL FOOD 6280 | PROJECT ANGEL FOOD | | 11/18/2016 | 250.00 | | DONATION/CONTRIBUTION | 2016-11 | AMERICAN EXPRESS |
| WPY*Support for the Lopez 0000 | Support for the Lopez | | 11/15/2016 | 500.00 | | DONATION/CONTRIBUTION (CROWDFUNDING) | 2016-11 | AMERICAN EXPRESS |
| PAYPAL *AFTERSCHOOL - 402935 | AFTERSCHOOL | | 12/15/2016 | 1,000.00 | | DONATION/CONTRIBUTION | 2016-12 | AMERICAN EXPRESS |
| KCRW - 3103144635, CA | KCRW | | 12/09/2016 | 417.00 | | DONATION/CONTRIBUTION | 2016-12 | AMERICAN EXPRESS |
| PAPA NDIAYE - New York, NY | PAPA NDIAYE | | 12/16/2016 | 120.00 | | DONATION/CONTRIBUTION | 2016-12 | AMERICAN EXPRESS |
| KCRW - 3103144635, CA | KCRW | | 01/09/2017 | 417.00 | | DONATION/CONTRIBUTION | 2017-01 | AMERICAN EXPRESS |
| LIBERTY HILL FOUNDATION 9489( | LIBERTY HILL FOUNDATION | | 01/06/2017 | 3,750.00 | | DONATION/CONTRIBUTION | 2017-01 | AMERICAN EXPRESS |
| VERITIX-TIGER WOODS FOUNDAT | TIGER WOODS FOUNDATION | | 01/01/2017 | 662.55 | | DONATION/CONTRIBUTION | 2017-01 | AMERICAN EXPRESS |
| KCRW - 3103144635, CA | KCRW | | 02/08/2017 | 417.00 | | DONATION/CONTRIBUTION | 2017-02 | AMERICAN EXPRESS |
| LARCHMONT SCHOOLS 65000000 | LARCHMONT SCHOOL | | 02/08/2017 | 100.00 | | DONATION/CONTRIBUTION | 2017-02 | AMERICAN EXPRESS |
| KCRW - 3103144635, CA | KCRW | | 03/07/2017 | 417.00 | | DONATION/CONTRIBUTION | 2017-03 | AMERICAN EXPRESS |
| LARCHMONT SCHOOLS 65000000 | LARCHMONT SCHOOL | | 03/10/2017 | 100.00 | | DONATION/CONTRIBUTION | 2017-03 | AMERICAN EXPRESS |
| WWW.COROLA.ORG - LOS ANGEL | WWW.COROLA.ORG | | 02/27/2017 | 2,500.00 | | DONATION/CONTRIBUTION | 2017-03 | AMERICAN EXPRESS |
| WPY*DIY Girls Present Eur 00000 | Girls Present Eur | | 04/01/2017 | 500.00 | | DONATION/CONTRIBUTION (CROWDFUNDING) | 2017-04 | AMERICAN EXPRESS |
| KCRW - 3103144635, CA | KCRW | | 04/11/2017 | 417.00 | | DONATION/CONTRIBUTION | 2017-04 | AMERICAN EXPRESS |
| GIVESMART US INC - 855-322448! | GIVESMART | | 05/10/2017 | 400.00 | | DONATION/CONTRIBUTION (CROWDFUNDING) | 2017-05 | AMERICAN EXPRESS |
| KCRW - 3103144635, CA | KCRW | | 05/09/2017 | 417.00 | | DONATION/CONTRIBUTION | 2017-05 | AMERICAN EXPRESS |
| ALEXS LEMONADE FOUNDATION | ALEXS LEMONADE FOUNDATION | | 06/14/2017 | 2,400.00 | | DONATION/CONTRIBUTION | 2017-06 | AMERICAN EXPRESS |
| KCRW - 3103144635, CA | KCRW | | 06/07/2017 | 417.00 | | DONATION/CONTRIBUTION | 2017-06 | AMERICAN EXPRESS |
| BB*NO KID HUNGRY Blackbaud In | NO KID HUNGRY | | 05/27/2017 | 10.00 | | DONATION/CONTRIBUTION | 2017-06 | AMERICAN EXPRESS |
| PRIZEO.COM PRIZEO HAMI - LOS / | PRIZEO.COM | | 06/26/2017 | 1,000.00 | | DONATION/CONTRIBUTION (CROWDFUNDING) | 2017-06 | AMERICAN EXPRESS |
| WPY*Range Of Motion Proje 000( | Range Of Motion Proje | | 06/11/2017 | 544.30 | | DONATION/CONTRIBUTION (CROWDFUNDING) | 2017-06 | AMERICAN EXPRESS |
| KCRW - 3103144635, CA | KCRW | | 07/10/2017 | 417.00 | | DONATION/CONTRIBUTION | 2017-07 | AMERICAN EXPRESS |
| KICKSTARTER.COM - BROOKLYN, t | KICKSTARTER | | 07/10/2017 | 67.00 | | DONATION/CONTRIBUTION (CROWDFUNDING) | 2017-07 | AMERICAN EXPRESS |
| KCRW - 3103144635, CA | KCRW | | 08/07/2017 | 417.00 | | DONATION/CONTRIBUTION | 2017-08 | AMERICAN EXPRESS |
| KCRW - 3103144635, CA | KCRW | | 09/07/2017 | 417.00 | | DONATION/CONTRIBUTION | 2017-09 | AMERICAN EXPRESS |
| MOBILEDONATION - 818-2960345 | MOBILEDONATION | | 09/21/2017 | 1,500.00 | | DONATION/CONTRIBUTION (CROWDFUNDING) | 2017-09 | AMERICAN EXPRESS |
| PAYPAL *SALVADORANA - 402935 | SALVADORANA | | 09/21/2017 | 2,500.00 | | DONATION/CONTRIBUTION | 2017-09 | AMERICAN EXPRESS |
| GAMECHANGERCHARITY.DONOR | GAMECHANGERCHARITY | | 10/12/2017 | 100.00 | | DONATION/CONTRIBUTION | 2017-10 | AMERICAN EXPRESS |
| KCRW - 3103144635, CA | KCRW | | 10/10/2017 | 417.00 | | DONATION/CONTRIBUTION | 2017-10 | AMERICAN EXPRESS |
| MADISON GINNETT - San Francisc | MADISON GINNETT | | 10/10/2017 | 800.00 | | DONATION/CONTRIBUTION | 2017-10 | AMERICAN EXPRESS |
| KCRW - 3103144635, CA | KCRW | | 11/07/2017 | 417.00 | | DONATION/CONTRIBUTION | 2017-11 | AMERICAN EXPRESS |
| KCRW FOUNDATION INC 2 - SANT | KCRW | | 11/22/2017 | 400.00 | | DONATION/CONTRIBUTION | 2017-11 | AMERICAN EXPRESS |
| BB*C-CAP Blackbaud Inc. - NEW Y | C-CAP | | 12/15/2017 | 1,000.00 | | DONATION/CONTRIBUTION | 2017-12 | AMERICAN EXPRESS |
| KCRW - 3103144635, CA | KCRW | | 12/08/2017 | 417.00 | | DONATION/CONTRIBUTION | 2017-12 | AMERICAN EXPRESS |
| OMAZE, INC. OMAZE - DO - LOS A | OMAZE, INC. | | 12/13/2017 | 500.00 | | DONATION/CONTRIBUTION (CROWDFUNDING) | 2017-12 | AMERICAN EXPRESS |
| KCRW - 3103144635, CA | KCRW | | 01/08/2018 | 417.00 | | DONATION/CONTRIBUTION | 2018-01 | AMERICAN EXPRESS |
| OMAZE, INC. OMAZE - DO - LOS A | OMAZE, INC. | | 01/19/2018 | 100.00 | | DONATION/CONTRIBUTION (CROWDFUNDING) | 2018-01 | AMERICAN EXPRESS |
| BB*C-CAP Blackbaud Inc. - NEW Y | C-CAP | | 02/13/2018 | 500.00 | | DONATION/CONTRIBUTION | 2018-02 | AMERICAN EXPRESS |
| KCRW - SANTA MONICA, CA | KCRW | | 02/07/2018 | 417.00 | | DONATION/CONTRIBUTION | 2018-02 | AMERICAN EXPRESS |
| OMAZE, INC. OMAZE - DO - LOS A | OMAZE, INC. | | 02/09/2018 | 1,000.00 | | DONATION/CONTRIBUTION (CROWDFUNDING) | 2018-02 | AMERICAN EXPRESS |
| CHARITYBUZZ.COM - NEW YORK ( | CHARITYBUZZ.COM | | 03/23/2018 | 1,559.95 | | DONATION/CONTRIBUTION (CROWDFUNDING) | 2018-03 | AMERICAN EXPRESS |
| WPY*Help SJ Racing Team t 0000( | Help SJ Racing Team | | 03/12/2018 | 500.00 | | DONATION/CONTRIBUTION (CROWDFUNDING) | 2018-03 | AMERICAN EXPRESS |
| KCRW - SANTA MONICA, CA | KCRW | | 03/07/2018 | 417.00 | | DONATION/CONTRIBUTION | 2018-03 | AMERICAN EXPRESS |
| KCRW - SANTA MONICA, CA | KCRW | | 04/12/2018 | 417.00 | | DONATION/CONTRIBUTION | 2018-04 | AMERICAN EXPRESS |



**YOUTH POLICY INSTITUTE, INC.**
**REPORT EXHIBITS**
Detail of transactions for noted category

EXHIBIT C

| DESCRIPTION | NORMALIZED DESCRIPTION | NOTE | DATE | TOTAL | OBJECT CODE | TYPE | REPORT DATE | DATA |
|---|---|---|---|---|---|---|---|---|
| GIVESMART US - ATLANTA, GA | GIVESMART | | 05/23/2018 | 2,075.00 | | DONATION/CONTRIBUTION (CROWDFUNDING) | 2018-05 | AMERICAN EXPRESS |
| HERMANDAD MEXICANA NACION | HERMANDAD MEXICANA NACION | | 05/09/2018 | 5,000.00 | | DONATION/CONTRIBUTION | 2018-05 | AMERICAN EXPRESS |
| KCRW - SANTA MONICA, CA | KCRW | | 05/07/2018 | 417.00 | | DONATION/CONTRIBUTION | 2018-05 | AMERICAN EXPRESS |
| NETWORK FOR GOOD NETWORK | NETWORK FOR GOOD | | 05/08/2018 | 515.00 | | DONATION/CONTRIBUTION | 2018-05 | AMERICAN EXPRESS |
| Pou Timoun Foundation - 310502 | Pou Timoun Foundation | | 04/26/2018 | 1,400.00 | | DONATION/CONTRIBUTION | 2018-05 | AMERICAN EXPRESS |
| ACTBLUE*CIVICSC4DONATION - A | *CIVICSC4DONATION | | 06/21/2018 | 71.43 | | DONATION/CONTRIBUTION | 2018-06 | AMERICAN EXPRESS |
| ACTBLUE*CHARITABLECONTRIB - | CHARITABLECONTRIB | | 06/21/2018 | 428.57 | | DONATION/CONTRIBUTION (CROWDFUNDING) | 2018-06 | AMERICAN EXPRESS |
| WPY*HELP SAMI FAGEN IN IN - R | HELP SAMI FAGEN | | 05/30/2018 | 500.00 | | DONATION/CONTRIBUTION (CROWDFUNDING) | 2018-06 | AMERICAN EXPRESS |
| KCRW - SANTA MONICA, CA | KCRW | | 06/08/2018 | 417.00 | | DONATION/CONTRIBUTION | 2018-06 | AMERICAN EXPRESS |
| PAYPAL *ALEXSLEMONA | ALEXS LEMONADE FOUNDATION | | 07/18/18 | 4,800.00 | | DONATION/CONTRIBUTION | 2018-07 | AMERICAN EXPRESS |
| WPY* GE HENRY TO HOBART | GE HENRY TO HOBART | | 07/24/18 | 500.00 | | DONATION/CONTRIBUTION (CROWDFUNDING) | 2018-07 | AMERICAN EXPRESS |
| WPY* GOFUNDME | GOFUNDME | | 06/28/18 | 75.00 | | DONATION/CONTRIBUTION (CROWDFUNDING) | 2018-07 | AMERICAN EXPRESS |
| KCRW | KCRW | | 07/09/18 | 417.00 | | DONATION/CONTRIBUTION | 2018-07 | AMERICAN EXPRESS |
| WPY* SAVE DR WALDOS RESEAR | SAVE DR WALDOS RESEAR | | 06/28/18 | 500.00 | | DONATION/CONTRIBUTION (CROWDFUNDING) | 2018-07 | AMERICAN EXPRESS |
| KCRW | KCRW | | 08/08/18 | 417.00 | | DONATION/CONTRIBUTION | 2018-08 | AMERICAN EXPRESS |
| GIVESAMRT US | GIVESMART | | 09/11/15 | 120.00 | | DONATION/CONTRIBUTION (CROWDFUNDING) | 2018-09 | AMERICAN EXPRESS |
| KCRW | KCRW | | 09/07/18 | 417.00 | | DONATION/CONTRIBUTION | 2018-09 | AMERICAN EXPRESS |
| KCRW | KCRW | | 10/08/18 | 417.00 | | DONATION/CONTRIBUTION | 2018-10 | AMERICAN EXPRESS |
| PAYPAL *SALVADORANA | SALVADORANA | | 10/01/18 | 2,500.00 | | DONATION/CONTRIBUTION | 2018-10 | AMERICAN EXPRESS |
| WPY* HONORING KEYMAAN | HONORING KEYMAAN | | 11/02/18 | 500.00 | | DONATION/CONTRIBUTION (CROWDFUNDING) | 2018-11 | AMERICAN EXPRESS |
| KCRW | KCRW | | 11/07/18 | 417.00 | | DONATION/CONTRIBUTION | 2018-11 | AMERICAN EXPRESS |
| PAYPAL *LACI | LACI | | 11/11/18 | 500.00 | | DONATION/CONTRIBUTION | 2018-11 | AMERICAN EXPRESS |
| WPY* ALLIANCE MARC EVA STE | ALLIANCE MARC EVA STE | | 12/07/18 | 250.00 | | DONATION/CONTRIBUTION (CROWDFUNDING) | 2018-12 | AMERICAN EXPRESS |
| KCRW | KCRW | | 12/07/18 | 417.00 | | DONATION/CONTRIBUTION | 2018-12 | AMERICAN EXPRESS |
| ACTBLUE*SOLISSUPERVOH | SOLISSUPERVOH | | 12/07/18 | 1,500.00 | | DONATION/CONTRIBUTION | 2018-12 | AMERICAN EXPRESS |
| KCRW | KCRW | | 01/07/19 | 417.00 | | DONATION/CONTRIBUTION | 2019-01 | AMERICAN EXPRESS |
| APLPAY PRIZEO | PRIZEO.COM | | 01/12/19 | 500.00 | | DONATION/CONTRIBUTION (CROWDFUNDING) | 2019-01 | AMERICAN EXPRESS |
| KCRW | KCRW | | 02/07/19 | 417.00 | | DONATION/CONTRIBUTION | 2019-02 | AMERICAN EXPRESS |
| KCRW | KCRW | | 03/07/19 | 417.00 | | DONATION/CONTRIBUTION | 2019-03 | AMERICAN EXPRESS |
| QGV*ST. JOHN'S WELL CHILD ST. | QGV*ST. JOHN'S WELL CHILD ST. JOHN'S WELL CHILD | | 03/11/19 | 5,000.00 | | DONATION/CONTRIBUTION | 2019-03 | AMERICAN EXPRESS |
| KCRW | KCRW | | 04/07/19 | 417.00 | | DONATION/CONTRIBUTION | 2019-04 | AMERICAN EXPRESS |
| HERMANDAD MEXICANA NACIO | HERMANDAD MEXICANA NACION | | 04/30/19 | 5,000.00 | | DONATION/CONTRIBUTION | 2019-05 | AMERICAN EXPRESS |
| KCRW | KCRW | | 05/07/19 | 417.00 | | DONATION/CONTRIBUTION | 2019-05 | AMERICAN EXPRESS |
| LIBERTY HILL FOUNDATION | LIBERTY HILL FOUNDATION | | 05/01/19 | 750.00 | | DONATION/CONTRIBUTION | 2019-05 | AMERICAN EXPRESS |
| PAYPAL *PICO UNION | PICO UNION | | 05/16/19 | 250.00 | | DONATION/CONTRIBUTION | 2019-05 | AMERICAN EXPRESS |
| | | | **TOTAL** | **236,289.90** | | | | |



**YOUTH POLICY INSTITUTE, INC.**
**REPORT EXHIBITS**
Detail of transactions for noted category

**EXHIBIT D**
    AMOUNTS $1,000 and over only

| DESCRIPTION | NORMALIZED DESCRIPTION | NOTE | DATE | TOTAL | OBJECT CODE | TYPE | REPORT DATE | DATA |
|---|---|---|---|---|---|---|---|---|
| calufirnia event club | california event club | | | 2,804.48 | | EVENT | 07/03/14 | EXPENSE REPORT |
| events 2014 donor-related expen | event | Various receipts, do not add up | | 12,125.66 | | EVENT | 10/09/14 | EXPENSE REPORT |
| EVENT | event | | | 1,140.00 | | EVENT | 11/12/15 | EXPENSE REPORT |
| EVENT (OCT, NOV & DEC) | EVENT (OCT, NOV & DEC) | MISSING EXPENSE REPORT & BACKUP | | 8,646.95 | | EVENT | 12/14/16 | EXPENSE REPORT |
| EVENT | EVENT | MISSING EXPENSE REPORT & BACKUP | | 1,449.61 | | EVENT | 03/16/17 | EXPENSE REPORT |
| EVENT | EVENT | MISSING EXPENSE REPORT & BACKUP | | 2,705.55 | | EVENT | 06/06/17 | EXPENSE REPORT |
| event | event | Four Seasons - CUT | | 1,033.33 | 5200 | EVENT | 10/03/17 | EXPENSE REPORT |
| event | event | Disneyland tickets | | 3,600.00 | 5200 | EVENT | 01/08/18 | EXPENSE REPORT |
| event | event | entertainment | | 1,186.80 | | EVENT | 12/17/18 | EXPENSE REPORT |
| event | event | Steve Spinner-Benu | | 2,011.59 | | EVENT | 12/17/18 | EXPENSE REPORT |
| H&W event | H&W event | Fun Jumpers | | 2,007.00 | | EVENT | 12/17/18 | EXPENSE REPORT |
| LALIVEWPCCATER | LA LIVE WOLFGANG PUCK CATERING | | 12/16/14 | 19,327.88 | | EVENT | 2014-12 | AMERICAN EXPRESS |
| TICKETMASTER PHONES | TICKETMASTER | | 02/17/15 | 1,604.75 | | EVENT: TICKETS | 2015-02 | AMERICAN EXPRESS |
| TM -BROADWAY LA SUBSCRIPTIO | BROADWAY LA SUBSCRIPTION | | 04/10/2016 | 2,538.00 | | EVENT: TICKETS | 2016-04 | AMERICAN EXPRESS |
| BROWN PAPER TICKETS - SEATTLE | BROWN PAPER TICKETS | | 06/15/2016 | 1,036.98 | | EVENT: TICKETS | 2016-06 | AMERICAN EXPRESS |
| SP * JBF TASTE AMERICA - NEW Y | JBF TASTE AMERICA | | 06/20/2016 | 1,400.00 | | EVENT | 2016-06 | AMERICAN EXPRESS |
| STUBHUB - SAN FRANCISCO, CA | STUBHUB | | 01/17/2017 | 1,410.00 | | EVENT: TICKETS | 2017-01 | AMERICAN EXPRESS |
| EB *L.A.COOKS FOR THE EB *L.A.C | L.A.COOKS | | 02/24/2017 | 1,810.02 | | EVENT | 2017-02 | AMERICAN EXPRESS |
| EB *NEW VILLAGE ANNUAL EB *N | NEW VILLAGE ANNUAL | | 02/24/2017 | 5,000.00 | | EVENT | 2017-02 | AMERICAN EXPRESS |
| STUBHUB - SAN FRANCISCO, CA | STUBHUB | | 03/17/2017 | 2,102.30 | | EVENT: TICKETS | 2017-03 | AMERICAN EXPRESS |
| EB *2017 CHAMPIONS FOR EB *2 | 2017 CHAMPIONS FOR EB | | 03/31/2017 | 1,000.00 | | EVENT | 2017-04 | AMERICAN EXPRESS |
| STUBHUB - SAN FRANCISCO, CA | STUBHUB | | 04/15/2017 | 2,799.95 | | EVENT: TICKETS | 2017-04 | AMERICAN EXPRESS |
| PAYPAL*PADRESCONTR - 402935 | PADRESCONTR | | 08/03/2017 | 2,500.00 | | EVENT | 2017-08 | AMERICAN EXPRESS |
| STUBHUB - SAN FRANCISCO, CA | STUBHUB | | 07/30/2017 | 1,059.40 | | EVENT: TICKETS | 2017-08 | AMERICAN EXPRESS |
| STUBHUB - SAN FRANCISCO, CA | STUBHUB | | 08/07/2017 | 1,665.72 | | EVENT: TICKETS | 2017-08 | AMERICAN EXPRESS |
| LA DODGERS - 800-352-0212, CA | LA DODGERS | | 03/26/2018 | 2,000.00 | | EVENT | 2018-03 | AMERICAN EXPRESS |
| EB *LA TIMES FOOD BOWL EB *L | LA TIMES FOOD BOWL | | 03/31/2018 | 1,839.76 | | EVENT | 2018-04 | AMERICAN EXPRESS |
| TM *TICKETMASTER-LA2 - HOLLY | TICKETMASTER | | 06/10/2018 | 2,304.75 | | EVENT: TICKETS | 2018-06 | AMERICAN EXPRESS |
| STUBHUB | STUBHUB | | 07/30/18 | 1,052.04 | | EVENT: TICKETS | 2018-08 | AMERICAN EXPRESS |
| PARAMOUNT EVENTS | PARAMOUNT EVENTS | | 12/18/18 | 3,500.00 | | EVENT | 2018-12 | AMERICAN EXPRESS |
| TM *TICKETMASTER | TICKETMASTER | | 02/06/19 | 1,543.15 | | EVENT: TICKETS | 2019-02 | AMERICAN EXPRESS |
| | | TOTAL UNDER $1,000 | | 39,704.43 | | | | |
| | | **TOTAL** | | **135,910.10** | | | | |

**EXHIBIT E**

| DESCRIPTION | NORMALIZED DESCRIPTION | NOTE | DATE | TOTAL | OBJECT CODE | TYPE | REPORT DATE | DATA |
|---|---|---|---|---|---|---|---|---|
| GIFTS | GIFTS | Alcohol, Chocolates, Skin Care | | 600.00 | | GIFTS | 01/03/16 | EXPENSE REPORT |
| GIFTS | GIFTS | MISSING EXPENSE REPORT & BACKUP | | 261.34 | | GIFTS | 12/14/16 | EXPENSE REPORT |
| CHEFD.COM - EL SEGUNDO, CA | CHEFD.COM | | 06/13/2017 | 253.30 | | GIFTS | 2017-06 | AMERICAN EXPRESS |
| CHEFD.COM - EL SEGUNDO, CA | CHEFD.COM | | 11/14/2017 | 287.00 | | GIFTS | 2017-11 | AMERICAN EXPRESS |
| CHEFD.COM - EL SEGUNDO, CA | CHEFD.COM | | 12/22/2017 | 204.00 | | GIFTS | 2017-12 | AMERICAN EXPRESS |
| CHEFD.COM - EL SEGUNDO, CA | CHEFD.COM | | 05/03/2018 | 213.00 | | GIFTS | 2018-05 | AMERICAN EXPRESS |
| NOMAD LA HOTEL GIFT CARD 028 | NOMAD HOTELS | | 6/29/2018 | 503.50 | | GIFTS | 2018-07 | AMERICAN EXPRESS |
| PLEASE DO NOT ENTER | PLEASE DO NOT ENTER | | 11/15/18 | 164.25 | | GIFTS | 2018-11 | AMERICAN EXPRESS |
| APLPAY ZOLA REGISTRY | ZOLA REGISTRY | | 03/11/19 | 512.50 | | GIFTS | 2019-03 | AMERICAN EXPRESS |
| | | | **TOTAL** | **2,998.89** | | | | |

**YOUTH POLICY INSTITUTE, INC.**
**REPORT EXHIBITS**
Detail of transactions for noted category

**EXHIBIT F**

| DESCRIPTION | NORMALIZED DESCRIPTION | NOTE | DATE | TOTAL | OBJECT CODE | TYPE | REPORT DATE | DATA |
|---|---|---|---|---|---|---|---|---|
| HA | HA | | | 10,800.00 | | HOUSING ALLOWANCE | 01/03/14 | EXPENSE REPORT |
| HA | HA | | | 10,800.00 | | HOUSING ALLOWANCE | 04/09/14 | EXPENSE REPORT |
| HA | HA | | | 10,800.00 | | HOUSING ALLOWANCE | 07/08/14 | EXPENSE REPORT |
| HA | HA | | | 10,800.00 | | HOUSING ALLOWANCE | 10/09/14 | EXPENSE REPORT |
| HA (NOV-FEB) | HA | Nov-Feb | | 14,400.00 | | HOUSING ALLOWANCE | 01/12/15 | EXPENSE REPORT |
| HA (MAY-MAY) | HA | | | 10,800.00 | | HOUSING ALLOWANCE | 05/11/15 | EXPENSE REPORT |
| HA (ADDITIONAL MONTH) | HA | | | 3,600.00 | | HOUSING ALLOWANCE | 05/11/15 | EXPENSE REPORT |
| HA (JULY-SEPT) | HA | | | 10,800.00 | | HOUSING ALLOWANCE | 09/01/15 | EXPENSE REPORT |
| HA (OCT - NOV) | HA | | | 7,200.00 | | HOUSING ALLOWANCE | 11/12/15 | EXPENSE REPORT |
| HA (DEC- JAN) | HA | | | 7,200.00 | | HOUSING ALLOWANCE | 01/12/16 | EXPENSE REPORT |
| HA (FEB-MAY) | HA | | | 14,400.00 | | HOUSING ALLOWANCE | 05/31/16 | EXPENSE REPORT |
| HA - OCT, NOV & DEC | HA - OCT, NOV & DEC | MISSING EXPENSE REPORT & BACKUP | | 10,800.00 | | HOUSING ALLOWANCE | 12/14/16 | EXPENSE REPORT |
| HA | HA | MISSING EXPENSE REPORT & BACKUP | | 3,600.00 | | HOUSING ALLOWANCE | 03/16/17 | EXPENSE REPORT |
| HA | HA | MISSING EXPENSE REPORT & BACKUP | | 3,600.00 | | HOUSING ALLOWANCE | 03/16/17 | EXPENSE REPORT |
| HA | HA | MISSING EXPENSE REPORT & BACKUP | | 3,600.00 | | HOUSING ALLOWANCE | 03/16/17 | EXPENSE REPORT |
| HA | HA | MISSING EXPENSE REPORT & BACKUP | | 3,600.00 | | HOUSING ALLOWANCE | 06/06/17 | EXPENSE REPORT |
| HA | HA | MISSING EXPENSE REPORT & BACKUP | | 3,600.00 | | HOUSING ALLOWANCE | 06/06/17 | EXPENSE REPORT |
| HA | HA | MISSING EXPENSE REPORT & BACKUP | | 3,600.00 | | HOUSING ALLOWANCE | 06/06/17 | EXPENSE REPORT |
| | | | TOTAL | **144,000.00** | | | | |


**YOUTH POLICY INSTITUTE, INC.**
**REPORT EXHIBITS**
Detail of transactions for noted category

EXHIBIT G
AMOUNTS $500 and over only

| DESCRIPTION | NORMALIZED DESCRIPTION | NOTE | DATE | TOTAL | OBJECT CODE | TYPE | REPORT DATE | DATA |
|---|---|---|---|---|---|---|---|---|
| MEAL/ENT | MEAL | | | 1,252.99 | | MEALS | 09/01/15 | EXPENSE REPORT |
| MEAL/ENT | MEAL | Atlelier, | | 2,308.28 | | MEALS | 09/01/15 | EXPENSE REPORT |
| MEAL/ENT | MEAL | | 07/03/19 | 637.67 | | MEALS | 09/01/15 | EXPENSE REPORT |
| MEAL/ENT | MEAL | | | 1,065.75 | | MEALS | 09/01/15 | EXPENSE REPORT |
| MEAL | MEAL | Providence, StubHub, | | 2,306.16 | | MEALS | 11/12/15 | EXPENSE REPORT |
| MEAL | MEAL | | | 527.60 | | MEALS | 11/12/15 | EXPENSE REPORT |
| MEAL | MEAL | | | 644.41 | | MEALS | 11/12/15 | EXPENSE REPORT |
| MEAL | MEAL | | 11/07/19 | 609.60 | | MEALS | 11/12/15 | EXPENSE REPORT |
| MEAL | MEAL | | | 515.44 | | MEALS | 05/31/16 | EXPENSE REPORT |
| MEAL | MEAL | MISSING EXPENSE REPORT & BACKUP | | 1,114.03 | | MEALS | 12/14/16 | EXPENSE REPORT |
| MEAL | MEAL | MISSING EXPENSE REPORT & BACKUP | | 2,857.78 | | MEALS | 03/16/17 | EXPENSE REPORT |
| MEAL | MEAL | MISSING EXPENSE REPORT & BACKUP | | 1,147.29 | | MEALS | 06/06/17 | EXPENSE REPORT |
| meal | MEAL | Dialogue | | 867.75 | 5200 | MEALS | 10/03/17 | EXPENSE REPORT |
| meal | MEAL | Spectrum Wine Auctions (for gala) | | 1,120.60 | 5200 | MEALS | 10/03/17 | EXPENSE REPORT |
| meal | MEAL | Rossoblu | | 621.18 | 5200 | MEALS | 10/03/17 | EXPENSE REPORT |
| meal | MEAL | Waldorf Astoria BH | | 979.38 | 5200 | MEALS | 10/03/17 | EXPENSE REPORT |
| meal | MEAL | Otium | | 697.93 | 5200 | MEALS | 10/03/17 | EXPENSE REPORT |
| meal | MEAL | Providence | | 749.45 | 5200 | MEALS | 01/08/18 | EXPENSE REPORT |
| meal | MEAL | Rossoblu | | 617.36 | 5200 | MEALS | 01/08/18 | EXPENSE REPORT |
| Meal | MEAL | | | 934.50 | 5200 | MEALS | 01/08/18 | EXPENSE REPORT |
| COOKS COUNTY | COOKS COUNTY | | 6/12/2014 | 930.16 | | MEALS | 2014-06 | AMERICAN EXPRESS |
| COOKS COUNTY | COOKS COUNTY | | 6/16/2014 | 6,614.50 | | MEALS | 2014-06 | AMERICAN EXPRESS |
| DEL CAMPO | DEL CAMPO | | 6/23/2014 | 1,100.15 | | MEALS | 2014-06 | AMERICAN EXPRESS |
| LE BERNARDIN | LE BERNARDIN | | 6/20/2014 | 723.17 | | MEALS | 2014-06 | AMERICAN EXPRESS |
| OYAMEL | OYAMEL | | 7/24/2014 | 515.10 | | MEALS | 2014-07 | AMERICAN EXPRESS |
| PB FOOD WINE PB | PB FOOD WINE PB | | 6/29/2014 | 808.25 | | MEALS | 2014-07 | AMERICAN EXPRESS |
| GUELAGUETZA | GUELAGUETZA | | 9/3/2014 | 1,734.34 | | MEALS | 2014-09 | AMERICAN EXPRESS |
| REPUBLIQUE | REPUBLIQUE | | 9/10/2014 | 988.65 | | MEALS | 2014-09 | AMERICAN EXPRESS |
| BOUCHON BISTRO BEVERLY HILLS | BOUCHON BISTRO | | 09/27/2014 | 879.84 | | MEALS | 2014-10 | AMERICAN EXPRESS |
| OSTERIA MOZZA LOS ANGELES CA | OSTERIA | | 09/28/2014 | 4,841.14 | | MEALS | 2014-10 | AMERICAN EXPRESS |
| REPUBLIQUE | REPUBLIQUE | | 11/12/2014 | 859.04 | | MEALS | 2014-11 | AMERICAN EXPRESS |
| SUSHI TARO | SUSHI TARO | | 12/11/2014 | 644.60 | | MEALS | 2014-12 | AMERICAN EXPRESS |
| REPUBLIQUE | REPUBLIQUE | | 1/1/2015 | 1,073.85 | | MEALS | 2015-01 | AMERICAN EXPRESS |
| HOLLYWOOD SCHOOLHOUSE | HOLLYWOOD SCHOOLHOUSE | | 2/5/2015 | 500.00 | | MEALS | 2015-02 | AMERICAN EXPRESS |
| TARQUINO | TARQUINO | | 3/4/2015 | 702.96 | | MEALS | 2015-03 | AMERICAN EXPRESS |
| REPUBLIQUE | REPUBLIQUE | | 4/23/2015 | 3,839.14 | | MEALS | 2015-04 | AMERICAN EXPRESS |
| COI* COI | COI | | 6/10/2015 | 1,670.40 | | MEALS | 2015-06 | AMERICAN EXPRESS |
| SOTTO | SOTTO | | 6/3/2015 | 1,450.00 | | MEALS | 2015-06 | AMERICAN EXPRESS |
| THE BATTERY | THE BATTERY | | 6/12/2015 | 866.06 | | MEALS | 2015-06 | AMERICAN EXPRESS |
| HOTEL BEL-AIR FOOD &LOS ANGE | HOTEL BEL AIR | | 09/09/2015 | 762.99 | | MEALS | 2015-09 | AMERICAN EXPRESS |
| ELEVEN MADISON PARK NEW YOR | ELEVEN MADISON PARK | | 09/28/2015 | 1,500.00 | | MEALS | 2015-10 | AMERICAN EXPRESS |
| NEXT DOOR LOUNGE HOLLYWOO | NEXT DOOR LOUNGE | | 10/08/2015 | 3,500.00 | | MEALS | 2015-10 | AMERICAN EXPRESS |
| PROVIDENCE 650000001LOS ANG | PROVIDENCE | | 09/29/2015 | 940.00 | | MEALS | 2015-10 | AMERICAN EXPRESS |
| NOMAD RESTAURANT - NEW YOR | NOMAD LA FOOD & BEVERAGE | | 11/10/2015 | 1,500.00 | | MEALS | 2015-11 | AMERICAN EXPRESS |
| THEROSECAFERRESTAURNT*THER | THEROSECAFERRESTAURNT | | 11/15/2015 | 500.00 | | MEALS | 2015-11 | AMERICAN EXPRESS |
| NOMAD RESTAURANT - NEW YOR | NOMAD LA FOOD & BEVERAGE | | 11/26/2015 | 6,316.52 | | MEALS | 2015-12 | AMERICAN EXPRESS |
| REPUBLIQUE 0037 - LOS ANGELES | REPUBLIQUE | | 12/17/2015 | 3,984.83 | | MEALS | 2015-12 | AMERICAN EXPRESS |
| PAYPAL *INSTALLUTIO - 4029357 | INSTALLUTIO | | 01/08/2016 | 1,186.91 | | MEALS | 2016-01 | AMERICAN EXPRESS |
| MAUDE - BEVERLY HILLS, CA | MAUDE | | 01/01/2016 | 643.10 | | MEALS | 2016-01 | AMERICAN EXPRESS |
| REPUBLIQUE 0037 - LOS ANGELES | REPUBLIQUE | | 01/19/2016 | 588.40 | | MEALS | 2016-01 | AMERICAN EXPRESS |
| PROVIDENCE 650000001939860 - | PROVIDENCE | | 02/23/2016 | 681.80 | | MEALS | 2016-02 | AMERICAN EXPRESS |

9



**YOUTH POLICY INSTITUTE, INC.**
**REPORT EXHIBITS**
Detail of transactions for noted category

**EXHIBIT G**

AMOUNTS $500 and over only

| DESCRIPTION | NORMALIZED DESCRIPTION | NOTE | DATE | TOTAL | OBJECT CODE | TYPE | REPORT DATE | DATA |
|---|---|---|---|---|---|---|---|---|
| UNIT 120 - LOS ANGELES, CA | UNIT 120 | | 02/17/2016 | 542.43 | | MEALS | 2016-02 | AMERICAN EXPRESS |
| GRACE RESTAURANT 000000001 - | GRACE | | 05/11/2016 | 1,295.90 | | MEALS | 2016-05 | AMERICAN EXPRESS |
| MAUDE - BEVERLY HILLS, CA | MAUDE | | 06/11/2016 | 1,929.30 | | MEALS | 2016-06 | AMERICAN EXPRESS |
| NORMAN'S - Orlando, FL | NORMAN'S | | 07/23/2016 | 579.25 | | MEALS | 2016-07 | AMERICAN EXPRESS |
| Gwen - LOS ANGELES, CA | GWEN | | 08/12/2016 | 1,246.11 | | MEALS | 2016-08 | AMERICAN EXPRESS |
| REPUBLIQUE 0037 - LOS ANGELES | REPUBLIQUE | | 11/18/2016 | 975.52 | | MEALS | 2016-11 | AMERICAN EXPRESS |
| BT TACOMARIA RESTA*TACOMAR | TACOMARIA | | 11/11/2016 | 800.02 | | MEALS | 2016-11 | AMERICAN EXPRESS |
| ALEXANDER'S STEAKHOUSE P 004 | ALEXANDER'S STEAKHOUSE | | 12/24/2016 | 887.93 | | MEALS | 2016-12 | AMERICAN EXPRESS |
| ALL ACQUA 00-08029919001 - LOS | ALL ACQUA | | 12/22/2016 | 17,646.05 | | MEALS | 2016-12 | AMERICAN EXPRESS |
| TST* ALTA STRADA 274240689 - V | ALTA STRADA | | 12/11/2016 | 575.60 | | MEALS | 2016-12 | AMERICAN EXPRESS |
| REPUBLIQUE 0037 - LOS ANGELES | REPUBLIQUE | | 12/08/2016 | 4,123.37 | | MEALS | 2016-12 | AMERICAN EXPRESS |
| RW WASHINGTON DC-GRI - WASH | RW WASHINGTON DC | | 12/10/2016 | 2,483.30 | | MEALS | 2016-12 | AMERICAN EXPRESS |
| ANIMAL 0000 - LOS ANGELES, CA | ANIMAL | | 01/15/2017 | 915.42 | | MEALS | 2017-01 | AMERICAN EXPRESS |
| REPUBLIQUE 0037 - LOS ANGELES | REPUBLIQUE | | 12/30/2016 | 1,147.89 | | MEALS | 2017-01 | AMERICAN EXPRESS |
| SALAZAR 0013 - LOS ANGELES, CA | SALAZAR | | 01/17/2017 | 638.53 | | MEALS | 2017-01 | AMERICAN EXPRESS |
| OTIUM 0030 - LOS ANGELES, CA | OTIUM | | 01/28/2017 | 688.98 | | MEALS | 2017-02 | AMERICAN EXPRESS |
| LATIMESBEASTRESTAURNT*LATIN | LATIMESBEASTRESTAURNT | | 04/01/2017 | 1,333.40 | | MEALS | 2017-04 | AMERICAN EXPRESS |
| LUCQUES 650000009321640 - WE | LUCQUES | | 04/15/2017 | 761.45 | | MEALS | 2017-04 | AMERICAN EXPRESS |
| BT MANUELARESTARESTA*MANU | MANUELA | | 04/01/2017 | 936.60 | | MEALS | 2017-04 | AMERICAN EXPRESS |
| OTIUM LA - LOS ANGELES, CA | OTIUM | | 04/04/2017 | 1,004.10 | | MEALS | 2017-04 | AMERICAN EXPRESS |
| SAISON - SAN FRANCISCO, CA | SAISON | | 04/18/2017 | 1,812.38 | | MEALS | 2017-04 | AMERICAN EXPRESS |
| THE ROGUE EXPERIENCE - WEST H | THE ROGUE EXPERIENCE | | 04/06/2017 | 801.35 | | MEALS | 2017-04 | AMERICAN EXPRESS |
| FELIX TRATTORIA 084870028440 | FELIX | | 05/12/2017 | 857.97 | | MEALS | 2017-05 | AMERICAN EXPRESS |
| SPAGO - BEVERLY HILLS, CA | SPAGO | | 05/24/2017 | 807.08 | | MEALS | 2017-05 | AMERICAN EXPRESS |
| FRIENDS & FAMILY 0000 - LOS AN | FRIENDS & FAMILY | | 06/15/2017 | 965.09 | | MEALS | 2017-06 | AMERICAN EXPRESS |
| SPAGO - BEVERLY HILLS, CA | SPAGO | | 06/06/2017 | 555.00 | | MEALS | 2017-06 | AMERICAN EXPRESS |
| TEMPURA ENDO - BEVERLY HILLS, | TEMPURA ENDO | | 06/17/2017 | 870.36 | | MEALS | 2017-06 | AMERICAN EXPRESS |
| V E S P E R T I N E - CULVER CITY, | V E S P E R T I N E | | 06/13/2017 | 1,932.29 | | MEALS | 2017-06 | AMERICAN EXPRESS |
| Farida - Los Angeles, CA | FARIDA | | 07/06/2017 | 784.41 | | MEALS | 2017-07 | AMERICAN EXPRESS |
| FRIENDS & FAMILY 0000 - LOS AN | FRIENDS & FAMILY | | 07/02/2017 | 1,631.25 | | MEALS | 2017-07 | AMERICAN EXPRESS |
| JAMES BEARD.ORG - NEW YORK, | JAMES BEARD.ORG | | 07/13/2017 | 1,500.00 | | MEALS | 2017-07 | AMERICAN EXPRESS |
| ROOM & BOARD-WEB - MINNEAP | ROOM & BOARD | | 07/02/2017 | 763.66 | | MEALS | 2017-07 | AMERICAN EXPRESS |
| SARI SARI STORE - Los Angeles, CA | SARI SARI | | 07/19/2017 | 784.36 | | MEALS | 2017-07 | AMERICAN EXPRESS |
| SPAGO - BEVERLY HILLS, CA | SPAGO | | 07/15/2017 | 826.11 | | MEALS | 2017-07 | AMERICAN EXPRESS |
| THE ROGUE EXPERIENCE - WEST H | THE ROGUE EXPERIENCE | | 07/18/2017 | 801.35 | | MEALS | 2017-07 | AMERICAN EXPRESS |
| PROVIDENCE 650000001939860 - | PROVIDENCE | | 08/18/2017 | 1,184.34 | | MEALS | 2017-08 | AMERICAN EXPRESS |
| TALLULA'S TALLULA'S - SANTA MC | TALLULA'S | | 08/02/2017 | 933.45 | | MEALS | 2017-08 | AMERICAN EXPRESS |
| TROIS MEC - LOS ANGELES, CA | TROIS MEC | | 08/25/2017 | 773.49 | | MEALS | 2017-08 | AMERICAN EXPRESS |
| WOLFGANG PUCK AT HOTEL - LOS | WOLFGANG PUCK AT HOTEL | | 08/10/2017 | 1,292.50 | | MEALS | 2017-08 | AMERICAN EXPRESS |
| MAUDE - BEVERLY HILLS, CA | MAUDE | | 09/01/2017 | 1,005.54 | | MEALS | 2017-09 | AMERICAN EXPRESS |
| Momofuku Ko - New York, NY | Momofuku | | 09/21/2017 | 1,575.00 | | MEALS | 2017-09 | AMERICAN EXPRESS |
| MABEL GRAY 0065 - HAZEL PARK, | MABEL GRAY | | 10/25/2017 | 854.44 | | MEALS | 2017-10 | AMERICAN EXPRESS |
| MAUDE - BEVERLY HILLS, CA | MAUDE | | 10/01/2017 | 1,804.81 | | MEALS | 2017-10 | AMERICAN EXPRESS |
| THE APPARATUS ROOM 6500000 | THE APPARATUS ROOM | | 10/26/2017 | 587.72 | | MEALS | 2017-10 | AMERICAN EXPRESS |
| WOLFGANG PUCK AT HOTEL - LOS | WOLFGANG PUCK AT HOTEL | | 10/02/2017 | 1,092.50 | | MEALS | 2017-10 | AMERICAN EXPRESS |
| Momofuku Ko - New York, NY | Momofuku | | 11/21/2017 | 6,131.40 | | MEALS | 2017-11 | AMERICAN EXPRESS |
| FRIENDS & FAMILY 0000 - LOS AN | FRIENDS & FAMILY | | 12/09/2017 | 3,613.50 | | MEALS | 2017-12 | AMERICAN EXPRESS |
| OTIUM - LOS ANGELES, CA | OTIUM | | 12/01/2017 | 2,400.00 | | MEALS | 2017-12 | AMERICAN EXPRESS |
| REPUBLIQUE 089010018672190 - | REPUBLIQUE | | 12/14/2017 | 3,507.70 | | MEALS | 2017-12 | AMERICAN EXPRESS |
| TROIS MEC - LOS ANGELES, CA | TROIS MEC | | 11/28/2017 | 775.26 | | MEALS | 2017-12 | AMERICAN EXPRESS |
| JANE Q LAXG - LOS ANGELES, CA | JANE Q | | 01/25/2018 | 2,044.38 | | MEALS | 2018-01 | AMERICAN EXPRESS |



**YOUTH POLICY INSTITUTE, INC.**
**REPORT EXHIBITS**
Detail of transactions for noted category

**EXHIBIT G**

AMOUNTS $500 and over only

| DESCRIPTION | NORMALIZED DESCRIPTION | NOTE | DATE | TOTAL | OBJECT CODE | TYPE | REPORT DATE | DATA |
|---|---|---|---|---|---|---|---|---|
| PROVIDENCE 650000001939860 - | PROVIDENCE | | 01/12/2018 | 1,229.92 | | MEALS | 2018-01 | AMERICAN EXPRESS |
| ALINEA - CHICAGO, IL | ALINEA | | 02/13/2018 | 3,090.78 | | MEALS | 2018-02 | AMERICAN EXPRESS |
| TST* MOMOFUKU - NOODLE BA 3 | MOMOFUKU | | 02/03/2018 | 960.44 | | MEALS | 2018-02 | AMERICAN EXPRESS |
| NOMAD LA FOOD & BEVERAGE 1 | NOMAD LA FOOD & BEVERAGE | | 01/29/2018 | 1,100.00 | | MEALS | 2018-02 | AMERICAN EXPRESS |
| NOMAD LA FOOD & BEVERAGE 1 | NOMAD LA FOOD & BEVERAGE | | 02/02/2018 | 1,887.16 | | MEALS | 2018-02 | AMERICAN EXPRESS |
| SOMNI - LOS ANGELES, CA | SOMNI | | 02/06/2018 | 1,235.16 | | MEALS | 2018-02 | AMERICAN EXPRESS |
| PAO BY PAUL QUI - MIAMI, FL | PAO BY PAUL QUI | | 02/28/2018 | 1,075.58 | | MEALS | 2018-03 | AMERICAN EXPRESS |
| Alinea - Chicago, IL | ALINEA | | 04/12/2018 | 608.72 | | MEALS | 2018-04 | AMERICAN EXPRESS |
| BT DIALOGUERESTRESTA - NEW Y | DIALOGUE | | 04/13/2018 | 979.00 | | MEALS | 2018-04 | AMERICAN EXPRESS |
| Parachute - Chicago, IL | Parachute | | 04/11/2018 | 548.37 | | MEALS | 2018-04 | AMERICAN EXPRESS |
| SPAGO - BEVERLY HILLS, CA | SPAGO | | 04/15/2018 | 1,730.49 | | MEALS | 2018-04 | AMERICAN EXPRESS |
| WOLFGANG PUCK AT HOTEL - LOS | WOLFGANG PUCK AT HOTEL | | 04/03/2018 | 1,515.15 | | MEALS | 2018-04 | AMERICAN EXPRESS |
| GWENLA.COM - LOS ANGELES, CA | GWEN | | 05/01/2018 | 2,000.00 | | MEALS | 2018-05 | AMERICAN EXPRESS |
| TST* MAJORDOMO 300500465 - l | MAJORDOMO | | 05/18/2018 | 1,119.66 | | MEALS | 2018-05 | AMERICAN EXPRESS |
| REPUBLIQUE 089010018672190 - | REPUBLIQUE | | 05/10/2018 | 551.00 | | MEALS | 2018-05 | AMERICAN EXPRESS |
| GWENLA.COM - LOS ANGELES, CA | GWEN | | 06/08/2018 | 3,337.41 | | MEALS | 2018-06 | AMERICAN EXPRESS |
| PAYPAL *LUCQUES - 3236556277, | LUCQUES | | 05/29/2018 | 811.36 | | MEALS | 2018-06 | AMERICAN EXPRESS |
| PAYPAL *LUCQUES - 3236556277, | LUCQUES | | 05/29/2018 | 811.40 | | MEALS | 2018-06 | AMERICAN EXPRESS |
| PAYPAL *LUCQUES - 3236556277, | LUCQUES | | 05/29/2018 | 1,054.84 | | MEALS | 2018-06 | AMERICAN EXPRESS |
| PAYPAL *LUCQUES - 3236556277, | LUCQUES | | 05/29/2018 | 1,163.04 | | MEALS | 2018-06 | AMERICAN EXPRESS |
| TST* MAJORDOMO 300500465 - l | MAJORDOMO | | 06/23/2018 | 1,006.58 | | MEALS | 2018-06 | AMERICAN EXPRESS |
| TRESLA INC. - LOS ANGELES, CA | TRESLA INC | | 06/09/2018 | 600.00 | | MEALS | 2018-06 | AMERICAN EXPRESS |
| FRIENDS & FAMILY | FRIENDS & FAMILY | | 8/22/2018 | 4,380.00 | | MEALS | 2018-08 | AMERICAN EXPRESS |
| MEADOWOOD FOOD | MEADOWOOD FOOD | | 8/19/2018 | 908.40 | | MEALS | 2018-08 | AMERICAN EXPRESS |
| N/NAKA | N/NAKA | | 7/27/2018 | 1,037.86 | | MEALS | 2018-08 | AMERICAN EXPRESS |
| OTIUM | OTIUM | | 8/17/2018 | 1,020.00 | | MEALS | 2018-08 | AMERICAN EXPRESS |
| TOCK WOLFGANG PUCK AT | WOLFGANG PUCK AT HOTEL | | 8/27/2018 | 1,813.00 | | MEALS | 2018-08 | AMERICAN EXPRESS |
| BAVEL | BAVEL | | 9/24/2018 | 2,131.53 | | MEALS | 2018-09 | AMERICAN EXPRESS |
| TST* MOMOFUKU | MOMOFUKU | | 9/16/2018 | 625.74 | | MEALS | 2018-09 | AMERICAN EXPRESS |
| SALSON RESTARUANT | SALSON RESTARUANT | | 9/14/2018 | 1,595.78 | | MEALS | 2018-09 | AMERICAN EXPRESS |
| EB* SOFITEL EN BLANC V | SOFITEL EN BLANC V | | 9/5/2018 | 1,400.00 | | MEALS | 2018-09 | AMERICAN EXPRESS |
| FRIENDS & FAMILY | FRIENDS & FAMILY | | 10/19/2018 | 1,527.53 | | MEALS | 2018-10 | AMERICAN EXPRESS |
| GWENLA.COM | GWEN | | 11/13/2018 | 500.00 | | MEALS | 2018-11 | AMERICAN EXPRESS |
| GWENLA.COM | GWEN | | 11/19/2018 | 1,469.97 | | MEALS | 2018-11 | AMERICAN EXPRESS |
| TST* PROTÉGÉ | PROTÉGÉ | | 11/15/2018 | 572.71 | | MEALS | 2018-11 | AMERICAN EXPRESS |
| REPUBLIQUE | REPUBLIQUE | | 10/26/2018 | 1,603.08 | | MEALS | 2018-11 | AMERICAN EXPRESS |
| TOCK AT *BAZAAR JOSE | BAZAAR | | 11/30/2018 | 591.30 | | MEALS | 2018-12 | AMERICAN EXPRESS |
| FRIENDS & FAMILY | FRIENDS & FAMILY | | 12/6/2018 | 1,395.00 | | MEALS | 2018-12 | AMERICAN EXPRESS |
| OTIUM | OTIUM | | 11/30/2018 | 1,500.49 | | MEALS | 2018-12 | AMERICAN EXPRESS |
| OTIUM | OTIUM | | 12/1/2018 | 13,500.00 | | MEALS | 2018-12 | AMERICAN EXPRESS |
| OTIUM | OTIUM | | 12/20/2018 | 39,599.14 | | MEALS | 2018-12 | AMERICAN EXPRESS |
| REPUBLIQUE | REPUBLIQUE | | 12/13/2018 | 4,107.70 | | MEALS | 2018-12 | AMERICAN EXPRESS |
| TOCK SOMNI | SOMNI | | 12/18/2018 | 1,314.00 | | MEALS | 2018-12 | AMERICAN EXPRESS |
| FRIENDS & FAMILY | FRIENDS & FAMILY | | 3/12/2019 | 1,565.85 | | MEALS | 2019-03 | AMERICAN EXPRESS |
| ROSSOBLU | ROSSOBLU | | 2/23/2019 | 553.85 | | MEALS | 2019-03 | AMERICAN EXPRESS |
| TOCK SOMNI | SOMNI | | 4/1/2019 | 1,300.86 | | MEALS | 2019-04 | AMERICAN EXPRESS |
| | | | TOTAL UNDER $500 | 35,286.01 | | | | |
| | | | **TOTAL** | **309,916.75** | | | | |



**YOUTH POLICY INSTITUTE, INC.**
**REPORT EXHIBITS**
Detail of transactions for noted category

EXHIBIT H

| DESCRIPTION | NORMALIZED DESCRIPTION | NOTE | DATE | TOTAL | OBJECT CODE | TYPE | REPORT DATE | DATA |
|---|---|---|---|---|---|---|---|---|
| Cedars Siani | Cedars Siani | | | 286.64 | | MEDICAL | 04/09/14 | EXPENSE REPORT |
| cedars siani | cedars siani | | 05/01/14 | 2,455.81 | | MEDICAL | 10/09/14 | EXPENSE REPORT |
| MEDICAL | medical | | | 387.00 | | MEDICAL | 11/12/15 | EXPENSE REPORT |
| MEDICAL | medical | | | 59.50 | | MEDICAL | 05/31/16 | EXPENSE REPORT |
| MEDICAL | medical | | | 155.20 | | MEDICAL | 05/31/16 | EXPENSE REPORT |
| MEDICAL | MEDICAL | MISSING EXPENSE REPORT & BACKUP | | 995.60 | | MEDICAL | 12/14/16 | EXPENSE REPORT |
| MEDICAL - 9/14/16 | MEDICAL - 9/14/16 | MISSING EXPENSE REPORT & BACKUP | | 857.50 | | MEDICAL | 12/14/16 | EXPENSE REPORT |
| MEDICAL | MEDICAL | MISSING EXPENSE REPORT & BACKUP | | 1,083.76 | | MEDICAL | 03/16/17 | EXPENSE REPORT |
| MEDICAL | MEDICAL | MISSING EXPENSE REPORT & BACKUP | | 801.80 | | MEDICAL | 06/06/17 | EXPENSE REPORT |
| medical | medical | | | 132.80 | 3401 | MEDICAL | 10/03/17 | EXPENSE REPORT |
| medical | medical | | | 546.38 | 3401 | MEDICAL | 10/03/17 | EXPENSE REPORT |
| medical | medical | | | 175.35 | 3401 | MEDICAL | 10/03/17 | EXPENSE REPORT |
| medical | medical | 1-800 Contacts | | 583.92 | 3401 | MEDICAL | 10/03/17 | EXPENSE REPORT |
| medical | medical | | | 94.50 | 3401 | MEDICAL | 01/08/18 | EXPENSE REPORT |
| medical | medical | | | 230.00 | | MEDICAL | 12/17/18 | EXPENSE REPORT |
| medical | medical | | | 148.07 | | MEDICAL | 12/17/18 | EXPENSE REPORT |
| medical | medical | Ride-Aid Receipts | | 292.36 | | MEDICAL | 12/17/18 | EXPENSE REPORT |
| medical | medical | | | 261.03 | | MEDICAL | 12/17/18 | EXPENSE REPORT |
| medical | medical | | | 47.16 | | MEDICAL | 12/17/18 | EXPENSE REPORT |
| medical | medical | | | 116.05 | | MEDICAL | 12/17/18 | EXPENSE REPORT |
| medical | medical | | | 138.99 | | MEDICAL | 12/17/18 | EXPENSE REPORT |
| CEDARS-SINAI MEDICA - LOS ANG | CEDARS SINAI | | 03/04/2016 | 164.43 | | MEDICAL | 2016-03 | AMERICAN EXPRESS |
| CEDARS SINAI MEDICAL CENTER A | CEDARS SINAI | | 10/18/2016 | 10.00 | | MEDICAL | 2016-10 | AMERICAN EXPRESS |
| CEDARS-SINAI MEDICA - 866-803- | CEDARS SINAI | | 02/11/2017 | 283.76 | | MEDICAL | 2017-02 | AMERICAN EXPRESS |
| CEDARS-SINAI MEDICA - LOS ANG | CEDARS SINAI | | 01/31/2017 | 10.00 | | MEDICAL | 2017-02 | AMERICAN EXPRESS |
| KEVIN E LEW DENTAL OFFICE 650 | KEVIN E LEW DENTAL OFFICE | | 06/29/2017 | 250.00 | | MEDICAL | 2017-07 | AMERICAN EXPRESS |
| KEVIN E LEW DENTAL OFFICE 650 | KEVIN E LEW DENTAL OFFICE | | 06/30/2017 | 2,700.00 | | MEDICAL | 2017-07 | AMERICAN EXPRESS |
| PHYSICIAN'S AUTOMATE - BAKER | PHYSICIAN'S AUTOMATE | | 07/26/2017 | 56.93 | | MEDICAL | 2017-07 | AMERICAN EXPRESS |
| CEDARS-SINAI MEDICA - 866-803- | CEDARS SINAI | | 07/26/2017 | 175.35 | | MEDICAL | 2017-08 | AMERICAN EXPRESS |
| CEDARS-SINAI MEDICA - LOS ANG | CEDARS SINAI | | 07/28/2017 | 546.38 | | MEDICAL | 2017-08 | AMERICAN EXPRESS |
| MICHAEL S BJORNBAK DDS 43684 | MICHAEL S BJORNBAK DDS | | 08/22/2017 | 25.00 | | MEDICAL | 2017-08 | AMERICAN EXPRESS |
| CEDARS-SINAI MEDICA - 866-803- | CEDARS SINAI | | 09/02/2017 | 366.61 | | MEDICAL | 2017-09 | AMERICAN EXPRESS |
| CEDARS-SINAI MEDICA - LOS ANG | CEDARS SINAI | | 11/22/2017 | 73.94 | | MEDICAL | 2017-11 | AMERICAN EXPRESS |
| DENTISTRY FOR CHILDREN 00000 | DENTISTRY FOR CHILDREN | | 11/27/2017 | 131.20 | | MEDICAL | 2017-12 | AMERICAN EXPRESS |
| CEDARS-SINAI MEDICA - 866-803- | CEDARS SINAI | | 02/20/2018 | 88.57 | | MEDICAL | 2018-02 | AMERICAN EXPRESS |
| CEDARS-SINAI MEDICA - 866-803- | CEDARS SINAI | | 02/20/2018 | 193.03 | | MEDICAL | 2018-02 | AMERICAN EXPRESS |
| CEDARS-SINAI MEDICA - LOS ANG | CEDARS SINAI | | 02/23/2018 | 25.00 | | MEDICAL | 2018-03 | AMERICAN EXPRESS |
| CEDARS-SINAI MEDICA - LOS ANG | CEDARS SINAI | | 02/23/2018 | 25.00 | | MEDICAL | 2018-03 | AMERICAN EXPRESS |
| CEDARS-SINAI MEDICA - LOS ANG | CEDARS SINAI | | 02/23/2018 | 25.00 | | MEDICAL | 2018-03 | AMERICAN EXPRESS |
| CEDARS-SINAI MEDICA - LOS ANG | CEDARS SINAI | | 03/13/2018 | 5.00 | | MEDICAL | 2018-03 | AMERICAN EXPRESS |
| CEDARS-SINAI MEDICA - 866-803- | CEDARS SINAI | | 04/17/2018 | 447.35 | | MEDICAL | 2018-04 | AMERICAN EXPRESS |
| CEDARS-SINAI MEDICA - 866-803- | CEDARS SINAI | | 04/23/2018 | 25.00 | | MEDICAL | 2018-04 | AMERICAN EXPRESS |
| CEDARS-SINAI MEDICA - LOS ANG | CEDARS SINAI | | 04/06/2018 | 25.00 | | MEDICAL | 2018-04 | AMERICAN EXPRESS |
| CEDARS-SINAI MEDICA - LOS ANG | CEDARS SINAI | | 04/06/2018 | 25.00 | | MEDICAL | 2018-04 | AMERICAN EXPRESS |
| CEDARS-SINAI MEDICA - LOS ANG | CEDARS SINAI | | 04/06/2018 | 25.00 | | MEDICAL | 2018-04 | AMERICAN EXPRESS |
| CEDARS-SINAI MEDICA - LOS ANG | CEDARS SINAI | | 04/06/2018 | 32.85 | | MEDICAL | 2018-04 | AMERICAN EXPRESS |
| CEDARS-SINAI MEDICA - LOS ANG | CEDARS SINAI | | 05/03/2018 | 25.00 | | MEDICAL | 2018-05 | AMERICAN EXPRESS |
| CEDARS SINAI MEDICAL CENTER A | CEDARS SINAI | | 06/20/2018 | 10.00 | | MEDICAL | 2018-06 | AMERICAN EXPRESS |
| CEDARS SINAI MEDICAL CENTER A | CEDARS SINAI | | 06/21/2018 | 10.00 | | MEDICAL | 2018-06 | AMERICAN EXPRESS |
| ACCELL INC | ACCELL INC | | 7/3/2018 | 26.44 | | MEDICAL | 2018-07 | AMERICAN EXPRESS |
| CEDARS-SINAI MEDICA | CEDARS SINAI | | 7/2/2018 | 150.14 | | MEDICAL | 2018-07 | AMERICAN EXPRESS |
| CEDARS-SINAI MEDICA | CEDARS SINAI | | 7/25/2018 | 25.00 | | MEDICAL | 2018-07 | AMERICAN EXPRESS |



**YOUTH POLICY INSTITUTE, INC.**
**REPORT EXHIBITS**
Detail of transactions for noted category

**EXHIBIT H** (continued)

| DESCRIPTION | NORMALIZED DESCRIPTION | NOTE | DATE | TOTAL | OBJECT CODE | TYPE | REPORT DATE | DATA |
|---|---|---|---|---|---|---|---|---|
| CEDARS SINAI | CEDARS SINAI | | 8/1/2018 | 9.56 | | MEDICAL | 2018-08 | AMERICAN EXPRESS |
| CEDARS SINAI | CEDARS SINAI | | 8/15/2018 | 449.12 | | MEDICAL | 2018-08 | AMERICAN EXPRESS |
| CEDARS-SINAI MEDICA | CEDARS SINAI | | 8/22/2018 | 187.31 | | MEDICAL | 2018-08 | AMERICAN EXPRESS |
| MINK RADIOLOGIC | MINK RADIOLOGIC | | 8/1/2018 | 100.00 | | MEDICAL | 2018-08 | AMERICAN EXPRESS |
| CEDARS-SINAI MEDICA | CEDARS SINAI | | 9/20/2018 | 131.74 | | MEDICAL | 2018-09 | AMERICAN EXPRESS |
| CEDARS-SINAI MEDICA | CEDARS SINAI | | 11/15/2018 | 10.00 | | MEDICAL | 2018-11 | AMERICAN EXPRESS |
| CEDARS-SINAI MEDICA | CEDARS SINAI | | 11/15/2018 | 25.00 | | MEDICAL | 2018-11 | AMERICAN EXPRESS |
| CEDARS-SINAI MEDICA | CEDARS SINAI | | 12/19/2018 | 15.00 | | MEDICAL | 2018-12 | AMERICAN EXPRESS |
| CEDARS-SINAI MEDICA | CEDARS SINAI | | 1/23/2019 | 145.26 | | MEDICAL | 2019-01 | AMERICAN EXPRESS |
| MARK FOTOVAT | MARK FOTOVAT | | 12/28/2018 | 20.78 | | MEDICAL | 2019-01 | AMERICAN EXPRESS |
| CONRAD TSENG MD, INC | CONRAD TSENG MD, INC | | 1/31/2019 | 15.00 | | MEDICAL | 2019-02 | AMERICAN EXPRESS |
| SPECIALTY SURGICAL OF BEV | SPECIALTY SURGICAL OF BEV | | 2/11/2019 | 150.00 | | MEDICAL | 2019-02 | AMERICAN EXPRESS |
| CEDARS-SINAI MEDICA | CEDARS SINAI | | 3/8/2019 | 15.00 | | MEDICAL | 2019-03 | AMERICAN EXPRESS |
| CEDARS-SINAI MEDICA | CEDARS SINAI | | 5/24/2019 | 15.00 | | MEDICAL | 2019-05 | AMERICAN EXPRESS |
| | | | **TOTAL** | **17,120.17** | | | | |

**EXHIBIT I**

| DESCRIPTION | NORMALIZED DESCRIPTION | NOTE | DATE | TOTAL | OBJECT CODE | TYPE | REPORT DATE | DATA |
|---|---|---|---|---|---|---|---|---|
| Wetzel and Sons | Wetzel and Sons | | | 5,337.04 | | MOVING EXPENSE | 10/09/14 | EXPENSE REPORT |
| | | | **TOTAL** | **5,337.04** | | | | |

**EXHIBIT J**

| DESCRIPTION | NORMALIZED DESCRIPTION | NOTE | DATE | TOTAL | OBJECT CODE | TYPE | REPORT DATE | DATA |
|---|---|---|---|---|---|---|---|---|
| OFFICE | OFFICE | | | 300.00 | | OFFICE EXPENSE: HOME OFFICE | 01/12/15 | EXPENSE REPORT |
| HOME OFFICE | HOME OFFICE | | | 1,500.00 | | OFFICE EXPENSE: HOME OFFICE | 11/12/15 | EXPENSE REPORT |
| HOME OFFICE EXPENSE | HOME OFFICE | 1/3 $9.4K | Dist. Mills, Best buy | 3,779.42 | | OFFICE EXPENSE: HOME OFFICE | 01/12/16 | EXPENSE REPORT |
| NEW HOME OFFICE EXPENSES | HOME OFFICE EXPENSES | 2/3 $9.4K | District Mills (Shufflebo | 5,699.00 | | OFFICE EXPENSE: HOME OFFICE | 05/31/16 | EXPENSE REPORT |
| HOME OFFICE | HOME OFFICE | MISSING EXPENSE REPORT & BACKUP | | 608.97 | | OFFICE EXPENSE: HOME OFFICE | 12/14/16 | EXPENSE REPORT |
| HOME OFFICE | HOME OFFICE | MISSING EXPENSE REPORT & BACKUP | | 1,350.00 | | OFFICE EXPENSE: HOME OFFICE | 06/06/17 | EXPENSE REPORT |
| home office | HOME OFFICE | Photos for Office | | 549.36 | 4350 | OFFICE EXPENSE: HOME OFFICE | 01/08/18 | EXPENSE REPORT |
| home office | HOME OFFICE | | | 1,656.31 | 4350 | OFFICE EXPENSE: HOME OFFICE | 01/08/18 | EXPENSE REPORT |
| | | | **TOTAL** | **15,443.06** | | | | |

**EXHIBIT K**

| DESCRIPTION | NORMALIZED DESCRIPTION | NOTE | DATE | TOTAL | OBJECT CODE | TYPE | REPORT DATE | DATA |
|---|---|---|---|---|---|---|---|---|
| VENMO | VENMO | | 6/29/2018 | 257.50 | | PAYMENT TRANSFER | 2018-07 | AMERICAN EXPRESS |
| VENMO | VENMO | | 10/11/2018 | 106.09 | | PAYMENT TRANSFER | 2018-10 | AMERICAN EXPRESS |
| VENMO | VENMO | | 11/10/2018 | 97.85 | | PAYMENT TRANSFER | 2018-11 | AMERICAN EXPRESS |
| VENMO | VENMO | | 12/21/2018 | 51.50 | | PAYMENT TRANSFER | 2018-12 | AMERICAN EXPRESS |
| | | | **TOTAL** | **512.94** | | | | |

**EXHIBIT L**

| DESCRIPTION | NORMALIZED DESCRIPTION | NOTE | DATE | TOTAL | OBJECT CODE | TYPE | REPORT DATE | DATA |
|---|---|---|---|---|---|---|---|---|
| Pension | Pension | DIXON SLINGERLAND | | 41,000.00 | | PENSION | 06/04/14 | EXPENSE REPORT |
| Pension | Pension | DIXON SLINGERLAND | | 34,300.00 | | PENSION | 06/09/15 | EXPENSE REPORT |
| Pension | Pension | SUZANNE M STEINKE, A PROF CORP | | 49,800.00 | | PENSION | 05/26/16 | EXPENSE REPORT |
| Pension | Pension | SUZANNE M STEINKE, A PROF CORP | | 50,000.00 | | PENSION | 06/07/17 | EXPENSE REPORT |
| Pension | Pension | SUZANNE M STEINKE, A PROF CORP | | 50,000.00 | | PENSION | 06/13/18 | EXPENSE REPORT |
| pension contribution | pension contribution | 11 months, Feb-Dec (4%) | | 16,958.33 | | PENSION | 12/17/18 | EXPENSE REPORT |
| | | | **TOTAL** | **242,058.33** | | | | |



**YOUTH POLICY INSTITUTE, INC.**
**REPORT EXHIBITS**
Detail of transactions for noted category

**EXHIBIT M**

| DESCRIPTION | NORMALIZED DESCRIPTION | NOTE | DATE | TOTAL | OBJECT CODE | TYPE | REPORT DATE | DATA |
|---|---|---|---|---|---|---|---|---|
| FOUR SEASONS HOTEL | FOUR SEASONS | | | (250.00) | | PERSONAL REIMBURSEMENT | 01/03/14 | EXPENSE REPORT |
| THE HAY ADAMS | HAY ADAMS | | | (350.00) | | PERSONAL REIMBURSEMENT | 01/03/14 | EXPENSE REPORT |
| PLATEPASS HERTZ | HERTZ | | | (12.50) | | PERSONAL REIMBURSEMENT | 01/03/14 | EXPENSE REPORT |
| PLATEPASS HERTZ | HERTZ | | | (25.80) | | PERSONAL REIMBURSEMENT | 01/03/14 | EXPENSE REPORT |
| HERTZ CAR RENTAL | HERTZ | | | (136.06) | | PERSONAL REIMBURSEMENT | 01/03/14 | EXPENSE REPORT |
| HERTZ CAR RENTAL | HERTZ | | | (392.44) | | PERSONAL REIMBURSEMENT | 01/03/14 | EXPENSE REPORT |
| REFINERY HOTEL | REFINERY HOTEL | | | (300.00) | | PERSONAL REIMBURSEMENT | 01/03/14 | EXPENSE REPORT |
| Hay Adams | HAY ADAMS | | | (600.00) | | PERSONAL REIMBURSEMENT | 04/09/14 | EXPENSE REPORT |
| hertz | HERTZ | | | (604.06) | | PERSONAL REIMBURSEMENT | 04/09/14 | EXPENSE REPORT |
| NOMAD | NOMAD | | | (500.00) | | PERSONAL REIMBURSEMENT | 04/09/14 | EXPENSE REPORT |
| grenwich | grenwich | | | (972.44) | | PERSONAL REIMBURSEMENT | 07/08/14 | EXPENSE REPORT |
| Hay Adams | HAY ADAMS | | 06/24/14 | (200.00) | | PERSONAL REIMBURSEMENT | 07/08/14 | EXPENSE REPORT |
| Hay Adams | HAY ADAMS | | 06/10/14 | (200.00) | | PERSONAL REIMBURSEMENT | 07/08/14 | EXPENSE REPORT |
| Hay Adams | HAY ADAMS | | 06/05/14 | (957.71) | | PERSONAL REIMBURSEMENT | 07/08/14 | EXPENSE REPORT |
| Hertz | HERTZ | | | (604.06) | | PERSONAL REIMBURSEMENT | 07/08/14 | EXPENSE REPORT |
| williamsburg | williamsburg | | | (505.58) | | PERSONAL REIMBURSEMENT | 07/08/14 | EXPENSE REPORT |
| wythe | wythe | | | (200.00) | | PERSONAL REIMBURSEMENT | 07/08/14 | EXPENSE REPORT |
| four season austin | four season austin | | | (300.00) | | PERSONAL REIMBURSEMENT | 10/09/14 | EXPENSE REPORT |
| hay adams dc | HAY ADAMS | | | (100.00) | | PERSONAL REIMBURSEMENT | 10/09/14 | EXPENSE REPORT |
| Hertz | HERTZ | | | (1,879.97) | | PERSONAL REIMBURSEMENT | 10/09/14 | EXPENSE REPORT |
| Hertz | HERTZ | | | (1,611.39) | | PERSONAL REIMBURSEMENT | 10/09/14 | EXPENSE REPORT |
| Hertz | HERTZ | | | (70.14) | | PERSONAL REIMBURSEMENT | 10/09/14 | EXPENSE REPORT |
| Hertz | HERTZ | | | (4.31) | | PERSONAL REIMBURSEMENT | 10/09/14 | EXPENSE REPORT |
| Nomad Hotel NYC | Nomad Hotel NYC | | | (800.00) | | PERSONAL REIMBURSEMENT | 10/09/14 | EXPENSE REPORT |
| HAY ADAMS | HAY ADAMS | | 12/12/14 | (500.00) | | PERSONAL REIMBURSEMENT | 01/12/15 | EXPENSE REPORT |
| HAY ADAMS | HAY ADAMS | | 12/17/14 | (900.00) | | PERSONAL REIMBURSEMENT | 01/12/15 | EXPENSE REPORT |
| HAY ADAMS | HAY ADAMS | | 05/06/15 | (300.00) | | PERSONAL REIMBURSEMENT | 05/11/15 | EXPENSE REPORT |
| DELTA | DELTA | | 6/8 | (9,596.90) | | PERSONAL REIMBURSEMENT | 09/01/15 | EXPENSE REPORT |
| WYNN LAS VEGAS HOTEL | WYNN LAS VEGAS HOTEL | | | (254.77) | | PERSONAL REIMBURSEMENT | 11/12/15 | EXPENSE REPORT |
| HAY ADAMS | HAY ADAMS | | | (600.00) | | PERSONAL REIMBURSEMENT | 01/12/16 | EXPENSE REPORT |
| PROFESSIONAL SERVICES | PROFESSIONAL SERVICES | no backup | | 2,090.00 | | PERSONAL | 01/12/16 | EXPENSE REPORT |
| AMEX DELTA | DELTA | | | (221.98) | | PERSONAL REIMBURSEMENT | 05/31/16 | EXPENSE REPORT |
| FAENA | FAENA | | | (1,039.00) | | PERSONAL REIMBURSEMENT | 05/31/16 | EXPENSE REPORT |
| HAY ADAMS | HAY ADAMS | | | (250.00) | | PERSONAL REIMBURSEMENT | 05/31/16 | EXPENSE REPORT |
| HAY ADAMS | HAY ADAMS | | | (250.00) | | PERSONAL REIMBURSEMENT | 05/31/16 | EXPENSE REPORT |
| HERTZ | HERTZ | | | (189.56) | | PERSONAL REIMBURSEMENT | 05/31/16 | EXPENSE REPORT |
| HERTZ | HERTZ | | | (114.99) | | PERSONAL REIMBURSEMENT | 05/31/16 | EXPENSE REPORT |
| HERTZ CAR RENTAL | HERTZ | | | (1,551.04) | | PERSONAL REIMBURSEMENT | 05/31/16 | EXPENSE REPORT |
| FEE | FEE | MISSING EXPENSE REP | 12/1/2016 | 450.00 | | PERSONAL | 12/14/16 | EXPENSE REPORT |
| HAY ADAMS | HAY ADAMS | MISSING EXPENSE REP | 12/1/2016 | (869.63) | | PERSONAL REIMBURSEMENT | 12/14/16 | EXPENSE REPORT |
| NOMAD | NOMAD | MISSING EXPENSE REP | 12/1/2016 | (549.52) | | PERSONAL REIMBURSEMENT | 12/14/16 | EXPENSE REPORT |
| TRAVEL | TRAVEL | MISSING EXPENSE REP | 3/16/2017 | (2,851.14) | | PERSONAL REIMBURSEMENT | 03/16/17 | EXPENSE REPORT |
| EVENT | EVENT | MISSING EXPENSE REP | 5/31/2017 | (1,400.00) | | PERSONAL REIMBURSEMENT | 06/06/17 | EXPENSE REPORT |
| MISC | MISC | MISSING EXPENSE REP | 5/31/2017 | 247.00 | | PERSONAL | 06/06/17 | EXPENSE REPORT |
| MISC | MISC | MISSING EXPENSE REP | 5/31/2017 | 323.54 | | PERSONAL | 06/06/17 | EXPENSE REPORT |
| MISC | MISC | MISSING EXPENSE REP | 5/31/2017 | 608.97 | | PERSONAL | 06/06/17 | EXPENSE REPORT |
| TRAVEL | TRAVEL | MISSING EXPENSE REP | 5/31/2017 | (600.00) | | PERSONAL REIMBURSEMENT | 06/06/17 | EXPENSE REPORT |
| YPI AUCTION ITEM | YPI AUCTION ITEM | MISSING EXPENSE REP | 5/31/2017 | (400.00) | | PERSONAL REIMBURSEMENT | 06/06/17 | EXPENSE REPORT |
| travel | travel credit | | | (9,269.70) | 5205 | PERSONAL REIMBURSEMENT | 10/03/17 | EXPENSE REPORT |
| travel | travel credit | | | (2,730.35) | 5205 | PERSONAL REIMBURSEMENT | 10/03/17 | EXPENSE REPORT |
| travel | travel credit | | | (3,158.10) | 5205 | PERSONAL REIMBURSEMENT | 10/03/17 | EXPENSE REPORT |
| 42986 | travel credit | | | (459.00) | 5205 | PERSONAL REIMBURSEMENT | 10/03/17 | EXPENSE REPORT |



YOUTH POLICY INSTITUTE, INC.
REPORT EXHIBITS
Detail of transactions for noted category

EXHIBIT M

| DESCRIPTION | NORMALIZED DESCRIPTION | NOTE | DATE | TOTAL | OBJECT CODE | TYPE | REPORT DATE | DATA |
|---|---|---|---|---|---|---|---|---|
| monthly fees | annual fees, bank charges, interest | | | 680.16 | 5300 | PERSONAL | 01/08/18 | EXPENSE REPORT |
| annual fees, bank charges, interes | annual fees, bank charges, interest | | | 1,214.22 | 7000 | PERSONAL | 01/08/18 | EXPENSE REPORT |
| event | event | | | (75.00) | 5200 | PERSONAL REIMBURSEMENT | 01/08/18 | EXPENSE REPORT |
| travel | travel | | | (514.28) | 5200 | PERSONAL REIMBURSEMENT | 01/08/18 | EXPENSE REPORT |
| travel | travel credit | | | (1,088.00) | 5200 | PERSONAL REIMBURSEMENT | 01/08/18 | EXPENSE REPORT |
| travel | travel credit | | | (704.19) | 5200 | PERSONAL REIMBURSEMENT | 01/08/18 | EXPENSE REPORT |
| travel | travel credit | | | (241.21) | 5200 | PERSONAL REIMBURSEMENT | 01/08/18 | EXPENSE REPORT |
| accounting | accounting | | | 257.50 | | PERSONAL | 12/17/18 | EXPENSE REPORT |
| accounting | accounting | 1/2 Marcum Invoice 2017 taxes | | 1,511.90 | | PERSONAL | 12/17/18 | EXPENSE REPORT |
| consulting | consulting | Roxanas Upholstery | | 1,450.00 | | PERSONAL | 12/17/18 | EXPENSE REPORT |
| travel reimbursement | travel credit | rental car | | (751.85) | | PERSONAL REIMBURSEMENT | 12/17/18 | EXPENSE REPORT |
| travel reimbursement | travel credit | hotel | | (2,000.00) | | PERSONAL REIMBURSEMENT | 12/17/18 | EXPENSE REPORT |
| travel reimbursement | travel credit | hotel | | (1,200.00) | | PERSONAL REIMBURSEMENT | 12/17/18 | EXPENSE REPORT |
| travel reimbursement | travel credit | hotel | | (800.00) | | PERSONAL REIMBURSEMENT | 12/17/18 | EXPENSE REPORT |
| BED BATH & BEYOND | BED BATH & BEYOND | | 11/30/2014 | 548.25 | | PERSONAL | 2014-12 | AMERICAN EXPRESS |
| BLK*OAKWOOD | OAKWOOD | | 3/14/2015 | 3,000.00 | | PERSONAL | 2015-03 | AMERICAN EXPRESS |
| ANNUAL MEMBERSHIP FEE | ANNUAL MEMBERSHIP FEE | | 09/25/2015 | 450.00 | | PERSONAL | 2015-09 | AMERICAN EXPRESS |
| MONOCLE MONOCLE LONDON G | MONOCLE MONOCLE | | 10/03/2015 | 151.82 | | PERSONAL | 2015-10 | AMERICAN EXPRESS |
| Card Member Benefit: Fee Credit | Card Member Benefit: Fee Credit | | 11/04/2015 | (100.00) | | PERSONAL | 2015-11 | AMERICAN EXPRESS |
| KL *KLWINES.COM 800-247-5987 | KLWINES.COM | | 10/31/2015 | 274.62 | | PERSONAL | 2015-11 | AMERICAN EXPRESS |
| USCUSTOMS TRUSTEDTRA317614 | USCUSTOMS TRUSTEDTRA | | 10/30/2015 | 100.00 | | PERSONAL | 2015-11 | AMERICAN EXPRESS |
| AMAZON MKTPLACE PMTS - AMZ | AMAZON | | 02/19/2016 | 89.99 | | PERSONAL | 2016-02 | AMERICAN EXPRESS |
| AMAZON MKTPLACE PMTS - AMZ | AMAZON | | 02/19/2016 | 104.42 | | PERSONAL | 2016-02 | AMERICAN EXPRESS |
| AMAZON MKTPLACE PMTS - AMZ | AMAZON | | 02/19/2016 | 394.97 | | PERSONAL | 2016-02 | AMERICAN EXPRESS |
| FGT*COACHELLATIX - 888-512-74 | COACHELLATIX | | 03/03/2016 | 900.00 | | PERSONAL | 2016-03 | AMERICAN EXPRESS |
| BB *OAKWOOD SCHOOL - 818732 | OAKWOOD SCHOOL | | 03/17/2016 | 600.00 | | PERSONAL | 2016-03 | AMERICAN EXPRESS |
| FGT*COACHELLATIX - 888-512-74 | COACHELLATIX | | 04/17/2016 | (900.00) | | PERSONAL | 2016-04 | AMERICAN EXPRESS |
| UNIVERSAL WEB 200087 852022C | UNIVERSAL WEB | | 06/11/2016 | 340.76 | | PERSONAL | 2016-06 | AMERICAN EXPRESS |
| ANNUAL MEMBERSHIP FEE | ANNUAL MEMBERSHIP FEE | | 09/26/2016 | 450.00 | | PERSONAL | 2016-09 | AMERICAN EXPRESS |
| AADVANTAGE ELITE BOOST - (800 | AADVANTAGE ELITE BOOST | | 01/18/2017 | 499.00 | | PERSONAL | 2017-01 | AMERICAN EXPRESS |
| AMAZON MKTPLACE PMTS - AMZ | AMAZON | | 02/08/2017 | 86.97 | | PERSONAL | 2017-02 | AMERICAN EXPRESS |
| STANFORD ALUMNI ASSOC Stanfo | STANFORD ALUMNI ASSOC | | 03/07/2017 | 60.00 | | PERSONAL | 2017-03 | AMERICAN EXPRESS |
| AMAZON.COM - AMZN.COM/BILL | AMAZON | | 04/08/2017 | 285.12 | | PERSONAL | 2017-04 | AMERICAN EXPRESS |
| AMAZON.COM - AMZN.COM/BILL | AMAZON | | 05/17/2017 | 235.97 | | PERSONAL | 2017-05 | AMERICAN EXPRESS |
| RITE AID STORE - 556 - SHERMAN | RITE AID | | 06/30/2017 | 8.28 | | PERSONAL | 2017-07 | AMERICAN EXPRESS |
| SANDY LN HOTEL FRONT DESK - B | SANDY LN HOTEL FRONT DESK | | 07/15/2017 | 3,158.10 | | PERSONAL | 2017-07 | AMERICAN EXPRESS |
| 1 877 SPIRITS.COM - GUTTENBERG | 1 877 SPIRITS.COM | | 08/09/2017 | 459.00 | | PERSONAL | 2017-08 | AMERICAN EXPRESS |
| AMAZON MKTPLACE PMTS - AMZ | AMAZON | | 08/18/2017 | 34.86 | | PERSONAL | 2017-08 | AMERICAN EXPRESS |
| CVS/PHARMACY #09527 0000095 | CVS/PHARMACY | | 08/22/2017 | 8.40 | | PERSONAL | 2017-08 | AMERICAN EXPRESS |
| ANNUAL MEMBERSHIP FEE | ANNUAL MEMBERSHIP FEE | | 09/26/2017 | 450.00 | | PERSONAL | 2017-09 | AMERICAN EXPRESS |
| MET MUSEUM MEMBERSHIP 000 | MET MUSEUM MEMBERSHIP | | 10/14/2017 | 600.00 | | PERSONAL | 2017-10 | AMERICAN EXPRESS |
| PANASONIC - AA - LAKE FOREST, C | PANASONIC - AA | | 09/29/2017 | 17.00 | | PERSONAL | 2017-10 | AMERICAN EXPRESS |
| AADVANTAGE ELITE BOOST - (800 | AADVANTAGE ELITE BOOST | | 11/02/2017 | 699.00 | | PERSONAL | 2017-11 | AMERICAN EXPRESS |
| CVS/PHARMACY #09527 0000095 | CVS/PHARMACY | | 11/06/2017 | 36.00 | | PERSONAL | 2017-11 | AMERICAN EXPRESS |
| AMAZON.COM - AMZN.COM/BILL | AMAZON | | 12/07/2017 | 592.80 | | PERSONAL | 2017-12 | AMERICAN EXPRESS |
| PAYPAL *RBLAKESLEEG - 4029357 | RBLAKESLEEG | | 01/17/2018 | 5,145.30 | | PERSONAL | 2018-01 | AMERICAN EXPRESS |
| NATURAL HISTORY MUSE - LOS AN | NATURAL HISTORY MUSE | | 01/29/2018 | 80.00 | | PERSONAL | 2018-02 | AMERICAN EXPRESS |
| BB*OAKWOOD SCHOOL Blackbau | OAKWOOD SCHOOL | | 03/10/2018 | 1,000.00 | | PERSONAL | 2018-03 | AMERICAN EXPRESS |
| PAYPAL *RBLAKESLEEG - 4029357 | RBLAKESLEEG | | 04/09/2018 | 5,659.80 | | PERSONAL | 2018-04 | AMERICAN EXPRESS |
| HOUSE OF PURE VIN HOUSE OF P | HOUSE OF PURE VIN | | 8/8/2018 | 40.62 | | PERSONAL | 2018-08 | AMERICAN EXPRESS |
| AMAZON.COM | AMAZON | | 9/12/2015 | 23.92 | | PERSONAL | 2018-09 | AMERICAN EXPRESS |
| AMAZON.COM | AMAZON | | 9/22/2018 | 253.80 | | PERSONAL | 2018-09 | AMERICAN EXPRESS |



**YOUTH POLICY INSTITUTE, INC.**
**REPORT EXHIBITS**
Detail of transactions for noted category

EXHIBIT M

| DESCRIPTION | NORMALIZED DESCRIPTION | NOTE | DATE | TOTAL | OBJECT CODE | TYPE | REPORT DATE | DATA |
|---|---|---|---|---|---|---|---|---|
| PRIME VIDEO | PRIME VIDEO | | 9/9/2018 | 2.99 | | PERSONAL | 2018-09 | AMERICAN EXPRESS |
| PRIME VIDEO | PRIME VIDEO | | 9/9/2018 | 2.99 | | PERSONAL | 2018-09 | AMERICAN EXPRESS |
| KL *WINE MERCHANTS | WINE MERCHANTS | | 9/6/2018 | 328.49 | | PERSONAL | 2018-09 | AMERICAN EXPRESS |
| KL *WINE MERCHANTS | WINE MERCHANTS | | 9/6/2018 | 97.42 | | PERSONAL | 2018-09 | AMERICAN EXPRESS |
| AMZN MKTP | AMAZON | | 10/15/2018 | 20.99 | | PERSONAL | 2018-10 | AMERICAN EXPRESS |
| AMZN MKTP | AMAZON | | 10/15/2018 | 169.95 | | PERSONAL | 2018-10 | AMERICAN EXPRESS |
| AMZN MKTP | AMAZON | | 10/15/2018 | 38.61 | | PERSONAL | 2018-10 | AMERICAN EXPRESS |
| KL *KLWINES.COM | KLWINES.COM | | 11/22/2018 | 543.75 | | PERSONAL | 2018-11 | AMERICAN EXPRESS |
| AMAZON.COM | AMAZON | | 12/22/2018 | 16.55 | | PERSONAL | 2018-12 | AMERICAN EXPRESS |
| AMZN MKTP | AMAZON | | 12/20/2018 | 48.45 | | PERSONAL | 2018-12 | AMERICAN EXPRESS |
| AMZN MKTP | AMAZON | | 12/20/2018 | 35.66 | | PERSONAL | 2018-12 | AMERICAN EXPRESS |
| AMZN MKTP | AMAZON | | 12/22/2018 | 48.42 | | PERSONAL | 2018-12 | AMERICAN EXPRESS |
| KL *LKWINES.COM | KLWINES.COM | | 12/11/2018 | 366.48 | | PERSONAL | 2018-12 | AMERICAN EXPRESS |
| RITE AID STORE | RITE AID STORE | | 12/19/2018 | 10.00 | | PERSONAL | 2018-12 | AMERICAN EXPRESS |
| KL *WINE MERCHANTS-LA | WINE MERCHANTS | | 12/7/2018 | 81.02 | | PERSONAL | 2018-12 | AMERICAN EXPRESS |
| KL *WINE MERCHANTS-LA | WINE MERCHANTS | | 12/14/2018 | 142.34 | | PERSONAL | 2018-12 | AMERICAN EXPRESS |
| VINO VOLO | VINO VOLO | | 1/7/2019 | 161.80 | | PERSONAL | 2019-01 | AMERICAN EXPRESS |
| VINO VOLO SMF | VINO VOLO | | 1/22/2019 | 110.59 | | PERSONAL | 2019-01 | AMERICAN EXPRESS |
| AMAZON PRIME | AMAZON | | 2/21/2019 | 130.31 | | PERSONAL | 2019-02 | AMERICAN EXPRESS |
| | | | **TOTAL** | **(19,977.80)** | | | | |



**YOUTH POLICY INSTITUTE, INC.**
**REPORT EXHIBITS**
**Detail of transactions for noted category**

**EXHIBIT N**

| DESCRIPTION | NORMALIZED DESCRIPTION | NOTE | DATE | TOTAL | OBJECT CODE | TYPE | REPORT DATE | DATA |
|---|---|---|---|---|---|---|---|---|
| 501C4 | 501C4 | MISSING EXPENSE REPORT & BACKUP | | 5,000.00 | | POLITICAL (REVIEW) | 12/14/16 | EXPENSE REPORT |
| 501C4 | 501C4 | MISSING EXPENSE REPORT & BACKUP | | 50.00 | | POLITICAL (REVIEW) | 06/06/17 | EXPENSE REPORT |
| BLK*MAYORS FUND FOR LA | MAYORS FUND FOR LA | | 12/11/2014 | 1,000.00 | | POLITICAL (review) | 2014-12 | AMERICAN EXPRESS |
| BB *MAYORSFUNDFORLA - 21354 | MAYORS FUND FOR LA | | 11/11/2015 | 1,111.00 | | POLITICAL (review) | 2015-11 | AMERICAN EXPRESS |
| YES ON P - PROMOTING AME 00A | YES ON P - PROMOTING AME | | 01/31/2017 | 2,000.00 | | POLITICAL (review) | 2017-02 | AMERICAN EXPRESS |
| DEMOCRATIC MIDTERM VICTOR 9 | DEMOCRATIC MIDTERM VICTOR | | 05/15/2018 | 5,000.00 | | POLITICAL | 2018-05 | AMERICAN EXPRESS |
| ACTBLUE*KAINE.VICTORY - ACTBL | KAINE.VICTORY | | 05/31/2018 | 5,000.00 | | POLITICAL | 2018-06 | AMERICAN EXPRESS |
| AMERICAN POSSIBILITIES | AMERICAN POSSIBILITIES | | 10/2/2018 | 5,000.00 | | POLITICAL | 2018-10 | AMERICAN EXPRESS |
| APL PAY ACTBLUE*DONATETODE | DONATETODEMS | | 2/11/2019 | 1,000.00 | | POLITICAL (review) | 2019-02 | AMERICAN EXPRESS |
| APL PAY ACTBLUE*DONATETODE | DONATETODEMS | | 2/11/2019 | 1,000.00 | | POLITICAL (review) | 2019-02 | AMERICAN EXPRESS |
| | | | TOTAL | 26,161.00 | | | | |

**EXHIBIT O**

| DESCRIPTION | NORMALIZED DESCRIPTION | NOTE | DATE | TOTAL | OBJECT CODE | TYPE | REPORT DATE | DATA |
|---|---|---|---|---|---|---|---|---|
| L2G*LA COUNTY TTC PAY - 213-97 | LA COUNTY TTC PAY | | 04/10/2017 | 14,379.72 | | PROPERTY TAX | 2017-04 | AMERICAN EXPRESS |
| L2G*LA COUNTY TTC PAY - 213-97 | LA COUNTY TTC PAY | | 04/10/2017 | 323.54 | | PROPERTY TAX | 2017-04 | AMERICAN EXPRESS |
| | | | TOTAL | 14,703.26 | | | | |

**EXHIBIT P**

**AMOUNTS GREATER THAN $1,000  OR LESS THAN ($1,000)**

| DESCRIPTION | NORMALIZED DESCRIPTION | NOTE | DATE | TOTAL | OBJECT CODE | TYPE | REPORT DATE | DATA |
|---|---|---|---|---|---|---|---|---|
| virgin america | VIRGIN AMERICA | | | 1,176.00 | | TRAVEL: AIR | 07/08/14 | EXPENSE REPORT |
| virgin america | VIRGIN AMERICA | | | 1,255.00 | | TRAVEL: AIR | 07/08/14 | EXPENSE REPORT |
| DELTA | DELTA | | 01/11/15 | 1,243.60 | | TRAVEL: AIR | 01/12/15 | EXPENSE REPORT |
| ENTERPIRSE RENTACAR | ENTERPIRSE RENTACAR | | | 2,000.00 | | TRAVEL: OTHER | 01/12/15 | EXPENSE REPORT |
| ENTERPIRSE RENTACAR | ENTERPIRSE RENTACAR | | | 2,661.25 | | TRAVEL: OTHER | 01/12/15 | EXPENSE REPORT |
| TRAVEL | travel | No Backup | | 8,700.00 | | TRAVEL: UNDEFINED | 01/12/15 | EXPENSE REPORT |
| VIRGIN AMERICA | VIRGIN AMERICA | | 01/10/15 | 1,796.40 | | TRAVEL: AIR | 01/12/15 | EXPENSE REPORT |
| TRAVEL | travel | No Backup | | 2,765.79 | | TRAVEL: UNDEFINED | 01/12/16 | EXPENSE REPORT |
| VA | VIRGIN AMERICA | | | 1,194.30 | | TRAVEL: AIR | 05/31/16 | EXPENSE REPORT |
| VA | VIRGIN AMERICA | | | 1,350.00 | | TRAVEL: AIR | 05/31/16 | EXPENSE REPORT |
| TRAVEL (OCT & NOV) | TRAVEL (OCT & NOV) | MISSING EXPENSE REPORT & BACKUP | | 2,381.78 | | TRAVEL: UNDEFINED | 12/14/16 | EXPENSE REPORT |
| travel | travel | Virgin America | | 1,544.38 | 5205 | TRAVEL: UNDEFINED | 10/03/17 | EXPENSE REPORT |
| travel | travel | 1/2 Tim Kaine Retreat | | 3,018.65 | 5200 | TRAVEL: UNDEFINED | 10/03/17 | EXPENSE REPORT |
| INN FRONT OFFICE | INN FRONT OFFICE | | 6/1/2014 | 1,228.56 | | TRAVEL: ACCOMMODATION | 2014-06 | AMERICAN EXPRESS |
| THE GREENWICH HOTEL | THE GREENWICH HOTEL | | 6/22/2014 | 3,276.72 | | TRAVEL: ACCOMMODATION | 2014-06 | AMERICAN EXPRESS |
| THE HAY ADAMS | THE HAY ADAMS | | 6/24/2014 | 1,421.72 | | TRAVEL: ACCOMMODATION | 2014-06 | AMERICAN EXPRESS |
| FOUR SEASON | FOUR SEASONS HOTEL | | 7/12/2014 | 1,552.54 | | TRAVEL: ACCOMMODATION | 2014-07 | AMERICAN EXPRESS |
| THE HAY ADAMS | THE HAY ADAMS | | 7/5/2014 | 1,915.42 | | TRAVEL: ACCOMMODATION | 2014-07 | AMERICAN EXPRESS |
| HERTZ RAC. | HERTZ | | 8/5/2014 | 1,879.97 | | TRAVEL: AUTO | 2014-08 | AMERICAN EXPRESS |
| HERTZ UK | HERTZ | | 8/10/2014 | 1,611.39 | | TRAVEL: AUTO | 2014-08 | AMERICAN EXPRESS |
| NOMAD HOTELS | NOMAD HOTELS | | 9/24/2014 | 2,409.70 | | TRAVEL: ACCOMMODATION | 2014-09 | AMERICAN EXPRESS |
| NOMAD HOTELS | NOMAD HOTELS | | 9/24/2014 | 1,229.28 | | TRAVEL: ACCOMMODATION | 2014-09 | AMERICAN EXPRESS |
| AMERICAN EXPRESS TRACHICAGO | AMERICAN EXPRESS TRAVEL | | 10/19/2014 | 5,992.70 | | TRAVEL: AIR | 2014-10 | AMERICAN EXPRESS |
| AMERICAN EXPRESS TRACHICAGO | AMERICAN EXPRESS TRAVEL | | 10/19/2014 | 5,992.70 | | TRAVEL: AIR | 2014-10 | AMERICAN EXPRESS |
| EIBEULHEONDAIHOTEL | EIBEULHEONDAIHOTEL | | 11/2/2014 | 1,879.57 | | TRAVEL: ACCOMMODATION | 2014-11 | AMERICAN EXPRESS |
| EIBEULHEONDAIHOTEL | EIBEULHEONDAIHOTEL | | 11/2/2014 | 1,076.67 | | TRAVEL: ACCOMMODATION | 2014-11 | AMERICAN EXPRESS |
| SINGAPORE AIRLINES | SINGAPORE AIRLINES | | 11/18/2014 | (2,150.50) | | TRAVEL: AIR | 2014-11 | AMERICAN EXPRESS |
| SINGAPORE AIRLINES | SINGAPORE AIRLINES | | 11/18/2014 | (2,150.50) | | TRAVEL: AIR | 2014-11 | AMERICAN EXPRESS |
| SINGAPORE AIRLINES | SINGAPORE AIRLINES | | 10/29/2014 | 2,281.50 | | TRAVEL: AIR | 2014-11 | AMERICAN EXPRESS |
| SINGAPORE AIRLINES | SINGAPORE AIRLINES | | 10/29/2014 | 2,281.50 | | TRAVEL: AIR | 2014-11 | AMERICAN EXPRESS |
| UNITED AIRLINES | UNITED AIRLINES | | 11/3/2014 | (5,492.70) | | TRAVEL: AIR | 2014-11 | AMERICAN EXPRESS |

17



**YOUTH POLICY INSTITUTE, INC.**

**REPORT EXHIBITS**

Detail of transactions for noted category

EXHIBIT P (continued)

| DESCRIPTION | NORMALIZED DESCRIPTION | NOTE | DATE | TOTAL | OBJECT CODE | TYPE | REPORT DATE | DATA |
|---|---|---|---|---|---|---|---|---|
| UNITED AIRLINES | UNITED AIRLINES | | 11/3/2014 | (5,492.70) | | TRAVEL: AIR | 2014-11 | AMERICAN EXPRESS |
| UNITED AIRLINES | UNITED AIRLINES | | 10/30/2014 | 4,635.70 | | TRAVEL: AIR | 2014-11 | AMERICAN EXPRESS |
| UNITED AIRLINES | UNITED AIRLINES | | 10/30/2014 | 4,635.70 | | TRAVEL: AIR | 2014-11 | AMERICAN EXPRESS |
| THE HAY ADAMS | THE HAY ADAMS | | 12/13/2014 | 1,727.12 | | TRAVEL: ACCOMMODATION | 2014-12 | AMERICAN EXPRESS |
| THE HAY ADAMS | THE HAY ADAMS | | 12/18/2014 | 2,858.89 | | TRAVEL: ACCOMMODATION | 2014-12 | AMERICAN EXPRESS |
| UNITED AIRLINES | UNITED AIRLINES | | 11/26/2014 | (4,135.70) | | TRAVEL: AIR | 2014-12 | AMERICAN EXPRESS |
| UNITED AIRLINES | UNITED AIRLINES | | 11/26/2014 | (4,135.70) | | TRAVEL: AIR | 2014-12 | AMERICAN EXPRESS |
| VIRGIN AMERICA | VIRGIN AMERICA | | 12/23/2014 | 1,656.20 | | TRAVEL: AIR | 2014-12 | AMERICAN EXPRESS |
| AVIANCA AIRLINES | AVIANCA AIRLINES | | 1/11/2015 | 2,124.23 | | TRAVEL: AIR | 2015-01 | AMERICAN EXPRESS |
| AVIANCA AIRLINES | AVIANCA AIRLINES | | 1/11/2015 | 2,124.23 | | TRAVEL: AIR | 2015-01 | AMERICAN EXPRESS |
| COPA AIRLINES | COPA AIRLINES | | 1/11/2015 | 2,348.48 | | TRAVEL: AIR | 2015-01 | AMERICAN EXPRESS |
| COPA AIRLINES | COPA AIRLINES | | 1/11/2015 | 2,348.48 | | TRAVEL: AIR | 2015-01 | AMERICAN EXPRESS |
| THE HAY ADAMS | THE HAY ADAMS | | 1/24/2015 | 1,381.12 | | TRAVEL: ACCOMMODATION | 2015-01 | AMERICAN EXPRESS |
| THE HAY ADAMS | THE HAY ADAMS | | 1/24/2015 | 1,105.12 | | TRAVEL: ACCOMMODATION | 2015-01 | AMERICAN EXPRESS |
| ALVEAR PALACE HOTEL | ALVEAR PALACE HOTEL | | 3/6/2015 | 3,825.37 | | TRAVEL: ACCOMMODATION | 2015-03 | AMERICAN EXPRESS |
| THE HAY ADAMS | THE HAY ADAMS | | 5/7/2015 | 1,203.18 | | TRAVEL: ACCOMMODATION | 2015-05 | AMERICAN EXPRESS |
| DELTA AIRLINES | DELTA | | 6/8/2015 | 3,442.30 | | TRAVEL: AIR | 2015-06 | AMERICAN EXPRESS |
| DELTA AIRLINES | DELTA | | 6/8/2015 | 3,442.30 | | TRAVEL: AIR | 2015-06 | AMERICAN EXPRESS |
| DELTA AIRLINES | DELTA | | 6/8/2015 | 3,442.30 | | TRAVEL: AIR | 2015-06 | AMERICAN EXPRESS |
| DELTA AIRLINES | DELTA | | 6/8/2015 | 3,199.30 | | TRAVEL: AIR | 2015-06 | AMERICAN EXPRESS |
| AMERICAN EXPRESS TRAVEL CHICAGO | AMERICAN EXPRESS TRAVEL | | 09/26/2015 | 2,896.80 | | TRAVEL: AIR | 2015-10 | AMERICAN EXPRESS |
| THE RITZ CARLTON RESDORADO | RITZ CARLTON | | 09/26/2015 | 1,169.64 | | TRAVEL: ACCOMMODATION | 2015-10 | AMERICAN EXPRESS |
| THE RITZ CARLTON RESERVE DOR | RITZ CARLTON | | 12/06/2015 | 1,321.97 | | TRAVEL: ACCOMMODATION | 2015-12 | AMERICAN EXPRESS |
| THE HAY ADAMS - WASHINGTON | THE HAY ADAMS | | 12/18/2015 | 2,198.22 | | TRAVEL: ACCOMMODATION | 2015-12 | AMERICAN EXPRESS |
| FAENA HOTEL MIAMI BEACH - MI | FAENA HOTEL | | 01/22/2016 | 1,039.00 | | TRAVEL: ACCOMMODATION | 2016-01 | AMERICAN EXPRESS |
| AMERICAN EXPRESS TRAVEL - CHI | AMERICAN EXPRESS TRAVEL | | 02/18/2016 | 1,481.94 | | TRAVEL: AIR | 2016-02 | AMERICAN EXPRESS |
| AMERICAN EXPRESS TRAVEL - CHI | AMERICAN EXPRESS TRAVEL | | 02/18/2016 | 1,481.94 | | TRAVEL: AIR | 2016-02 | AMERICAN EXPRESS |
| DELTA AIR LINES - ATLANTA | DELTA | | 02/22/2016 | 1,584.02 | | TRAVEL: AIR | 2016-02 | AMERICAN EXPRESS |
| ENTERPRISE RENT A CAR - WEST H | ENTERPRISE RENT A CAR | | 02/23/2016 | 1,232.07 | | TRAVEL: AUTO | 2016-02 | AMERICAN EXPRESS |
| FAENA HOTEL MIAMI BEACH - MI | FAENA HOTEL | | 03/10/2016 | 2,949.54 | | TRAVEL: ACCOMMODATION | 2016-03 | AMERICAN EXPRESS |
| HERTZ CAR RENTAL - 800-654-417 | HERTZ | | 05/09/2016 | 1,839.08 | | TRAVEL: AUTO | 2016-05 | AMERICAN EXPRESS |
| THE HAY ADAMS - WASHINGTON | THE HAY ADAMS | | 05/25/2016 | 1,095.84 | | TRAVEL: ACCOMMODATION | 2016-06 | AMERICAN EXPRESS |
| HERTZ CAR RENTAL - 800-654-417 | HERTZ | | 06/05/2016 | 1,123.48 | | TRAVEL: AUTO | 2016-06 | AMERICAN EXPRESS |
| LOEWS SAPPHIRE FALLS RESORT - | LOEWS | | 07/27/2016 | 2,023.94 | | TRAVEL: ACCOMMODATION | 2016-07 | AMERICAN EXPRESS |
| RITZ-CARLTON - PHILADELPHIA, P | RITZ CARLTON | | 07/17/2016 | 3,654.44 | | TRAVEL: ACCOMMODATION | 2016-07 | AMERICAN EXPRESS |
| THE HAY ADAMS - WASHINGTON | THE HAY ADAMS | | 09/20/2016 | 11,445.44 | | TRAVEL: ACCOMMODATION | 2016-09 | AMERICAN EXPRESS |
| AMERICAN EXPRESS TRAVEL - CHI | AMERICAN EXPRESS TRAVEL | | 10/30/2016 | 2,866.80 | | TRAVEL: AIR | 2016-11 | AMERICAN EXPRESS |
| AMERICAN EXPRESS TRAVEL - CHI | AMERICAN EXPRESS TRAVEL | | 10/30/2016 | 2,866.80 | | TRAVEL: AIR | 2016-11 | AMERICAN EXPRESS |
| AMERICAN EXPRESS TRAVEL - CHI | AMERICAN EXPRESS TRAVEL | | 11/23/2016 | 2,339.40 | | TRAVEL: AIR | 2016-11 | AMERICAN EXPRESS |
| AMERICAN EXPRESS TRAVEL - CHI | AMERICAN EXPRESS TRAVEL | | 11/21/2016 | 3,395.66 | | TRAVEL: AIR | 2016-11 | AMERICAN EXPRESS |
| AMERICAN EXPRESS TRAVEL - CHI | AMERICAN EXPRESS TRAVEL | | 11/21/2016 | 3,395.66 | | TRAVEL: AIR | 2016-11 | AMERICAN EXPRESS |
| AMERICAN EXPRESS TRAVEL - CHI | AMERICAN EXPRESS TRAVEL | | 11/21/2016 | 3,395.66 | | TRAVEL: AIR | 2016-11 | AMERICAN EXPRESS |
| AMERICAN EXPRESS TRAVEL - CHI | AMERICAN EXPRESS TRAVEL | | 11/21/2016 | 3,395.66 | | TRAVEL: AIR | 2016-11 | AMERICAN EXPRESS |
| NOMAD HOTELS - NEW YORK, NY | NOMAD HOTELS | | 11/09/2016 | 2,198.09 | | TRAVEL: ACCOMMODATION | 2016-11 | AMERICAN EXPRESS |
| AMERICAN EXPRESS TRAVEL - CHI | AMERICAN EXPRESS TRAVEL | | 11/30/2016 | 4,196.20 | | TRAVEL: AIR | 2016-12 | AMERICAN EXPRESS |
| MANDARIN ORIENTAL HOTEL - NE | MANDARIN ORIENTAL | | 12/16/2016 | 2,102.27 | | TRAVEL: ACCOMMODATION | 2016-12 | AMERICAN EXPRESS |
| THE HAY ADAMS - WASHINGTON | THE HAY ADAMS | | 11/30/2016 | 1,739.26 | | TRAVEL: ACCOMMODATION | 2016-12 | AMERICAN EXPRESS |
| THE HAY ADAMS - WASHINGTON | THE HAY ADAMS | | 12/18/2016 | (11,445.44) | | TRAVEL: ACCOMMODATION | 2016-12 | AMERICAN EXPRESS |
| AMERICAN EXPRESS TRAVEL - CHI | AMERICAN EXPRESS TRAVEL | | 01/18/2017 | 1,068.40 | | TRAVEL: AIR | 2017-01 | AMERICAN EXPRESS |
| AMERICAN EXPRESS TRAVEL - CHI | AMERICAN EXPRESS TRAVEL | | 01/18/2017 | 1,068.40 | | TRAVEL: AIR | 2017-01 | AMERICAN EXPRESS |
| AMERICAN EXPRESS TRAVEL - CHI | AMERICAN EXPRESS TRAVEL | | 01/04/2017 | 1,439.61 | | TRAVEL: AIR | 2017-01 | AMERICAN EXPRESS |
| AMERICAN EXPRESS TRAVEL - CHI | AMERICAN EXPRESS TRAVEL | | 01/03/2017 | (1,259.60) | | TRAVEL: AIR | 2017-01 | AMERICAN EXPRESS |



**YOUTH POLICY INSTITUTE, INC.**
**REPORT EXHIBITS**
Detail of transactions for noted category

EXHIBIT P (continued)

| DESCRIPTION | NORMALIZED DESCRIPTION | NOTE | DATE | TOTAL | OBJECT CODE | TYPE | REPORT DATE | DATA |
|---|---|---|---|---|---|---|---|---|
| AMERICAN EXPRESS TRAVEL - CHI | AMERICAN EXPRESS TRAVEL | | 01/03/2017 | 1,259.60 | | TRAVEL: AIR | 2017-01 | AMERICAN EXPRESS |
| CHICAGO ATHLETIC ASSOCATION | CHICAGO ATHLETIC ASSOCATION HOTEL | | 01/12/2017 | 2,243.34 | | TRAVEL: ACCOMMODATION | 2017-01 | AMERICAN EXPRESS |
| AMERICAN EXPRESS TRAVEL - CHI | AMERICAN EXPRESS TRAVEL | | 02/10/2017 | 1,639.61 | | TRAVEL: AIR | 2017-02 | AMERICAN EXPRESS |
| AMERICAN EXPRESS TRAVEL - CHI | AMERICAN EXPRESS TRAVEL | | 02/10/2017 | 1,639.61 | | TRAVEL: AIR | 2017-02 | AMERICAN EXPRESS |
| AMERICAN EXPRESS TRAVEL - CHI | AMERICAN EXPRESS TRAVEL | | 02/10/2017 | 1,639.61 | | TRAVEL: AIR | 2017-02 | AMERICAN EXPRESS |
| AMERICAN EXPRESS TRAVEL - CHI | AMERICAN EXPRESS TRAVEL | | 02/10/2017 | 1,639.61 | | TRAVEL: AIR | 2017-02 | AMERICAN EXPRESS |
| SALAMANDER RESORT & SPA RES | SALAMANDER RESORT & SPA | | 02/11/2017 | 1,139.94 | | TRAVEL: ACCOMMODATION | 2017-02 | AMERICAN EXPRESS |
| AMERICAN EXPRESS TRAVEL - CHI | AMERICAN EXPRESS TRAVEL | | 04/02/2017 | 1,004.60 | | TRAVEL: AIR | 2017-04 | AMERICAN EXPRESS |
| RITZ CARLTON HALF MOON BAY - | RITZ CARLTON | | 04/18/2017 | 1,373.36 | | TRAVEL: ACCOMMODATION | 2017-04 | AMERICAN EXPRESS |
| HOTEL BEL AIR - LOS ANGELES, CA | HOTEL BEL AIR | | 05/04/2017 | 2,152.16 | | TRAVEL: ACCOMMODATION | 2017-05 | AMERICAN EXPRESS |
| SALAMANDER RESORT & SPA RES | SALAMANDER RESORT & SPA | | 05/23/2017 | (1,139.94) | | TRAVEL: ACCOMMODATION | 2017-05 | AMERICAN EXPRESS |
| AMERICAN EXPRESS TRAVEL - CHI | AMERICAN EXPRESS TRAVEL | | 05/28/2017 | 1,871.57 | | TRAVEL: AIR | 2017-06 | AMERICAN EXPRESS |
| AMERICAN EXPRESS TRAVEL - CHI | AMERICAN EXPRESS TRAVEL | | 05/28/2017 | 1,871.57 | | TRAVEL: AIR | 2017-06 | AMERICAN EXPRESS |
| AMERICAN EXPRESS TRAVEL - CHI | AMERICAN EXPRESS TRAVEL | | 05/28/2017 | 1,871.57 | | TRAVEL: AIR | 2017-06 | AMERICAN EXPRESS |
| AMERICAN EXPRESS TRAVEL - CHI | AMERICAN EXPRESS TRAVEL | | 05/28/2017 | 1,871.57 | | TRAVEL: AIR | 2017-06 | AMERICAN EXPRESS |
| HOTEL GUANAHANI - ST BARTHEL | HOTEL GUANAHANI | | 05/29/2017 | 9,269.70 | | TRAVEL: ACCOMMODATION | 2017-06 | AMERICAN EXPRESS |
| KESWICK HALL AT MONTICELLO - | KESWICK HALL AT MONTICELLO | | 06/25/2017 | 1,930.83 | | TRAVEL: ACCOMMODATION | 2017-06 | AMERICAN EXPRESS |
| KESWICK HALL AT MONTICELLO - | KESWICK HALL AT MONTICELLO | | 06/25/2017 | 3,529.87 | | TRAVEL: ACCOMMODATION | 2017-06 | AMERICAN EXPRESS |
| AMERICAN EXPRESS TRAVEL - CHI | AMERICAN EXPRESS TRAVEL | | 07/13/2017 | 1,240.89 | | TRAVEL: AIR | 2017-07 | AMERICAN EXPRESS |
| AMERICAN EXPRESS TRAVEL - CHI | AMERICAN EXPRESS TRAVEL | | 07/13/2017 | 1,240.89 | | TRAVEL: AIR | 2017-07 | AMERICAN EXPRESS |
| AMERICAN EXPRESS TRAVEL - CHI | AMERICAN EXPRESS TRAVEL | | 07/13/2017 | 1,287.36 | | TRAVEL: AIR | 2017-07 | AMERICAN EXPRESS |
| AMERICAN EXPRESS TRAVEL - CHI | AMERICAN EXPRESS TRAVEL | | 07/13/2017 | 1,287.36 | | TRAVEL: AIR | 2017-07 | AMERICAN EXPRESS |
| AMERICAN EXPRESS TRAVEL - CHI | AMERICAN EXPRESS TRAVEL | | 08/26/2017 | 2,939.97 | | TRAVEL: AIR | 2017-08 | AMERICAN EXPRESS |
| AMERICAN EXPRESS TRAVEL - CHI | AMERICAN EXPRESS TRAVEL | | 08/26/2017 | 2,939.97 | | TRAVEL: AIR | 2017-08 | AMERICAN EXPRESS |
| AMERICAN EXPRESS TRAVEL - CHI | AMERICAN EXPRESS TRAVEL | | 08/26/2017 | 2,939.97 | | TRAVEL: AIR | 2017-08 | AMERICAN EXPRESS |
| AMERICAN EXPRESS TRAVEL - CHI | AMERICAN EXPRESS TRAVEL | | 08/26/2017 | 2,939.97 | | TRAVEL: AIR | 2017-08 | AMERICAN EXPRESS |
| AMERICAN EXPRESS TRAVEL - CHI | AMERICAN EXPRESS TRAVEL | | 09/22/2017 | 1,170.40 | | TRAVEL: AIR | 2017-09 | AMERICAN EXPRESS |
| AMERICAN EXPRESS TRAVEL - CHI | AMERICAN EXPRESS TRAVEL | | 09/26/2017 | 2,196.40 | | TRAVEL: AIR | 2017-10 | AMERICAN EXPRESS |
| AMERICAN EXPRESS TRAVEL - CHI | AMERICAN EXPRESS TRAVEL | | 09/26/2017 | 2,196.40 | | TRAVEL: AIR | 2017-10 | AMERICAN EXPRESS |
| AMERICAN EXPRESS TRAVEL - CHI | AMERICAN EXPRESS TRAVEL | | 10/01/2017 | 4,319.36 | | TRAVEL: AIR | 2017-10 | AMERICAN EXPRESS |
| AMERICAN EXPRESS TRAVEL - CHI | AMERICAN EXPRESS TRAVEL | | 10/01/2017 | 5,859.76 | | TRAVEL: AIR | 2017-10 | AMERICAN EXPRESS |
| DREAM HOTEL HOLLYWOOD - LO | DREAM HOTEL HOLLYWOOD | | 09/28/2017 | 1,934.72 | | TRAVEL: ACCOMMODATION | 2017-10 | AMERICAN EXPRESS |
| THE RITZ-CARLTON BOSTON COM | RITZ CARLTON | | 11/04/2017 | 1,028.56 | | TRAVEL: ACCOMMODATION | 2017-11 | AMERICAN EXPRESS |
| AMERICAN EXPRESS TRAVEL - CHI | AMERICAN EXPRESS TRAVEL | | 01/12/2018 | 3,146.41 | | TRAVEL: AIR | 2018-01 | AMERICAN EXPRESS |
| AMERICAN EXPRESS TRAVEL - CHI | AMERICAN EXPRESS TRAVEL | | 01/12/2018 | 3,146.41 | | TRAVEL: AIR | 2018-01 | AMERICAN EXPRESS |
| AMERICAN EXPRESS TRAVEL - CHI | AMERICAN EXPRESS TRAVEL | | 01/12/2018 | 3,146.41 | | TRAVEL: AIR | 2018-01 | AMERICAN EXPRESS |
| AMERICAN EXPRESS TRAVEL - CHI | AMERICAN EXPRESS TRAVEL | | 01/12/2018 | 3,146.41 | | TRAVEL: AIR | 2018-01 | AMERICAN EXPRESS |
| FOUR SEASONS HOTEL AND RE - S | FOUR SEASONS HOTEL | | 01/20/2018 | 2,423.30 | | TRAVEL: ACCOMMODATION | 2018-01 | AMERICAN EXPRESS |
| ALASKA AIRLINES - AlaskaAir.COM | ALASKA AIRLINES | | 01/29/2018 | 1,633.80 | | TRAVEL: AIR | 2018-02 | AMERICAN EXPRESS |
| AMERICAN EXPRESS TRAVEL - CHI | AMERICAN EXPRESS TRAVEL | | 02/10/2018 | 1,719.55 | | TRAVEL: AIR | 2018-02 | AMERICAN EXPRESS |
| THE LEDBURY - LONDON, GB | THE LEDBURY | | 03/21/2018 | 1,609.49 | | TRAVEL: ACCOMMODATION | 2018-03 | AMERICAN EXPRESS |
| AMERICAN EXPRESS TRAVEL - CHI | AMERICAN EXPRESS TRAVEL | | 04/13/2018 | 2,156.41 | | TRAVEL: AIR | 2018-04 | AMERICAN EXPRESS |
| AMERICAN EXPRESS TRAVEL - CHI | AMERICAN EXPRESS TRAVEL | | 04/13/2018 | 2,156.41 | | TRAVEL: AIR | 2018-04 | AMERICAN EXPRESS |
| THE LANGHAM, CHICAGO 456657 | THE LANGHAM | | 04/12/2018 | 2,000.82 | | TRAVEL: ACCOMMODATION | 2018-04 | AMERICAN EXPRESS |
| LAS ALCOBAS HOTEL AND SPA LA | LAS ALCOBAS HOTEL AND SPA | | 05/08/2018 | 2,078.83 | | TRAVEL: ACCOMMODATION | 2018-05 | AMERICAN EXPRESS |
| MEADOWOOD HOTEL 436845555 | MEADOWOOD HOTEL | | 05/05/2018 | 2,556.48 | | TRAVEL: ACCOMMODATION | 2018-05 | AMERICAN EXPRESS |
| MEADOWOOD HOTEL 436845555 | MEADOWOOD HOTEL | | 05/08/2018 | (2,556.48) | | TRAVEL: ACCOMMODATION | 2018-05 | AMERICAN EXPRESS |
| QUIRK HOTEL - RICHMOND, VA | QUIRK HOTEL | | 06/03/2018 | 1,880.59 | | TRAVEL: ACCOMMODATION | 2018-06 | AMERICAN EXPRESS |
| DELTA AIRLINES | DELTA | | 7/1/2018 | 1,170.39 | | TRAVEL: AIR | 2018-07 | AMERICAN EXPRESS |
| DELTA AIRLINES | DELTA | | 7/1/2018 | 1,170.39 | | TRAVEL: AIR | 2018-07 | AMERICAN EXPRESS |
| DELTA AIRLINES | DELTA | | 7/1/2018 | 1,170.39 | | TRAVEL: AIR | 2018-07 | AMERICAN EXPRESS |
| LAS ALCOBAS HOTEL AND SPA | LAS ALCOBAS HOTEL AND SPA | | 8/20/2019 | 2,083.57 | | TRAVEL: ACCOMMODATION | 2018-08 | AMERICAN EXPRESS |



**YOUTH POLICY INSTITUTE, INC.**
**REPORT EXHIBITS**
Detail of transactions for noted category

EXHIBIT P (continued)

| DESCRIPTION | NORMALIZED DESCRIPTION | NOTE | DATE | TOTAL | OBJECT CODE | TYPE | REPORT DATE | DATA |
|---|---|---|---|---|---|---|---|---|
| THE SIREN HOTEL | THE SIREN HOTEL | | 8/10/2018 | 1,095.36 | | TRAVEL: ACCOMMODATION | 2018-08 | AMERICAN EXPRESS |
| DELTA AIRLINES | DELTA | | 10/17/2018 | 2,506.40 | | TRAVEL: AIR | 2018-10 | AMERICAN EXPRESS |
| DELTA AIRLINES | DELTA | | 10/17/2018 | 2,506.40 | | TRAVEL: AIR | 2018-10 | AMERICAN EXPRESS |
| DELTA AIRLINES | DELTA | | 11/7/2018 | 3,146.39 | | TRAVEL: AIR | 2018-11 | AMERICAN EXPRESS |
| DELTA AIRLINES | DELTA | | 11/7/2018 | 3,146.39 | | TRAVEL: AIR | 2018-11 | AMERICAN EXPRESS |
| DELTA AIRLINES | DELTA | | 11/7/2018 | 3,146.39 | | TRAVEL: AIR | 2018-11 | AMERICAN EXPRESS |
| DELTA AIRLINES | DELTA | | 11/7/2018 | 3,146.39 | | TRAVEL: AIR | 2018-11 | AMERICAN EXPRESS |
| DELTA AIRLINES | DELTA | | 11/9/2018 | 3,146.39 | | TRAVEL: AIR | 2018-11 | AMERICAN EXPRESS |
| DELTA AIRLINES | DELTA | | 11/9/2018 | 3,146.39 | | TRAVEL: AIR | 2018-11 | AMERICAN EXPRESS |
| DELTA AIRLINES | DELTA | | 11/9/2018 | 3,146.39 | | TRAVEL: AIR | 2018-11 | AMERICAN EXPRESS |
| DELTA AIRLINES | DELTA | | 11/7/2018 | (3,146.39) | | TRAVEL: AIR | 2018-11 | AMERICAN EXPRESS |
| DELTA AIRLINES | DELTA | | 11/7/2018 | (3,146.39) | | TRAVEL: AIR | 2018-11 | AMERICAN EXPRESS |
| DELTA AIRLINES | DELTA | | 11/7/2018 | (3,146.39) | | TRAVEL: AIR | 2018-11 | AMERICAN EXPRESS |
| DELTA AIRLINES | DELTA | | 11/7/2018 | (3,146.39) | | TRAVEL: AIR | 2018-11 | AMERICAN EXPRESS |
| LINE HOTEL | LINE HOTEL | | 11/7/2018 | 1,540.06 | | TRAVEL: ACCOMMODATION | 2018-11 | AMERICAN EXPRESS |
| SINGAPORE AIRLINES | SINGAPORE AIRLINES | | 12/31/2018 | 4,048.93 | | TRAVEL: AIR | 2019-01 | AMERICAN EXPRESS |
| SINGAPORE AIRLINES | SINGAPORE AIRLINES | | 12/31/2018 | 4,048.93 | | TRAVEL: AIR | 2019-01 | AMERICAN EXPRESS |
| SINGAPORE AIRLINES | SINGAPORE AIRLINES | | 12/31/2018 | 4,048.93 | | TRAVEL: AIR | 2019-01 | AMERICAN EXPRESS |
| SINGAPORE AIRLINES | SINGAPORE AIRLINES | | 12/31/2018 | 4,048.93 | | TRAVEL: AIR | 2019-01 | AMERICAN EXPRESS |
| WATERGATE HOTEL | WATERGATE HOTEL | | 1/4/2019 | 1,189.62 | | TRAVEL: ACCOMMODATION | 2019-01 | AMERICAN EXPRESS |

|  |  |
|---|---|
| AMOUNTS LESS THAN $1,000 AND GREATER THAN ($1,000) | 127,685.03 |
| TOTAL | 423,833.39 |
| TRAVEL PURCHASED WITH POINTS | (155,688.93) |
| NET PAID BY YPI | 268,144.46 |



**YOUTH POLICY INSTITUTE, INC.**
**REPORT EXHIBITS**
Detail of transactions for noted category

EXHIBIT POINTS

| DESCRIPTION | NORMALIZED DESCRIPTION | NOTE | DATE | TOTAL | OBJECT CODE | TYPE | REPORT DATE | DATA |
|---|---|---|---|---|---|---|---|---|
| AMEX TRAVEL PURCHASE WITH N | AMERICAN EXPRESS TRAVEL | DS- Washington to Cleveland | 12/1/2014 | (677.19) | | TRAVEL: POINTS | 2014-12 | AMERICAN EXPRESS |
| AMEX TRAVEL PURCHASE WITH N | AMERICAN EXPRESS TRAVEL | DS-Amsterdam-Madrid-LAX | 6/9/2015 | (3,199.30) | | TRAVEL: POINTS | 2015-06 | AMERICAN EXPRESS |
| AMEX TRAVEL PURCHASE WITH N | AMERICAN EXPRESS TRAVEL | DS-Minneapolis-Kansas City-LAX | 6/9/2015 | (730.00) | | TRAVEL: POINTS | 2015-06 | AMERICAN EXPRESS |
| AMEX TRAVEL PURCHASE WITH N | AMERICAN EXPRESS TRAVEL | DS-London-LAX | 09/27/2015 | (2,896.80) | | TRAVEL: POINTS | 2015-10 | AMERICAN EXPRESS |
| AMEX TRAVEL PURCHASE WITH N | AMERICAN EXPRESS TRAVEL | DS/FS-LAX-Honolulu-Kauai | 02/19/2016 | (2,963.88) | | TRAVEL: POINTS | 2016-02 | AMERICAN EXPRESS |
| AMEX TRAVEL PURCHASE WITH N | AMERICAN EXPRESS TRAVEL | UNDETERMINED | 02/22/2016 | (1,017.07) | | TRAVEL: POINTS | 2016-02 | AMERICAN EXPRESS |
| AMEX TRAVEL PURCHASE WITH N | AMERICAN EXPRESS TRAVEL | DS/SS-JFK-LAX | 10/30/2016 | (5,733.60) | | TRAVEL: POINTS | 2016-11 | AMERICAN EXPRESS |
| AMEX TRAVEL PURCHASE WITH N | AMERICAN EXPRESS TRAVEL | DS-LAX-Washington | 11/24/2016 | (2,339.40) | | TRAVEL: POINTS | 2016-11 | AMERICAN EXPRESS |
| AMEX TRAVEL PURCHASE WITH N | AMERICAN EXPRESS TRAVEL | DS Family(4)-LAX-Tokyo | 11/22/2016 | (13,582.64) | | TRAVEL: POINTS | 2016-11 | AMERICAN EXPRESS |
| AMEX TRAVEL PURCHASE WITH N | AMERICAN EXPRESS TRAVEL | DS-LAX-JFK | 12/01/2016 | (4,196.20) | | TRAVEL: POINTS | 2016-12 | AMERICAN EXPRESS |
| AMEX TRAVEL PURCHASE WITH N | AMERICAN EXPRESS TRAVEL | Jennifer Lopez-LaGuardia-Milwaukee | 12/01/2016 | (443.20) | | TRAVEL: POINTS | 2016-12 | AMERICAN EXPRESS |
| AMEX TRAVEL PURCHASE WITH N | AMERICAN EXPRESS TRAVEL | DS/Lori S-LAX-SFO-Cleveland | 01/19/2017 | (2,136.80) | | TRAVEL: POINTS | 2017-01 | AMERICAN EXPRESS |
| AMEX TRAVEL PURCHASE WITH N | AMERICAN EXPRESS TRAVEL | DS-Chicago-LAX | 01/05/2017 | (1,439.61) | | TRAVEL: POINTS | 2017-01 | AMERICAN EXPRESS |
| AMEX TRAVEL PURCHASE WITH N | AMERICAN EXPRESS TRAVEL | DS-LAX-Chicago | 01/04/2017 | (1,259.60) | | TRAVEL: POINTS | 2017-01 | AMERICAN EXPRESS |
| AMEX TRAVEL PURCHASE WITH N | AMERICAN EXPRESS TRAVEL | DS Family(4)-LAX-Washington | 02/11/2017 | (6,558.44) | | TRAVEL: POINTS | 2017-02 | AMERICAN EXPRESS |
| AMEX TRAVEL PURCHASE WITH N | AMERICAN EXPRESS TRAVEL | DS Family(4)+Sophie Gaynes-LAX-SFO | 02/06/2017 | (2,617.55) | | TRAVEL: POINTS | 2017-02 | AMERICAN EXPRESS |
| AMEX TRAVEL PURCHASE WITH N | AMERICAN EXPRESS TRAVEL | DS-LAX-SFO | 04/05/2017 | (206.80) | | TRAVEL: POINTS | 2017-04 | AMERICAN EXPRESS |
| AMEX TRAVEL PURCHASE WITH N | AMERICAN EXPRESS TRAVEL | Jennifer Lopez-Detroit-SFO-Milwaukee | 04/03/2017 | (1,004.60) | | TRAVEL: POINTS | 2017-04 | AMERICAN EXPRESS |
| AMEX TRAVEL PURCHASE WITH N | AMERICAN EXPRESS TRAVEL | DS Family(4)-LAX-JFK-St Maarten | 05/29/2017 | (7,486.28) | | TRAVEL: POINTS | 2017-06 | AMERICAN EXPRESS |
| AMEX TRAVEL PURCHASE WITH N | AMERICAN EXPRESS TRAVEL | DS/SS-MIA-Barbados-LAX | 07/14/2017 | (2,574.72) | | TRAVEL: POINTS | 2017-07 | AMERICAN EXPRESS |
| AMEX TRAVEL PURCHASE WITH N | AMERICAN EXPRESS TRAVEL | DS/SS-LAX-MIA | 07/14/2017 | (2,481.78) | | TRAVEL: POINTS | 2017-07 | AMERICAN EXPRESS |
| AMEX TRAVEL PURCHASE WITH N | AMERICAN EXPRESS TRAVEL | DS/Lori S-Newark-Cleveland | 07/17/2017 | (1,708.80) | | TRAVEL: POINTS | 2017-07 | AMERICAN EXPRESS |
| AMEX TRAVEL PURCHASE WITH N | AMERICAN EXPRESS TRAVEL | DS Family(4)-LAX-JFK | 08/27/2017 | (11,759.88) | | TRAVEL: POINTS | 2017-08 | AMERICAN EXPRESS |
| AMEX TRAVEL PURCHASE WITH N | AMERICAN EXPRESS TRAVEL | DS-Detroit-LAX | 09/22/2017 | (1,170.40) | | TRAVEL: POINTS | 2017-09 | AMERICAN EXPRESS |
| AMEX TRAVEL PURCHASE WITH N | AMERICAN EXPRESS TRAVEL | DS/Iris-BOS-LAX | 09/27/2017 | (4,392.80) | | TRAVEL: POINTS | 2017-10 | AMERICAN EXPRESS |
| AMEX TRAVEL PURCHASE WITH N | AMERICAN EXPRESS TRAVEL | DS-Atlanta-Madrid-Milan | 10/02/2017 | (5,859.76) | | TRAVEL: POINTS | 2017-10 | AMERICAN EXPRESS |
| AMEX TRAVEL PURCHASE WITH N | AMERICAN EXPRESS TRAVEL | FS-Amsterdam-LAX | 10/02/2017 | (4,319.35) | | TRAVEL: POINTS | 2017-10 | AMERICAN EXPRESS |
| AMEX TRAVEL PURCHASE WITH N | AMERICAN EXPRESS TRAVEL | DS Family(4)-London-Paris-LAX | 01/13/2018 | (12,585.64) | | TRAVEL: POINTS | 2018-01 | AMERICAN EXPRESS |
| AMEX TRAVEL PURCHASE WITH N | AMERICAN EXPRESS TRAVEL | DS-Chicago-LAX | 02/11/2018 | (1,719.55) | | TRAVEL: POINTS | 2018-02 | AMERICAN EXPRESS |
| AMEX TRAVEL PURCHASE WITH N | AMERICAN EXPRESS TRAVEL | DS/SS-LAX-Washington | 04/14/2018 | (4,312.82) | | TRAVEL: POINTS | 2018-04 | AMERICAN EXPRESS |
| AMEX TRAVEL PURCHASE WITH N | AMERICAN EXPRESS TRAVEL | DS/Iris/Tara W-Detroit-LA | 7/2/2018 | (3,511.17) | | TRAVEL: POINTS | 2018-07 | AMERICAN EXPRESS |
| AMEX TRAVEL PURCHASE WITH N | AMERICAN EXPRESS TRAVEL | DS/SS-LAX-SFO | 7/6/2018 | (662.16) | | TRAVEL: POINTS | 2018-07 | AMERICAN EXPRESS |
| AMEX TRAVEL PURCHASE WITH N | AMERICAN EXPRESS TRAVEL | DS/FS/SS-LAX-JFK | 9/16/2018 | (2,424.63) | | TRAVEL: POINTS | 2018-09 | AMERICAN EXPRESS |
| AMEX TRAVEL PURCHASE WITH N | AMERICAN EXPRESS TRAVEL | DS/FS/SS-Chicago-LAX | 9/16/2018 | (1,094.46) | | TRAVEL: POINTS | 2018-09 | AMERICAN EXPRESS |
| AMEX TRAVEL PURCHASE WITH N | AMERICAN EXPRESS TRAVEL | DS/FS/SS-Boston-Chicago | 9/16/2018 | (827.97) | | TRAVEL: POINTS | 2018-09 | AMERICAN EXPRESS |
| AMEX TRAVEL PURCHASE WITH N | AMERICAN EXPRESS TRAVEL | DS/FS/SS-LAX-JFK | 10/18/2018 | (5,012.80) | | TRAVEL: POINTS | 2018-10 | AMERICAN EXPRESS |
| AMEX TRAVEL PURCHASE WITH N | AMERICAN EXPRESS TRAVEL | OFFSET | 11/10/2018 | 12,585.56 | | TRAVEL: POINTS | 2018-11 | AMERICAN EXPRESS |
| POINTS FOR AMEX TRAVEL | AMERICAN EXPRESS TRAVEL | DS Family(4)-LAX JFK | 11/8/2018 | (12,585.56) | | TRAVEL: POINTS | 2018-11 | AMERICAN EXPRESS |
| POINTS FOR AMEX TRAVEL | AMERICAN EXPRESS TRAVEL | OFFSET | 11/10/2018 | (12,585.56) | | TRAVEL: POINTS | 2018-11 | AMERICAN EXPRESS |
| POINTS FOR AMEX TRVL | AMERICAN EXPRESS TRAVEL | DS Family(4)-LAX-Singapore | 1/4/2019 | (16,195.72) | | TRAVEL: POINTS | 2019-01 | AMERICAN EXPRESS |
| | | | **TOTAL** | **(155,688.93)** | | | | |