1  JEFFREY A. KRIEGER (SBN 156535)
   JKrieger@GreenbergGlusker.com
2  KEITH PATRICK BANNER (SBN 259502)
   KBanner@GreenbergGlusker.com
3  GREENBERG GLUSKER FIELDS CLAMAN
   & MACHTINGER LLP
4  2049 Century Park East, Ste. 2600
   Los Angeles, California 90067
5  Telephone:  310.553.3610
   Fax:  310.553.0687
6
7  Attorneys for Jason M. Rund,
   Chapter 7 Trustee

8
                  UNITED STATES BANKRUPTCY COURT
9
                  CENTRAL DISTRICT OF CALIFORNIA
10
                       LOS ANGELES DIVISION
11

12  In re:                              Case No. 2:19-bk-23085-BB

13  YOUTH POLICY INSTITUTE, INC.,       Chapter 7

14          Debtor.                     **CHAPTER 7 TRUSTEE'S MOTION
                                        UNDER FED. R. BANKR. P. 9019 FOR
15                                      ORDER APPROVING COMPROMISE
                                        WITH DIXON SLINGERLAND, STEVEN
16                                      SCHULTZ, SUZANNE STEINKE,
                                        SUZANNE M. STEINKE A
17                                      PROFESSIONAL CORPORATION, HILL
                                        MORGAN AND ASSOCIATES, LLP, RSUI
18                                      INDEMNITY COMPANY AND HANOVER
                                        INSURANCE COMPANY**
19
                                        **DECLARATION OF JASON M. RUND IN
20                                      SUPPORT THEREOF**

21                                      [NO HEARING REQUIRED; LBR 9013-1(o)]

22

23

24

25

26

27

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Ste. 2600
Los Angeles, California 90067

                                                    MOTION TO APPROVE
                                                    COMPROMISE

**TO THE HONORABLE SHERI BLUEBOND, UNITED STATES BANKRUPTCY JUDGE, THE DEBTOR, THE UNITED STATES TRUSTEE, AND ALL PARTIES-IN-INTEREST HEREIN:**

Jason M. Rund, Chapter 7 Trustee (the "Trustee") of the bankruptcy estate of Debtor Youth Policy Institute, Inc. (the "Debtor" or "YPI"), hereby submits his motion (this "Motion") for entry of an order pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules" and each, a "Bankruptcy Rule") approving the Trustee's proposed compromise with Dixon Slingerland ("Slingerland"), Steven Schultz ("Schultz"), Suzanne M. Steinke ("Steinke"), Suzanne M. Steinke a Professional Corporation ("Steinke APC"), Hill Morgan and Associates LLP ("Hill Morgan", collectively with Slingerland, Schultz, Steinke, Steinke APC, "Defendants"), RSUI Indemnity Company ("RSUI") and Hanover Insurance Company ("Hanover", together with RSUI, "Insurers") and approving the *Settlement Agreement* (the "Settlement Agreement") by and among the Trustee, on behalf of the bankruptcy estate, and Defendants/Insurers memorializing such proposed compromise, a copy of which is attached as Exhibit 1 to the accompanying *Declaration of Jason M. Rund* (the "Rund Declaration"). In support of his Motion, the Trustee represents as follows:

## I.      JURISDICTION AND VENUE

The Bankruptcy Court has jurisdiction over this bankruptcy case, the bankruptcy estate, and this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). The venue of this case and this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The Trustee consents to the entry of a final judgment or order with respect to the Motion, if it is determined that the Bankruptcy Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution. The statutory bases for the relief requested herein are section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") and Bankruptcy Rule 9019.

/ / /

/ / /

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Ste. 2600
Los Angeles, California 90067

1

**A.** **Commencement of the Bankruptcy Case**

On November 5, 2019 (the "Petition Date"), the Debtor filed a voluntary petition (the "Petition") under chapter 7 of the Bankruptcy Code, commencing the within chapter 7 bankruptcy case. On the Petition Date, the Trustee was duly appointed the chapter 7 trustee pursuant to section 701 of the Bankruptcy Code. The first meeting of creditors pursuant to section 341(a) of the Bankruptcy Code (the "341(a) Meeting") was held on December 11, 2019 at 9:00 a.m., at which the Debtor's representatives appeared. The 341(a) Meeting was thereafter continued from time to time until concluded on July 9, 2020 (*See* Docket No. 146). Rund Decl., ¶ 3.

**B.** **The Debtor's Petition Disclosures**

As detailed in the corporate resolutions accompanying the Debtor's Petition (*See* Docket No. 1, the "Resolutions"), the Debtor is a non-profit corporation which operated after-school and extracurricular programs at nearly 100 sites in the Los Angeles area and focused on the highest need communities. In operating these programs, the Debtor was funded primarily through sizeable federal and state government grants. In fact, the Debtor's most recent publicly available tax return shows grants totaling more than $40 million for both fiscal years 2016/2017 and 2015/2016. The Resolutions further detail that in early 2019, an audit revealed irregularities in expense reimbursements made to the former CEO, Slingerland, and inaccurate disclosures and reports made in connection with the various grants the Debtor received. The Debtor's Board of Directors therefore formed a special committee and investigated these irregularities. Through its investigation, the special committee concluded that Slingerland used the Debtor's funds for unauthorized and/or excessive expenditures, and further directed inaccurate reporting to certain government agencies. Rund Decl., ¶ 4.

**C.** **The Trustee's Employment of Special Litigation Counsel**

Following the Trustee's thorough investigation into the events described by the Debtor in in the Resolutions, the Trustee elected to pursue claims against Defendants. On August 2, 2021, the Trustee filed his *Chapter 7 Trustee's Application to Employ the Law Office of Philip Dracht as Special Litigation Counsel Pursuant to 11 U.S.C. § 327 and the Approve Contingency Fee Arrangement Pursuant to 11 U.S.C. § 328* [Docket No. 180] (the "Special Counsel Employment

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Ste. 2600
Los Angeles, California 90067

MOTION TO APPROVE
COMPROMISE

Application").  Pursuant to the Special Counsel Employment Application, the Trustee sought to employ The Law Office of Philip Dracht ("Dracht") as his special litigation counsel to pursue the claims against Defendants based on a sliding scale contingency fee arrangement (the "Contingency Fee") which provided, as relevant to this Motion, that Dracht would be entitled to 33% of the gross recovery on any claims resolved before the commencement of trial, plus reimbursement of expenses[1]  On August 20, 2021, the Court entered its *Order Approving Chapter 7 Trustee's Application to Employ the Law Offices of Philip Dracht as Special Litigation Counsel Pursuant to 11 U.S.C. § 327 and to Approve Contingency Fee Arrangement Pursuant to 11 U.S.C. § 328* [Docket No. 184] ("Dracht Employment Order") approving the employment of Dracht as the Trustee's special counsel pursuant to section 327 of the Bankruptcy Code and further approving, and authorizing the Trustee to pay the Contingency Fee pursuant to section 328 of the Bankruptcy Code.

### D.    The Adversary Proceeding/ Applicable Insurance Coverage of Claims

On November 3, 2021, Dracht, on behalf of the Trustee, filed the *Trustee's Complaint for (1) Negligence; (2) Unjust Enrichment; (3) Breach of Fiduciary Duty; (4) Breach of Charitable Trust; (5) Fraud; (6) Conversion; (7) Receiving Embezzled Fund [Against Slingerland]; (8) Cal. Bu. & Prof. Code § 17200; (9) Unjust Enrichment; (10) Receiving Embezzled Funds [Against Steinke]; and (11) Professional Negligence* [Adv. Docket No. 1] (the "Complaint") against Defendants, initiating Adversary No. 2:21-ap-01221-BB (the "Adversary Proceeding").  The claims asserted in the Complaint can generally be classified into four categories: (1) the claims against Slingerland and Schultz for negligence, breach of fiduciary duty and breach of charitable trust (First, Third and Fourth Claims for Relief) which led to the collapse of YPI (the "Negligence/Breach of Fiduciary Duty Claims"); (2) the claims against Slingerland for Unjust Enrichment, Fraud, Conversion, Receiving Embezzled Funds, and Unfair Competition (the Second, Fifth, Sixth, Seventh and Eighth Claims for Relief) relating to the approximately $1.9

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Ste. 2600
Los Angeles, California 90067

---

[1] The Contingency Fee further provided different percentages for claims settled within 30 days of commencement of an adversary proceeding and claims resolved during, or after trial.  Such scenarios are not relevant to the proposed compromise detailed herein.

MOTION TO APPROVE
COMPROMISE

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Ste. 2600
Los Angeles, California 90067

million in alleged unauthorized and/or excessive expenditures caused by Slingerland (the "Slingerland Intentional Claims"); (3) the claims against Steinke and Steinke APC Unjust Enrichment and Receiving Embezzled Funds (the Ninth and Tenth Claims for Relief) primarily relating to her alleged receipt of approximately $242,058.33 in the Debtor's funds deposited into Steinke's pension account (the "Steinke Claims"); and (4) the professional negligence claims (Eleventh Claim for Relief) against Hill Morgan for its failure to identify inaccurate reporting and other issues through their various pre-petition audits of the Debtor (the "Hill Morgan Claims").

Prior to the Petition Date, the Debtor purchased coverage under the following directors' and officers' liability insurance policies: (1) Non-Profit Organization Management Liability Policy, policy no. xx9767, with an aggregate liability limit of $3 million (the "RSUI D&O Policy") issued by RSUI, which included an additional "Side-A" coverage of $500,000 payable only after the primary and all excess coverage is exhausted; and (2) Hanover Excess Advantage, policy no. xx1903 with an aggregate excess liability limit of $2 million (the "Hanover Excess D&O Policy") issued by Hanover.  Because the Negligence/Breach of Fiduciary Duty Claims triggered both the RSUI D&O Policy and the Hanover Excess D&O Policy, shortly after the commencement of the Adversary Proceeding, the Trustee served the Complaint on both RSUI and Hanover and has since been engaged in extensive negotiations with each.[2]  Rund Decl., ⁋ 7.

Other than an initial Rule 12(b) motion filed by Schultz, which the Court denied (*See* Adv. Docket No. 34), the Adversary Proceeding has centered around negotiations between the Trustee and Defendants/Insurers.  In that regard, three mediations have been held during the course of the Adversary Proceeding with mediator Leonard Gumport: one mediation among the Trustee, all Defendants and Insurers held on May 2, 2022 and two separate mediations between the Trustee and Slingerland held on June 29, 2022 and August 17, 2022 primarily relating to the Slingerland Intentional Claims.  *See* Mediator's Certificates at Adv. Docket Nos. 42, 56 and 60.  Mr. Gumport

---

[2] A third insurance policy relevant to this Motion and the Settlement Agreement is a Crime Coverage Policy NO. xx5902 (the "Crime Policy") issued by Hanover.  Prior to the commencement of the Adversary Proceeding, the Trustee engaged in extensive discussions with Hanover regarding the Crime Policy and its applicability to the Slingerland Intentional Claims.  As discussed herein, all claims of the bankruptcy estate against Slingerland were ultimately resolved through the RSUI D&O Policy and the Hanover Excess D&O Policy, rendering the Crime Policy inapplicable.  Rund Decl., ¶ 8.

MOTION TO APPROVE
COMPROMISE

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Ste. 2600
Los Angeles, California 90067

1   was further in regular communication with the parties and a fourth mediation was being

2   scheduled at the time the proposed settlement was reached.  The Trustee believes the tireless

3   efforts of Mr. Gumport directly contributed to the ultimate settlement achieved.

4   **E.    The Settlement Agreement**

5   The extensive good faith negotiations between the Trustee and Defendants/Insurers were

6   fruitful.  The Trustee and Defendants/Insurers agreed to the proposed compromise memorialized

7   in the Settlement Agreement without the need for further litigation.  As detailed in the Settlement

8   Agreement, the proposed compromise will result in an aggregate settlement payment to the

9   bankruptcy estate of $4,886,796 (the "Settlement Payment"), funded as follows: (1) RSUI will

10  fund $2,761,796.00 within ten (10) business days of the "Effective Date" as defined in the

11  Settlement Agreement,[3] which consists of the $3,000,000 policy limit under the RSUI D&O

12  Policy (excluding the Side-A coverage), less RSUI approved defense expenses previously paid[4]

13  and those defense expenses remaining to be paid to Slingerland ($66,672.50) and Schultz

14  ($22,728.15), which will be paid directly to their respective counsel by RSUI; (2) Hanover will

15  fund $2,000,000.00 within ten (10) business days of the Effective Date, which is the full amount

16  of coverage under the Hanover Excess D&O Policy; and (3) Slingerland will pay $125,000 no

17  later than April 30, 2023.  The Settlement Agreement further contains mutual releases among the

18  parties, including Slingerland's waiving of his claim against the bankruptcy estate (*See* Claim No.

19  146) and the Trustee waiving any claim under the Crime Policy.

20  / / /

21  / / /

22

23  [3] The Settlement Agreement provides that the Effective Date occurs on: (a) the fifteenth day after the Court enters an

24  order approving this Motion, if no timely appeal of that order is filed; or (b) if a timely appeal is filed, the date such
    appeal is dismissed or disposed of without modification to the Court's order approving this Motion.  Settlement
    Agreement, at ¶ 1.

25  [4] The Trustee learned during negotiations relating to the Settlement Agreement that, unbeknownst to the Trustee,
    RSUI also paid out an additional $33,204.00 from the RSUI D&O Policy to Ogletree, Deakins, Nash, Smoak &

26  Stewart, P.C. ("Ogletree") for defense costs purportedly incurred in the state court employment action *Padilla v.
    Youth Policy Institute, Inc., et al.*, Case No. 19STCV08196 (the "Padilla Action"), which was commenced prior to

27  the Petition Date and is currently stayed.  The Trustee's position is that the plaintiff in the Padilla Action is barred
    from asserting a claim against the bankruptcy estate due to never filing a proof of claim despite actual notice of the

28  bankruptcy.  The Trustee has served notice of this Motion on Ogletree and all parties to the Padilla Action.  Rund
    Decl., ¶ 11.

MOTION TO APPROVE
COMPROMISE

76214-00002/4598024.4

1  
2  
3  
4  
5  
6  
7  
8  
9  
10  
11  
12  
13  
14  
15  
16  
17  
18  
19  
20  
21  
22  
23  
24  
25  
26  
27  
28  

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Ste. 2600
Los Angeles, California 90067

## II.    **DISCUSSION**

### A.    **The Legal Standard**

Bankruptcy Code section 105(a) provides in relevant part that "[t]he court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Bankruptcy Rule 9019(a) in turn states:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement.  Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

"The bankruptcy court has great latitude in approving compromise agreements." *Woodson v. Fireman's Fund Ins. Co.* (*In re Woodson*), 839 F.2d 610, 620 (9th Cir. 1988).  "The purpose of a compromise agreement is to allow the trustee and the creditors to avoid the expenses and burdens associated with litigating contested and dubious claims." *Martin v. Kane* (*In re A & C Properties*), 784 F.2d 1377, 1380-81 (9th Cir. 1986) [hereinafter "*A & C Properties*"].  Accordingly, in approving such an agreement, the Bankruptcy Court need not conduct an exhaustive investigation into the validity, or a mini-trial on the merits, of the claims sought to be compromised.  *United States v. Alaska Nat'l Bank* (*In re Walsh Constr., Inc.*), 669 F.2d 1325, 1328 (9th Cir. 1982).

Rather, it is sufficient that the Bankruptcy Court find that the settlement was negotiated in good faith and is reasonable, fair, and equitable.  *A & C Properties*, 784 F.2d at 1381.  The Court need only canvass the issues to determine whether the compromise falls "below the lowest point in the zone of reasonableness."  *Newman v. Stein*, 464 F.2d 689, 698 (2d Cir. 1972); *see also Anaconda-Ericsson Inc. v. Hessen* (*In re Teltronics Servs., Inc.*), 762 F.2d 185, 189 (2d Cir. 1985).  Finally, although the Bankruptcy Court should consider the reasonable views of creditors, ". . . [O]bjections do not rule.  It is well established that compromise are favored in bankruptcy." *In re Lee Way Holding Co.*, 120 B.R. 881, 891 (Bankr. S.D. Ohio 1990).

In the Ninth Circuit, courts generally look to the following considerations in determining whether a proposed compromise is reasonable, fair, and equitable:

MOTION TO APPROVE
COMPROMISE

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Ste. 2600
Los Angeles, California 90067

1        (a)     the probability of success in the litigation;

2        (b)     the difficulties, if any, to be encountered in the

3  matter of collection;

4        (c)     the complexity of the litigation involved, and the

5  expense, inconvenience and delay necessarily attending it;

6        (d)     the paramount interest of the creditors and a proper

7  deference to their reasonable views in the premises.

8  *A & C Properties*, 784 F.2d at 1381 (citation omitted).

9       **B.**    **The Proposed Compromise Should Be Approved**

10      Consideration of the *A&C Properties* factors leads to the conclusion that the proposed

11  compromise should be approved.  With regard to the first, second and third factors, although the

12  Trustee could have taken the position that the bankruptcy estate is entitled to damages in excess

13  of $18 million on Negligence/Breach of Fiduciary Duty Claims, based on the aggregate liquidated

14  and unliquidated claims filed against the bankruptcy estate, the Trustee understands that

15  Defendants would vigorously oppose any such position and would assert various defenses,

16  including those which they may have already asserted during settlement negotiations.  In addition,

17  proving damages based upon liquidated and unliquidated claims filed against the bankruptcy

18  estate would require a costly and painstaking analysis of each of the over 160 claims filed in this

19  bankruptcy case, including estimation of unliquidated claims, in order to establish the necessary

20  causation.  Further, other than the $500,000 "Side-A" coverage from RSUI, the proposed

21  settlement results in RSUI tendering the full amount of the RSUI D&O Policy and Hanover

22  tendering the full amount of the Hanover Excess D&O Policy.  Based on the Trustee's

23  investigation, absent the applicable insurance coverage, Slingerland and Schultz would not have

24  the means to fund the aggregate $5,000,000.00 paid by RSUI and Hanover to resolve the

25  Negligence/Breach of Fiduciary Duty Claims.[5]

26

27  [5] The aggregate $5,000,000.00 payment consists of: (a) the $3,000,000.00 policy limit under the RSUI D&O Policy (excluding the Side A coverage), which, as discussed above, the bankruptcy estate will receive, less RSUI approved defense costs; and (b) the $2,000,000.00 policy limit under the Hanover Excess D&O Policy, as to which the

28  bankruptcy estate will receive the full amount.

MOTION TO APPROVE
COMPROMISE

76214-00002/4598024.4

As to the Slingerland Intentional Claims, Slingerland has presented certain defenses to those claims during the course of settlement negotiations and the Trustee anticipates Slingerland would vigorously defend against those claims at trial. As detailed in the Settlement Agreement, Slingerland will pay the bankruptcy estate a total of $125,000.00, consisting of $71,533.56 in unauthorized personal expenses that Slingerland admits to, plus an additional $53,466.44 to resolve the claims. Although Slingerland's share of the Settlement Payment amounts to only approximately 6.6% of the roughly $1.9 million in transfers making up the Slingerland Intentional Claims, the Trustee has determined in his business judgment after consultation with counsel that such claims would be difficult to prosecute and the underlying facts relating to those claims lend greater support to the Negligence/Breach of Fiduciary Duty Claims, which are insured claims. [6]

As to the Steinke Claims, such claims centered around a pre-petition transfer from the Debtor to Steinke's pension account, a transfer that is accounted for as part of Slingerland's settlement of the Slingerland Intentional Claims.

As to the Hill Morgan Claims, the Trustee has learned through his investigation that Hill Morgan is no longer operating and did not carry insurance for the time period applicable to the Complaint. The Trustee has further reviewed financial information produced by Hill Morgan and has determined that any judgment against Hill Morgan would be difficult to collect due to Hill Morgan's limited assets. As such, the Trustee has determined in his business judgment not to pursue the Hill Morgan Claims. The Hill Morgan Claims are being released as part of the Settlement Agreement to ensure the settlement results in a global release among all parties.

With regard to the fourth *A&C Properties* factor, the Trustee believes that the paramount interest of the creditors is served by the terms of the proposed compromise. The proposed compromise results in a significant payment to the bankruptcy estate in the aggregate amount of

---

[6] Further, the Trustee has recently learned that the Slingerland Intentional Claims have been sufficiently addressed in a criminal action initiated by the U.S. Attorney's Office, *U.S. v. Slingerland*, Case No. 2:23-cr-00017-DMG pending in the United States District Court, Central District of California (the "Slingerland Criminal Action"), which the Trustee understands was the result of extensive investigations by the U.S. Attorney's Office, which included a grand jury subpoena served on the Trustee shortly after the Petition Date, which required ongoing compliance. On January 17, 2023 in the Slingerland Criminal Action, a plea agreement was entered into with Slingerland regarding two criminal counts: theft/embezzlement and the filing of false federal tax returns. According to the plea agreement, Slingerland will face monetary penalties, restitution and potential incarceration, each of which will be determined by the district judge at sentencing. Rund Decl., ¶ 14.

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Ste. 2600
Los Angeles, California 90067

MOTION TO APPROVE
COMPROMISE

76214-00002/4598024.4

$4,886,796.  After deducting the 33% Contingency Fee, the Settlement Payment will result in approximately $3,274,153 payment to the bankruptcy estate without the additional expense of continued litigation.  The proceeds from the proposed settlement will provide funds sufficient to pay all unpaid priority wage claims in full and make a significant distribution to unsecured creditors.  Absent the proposed settlement, the Trustee believes that there would be insufficient estate assets to pay the unpaid wage claims and no distribution to unsecured creditors.

Based on these factors, the Trustee believes that the proposed compromise with Defendants memorialized in the Settlement Agreement is in the best interests of the bankruptcy estate under the circumstances, is well within the Trustee's business judgment, and should be approved.  Rund Decl., ¶¶ 12 - 18.

### C.    The Contingency Fee Should be Approved on a Final Basis

As detailed above, pursuant to the Dracht Employment Order entered on August 20, 2021, the Court approved the Contingency Fee to the Trustee's special counsel, Dracht, pursuant to section 328 of the Bankruptcy Code and further authorized the Trustee to pay the Contingency Fee to Dracht.  Based on the current stage of the Adversary Proceeding, the Contingency Fee payable to Dracht is 33% of the gross recovery on any claims resolved before the commencement of trial, plus reimbursement of expenses.

As detailed above, the bankruptcy estate will realize a gross recovery from the proposed settlement in the amount of $4,886,796.  Based on that gross recovery, the Contingency Fee due to Dracht is $1,612,642.68 (i.e. 33% of the gross recovery), plus reimbursement of $1,701.96 in costs.  Rund Decl., ¶ 5.  Through this Motion, the Trustee seeks allowance of the Contingency Fee on a final basis and authorization to pay Dracht the aggregate $1,614,344.64 due.  The Trustee submits that the compensation due to Dracht is reasonable and within the terms previously authorized by the Court under the Dracht Employment Order.  Therefore, the Trustee seeks allowance of this compensation on a final basis pursuant to sections 328 and 330 of the Bankruptcy Code.

/ / /

/ / /

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Ste. 2600
Los Angeles, California 90067

MOTION TO APPROVE
COMPROMISE

III.    **<u>CONCLUSION</u>**

Based on the foregoing, the Trustee requests that the Bankruptcy Court enter an order (1) approving the proposed compromise with Defendants; (2) approving the Settlement Agreement; (3) approving the Contingency Fee due to Dracht consisting of 33% of the gross recovery ($1,612,642.68) plus reimbursement of expenses ($1,701.96), on a final basis; (4) authorizing the Trustee to pay the Contingency Fee to Dracht as Settlement Payment funds are received; and (5) granting such other and further relief as is just and appropriate under the circumstances.

DATED:  January 20, 2023

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP

By: */s/ Keith Patrick Banner*
<u>                                        </u>
JEFFREY A. KRIEGER
KEITH PATRICK BANNER
Attorneys for Jason M. Rund,
Chapter 7 Trustee

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Ste. 2600
Los Angeles, California 90067

MOTION TO APPROVE
COMPROMISE

76214-00002/4598024.4

### DECLARATION OF JASON M. RUND

I, Jason M. Rund, declare:

1.     I am the duly appointed and acting chapter 7 Trustee of the bankruptcy estate of Youth Policy Institute, Inc. (the "Debtor").  I have personal knowledge of the facts stated below, or have gained knowledge of them from pleadings and other documents typically obtained and reviewed by trustees administering estates or from the professionals employed to assist me herein, and, if called as a witness, I could and would testify competently thereto.

2.     I submit this Declaration in support of the accompanying *Chapter 7 Trustee's Motion Under Fed. R. Bankr. P. 9019 for Order Approving Compromise with Dixon Slingerland, Steven Schultz, Suzanne Steinke, Suzanne M. Steinke a Professional Corporation, Hill Morgan and Associates, LLP, RSUI Indemnity Company and Hanover Insurance Company* (the "Motion").  Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

3.     On November 5, 2019 (the "Petition Date"), the Debtor filed a voluntary petition (the "Petition") under chapter 7 of the Bankruptcy Code, commencing the within chapter 7 bankruptcy case.  On the Petition Date, I was duly appointed the chapter 7 trustee pursuant to section 701 of the Bankruptcy Code.  The first meeting of creditors pursuant to section 341(a) of the Bankruptcy Code (the "341(a) Meeting") was held on December 11, 2019 at 9:00 a.m., at which the Debtor's representatives appeared.  The 341(a) Meeting was thereafter continued from time to time until concluded on July 9, 2020.

4.     As detailed in the corporate resolutions accompanying the Debtor's Petition (the "Resolutions"), the Debtor is a non-profit corporation which operated after-school and extracurricular programs at nearly 100 sites in the Los Angeles area and focused on the highest need communities.  In operating these programs, the Debtor was funded primarily through sizeable federal and state government grants.  The Debtor's most recent publicly available tax return shows grants totaling more than $40 million for both fiscal years 2016/2017 and 2015/2016.  The Resolutions further detail that in early 2019, an audit revealed irregularities in expense reimbursements made to the former CEO, Slingerland, and inaccurate disclosures and

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Ste. 2600
Los Angeles, California 90067

DECLARATION OF
JASON M. RUND

reports made in connection with the various grants the Debtor received.  The Debtor's Board of Directors therefore formed a special committee and investigated these irregularities and, through its investigations concluded that Slingerland used the Debtor's funds for unauthorized and/or excessive expenditures, and further directed inaccurate reporting to certain government agencies.

5.      On August 20, 2021, the Court entered its *Order Approving Chapter 7 Trustee's Application to Employ the Law Offices of Philip Dracht as Special Litigation Counsel Pursuant to 11 U.S.C. § 327 and to Approve Contingency Fee Arrangement Pursuant to 11 U.S.C. § 328* [Docket No. 184] approving the employment of the Law Offices of Philip Dracht ("Dracht") as the my special counsel pursuant to section 327 of the Bankruptcy Code and further approving, and authorizing me to pay the contingency fee due to Dracht (the "Contingency Fee") pursuant to section 328 of the Bankruptcy Code.  As detailed in the Motion, the bankruptcy estate will realize a gross recovery from the proposed settlement in the amount of $4,886,796.  Based on that gross recovery, the Contingency Fee due to Dracht is $1,612,642.68 (i.e., 33% of the gross recovery).  I further understand from Dracht that he has incurred reimbursable expenses totaling $1,701.96.

6.      On November 3, 2021, I, through my special counsel, filed my *Trustee's Complaint for (1) Negligence; (2) Unjust Enrichment; (3) Breach of Fiduciary Duty; (4) Breach of Charitable Trust; (5) Fraud; (6) Conversion; (7) Receiving Embezzled Fund [Against Slingerland]; (8) Cal. Bu. & Prof. Code § 17200; (9) Unjust Enrichment; (10) Receiving Embezzled Funds [Against Steinke]; and (11) Professional Negligence* [Adv. Docket No. 1] (the "Complaint") against Defendants initiating Adversary No. 2:21-ap-01221-BB (the "Adversary Proceeding").  The claims asserted in the Complaint can generally be classified into four categories: (1) the claims against Slingerland and Schultz for negligence, breach of fiduciary duty and breach of charitable trust (First, Third and Fourth Claims for Relief) which led to the collapse of YPI (the "Negligence/Breach of Fiduciary Duty Claims"); (2) the claims against Slingerland for Unjust Enrichment, Fraud, Conversion, Receiving Embezzled Funds, and Unfair Competition (the Second, Fifth, Sixth, Seventh and Eighth Claims for Relief) relating to the approximately $1.9 million in alleged unauthorized expenditures caused by Slingerland (the "Slingerland Intentional Claims"); (3) the claims against Steinke and Steinke APC Unjust Enrichment and

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Ste. 2600
Los Angeles, California 90067

2

DECLARATION OF
JASON M. RUND

1  Receiving Embezzled Funds (the Ninth and Tenth Claims for Relief) primarily relating to her

2  alleged receipt of approximately $242,058.33 in the Debtor's funds deposited into Steinke's

3  pension account (the "Steinke Claims"); and (4) the professional negligence claims (Eleventh

4  Claim for Relief) against Hill Morgan for its failure to identify inaccurate reporting and other

5  issues through their audit processes (the "Hill Morgan Claims").

6       7.       I understand through my investigation that prior to the Petition Date, the Debtor

7  purchased coverage under the following directors' and officers' liability insurance policies: (1)

8  Non-Profit Organization Management Liability Policy, policy no. xx9767, with an aggregate

9  liability limit of $3 million (the "RSUI D&O Policy") issued by RSUI Indemnity Company

10  ("RSUI"), which included additional "Side-A" coverage of $500,000 payable only after the

11  primary and all excess coverage is exhausted; and (2) Hanover Excess Advantage, policy no.

12  xx1903 with an aggregate excess liability limit of $2 million the "Hanover Excess D&O Policy")

13  issued by Hanover Insurance Company ("Hanover", together with RSUI, "Insurers").  Because

14  the Negligence/Breach of Fiduciary Duty Claims triggered both the RSUI D&O Policy and the

15  Hanover Excess D&O Policy, shortly after the commencement of the Adversary Proceeding, I,

16  through counsel, served the Complaint on both RSUI and Hanover and have since been engaged

17  in extensive negotiations with each.

18       8.       I further understand through my investigation that third insurance policy relevant

19  to the Motion is a Crime Coverage Policy NO. xx5902 (the "Crime Policy") issued by Hanover.

20  Prior to the commencement of the Adversary Proceeding, I, through counsel engaged in extensive

21  discussions with Hanover regarding the Crime Policy and its applicability to the Slingerland

22  Intentional Claims.  As detailed in the Motion, all claims of the bankruptcy estate against

23  Slingerland were ultimately resolved through the RSUI D&O Policy and the Hanover Excess

24  D&O Policy.

25       9.       As a result of the extensive good faith negotiations with Defendants/Insurers, the

26  parties reached a proposed compromise memorialized in a *Settlement Agreement*, a true and

27  correct copy of which is attached hereto as Exhibit 1 (the "Settlement Agreement").

28  / / /

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Ste. 2600
Los Angeles, California 90067

3

DECLARATION OF
JASON M. RUND

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Ste. 2600
Los Angeles, California 90067

10.    As detailed in the Settlement Agreement, the proposed compromise will result in an aggregate settlement payment to the bankruptcy estate of $4,886,796 (the "Settlement Payment"), funded as follows: (1) RSUI will fund $2,761,796.00 within ten (10) business days of the "Effective Date" as defined in the Settlement Agreement,  which consists of the $3,000,000 policy limit under the RSUI D&O Policy (excluding the Side-A coverage), less RSUI approved defense expenses previously paid and those defense expenses remaining to be paid to Slingerland ($66,672.50) and Schultz ($22,728.15), which will be paid directly to their respective counsel by RSUI; (2) Hanover will fund $2,000,000.00 within ten (10) business days of the Effective Date, which is the full amount of coverage under the Hanover Excess D&O Policy; and (3) Slingerland will pay $125,000 no later than April 30, 2023.

11.    I have learned during negotiations relating to the Settlement Agreement that, unbeknownst to me or my counsel, RSUI also paid out an additional $33,204.00 from the RSUI D&O Policy to Ogletree, Deakins, Nash, Smoak & Stewart, P.C. ("Ogletree") for defense costs purportedly incurred in the state court employment action *Padilla v. Youth Policy Institute, Inc., et al.*, Case No. 19STCV08196 (the "Padilla Action"), which was commenced prior to the Petition Date and is currently stayed.  I believe that the plaintiff in the Padilla Action is barred from asserting a claim against the bankruptcy estate due to never filing a proof of claim despite actual notice of the bankruptcy.  I, through counsel, have served notice of the Motion on Ogletree and all parties to the Padilla Action.

12.    Consideration of the *A&C Properties* factors leads me to the conclusion that the proposed compromise should be approved.  With regard to the first, second and third factors, although I could have taken the position that the bankruptcy estate is entitled to damages in excess of $18 million on Negligence/Breach of Fiduciary Duty Claims, based on the aggregate liquidated and unliquidated claims filed against the bankruptcy estate, I understand that Defendants would vigorously oppose any such position and would assert various defenses, including those which they may have already asserted during settlement negotiations.  In addition, proving damages based upon liquidated and unliquidated claims filed against the bankruptcy estate would require a costly and painstaking analysis of each of the over 160 claims filed in this

DECLARATION OF
JASON M. RUND

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Ste. 2600
Los Angeles, California 90067

1    bankruptcy case, including estimation of unliquidated claims, in order to establish the necessary

2    causation.  Further, other than the $500,000 "Side-A" coverage from RSUI, the proposed

3    settlement results in RSUI tendering the full amount of the RSUI D&O Policy and Hanover

4    tendering the full amount of the Hanover Excess D&O Policy.  Based on my investigation, absent

5    the applicable insurance coverage, Slingerland and Schultz likely would not have the means to

6    fund the aggregate $5,000,000.00 paid by RSUI and Hanover to resolve the Negligence/Breach of

7    Fiduciary Duty Claims.

8         13.    As to the Slingerland Intentional Claims, Slingerland has presented certain

9    defenses to those claims during the course of settlement negotiations and I anticipate Slingerland

10   would vigorously defend against those claims at trial.  As detailed in the Settlement Agreement,

11   Slingerland will pay the bankruptcy estate a total of $125,000.00, consisting of $71,533.56 in

12   unauthorized personal expenses that Slingerland admits to, plus an additional $53,466.44 to

13   resolve the claims.  Although Slingerland's share of the Settlement Payment amounts to only

14   approximately 6.6% of the roughly $1.9 million in transfers making up the Slingerland Intentional

15   Claims, I have determined in my business judgment after consultation with counsel that such

16   claims would be difficult to prosecute and the underlying facts relating to those claims lend

17   greater support to the Negligence/Breach of Fiduciary Duty Claims, which are insured claims.

18        14.    Further, I have recently learned that the Slingerland Intentional Claims have been

19   sufficiently addressed in a criminal action initiated by the U.S. Attorney's Office, *U.S. v.*

20   *Slingerland*, Case No. 2:23-cr-00017-DMG pending in the United States District Court, Central

21   District of California (the "Slingerland Criminal Action"), which I understands was the result of

22   extensive investigations by the U.S. Attorney's Office, which included a grand jury subpoena

23   served on me shortly after the Petition Date, which required ongoing compliance.  On January 17,

24   2023 in the Slingerland Criminal Action, a plea agreement was entered into with Slingerland

25   regarding two criminal counts: theft/embezzlement and the filing of false federal tax returns.

26   According to the plea agreement, Slingerland will face monetary penalties, restitution and

27   potential incarceration, each of which will be determined by the district judge at sentencing.

28   / / /

DECLARATION OF
JASON M. RUND

15.    As to the Steinke Claims, such claims centered around a pre-petition transfer from the Debtor to Steinke's pension account, a transfer which is accounted for as part of Slingerland's settlement of the Slingerland Intentional Claims.

16.    As to the Hill Morgan Claims, I have learned through my investigation that Hill Morgan is no longer operating and did not carry insurance for the time period applicable to the Complaint. I have further reviewed financial information produced by Hill Morgan and determined that any judgment against Hill Morgan would be difficult to collect due to Hill Morgan's limited assets. As such, I have determined in my business judgment after consultation with counsel not to pursue the Hill Morgan Claims and will dismiss the Adversary Proceeding with prejudice pursuant to the terms of the Settlement Agreement.

17.    With regard to the fourth *A&C Properties* factor, I believe that the paramount interest of the creditors is served by the terms of the compromise. The proposed compromise results in a significant payment to the bankruptcy estate in the amount of $4,920,000. After deducting the 33% Contingency Fee, the Settlement Payment will result in a $3,296,400 payment to the bankruptcy estate without the additional expense of continued litigation. I anticipate that the proceeds from the proposed settlement will provide funds sufficient to pay unpaid priority wage claims, in full, and fund a payment to unsecured creditors. Absent the proposed settlement, I believe that there would be insufficient estate assets to pay the unpaid wage claims and no distribution to unsecured creditors.

18.    Based on these factors, I believe that the compromise with Defendants memorialized in the Settlement Agreement is in the best interests of the bankruptcy estate under the circumstances, is well within my business judgment, and should be approved.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 20th day of January 2022, at El Segundo, California.

JASON M. RUND

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Ste. 2600
Los Angeles, California 90067

DECLARATION OF
JASON M. RUND

# EXHIBIT "1"

DocuSign Envelope ID: 534D2C1F-E63F-4DE5-BB74-37540245EF74

Youth Policy Institute, Inc.
Bankruptcy Case No. 2:19-bk-23085-BB
Adversary Proceeding No. 2:21-ap-01221-BB

## SETTLEMENT AGREEMENT

    **THIS SETTLEMENT AGREEMENT** (this "Settlement Agreement") is made between and among: (1) Plaintiff Jason M. Rund, solely in his capacity as Chapter 7 Trustee (the "Trustee") of the bankruptcy estate of Debtor Youth Policy Institute, Inc. (the "Debtor"); (2) Defendant Steven Schultz ("Schultz"), Defendant Dixon Slingerland ("Slingerland"), Defendant Suzanne Steinke ("Steinke"), Defendant Suzanne Steinke, a Professional Corporation ("Steinke APC"), and Defendant Hill Morgan and Associates, LLP ("Hill Morgan", collectively with Schultz, Slingerland, Steinke, Steinke APC and Hill Morgan, "Defendants"); and (3) RSUI Indemnity Company ("RSUI") and Hanover Insurance Company ("Hanover", together with RSUI, "Insurers"). The Trustee, Defendants and Insurers may be referred to herein collectively as the "Parties" and each, a "Party".

## RECITALS

A. **WHEREAS,** on November 5, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7, Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court"), commencing Bankruptcy Case No. 2:19-bk-23085-BB (the "Bankruptcy Case");

B. **WHEREAS,** on the Petition Date, the Trustee was duly appointed the Chapter 7 Trustee of the Debtor's bankruptcy estate pursuant to Section 701 of the Bankruptcy Code;

C. **WHEREAS**, on November 3, 2021, in the Bankruptcy Case, the Trustee initiated an Adversary Proceeding by filing his *Trustee's Complaint for (1) Negligence; (2) Unjust Enrichment; (3) Breach of Fiduciary Duty; (4) Breach of Charitable Trust; (5) Fraud; (6) Conversion; (7) Receiving Embezzled Fund [Against Slingerland]; (8) Cal. Bu. & Prof. Code § 17200; (9) Unjust Enrichment; (10) Receiving Embezzled Funds [Against Steinke and Steinke APC]; and (11) Professional Negligence* [Adv. Docket No. 1] (the "Complaint") against Defendants, No. 2:21-ap-01221-BB (the "Adversary Proceeding");

D. **WHEREAS,** the Complaint alleges causes of action against Schultz, specifically Negligence, Breach of Fiduciary Duty, and Breach of Charitable Trust;

E. **WHEREAS,** the Complaint alleges causes of action against Slingerland, specifically Negligence, Unjust Enrichment, Breach of Fiduciary Duty, Breach of Charitable Trust, Fraud, Conversion, Receiving Embezzled Funds, and Unfair and Unlawful Competition (§17200);

F. **WHEREAS,** the Complaint alleges causes of action against Steinke and Steinke APC for Unjust Enrichment, and against Steinke and Steinke APC for Receiving Embezzled Funds;

G. **WHEREAS,** the Complaint alleges a cause of action for professional negligence against Hill Morgan;

H. **WHEREAS,** the Negligence, Breach of Fiduciary Duty, and Breach of Charitable Trust claims asserted in the Complaint against Schultz and Slingerland may be covered claims under the

1

DocuSign Envelope ID: 534D2C1F-E635-4DE5-BB74-375402A54174

following directors' and officers' liability insurance policy purchased by the Debtor prior to the Petition Date: (1) Non-Profit Organization Management Liability Policy, policy no. xx9767 (the "<u>RSUI D&O Policy</u>") issued by RSUI

I.    **WHEREAS**, Hanover issued a certain Excess Advantage insurance policy excess of the RSUI D&O Policy bearing Policy No. LH3 D207719 03 and subject to a $2 million aggregate limit of liability excess of a $3 million limit of liability on the RSUI D&O Policy (the "<u>Hanover Excess D&O Policy</u>");

J.    **WHEREAS**, Hanover issued a certain Nonprofit Entity Advantage Policy with a Crime Coverage Part to YPI bearing Policy No. BD3-D026259-02 under which YPI, by or through the Trustee, sought insurance coverage in relation to alleged embezzlement by Slingerland (the "<u>Hanover Crime Policy</u>");

K.    **WHEREAS**, Slingerland acknowledges that $71,533.56 in unauthorized personal expenses were charged to and paid by YPI, but Slingerland contends, and the Trustee disputes, that he has a defense of offset because YPI is liable to him for, among other things, unpaid wages and contribution; and

L.    **WHEREAS**, the Defendants deny the allegations in the Complaint and dispute liability, but following extensive good faith negotiations, the Parties desire to settle and compromise the Adversary Proceeding, on the terms set forth herein, to avoid the cost and uncertainty of continued litigation.

**<u>AGREEMENT</u>**

**NOW THEREFORE**, the Parties agree as follows:

1.    <u>Bankruptcy Court Approval.</u>  The Parties acknowledge that the Trustee must seek authority from the Bankruptcy Court to enter into this Settlement Agreement and that the Settlement Agreement is only effective on the later of (such date, the "<u>Effective Date</u>"): (a) if no timely appeal is filed, the fifteenth (15th) day after the Bankruptcy Court enters an order in substantial form as the proposed order attached hereto as Exhibit "A" (the "<u>Approval Order</u>"); or (b) the date that any timely appeal is dismissed or disposed of without modification to the Approval Order.  After the Settlement Agreement is fully executed and delivered to the Trustee, his counsel shall prepare and file a motion for entry of the Approval Order (the "<u>Compromise Motion</u>").  If the Bankruptcy Court denies the Compromise Motion with prejudice, the Settlement Agreement is void and may not be used as evidence in any proceedings except as agreed to by all Parties.

2.    <u>Settlement Payment.</u>  In consideration for the releases described in Section 3 of this Settlement Agreement, the following amounts shall be paid, or caused to be paid, to the Trustee, as described below:

a.    <u>RSUI Share of Settlement Payment:</u>  No later than ten (10) business days following the Effective Date, RSUI shall pay the Trustee on behalf of the Debtor's bankruptcy estate, the sum of $2,761,796.00 as a portion of the policy limit under the RSUI D&O Policy. Concurrent with the payment to the Trustee, RSUI shall reimburse Slingerland, care of his defense counsel, the sum of $66,672.50 as defense expenses permitted under the RSUI D&O Policy; and RSUI shall reimburse Schultz, care of his defense counsel, the sum of $22,728.15 as defense expenses permitted under the RSUI D&O Policy. Such aggregate payment from RSUI to the Trustee, Slingerland and Schultz is hereinafter referred to as the "<u>RSUI Share</u>". RSUI's Share shall not exceed the policy limit of $3,000,000.00.

76214-00002/4598234.10

b.  <u>Hanover Share of Settlement Payment</u>: No later than ten (10) business days from the Effective Date, Hanover shall pay the Trustee on behalf of the Debtor's bankruptcy estate, a total of $2,000,000.00, constituting the full policy limit under the Hanover Excess D&O Policy and such payment made solely for the benefit of any insureds on the Hanover Excess D&O Policy (the "<u>Hanover Share</u>").

c.  <u>Slingerland Share of Settlement Payment</u>:  No later than April 30, 2023 and after the Effective Date, Slingerland shall pay the Trustee on behalf of the Debtor's bankruptcy estate, a total of $71,533.56, to reimburse the Debtor's estate for the charges referenced in paragraph K of the Recitals and $53,466.44 for the remainder of Slingerland's Share of Settlement Payment, for a total payment of $125,000.00

d.  The Parties acknowledge and agree that the Settlement Payment (a) is the result of good faith negotiations by and among the Parties; (b) resolves all claims of the Trustee for damages or other payment, compensation or relief and attorneys' fees and costs asserted against Defendants in the Adversary Proceeding; (c) is the sole and entire consideration paid and to be paid by Defendants and Insurers to the Trustee regarding the Adversary Proceeding and all released claims defined in <u>Section 3</u>, below, and (d) constitutes fair and reasonable consideration for the release of any and all such claims.

e.  Within five (5) business days of executing the Settlement Agreement, the Trustee shall provide Defendants and Insurers a valid, complete, and signed form W-9 dated within sixty (60) days of delivery to Defendants and Insurers.

f.  All payments to the Trustee required under this Section 1 shall be paid via check to "Jason M. Rund, Chapter 7 Trustee" and delivered to "Jason M. Rund, Chapter 7 Trustee, 270 Coral Circle, El Segundo, CA 90245".

3.    <u>Mutual Releases.</u>

a.  <u>Releases by the Trustee</u>.  Except for the respective obligations of the Parties in this Settlement Agreement, upon the occurrence of the Effective Date, the Trustee (on behalf of the Debtor's bankruptcy estate and, to the extent authorized to do so, its creditors) knowingly and voluntarily, unconditionally, irrevocably and absolutely, waives, releases, covenants not to sue and discharges all claims, cross claims, right of contribution, right of indemnity, obligations, suits, judgments, remedies, damages, demands, debts, rights, causes of action and liabilities, claims for relief, expenses, losses, or other rights to payment or obligations of any kind, legal and equitable, against Defendants, and their respective past and present representatives, agents, insurers (including but not limited to the Insurers), reinsurers, directors, officers, employees, successors and assigns, whether liquidated, matured, fixed, disputed, contingent, existing or arising hereafter, including but not limited to any claim the bankruptcy estate has,  may have or claims  under or in relation to the RSUI D&O Policy, the Hanover Excess D&O Policy and the Hanover Crime Policy.

b.  <u>Releases by the Defendant Releasing Parties of Trustee and Each Other</u>.  Except for the respective obligations of the Parties in this Settlement Agreement, and for any applicable claim of Slingerland timely submitted pursuant to Section 6 hereof, upon the occurrence of the Effective Date, each of the Defendants (collectively, the "<u>Defendant Releasing Parties</u>"), knowingly and voluntarily, unconditionally, irrevocably and absolutely, waives, releases, covenants not to sue and discharges all claims, cross claims, right of contribution, right of

DocuSign Envelope ID: 534D2C1F-E63F-4DF5-BB74-375402A51174

indemnity, obligations, suits, judgments, remedies, damages, demands, debts, rights, causes of action and liabilities, claims for relief, expenses, losses, or other rights to payment or obligations of any kind, legal and equitable, against the Trustee and each of the other Defendant Releasing Parties and their respective past and present affiliates, representatives, agents, insurers, reinsurers, employees, successors, and assigns, whether liquidated, matured, fixed, disputed or contingent, including but not limited to any claim of Slingerland against the bankruptcy estate, as set forth in Claims No. 146 filed in the Bankruptcy Case.

c.  <u>Releases by the Defendant Releasing Parties of Insurers</u>.  Except for the respective obligations of the Parties in this Settlement Agreement, upon the Effective Date, Defendant Releasing Parties knowingly and voluntarily, unconditionally, irrevocably and absolutely, waive, release, covenant not to sue and discharge all claims, obligations, suits, judgments, remedies, damages, demands, debts, rights, causes of action and liabilities, claims for relief, expenses, losses, or other rights to payment or obligations of any kind against Insurers, and their respective past and present affiliates, representatives, agents, insurers, reinsurers, directors, officers, employees, successors and assigns, whether liquidated, matured, fixed, disputed, contingent, existing or arising hereafter, including but not limited to any claim or rights the Defendant Releasing Parties has, may have or claims under or in relation to the RSUI D&O Policy, the Hanover Excess D&O Policy and the Hanover Crime Policy.

d.  <u>Releases by Insurers of Defendant Releasing Parties and Trustee</u>.  Except for the respective obligations of the Parties in this Settlement Agreement, upon the Effective Date, Insurers knowingly and voluntarily, unconditionally, irrevocably and absolutely, waive, release, covenant not to sue and discharge all claims, obligations, suits, judgments, remedies, damages, demands, debts, rights, causes of action and liabilities, claims for relief, expenses, losses, or other rights to payment or obligations of any kind against Defendant Releasing Parties and Trustee, whether liquidated, matured, fixed, disputed, contingent, existing or arising hereafter, including but not limited to any claim or rights Insurers have, may have or claim against Defendant Releasing Parties and Trustee under or in relation to the RSUI D&O Policy, the Hanover Excess D&O Policy and the Hanover Crime Policy.

e.  <u>Waiver of Civil Code § 1542</u>.  It is understood and agreed as among the Parties hereto that all rights under Section 1542 of the California Civil Code are hereby expressly waived as to the claims released in this Settlement Agreement. Said section reads as follows:

> 1542.  A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

4.  <u>Dismissal of Adversary Proceeding</u>.  Within ten (10) business days after receipt of both the RSUI Share of the Settlement Payment in the amount of $2,795,000.00 and the Hanover Share of the Settlement Payment, the Trustee and Defendants shall execute a stipulation dismissing the Adversary Proceeding, with prejudice.

5.  <u>No Reimbursement</u>.  Slingerland, Steinke and Steinke APC agree to not seek reimbursement of any portion of the aggregate $125,000 Settlement Payment, including from Schultz, RSUI, or Hanover

4

and hereby waive any claim for contribution, reimbursement, indemnity or any other claim against Schultz, RSUI and/or Hanover relating to their payment of any portion of the Settlement Payment.

6.      Slingerland Contingent Claim.  In the event that: (a) prior to the Trustee's submission of a final report in the Bankruptcy Case to the U.S. Trustee (such date, the "Final Report Date") Slingerland makes payments to American Express on account of his guaranty of the Debtor's American Express card obligations (an "AMEX Payment"); (b) Slingerland submits a claim to the Trustee on account of such AMEX Payment prior to the Final Report Date; and (c) American Express agrees to reduce their claim filed in the Bankruptcy Case in the amount of such AMEX Payment, then the Trustee agrees that Slingerland shall have an allowed unsecured claim in the amount of such AMEX Payment and shall be entitled to the same pro rata distribution as other general unsecured creditors.  Except for the foregoing, Slingerland shall not be allowed any claim against the bankruptcy estate.

7.      No Admission of Liability.  Each of the Parties acknowledges this Settlement Agreement is a compromise of a disputed claim and that the Settlement Payment made hereunder is not intended to be construed as an admission of any liability by any Party.  Nothing contained in this Settlement Agreement or in any motion or proceeding (including any hearing before the Bankruptcy Court) seeking approval of this Settlement Agreement may be used in any manner or in any proceeding (including courts or claims in arbitration) as an admission of liability.

8.      Entire Agreement.  This Settlement Agreement constitutes the complete understanding among the Parties and it cannot be altered, amended, or modified in any respect, except by a writing duly executed by all Parties to this Settlement Agreement.

9.      Voluntary Act.  Each of the Parties does hereby warrant, with respect to itself only, that it is authorized and empowered to execute this Settlement Agreement.  The Parties acknowledge that they have read this Settlement Agreement in its entirety, fully understood its terms, and voluntarily accepted the terms set forth herein.  Further, each Party acknowledges that it has had an opportunity to consult with legal counsel and any other advisers of its choice with respect to the terms of this Settlement Agreement and it is signing this Settlement Agreement of its own free will.

10.     No Representations. The Parties acknowledge that, except as expressly stated in this Agreement, no Party (nor any of their agents, employees, attorneys, or representatives) has made any statement or representation to any other Party regarding any fact relied on by any other Party in entering into this Agreement. Each Party specifically acknowledges that such Party has not relied on any statement, representation, or promise of any other Party, or of any of their agents, employees, attorneys, or representatives, in executing this Agreement, except as expressly set forth herein. In addition, each Party acknowledges that such Party is under no duress or undue influence and that each executes this Agreement as an act of such Party's own voluntary will.

11.     Governing Law/Venue.  Each Party agrees that this Settlement Agreement shall be governed by and interpreted under the laws of the State of California and, where appropriate, the Bankruptcy Code. Should any Party institute any action or proceeding to enforce any provision hereof or for damages by reason of any alleged breach of any provision of this Settlement Agreement, such action shall be brought in the Bankruptcy Court, and the Parties hereto expressly consent to the jurisdiction of the Bankruptcy Court with respect to any such action.

12.     Attorney Fees.  Except for the reimbursement of defense costs paid by RSUI under the RSUI D&O Policy, each Party shall bear its own attorneys' fees and costs relating to the Adversary Proceeding, settlement negotiations, and the negotiation and execution of this Settlement Agreement.

76214-00002/4598234.10

However, if any Party must commence an action to enforce the terms of this Settlement Agreement, the prevailing Party shall be entitled to an award, in addition to any other claims or damages, of its costs and expenses including attorneys' fees, in connection with said enforcement action.

13.     No Assignment.  Each Party hereby represents and warrants to the other Party that it has made no assignment, and hereafter will make no assignment of any claim, cause in action, right of action, or any other right released pursuant to this Settlement Agreement.

14.     Execution in Counterparts.  It is understood and agreed that this Settlement Agreement may be executed in identical counterparts and may be transmitted by email or facsimile, each of which shall be deemed an original for all purposes, all of which will constitute one and the same document. Electronic portable document format (PDF) copies of original signatures of, and copies signed via DocuSign by, any of the parties hereto will be binding as if they were original signatures.

*[Signature Page Follows]*

6

**IN WITNESS WHEREOF**, the Parties have caused this Settlement Agreement to be executed as of the date set forth opposite their respective signatures.

**TRUSTEE**

Date: 1/19/2023 | 2:53 PM PST

DocuSigned by:

*Jason M. Rund, Chapter 7 Trustee*

83D65BD15320417...

JASON M. RUND, Solely in His Capacity as Chapter 7 Trustee of the Bankruptcy Estate of Youth Policy Institute, Inc.

**SCHULTZ**

Date: 1/19/2023 | 2:00 PM PST

DocuSigned by:

*Steven Schultz*

FC8585C6465040A

Steven Schultz

**SLINGERLAND**

Date: 1/19/2023 | 2:17 PM PST

DocuSigned by:

*Dixon Slingerland*

EF2B73E45B8E4FC...

Dixon Slingerland

**STEINKE**

Date: 1/19/2023 | 2:32 PM PST

DocuSigned by:

2881B86BFFF8456...

Suzanne Steinke

**HILL MORGAN AND ASSOCIATES, LLP**

Date:

DocuSigned by:

*Jeffrey Hill*

8CE65A8398FA4D7...

Jeffrey Hill, Managing Partner

**STEINKE APC**

Date: 1/19/2023 | 2:32 PM PST

DocuSigned by:

2881B86BFFF8456...

Suzanne Steinke, on behalf of Suzanne Steinke, a Professional Corporation

**RSUI INDEMNITY COMPANY**

Date:

By: _____

Name:

Its:

**HANOVER INSURANCE COMPANY**

Date:

By: _____

Name:

Its:

4857-5126-8420, v. 1

7

**IN WITNESS WHEREOF**, the Parties have caused this Settlement Agreement to be executed as of the date set forth opposite their respective signatures.

**TRUSTEE**

Date:

_____
JASON M. RUND, Solely in His Capacity as
Chapter 7 Trustee of the Bankruptcy Estate of
Youth Policy Institute, Inc.

**SCHULTZ**

Date: 1/19/2023 | 2:00 PM PST

DocuSigned by:
*Steven Schultz*
EC8585C6465040A
Steven Schultz

**SLINGERLAND**

Date: 1/19/2023 | 2:17 PM PST

DocuSigned by:
*Dixon Slingerland*
EF2B73E45B8E4FC...
Dixon Slingerland

**STEINKE**

Date:

_____
Suzanne Steinke

**HILL MORGAN AND ASSOCIATES, LLP**

Date:

_____
Jeffrey Hill, Managing Partner

**STEINKE APC**

Date:

_____
Suzanne Steinke, on behalf of Suzanne
Steinke, a Professional Corporation

**RSUI INDEMNITY COMPANY**

Date:    January 20, 2023

By: *Phil Krajec*
Name:  Phil Krajec
Its:    Vice President

**HANOVER INSURANCE COMPANY**

Date:    1-19-2023

By: *Elizabeth Anderson*
Name:  Elizabeth Anderson
Its:    Specialty Claim Consultant

4857-5126-8420, v. 1

7

# EXHIBIT A

# EXHIBIT A

JEFFREY A. KRIEGER (SBN 156535)
JKrieger@GreenbergGlusker.com
KEITH PATRICK BANNER (SBN 259502)
KBanner@GreenbergGlusker.com
GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Ste. 2600
Los Angeles, California 90067
Telephone:  310.553.3610
Fax:  310.553.0687

Attorneys for Jason M. Rund,
Chapter 7 Trustee

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>YOUTH POLICY INSTITUTE, INC.,<br><br>         Debtor. | Case No. 2:19-bk-23085-BB<br><br>Chapter 7<br><br>**ORDER GRANTING CHAPTER 7 TRUSTEE'S MOTION UNDER FED. R. BANKR. P. 9019 FOR ORDER APPROVING COMPROMISE WITH DIXON SLINGERLAND, STEVEN SCHULTZ, SUZANNE STEINKE, SUZANNE M. STEINKE A PROFESSIONAL CORPORATION, HILL MORGAN AND ASSOCIATES, LLP, RSUI INDEMNITY COMPANY AND HANOVER INSURANCE COMPANY**<br><br>[NO HEARING REQUIRED; LBR 9013-1(o)] |

The Court, having considered the *Chapter 7 Trustee's Motion Under Fed. R. Bankr. P. 9019 for Order Approving Compromise with Dixon Slingerland, Steven Schultz, Suzanne Steinke, Suzanne M. Steinke a Professional Corporation, Hill Morgan and Associates, LLP, RSUI Indemnity Company and Hanover Insurance Company* [Docket No. __ ] (the "Motion") pursuant to which the Trustee seeks entry of an order approving the Trustee's proposed compromise with

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Ste. 2600
Los Angeles, California 90067

DocuSign Envelope ID: 534D2C1F-E635-4DE5-BB74-375402A51574

Dixon Slingerland ("Slingerland"), Steven Schultz ("Schultz"), Suzanne M. Steinke ("Steinke"), Suzanne M. Steinke a Professional Corporation ("Steinke APC"), Hill Morgan and Associates LLP ("Hill Morgan", collectively with Slingerland, Schultz, Steinke, Steinke APC, "Defendants"), RSUI Indemnity Company ("RSUI") and Hanover Insurance Company ("Hanover", together with RSUI, "Insurers") and approving the *Settlement Agreement* (the "Settlement Agreement") by and among the Trustee, on behalf of the bankruptcy estate, and Defendants/Insurers memorializing such proposed compromise, a copy of which is attached as Exhibit 1 to the *Declaration of Jason M. Rund* (the "Rund Declaration") accompanying the Motion.

The Court, having reviewed the Motion, the Settlement Agreement, and the Rund Declaration; it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; it appearing that due and adequate notice of the Motion having been given under the circumstances; no timely opposition or response having been filed with respect to the Motion; and after due deliberation and good cause appearing therefor,

**IT IS HEREBY ORDERED** that:

1.     The Motion is **GRANTED**.

2.     The compromise between the bankruptcy estate and Defendants, as detailed in the Motion and set forth in the Settlement Agreement, is **APPROVED** pursuant to Bankruptcy Rule 9019.

3.     The Settlement Agreement is **APPROVED** in its entirety.

4.     The Trustee is authorized to take all actions on behalf of the bankruptcy estate necessary to effectuate the Settlement Agreement.

5.     Pursuant to the terms of the Settlement Agreement:

a.     No later than ten (10) business days from the "Effective Date" as defined in the Settlement Agreement, RSUI shall pay the Trustee on behalf of the Debtor's bankruptcy estate, the sum of $2,761,796.00 as a portion of the policy limit under that certain Non-Profit Organization Management Liability Policy, policy no. xx9767 (the "RSUI D&O Policy").

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Ste. 2600
Los Angeles, California 90067

ORDER GRANTING MOTION TO
APPROVE COMPROMISE

76214-00002/4614652.3

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Ste. 2600
Los Angeles, California 90067

b.     Concurrent with its payment to the Trustee, RSUI shall: (i) reimburse Slingerland, care of his defense counsel, the sum of $66,672.50, as full reimbursement of all defense expenses permitted under the RSUI D&O Policy; and (ii) reimburse Schultz, care of his defense counsel, the sum of $22,728.15 as full reimbursement of all defense expenses permitted under the RSUI D&O Policy.

c.     No later than ten (10) business days from the Effective Date as defined in the Settlement Agreement, Hanover shall pay the Trustee on behalf of the Debtor's bankruptcy estate, a total of $2,000,000.00, constituting the full policy limit under that certain Hanover Excess Advantage, policy no. xx1903.

d.     No later than April 30, 2023, and after the Effective Date as defined in the Settlement Agreement, Slingerland shall pay the Trustee on behalf of the Debtor's bankruptcy estate, a total of $71,533.56, to reimburse the Debtor's estate for the charges referenced in paragraph K of the Recitals in the Settlement Agreement and $53,466.44 for the remainder of Slingerland's Share of the Settlement Payment, for a total payment of $125,000.00.

6.     Pursuant to the Court's *Order Approving Chapter 7 Trustee's Application to Employ the Law Office of Philip Dracht as Special Litigation Counsel Pursuant to 11 U.S.C. § 327 and to Approve Contingency Fee Arrangement Pursuant to 11 U.S.C. § 328* [Docket No. 184], the contingency fee due to the Trustee's special counsel, The Law Office of Philip Dracht ("Dracht") on the terms set forth in the that certain Retainer Agreement dated July 19, 2021 is approved on a final basis and the Trustee is authorized to pay to Dracht, as funds are received pursuant to the Settlement Agreement, no more than $1,628,769.11, constituting 33% of the gross recovery from the settlement and reimburse costs to Dracht totaling $1,701.96.

7.     The Court retains jurisdiction for all matters relating the Motion and the Settlement Agreement.

3

DocuSign Envelope ID: 534D2C1F-E635-4DE5-BB74-375402A51574

###

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GREENBERG GLUSKER FIELDS CLAMAN
& MACHTINGER LLP
2049 Century Park East, Ste. 2600
Los Angeles, California 90067

4

ORDER GRANTING MOTION TO
APPROVE COMPROMISE

76214-00002/4614652.3

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

2049 Century Park East, Ste. 2600 Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled (*specify*): CHAPTER 7 TRUSTEE'S MOTION UNDER FED. R. BANKR. P. 9019 FOR ORDER APPROVING COMPROMISE WITH DIXON SLINGERLAND, STEVEN SCHULTZ, SUZANNE STEINKE, SUZANNE M. STEINKE A PROFESSIONAL CORPORATION, HILL MORGAN AND ASSOCIATES, LLP, RSUI INDEMNITY COMPANY AND HANOVER INSURANCE COMPANY DECLARATION OF JASON M. RUND IN SUPPORT THEREOF
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____1/20/2023_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

[x]  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____1/20/2023_____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

[ ]  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____1/20/2023_____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Via Email

Counsel to Hanover  David Brown-DBrown@kdvlaw.com

Counsel to RSUI  David Tartaglio, Esq.- D.Tartaglio@MusickPeeler.com

Counsel in Padilla Action  Lyne A. Richardson, Esq.-  Lyne.Richardson@OgleTree.com

Brittany L. Turner, Esq.-
Brittany.Turner@OgleTree.com

[ ]  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 1/20/2023 | Julie King | /s/ Julie King |
|-----------|------------|-----------------|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

1. <u>**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**</u>

- Keith Patrick Banner    kbanner@greenbergglusker.com,
  vafanasieva@greenbergglusker.com;calendar@greenbergglusker.com
- Robert D Bass    bob.bass47@icloud.com
- Magdalena R Bordeaux    mbordeaux@publiccounsel.org
- Shawn M Christianson    cmcintire@buchalter.com, schristianson@buchalter.com
- Brian L Davidoff    bdavidoff@greenbergglusker.com,
  calendar@greenbergglusker.com;jking@greenbergglusker.com
- Philip D Dracht    pdracht@drachtlaw.com
- Steven Goldsobel    steve@sgoldsobel.com, vandad@sgoldsobel.com
- EmmaElizabeth A Gonzalez    egonzalez@publiccounsel.org
- Sheryl K Ith    sith@cookseylaw.com
- Jeffrey A Krieger    jkrieger@ggfirm.com,
  kwoodson@greenbergglusker.com;calendar@greenbergglusker.com;jking@greenbergglusker.com
- David W. Meadows    david@davidwmeadowslaw.com
- Kevin Meek    kmeek@robinskaplan.com, kevinmeek32@gmail.com;kmeek@ecf.inforuptcy.com
- Hayes F Michel    hmichel@krakowskymichel.com
- Christopher E Prince    cprince@lesnickprince.com,
  jmack@lesnickprince.com;cprince@ecf.courtdrive.com;jnavarro@lesnickprince.com
- Jason M Rund (TR)    trustee@srlawyers.com, jrund@ecf.axosfs.com
- Daniel C Sharpe    , daniel.c.sharpe@me.com
- Summer M Shaw    ss@shaw.law,
  shawsr70161@notify.bestcase.com;shawsr91811@notify.bestcase.com
- Matthew N Sirolly    msirolly@dir.ca.gov
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Andy C Warshaw    awarshaw@bwlawcenter.com,
  Warshaw.AndyB110606@notify.bestcase.com
- Genevieve G Weiner    gweiner@sidley.com, laefilingnotice@sidley.com;genevieve-weiner-
  0813@ecf.pacerpro.com